IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANDY POINT DENTAL PC, ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| THE CINCINNATI INSURANCE COMPANY, ) | |
| THE CINCINNATI CASUALTY COMPANY, ) | |
| THE CINCINNATI INDEMNITY COMPANY, ) | Jury Trial Demanded |
| THE CINCINNATI INSURANCE COMPANIES, ) | |
| Defendants, ) | |

**COMPLAINT**

Plaintiff SANDY POINT DENTAL PC ("Plaintiff"), for its Complaint against Defendants THE CINCINNATI INSURANCE COMPANY, THE CINCINNATI CASUALTY COMPANY, THE CINCINNATI INDEMNITY COMPANY, THE CINCINNATI INSURANCE COMPANIES ("Defendants"), allege as follows:

**INTRODUCTION**

1. Plaintiff is an Illinois professional corporation with its principal place of business at 545 N. Rand Road in Lake Zurich, Illinois.

2. Plaintiff provides dental services and is operated by licensed dentists.

3. Plaintiff has been forced, by recent orders issued by the State of Illinois, to cease most of its operations — through no fault of their own — as part of the State's efforts to slow the spread of the COVID-19 global pandemic. The State has deemed elective dental work that is not an emergency as not essential, which includes cleaning and various other routine work that affects over 95% of Plaintiff's business.

4. The closures mandated by these State orders present an existential threat to these small, local businesses such as Plaintiff that employ hundreds of Illinois residents. Plaintiff in particular has 10 employees.

5. To protect its businesses from situations like these, which threaten its livelihoods based on factors wholly outside of its control, Plaintiff obtained business interruption insurance from Defendants.

6. A copy of the full insurance policy is attached hereto as Exhibit A. The policy pays for loss of business income (page 60 of the PDF, section b. Business Income and Extra Expense, see section (1) Business Income, and section 4 on page 61 of the PDF, "Civil Authority. We will pay for the actual loss of "Business Income" you sustain and "Extra Expense" you incur caused by action of civil authority that prohibits access to the "premises" due to direct physical "loss" to property, other than at the "premises", caused by or resulting from any Covered Cause of Loss.)

7. In breach of its insurance obligations that it voluntarily undertook in exchange for Plaintiff's premium payments, Defendants have denied Plaintiff's claims arising from the State-ordered interruption of their businesses.

8. As a result, Plaintiff now brings this action against Defendants for their failure to honor their obligations under commercial business owners insurance policies issued to Plaintiff, which provide coverage for losses incurred due to a necessary suspension of their operations, including when their businesses are forced to close due to a government order.

9. On March 15, 2020, during the term of the policies issued by Defendants to Plaintiffs, Illinois Governor Pritzker issued an order first closing all restaurants, bars, and movie theaters to the public in an effort to address the ongoing COVID-19 pandemic. A few days later, on March 20, 2020, Governor Pritzker ordered all "non-essential businesses" to close. The particulars of that order left dental offices able to do emergency work but not routine work. The March 15 and March 20 orders are hereinafter collectively referred to as the "Closure Orders."

10. The closure orders named healthcare workers as essential so long as they were doing essential work. The American Dental Association ("ADA") issued an advisory opinion telling dentists that elective and routine matters should be postponed during the quarantine period for the sake of patient and staff health. (Found at https://www.ada.org/en/press-room/news-releases/2020-archives/march/ada-calls-upon-dentists-to-postpone-elective-procedures.)

11. The ADA reiterated these guidelines, and also stated that Dentists were to heed the Illinois Governor's April 30 Interim Postponement Recommendation, & to maintain focus on urgent and emergency dental care only. (Found at https://www.ada.org/en/press-room/news-releases/2020-archives/april/summary-of-ada-guidance-during-the-covid-19-crisis?utm_source=adaorg&utm_medium=adahomerotator&utm_content=interim-statement&utm_campaign=covid-19 .)

12. Due to the American Dental Association's prominence, it is the industry standard for due care and proper procedure.

13. Dentists who act against the ADA's guidelines can be sued for not practicing due care, and can have their licenses suspended or otherwise impeded by the Illinois Department of Financial & Professional Regulation for not practicing such due care.

14. Additionally, the Center for Disease Control and Prevention ("CDC") has made the same recommendation. (Found at https://www.cdc.gov/oralhealth/infectioncontrol/statement-COVID.html .) The Illinois State Dental Society ("ISDS") concurred in these guidelines on March 23, 2020. (Found at: https://www.isds.org/news-details/2020/03/23/3.23.20-isds-revises-recommendation-after-governor-issues-shelter-in-place-order .)

15. The interpretation of these three bodies, the ADA, ISDS, and CDC, maintains the industry standard of due care, and as such create the legal effect of making those nonessential procedures forbidden.

16. Therefore due to the orders of the Illinois Governor and the COVID virus crisis, a dental practice that mostly does routine procedures is effectively shut down during the duration of the crisis. The Plaintiff has been forced to halt ordinary operations, resulting in substantial lost revenues.

17. Defendants have been paid premiums and are contractually obligated to cover losses related to this work shut down.

18. But despite Defendants' promise in its policies to cover the Plaintiff's business interruption losses when the government forces them to close, Defendants have issued a denial to Plaintiff for any losses related to the Closure Orders – within a very short period of receiving Plaintiff's claims – and without first conducting any meaningful coverage investigation, let alone a "reasonable investigation based on all available information" as required under Illinois law.

19. A copy of the denial to Plaintiff's claim is attached hereto as Exhibit B. It claims in relevant part "From a Civil Authority cause of loss perspective, there must be direct physical damage from a covered proper cause of loss that eliminates access to your property."

20. Defendants agent's only reason to Plaintiff for their categorical assertion that Plaintiff's losses are not covered, is based on the assertion that the presence of the coronavirus, which led to the Closure Orders that prohibited Plaintiffs from operating their businesses, does not constitute "direct physical damage."

21. But Defendants' conclusory statement that the actual or alleged presence of a substance like COVID-19 does not result in property damage is contrary to the law in Illinois. Illinois courts

4

have consistently held that the presence of a dangerous substance in a property constitutes "physical loss or damage." *See, e.g., Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Int'l Ins. Co.*, 720 N.E.2d 622, 625–26 (Ill. Ct. App. 1999), *as modified on denial of reh'g* (Dec. 3, 1999).

22. Moreover, unlike many commercial property policies available in the market, the policies sold by Defendants do not include an exclusion for loss caused by a virus. The policy has rules and conditions regarding bacteria, but a virus is not a bacterium.

23. Thus, Plaintiffs reasonably expected that the insurance they purchased from Defendants included coverage for property damage and business interruption losses caused by viruses like the COVID-19 coronavirus.

24. If Defendants had wanted to exclude pandemic-related losses under the Plaintiffs' policies it easily could have attempted to do so on the front-end with an express exclusion. Instead, Defendants waited until after it collected Plaintiff's premiums, and after a pandemic and the resulting Closure Orders caused catastrophic business losses to Plaintiff, to try to limit its exposure on the backend through its erroneous assertion that the presence of the coronavirus is not "physical loss" and therefore is not a covered cause of loss under its policies.

25. The insurance industry has created specific exclusions for pandemic related losses under similar commercial property policies.

26. The fact that the insurance industry has created specific exclusions for pandemic related losses under similar commercial property policies undermines Defendants' assertion that the presence of a virus, like the coronavirus, does not cause physical loss or damage to property.

27. Thus, Defendants' wholesale, cursory coverage denials are arbitrary and unreasonable, and inconsistent with the plain law in Illinois, and the facts and plain language of the policies it issued. These denials appear to be driven by Defendants' desire to preempt its own financial exposure to

the economic fallout resulting from the COVID-19 crisis, rather than to initiate, as Defendants are obligated to do, a full and fair investigation of the claims and a careful review of the policies they sold to Plaintiff in exchange for valuable premiums.

28. As a result of Defendants' wrongful denial of coverage, Plaintiff files this action for a declaratory judgment establishing that they are entitled to receive the benefit of the insurance coverage they purchased, for indemnification of the business losses they have sustained, for breach of contract, and for bad faith claims handling under 215 ILCS 5/155.

## PARTIES

29. Plaintiff is an Illinois professional corporation, operating in Illinois and licensed in Illinois, with its principal place of business in Lake Zurich, Illinois. Plaintiff has a Commercial Insurance Policy from Defendants, Policy No. ECP 026 96 01, which covered losses for occurrences at Plaintiff's business.

30. Defendants are a group of insurance companies acting in unison, engaged in the business of selling insurance contracts to commercial entities such as Plaintiff in Illinois and elsewhere.

31. Defendants are incorporated in the State of Ohio and maintains their principal place of business in Ohio.

## JURISDICTION & VENUE

32. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

33. This Court has personal jurisdiction over Defendants pursuant to the Illinois "long arm statute," 735 ILCS 5/2-209, because Defendants have submitted to jurisdiction in this state by: (a) transacting business in Illinois; (b) contracting to insure a person, property or risk located within

Illinois at the time of contracting; and (c) making a contract substantially connected with Illinois. See 735 ILCS 5/2-209(1), (4), (7). In addition, Defendants exercise substantial, systematic and continuous contacts with Illinois by doing business in Illinois, serving insureds in Illinois, and seeking additional business in Illinois.

34. This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties as to their respective rights and obligations under the Policy with respect to the loss of business arising from the civil authority event detailed below.

35. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omission giving rise to Plaintiff's claims occurred within the Northern District of Illinois.

## FACTUAL ALLEGATIONS

36. Plaintiff incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1–33 above.

A. Defendants' Policies.

37. In exchange for substantial premiums, Defendants sold commercial property insurance policies promising to indemnify the Plaintiff for losses resulting from occurrences, including the necessary suspension of business operations at any insured location caused by a government order, during the relevant time period (each a "Policy" and collectively, the "Policies"). (See aforementioned Exhibit A.)

38. Each Policy was issued to Plaintiff at their principal places of business in Illinois. The Policy provides broad coverage for losses caused by any cause unless expressly excluded. The Defendants' Policies do not exclude losses from viruses or pandemics. Thus, the Policies purchased by the Plaintiff cover losses caused by viruses, such as COVID-19.

39. In addition to property damage losses, Defendants also agreed to pay for the actual loss of Business Income sustained by Plaintiff due to the necessary suspension of Plaintiff's operations during the period of business interruption "caused by action of civil authority."

40. Section G.2. of the Policy has this definition: ""Business Income" means the: a. Net Income (net profit or loss before income taxes) that would have been earned or incurred; and b. Contiuing normal operating expenses incurred including payroll."

B. The Plaintiff's Losses Due to the Coronavirus Pandemic and the Closure Orders.

41. On March 11, 2020, the World Health Organization declared that the emerging threat from the novel coronavirus—otherwise known as COVID-19—constituted a global pandemic.

42. Emerging research on the virus and recent reports from the CDC indicate that the COVID-19 strains physically infect and can stay alive on surfaces for at least 17 days, a characteristic that renders property exposed to the contagion potentially unsafe and dangerous.

43. Other research indicates that the virus may linger on surfaces for up to four weeks in low temperatures.

44. In response to the pandemic, and the spread of the coronavirus in the Greater Chicago Area and throughout Illinois, on 3/20/2020 Illinois Governor Pritzker issued Executive Order 2020-10, requiring, inter alia, that non-essential operations must cease.

45. The Governor of Illinois' Executive Orders and the implementing bodies supplement thereto were issued in direct response to these dangerous physical conditions, and prohibited the public from accessing Plaintiff's dental offices for routine matters, thereby causing the necessary suspension of over 95% of Plaintiff's operations and triggering the Defendants' coverage responsibilities.

46. Governor Pritzker's March 20, 2020 Closure Order (Executive Order 2020-10) was made in direct response to the continued and increasing presence of the coronavirus on property or around Plaintiff's premises.

47. As a result of these catastrophic losses, Plaintiff has lost substantial revenue.

### COUNT I: DECLARATORY JUDGMENT

48. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1 - 47 above, as though fully pleaded herein.

49. The Policy is an insurance contract under which Defendants were paid premiums in exchange for their promise to pay Plaintiff's losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing them to close their businesses.

50. Plaintiff has complied with all applicable provisions of the Policies, including payment of the premiums in exchange for coverage under the Policies.

51. Defendants have arbitrarily and without justification refused to reimburse Plaintiff for any losses incurred by Plaintiff in connection with the covered business losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

52. An actual case or controversy exists regarding Plaintiff's rights and Defendants' obligations under the Policies to reimburse Plaintiff for the full amount of losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 pandemic.

53. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment from this Court declaring the following: (a) Plaintiff's losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the Policies; (b) Defendants have waived any right they may have had to assert

defenses to coverage or otherwise seek to bar or limit coverage for Plaintiff's losses by issuing blanket coverage denials without conducting a claim investigation as required under Illinois law; and (c) Defendants are obligated to pay Plaintiff for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders during the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT II: BREACH OF CONTRACT

54. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1 - 47 above, as though fully pleaded herein.

55. Each Policy is an insurance contract under which Defendants were paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing them to close their businesses.

56. Plaintiff has complied with all applicable provisions of the Policies, including payment of the premiums in exchange for coverage under the Policies, and yet Defendants have abrogated their insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

57. By denying coverage for any business losses incurred by Plaintiff in connection with the Closure Orders and the COVID-19 pandemic, Defendants have breached their coverage obligations under the Policies.

58. As a result of Defendants breaches of the Policies, Plaintiff has sustained substantial damages for which Society Insurance is liable, in an amount to be established at trial.

## COUNT III: STATUTORY PENALTY FOR BAD FAITH DENIAL OF INSURANCE UNDER 215 ILCS 5/155

59. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1 - 47 above, as though fully pleaded herein.

60. Upon receipt of the Closure Order Claims, Defendants immediately denied the claims without conducting any investigation, let alone a "reasonable investigation based on all available information" as required under Illinois law. See 215 ILCS 5/154 et. seq.

61. Defendants' denials were vexatious and unreasonable.

62. Defendants' denials constitute "improper claims practices" under Illinois law—namely Society Insurance's (1) refusals to pay Plaintiff's claims without conducting reasonable investigations based on all available information and (2) failure to provide reasonable and accurate explanations of the bases in its denials. See 215 ILCS 5/154.6 (h), (n).

63. Therefore, pursuant to 215 ILCS 5/155, Plaintiff requests that, in addition to entering a judgment in favor of Plaintiffs and against Defendants for the amount owed under the Policies at the time of judgment, the Court enter a judgment in favor of Plaintiff and against Defendants for an amount equal to the greater of (1) 60% of the amount which the trier of fact finds that Plaintiff is entitled to recover under the Policies, exclusive of costs; and (2) $60,000 per Plaintiff. See 215 ILCS 5/155.

64. Plaintiff further requests that the Court enter a judgment in favor of Plaintiff and against Defendants in an amount equal to the attorney fees and costs incurred by Plaintiff for the prosecution of this coverage action against Defendants, which amount will be proved at or after trial, pursuant to 215 ILCS 5/155.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court:

1. Enter a declaratory judgment on Count II of the Complaint in favor of Plaintiff and against Defendants, declaring as follows:

(a) Plaintiff's losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the Policies;

(b) Defendants have waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiff's losses by issuing blanket coverage denials without conducting a claim investigation as required under Illinois law; and

(c) Defendants are obligated to pay Plaintiff for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders during the shelter in place period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

2. Enter a judgment on Count II of the Complaint in favor of Plaintiff and against Defendants (jointly and severably) and award damages for breach of contract in an amount to be proven at trial;

3. Enter a judgment on Count III of the Complaint in favor of Plaintiff and against Defendants (jointly and severably) in the amount equal to amount equal to the greater of (1) 60% of the amount which the trier of fact finds that Plaintiff is entitled to recover under the Policies, exclusive of costs; and (2) $60,000 per Plaintiff;

4. Enter a judgment in favor of Plaintiff and against Defendants (jointly and severably) in an amount equal to all attorney fees and related costs incurred for the prosecution of this coverage action against Defendants, pursuant to 215 ILCS 5/155, which amount to be established at the conclusion of this action;

5. Award to Plaintiff and against Defendants (jointly and severably) prejudgment interest, to be calculated according to law, to compensate Plaintiff for the loss of use of funds caused by Defendants wrongful refusal to pay Plaintiff for the full amount in costs incurred in connection with Closure Order Claims.

6. Award Plaintiff such other, further, and additional relief as this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully submitted this _____ day of April 2020.

<u>s/Charles A. Silverman</u>
Charles Aaron Silverman PC
8800 Bronx Ave #100-F
Skokie, IL 60077
(312) 526-3201
CSilverman@cas-pc.com