

**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**Policy Number:** ECP 026 96 01

**Effective Date:** 10-14-2017

**Named Insured:** SANDY POINT DENTAL PC

For professional advice and policy questions or changes, please contact your local independent agency:

WEST'S INSURANCE AGENCY, INC.
1225 TRI STATE PKWY STE 500
GURNEE, IL 60031-9163

847-623-0456

Dear Policyholder:

**Thank you**
Thank you for trusting The Cincinnati Insurance Companies with your commercial insurance coverage. We recognize that locally based independent agents have the working knowledge to help you choose the right insurance company for your needs. Together with your local independent insurance agency, we are committed to providing you with the highest level of service.

Please review your enclosed policy information to verify your coverage details, as well as deductibles and coverage amounts. Should your needs change, your agent is available to review and update your policy.

**Please promptly report claims**
If you experience a policy-related loss, you may report it by contacting your local professional independent agency representing The Cincinnati Insurance Companies or by directly calling us toll-free at **877-242-2544** and providing your policy number and claim-related information.

Sincerely,

Steve Spray
Senior Vice President - Commercial Lines

**IA 4443 04 14**



The Cincinnati Insurance Company ■ The Cincinnati Indemnity Company
The Cincinnati Casualty Company

Today's Date:   08-08-2017

To:  SANDY POINT DENTAL PC

Policy Number:   ECP 026 96 01
Expiration Date:  10-14-2020
Agency:        WEST'S INSURANCE AGENCY, INC. 12-171

### Data privacy management services and resources added to your insurance policy

Dear Policyholder:

Your policy includes Cincinnati Data Defender™ coverage for an additional premium. This data privacy exposure coverage helps safeguard your business against the potentially costly risk of a data breach and assists you in the event of identity theft. Please save this information so you can access all the tools and resources that come with your cyber protection coverage. Refer to Cincinnati Data Defender Coverage Form, HC102, for a complete statement of coverages, exclusions and limits of insurance.

### Policyholder tools and resources

*Data breach portal* – For your convenience, Cincinnati policyholders who purchase Data Defender coverage gain access to *www.eriskhub.com/cic*, a website that provides you with the comprehensive, on-demand resources you need to:
- Prepare in advance:
    - Access online resources when you need them
    - Create your breach response plan from the template
    - Learn about breach laws that apply to your business
- Review risk management resources:
    - Use the compliance reference guide and notification letter examples
    - Locate credit bureau and government agency notification information
    - Learn how to contact data risk management experts for more help
- Manage your breach response:
    - Call the help line for breach information and assistance
    - Arrange assistance with notification letters
    - Access public relations resources to help you respond to the media

The first time you visit this website, please complete new user registration using this information:

### Access code = 12116-868

*Identity theft services* - This coverage also includes case management services and reimbursement for covered expenses if you, as a business owner, become the victim of identity theft or account takeover. If you suspect that you may be an identity theft victim or you have questions, please call our Identity Recovery Help Line, 866-219-9831.

**IA4465 (01/16)**

Page 2 of 2

## Claims services

If you suspect or know that a data breach may have exposed or compromised your organization's private, customer or personal data, a swift response is critical for your protection. Please note that the Web portal and help line provide advice and information, and using them does not satisfy any notice of claim requirement. The only way to report a claim is to contact your independent agent or call us directly, 877-242-2544. Your agent and Cincinnati Insurance will work with you to help preserve your company's goodwill, prevent regulatory sanctions or fines, avoid civil litigation and safeguard your business reputation.

While we believe this is valuable coverage to have in today's world, you may have it removed from your policy by notifying your agent.

## Additional cyberattack coverage

To round out your cyber risk liability insurance, consider adding Cincinnati Network Defender™ coverage for the computer systems and data that are integral to your business. This valuable protection pays the covered costs associated with restoring computer software and recovering data following a cyberattack. It also protects you against third-party liabilities you may incur as a result of your computer system's security failure. Please see the enclosed brochure for details.

You can purchase Cincinnati Network Defender with a coverage limit of $100,000 for an annual premium of $  300  . Please contact your independent agent representing Cincinnati to add this coverage to your policy or to request quotes for higher coverage limits. This quote is valid for sixty (60) days from the date of this letter.

Thank you for trusting your agent and Cincinnati to protect your business.

Sincerely,


**COMMERCIAL LINES DEPARTMENT**

Commercial Lines


Enclosure: Cincinnati Network Defender brochure, Adv. 715

**IA4465 (01/16)**



# The Cincinnati Insurance Company

A Stock Insurance Company

**Headquarters**: 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address**: P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

ECP0269601

Previous Policy Number

## CinciPak™
## FOR DENTISTS
## COMMON POLICY DECLARATIONS

Billing Method:

| POLICY NUMBER | ECP 026 96 01 / EBA 026 96 01 |
|---|---|

**NAMED INSURED** SANDY POINT DENTAL PC
REFER TO IA905
**ADDRESS** 545 N RAND RD
(Number & Street, LAKE ZURICH, IL 60047-3134
Town, County,
State & Zip Code)

**Policy Period:** At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
    Policy number: **ECP 026 96 01**        FROM: **10-14-2017**    TO: **10-14-2020**

**Automobile and / or Garage**
    Policy number: **EBA 026 96 01**        FROM: **10-14-2017**    TO: **10-14-2018**

Agency    WEST'S INSURANCE AGENCY, INC. 12-171
City       GURNEE, IL

**Legal Entity / Business Description**

ORGANIZATION (ANY OTHER)

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| ICP101 | 05/11 | CINCIPAK™ SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA905 | 02/98 | NAMED INSURED SCHEDULE |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IA4433IL | 03/17 | IMPORTANT POLICYHOLDERS NOTICE - ILLINOIS |
| IP409IL | 01/91 | IMPORTANT INFORMATION TO POLICYHOLDERS ILLINOIS |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4156IL | 11/16 | ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL |
| IA4210IL | 03/16 | ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4382IL | 07/17 | ILLINOIS CHANGES |
| IA4395IL | 11/15 | ILLINOIS CHANGES - CIVIL UNION |
| IA4442 | 05/14 | NOTICE TO POLICYHOLDERS - EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY |
| FM502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GA532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |

FORMS APPLICABLE TO ALL COVERAGE PARTS:

```
MA573    06/07  ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS
CA516    03/09  CRIME AND FIDELITY COVERAGE PART DECLARATIONS (COMMERCIAL
                ENTITIES)
PA531    10/11  DENTIST'S PROFESSIONAL LIABILITY COVERAGE PART DECLARATIONS
                (OCCURRENCE)
AA505    03/06  BUSINESS AUTO COVERAGE PART DECLARATIONS
HC502    01/16  CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS
```

---

`08-08-2017 15:55`

Countersigned _____  By _____

                                (Date)                                          (Authorized Representative)

**ICP 513 07 11**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections and Surveys**

**1.** We have the right to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** Are safe or healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay.

**F. Transfer of Your Rights and Duties Under this Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**IL 00 17 11 98**          Copyright, Insurance Services Office, Inc., 1998

# CinciPak™
# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER:  **ECP 026 96 01 / EBA 026 96 01**          Effective Date: **10-14-2017**

Named Insured:  **SANDY POINT DENTAL PC**

## THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE
## PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | |
|---|---|
| Commercial Property Coverage Part   **W/EBC** | $ 3,002 |
| Commercial General Liability Coverage Part | $ 643 |
| Commercial Crime Coverage Part | $ 65 |
| Electronic Data Processing Equipment Coverage Part | $ 52 |
| Commercial Auto Coverage Part | $ 135 |
| Commercial Umbrella / Excess Liability Coverage Part | $ |
| **DATA DEFENDER COVERAGE PART** | $ 186 |
| **DENTIST'S PROFESSIONAL LIABILITY** | $ 3,200 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Terrorism Coverage | $ 33 |
| Installment Charge | $ |
| **ANNUAL TOTAL** | $ 7,316 |

**PAYMENTS**

| | First Installment | Remaining Installment(s) |
|---|---|---|
| **ANNUAL** | 7,316 | 7,316 |

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

**ICP 101 05 11**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 545 N RAND RD | | | |
| | LAKE ZURICH, IL 60047-3134 | | | |

IA 904 04 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NAMED INSURED SCHEDULE

This Schedule supplements the Declarations.

**SCHEDULE**

Named Insured:

SANDY POINT DENTAL, PC

IA 905 02 98

# POLICYHOLDER NOTICE
# TERRORISM INSURANCE COVERAGE

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

Your policy may contain coverage for certain losses caused by terrorism.

**Premium:**

In accordance with the federal Terrorism Risk Insurance Act, we are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

- Refer to the SUMMARY OF PREMIUMS CHARGED or DECLARATIONS PAGE for the portion of your premium that is attributable to coverage for terrorist acts certified under the Act.

**Federal Participation:**

The Act also requires us to provide disclosure of federal participation in payment of terrorism losses.

- Under your policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States Government, Department of Treasury, under a formula established by federal law. Under this formula, the federal share equals a percentage, as specified in the Schedule below, of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

- **Schedule:**

| Federal Share of Terrorism Losses | |
|---|---|
| Percentage | Calendar Year |
| 85% | 2015 |
| 84% | 2016 |
| 83% | 2017 |
| 82% | 2018 |
| 81% | 2019 |
| 80% | 2020 |

**Cap on Insurer Participation:**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**NOTE: IF YOUR POLICY IS A RENEWAL POLICY, THIS NOTICE IS PROVIDED TO SATISFY THE REQUIREMENTS UNDER THE TERRORISM RISK INSURANCE ACT FOR POLICYHOLDER DISCLOSURE: (1) AT THE TIME OF OUR OFFER TO RENEW THE POLICY AND (2) AT THE TIME THE RENEWAL IS COMPLETED.**

**IA 4236 01 15**

# IMPORTANT POLICYHOLDERS NOTICE - ILLINOIS

Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that if you wish to contact the Illinois Department of Insurance, it maintains a Consumer Division at:

122. S. Michigan Ave., 19th Floor, Chicago, Illinois 60603; and

320 West Washington Street, Springfield, Illinois 62767,

You may also reach the Illinois Department of Insurance at http://insurance.illinois.gov; or

312-814-2420 or 217-782-4515.

Should you have any complaints arise regarding this insurance you may contact the following:

Complaint Department of The Cincinnati Insurance Company at P.O. Box 145496, Cincinnati, Ohio, 45250-5496.

Public Service Section of the Department of Insurance at Illinois Department of Insurance, Consumer Division, Springfield, Illinois, 62767.

**IA 4433 IL 03 17**

## IMPORTANT INFORMATION TO POLICYHOLDERS

## ILLINOIS

In the event you need to contact someone about this policy for any reason, please contact your agent.  If you have additional questions, you may contact the insurance company issuing this policy at the following address or telephone collect:

The Cincinnati Insurance Company
P.O. Box 145496
Cincinnati, Ohio 45250-5496
Telephone (513) 870-2278

The Cincinnati Casualty Company
P.O. Box 145496
Cincinnati, Ohio 45250-5496
Telephone (513) 870-2278

The Cincinnati Indemnity Company
P.O. Box 145496
Cincinnati, Ohio 45250-5496
Telephone (513) 870-2278

**IP 409IL (1/91)**

THE **CINCINNATI INSURANCE COMPANY**
THE **CINCINNATI CASUALTY COMPANY**
THE **CINCINNATI INDEMNITY COMPANY**

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company. The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**IP 446 08 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

**A.  Special Per Occurrence Deductible**

  **1.**  If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

   **a.**  The Commercial Inland Marine Coverage Part, and

   **b.**  The Crime and Fidelity Coverage Part;

   the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

  **2.**  This endorsement does not apply to any of the forms listed in Paragraphs **a.** and **b.:**

   **a.**  **\* Electronic Data Processing Coverage Form, Section III, 2. Deductible, a.(2) Specified Losses Deductible**

     **\* Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement**

     **Windstorm or Hail Percentage Deductible Form**

     **Earthquake and Volcanic Eruption Endorsement**

     **Earthquake and Volcanic Eruption Endorsement (Sub-Limit Form)**

     **Flood Coverage Endorsement**

     **Equipment Breakdown Coverage (Including Production Equipment)**

     **Equipment Breakdown Coverage (Excluding Production Equipment)**

     **\* Temperature Change Coverage Form**

     **Commercial Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft, 2. Forgery or Alteration, 6. Computer Fraud and 7. Funds Transfer Fraud**

     **Crime Expanded Coverage (XC®) Coverage or Expanded Coverage Plus Forms, A. Insuring Agreements, 1. Employee Theft and 2. Forgery or Alteration**

     **Government Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft - Per Loss Coverage, 2. Employee Theft - Per Employee Coverage, 3. Forgery or Alteration, 7. Computer Fraud and 8. Funds Transfer Fraud**

   **\***  Or such coverage as provided in the CinciPlus® Commercial Property or Commercial Property Power Expanded Coverage or Expanded Coverage Plus Forms

   **b.**  ☐ **Other**

**B. Definition**

For the purpose of this endorsement only, any definition of "occurrence" is deleted in its entirety and the following definition is added to:

1. **COMMERCIAL PROPERTY CONDITIONS,**
2. **COMMERCIAL INLAND MARINE CONDITIONS,**
3. **COMMERCIAL CRIME COVERAGE FORM,**
4. **CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM, and**
5. **GOVERNMENT CRIME COVERAGE FORM:**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**FARM COVERAGE PART**

**A.** The **Cancellation** Common Policy Condition is deleted in its entirety and replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

**2.** If this policy has been in effect for 60 days or less, except as provided in Paragraphs **8.** and **9.** below, we may cancel this policy by mailing written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** If this policy has been in effect for more than 60 days, except as provided in Paragraphs **8.** and **9.** below, we may cancel this policy only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** The policy was obtained through a material misrepresentation;

**c.** You have violated any of the terms and conditions of the policy;

**d.** The risk originally accepted has measurably increased;

**e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

**f.** A determination by the Director that the continuation of the policy could place us in violation of the insurance laws of this State.

If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 60 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

**4.** We will mail our notice to you, any mortgagee or lienholder known to us and to the agent or broker.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we or the first Named Insured cancel, the refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

**7.** Our notice of cancellation will state the reason for cancellation.

**8.** **Real Property Other Than Residential Properties Occupied by 4 Families or Less**

The following applies only if this policy covers real property other than residential property occupied by 4 families or less:

If any one or more of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing to you written notice of cancellation if:

**a.** After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

**b.** The building has been unoccupied 60 or more consecutive days. This does not apply to:

**(1)** Seasonal unoccupancy; or

**(2)** Buildings under repair, construction or reconstruction, if properly secured against unauthorized entry.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**c.** The building has:

**(1)** An outstanding order to vacate;

**(2)** An outstanding demolition order; or

**(3)** Been declared unsafe in accordance with the law.

**d.** Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

The policy will terminate 10 days following receipt of the written notice by the named insured(s).

**9.** **Residential Properties Occupied by 4 Families or Less**

The following applies if this policy covers residential properties occupied by 4 families or less:

If this policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this policy for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** The policy was obtained by misrepresentation or fraud; or

**c.** Any act that measurably increases the risk originally accepted.

If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 30 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

**10.** For insurance provided under the Commercial Property Coverage Part, the following applies:

**GRAIN IN PUBLIC GRAIN WAREHOUSES**

(Not applicable to grain owned by the Commodity Credit Corporation)

The following applies only with respect to grain in public grain warehouses:

The first Named Insured or we may cancel this policy at any time by mailing to:

**a.** The other; and

**b.** The Director of the Illinois Department of Agriculture (at its Springfield Office);

60 days' written notice of cancellation.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew or continue this policy, we will mail you, your agent or broker, and any mortgagee or lienholder known to us written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**2.** The following provision applies only if this policy covers residential properties occupied by 4 families or less:

**a.** If this policy has been issued to you and in effect with us for 5 or more years, we may not fail to renew this policy unless:

**(1)** The policy was obtained by misrepresentation or fraud;

**(2)** The risk originally accepted has measurably increased; or

**(3)** You received 60 days' notice of our intent not to renew as provided in **1.** above.

**b.** If this policy has been issued to you and in effect with us for less than 5 years, we may not fail to renew this policy unless you received 30 days' notice as provided in **1.** above.

**C.** The following is added:

**MAILING OF NOTICES**

We will mail cancellation and nonrenewal notices to the last addresses known to us. Proof of mailing will be sufficient proof of notice.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**CHEMICAL DRIFT LIMITED LIABILITY COVERAGE FORM - CLAIMS-MADE**
**CINCINNATI CYBER DEFENSE™ COVERAGE PART**
**CINCINNATI DATA DEFENDER™ COVERAGE PART**
**CINCINNATI NETWORK DEFENDER™ COVERAGE PART**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE FORM**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**CONTRACTOR'S ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE**
**EMPLOYEE BENEFIT LIABILITY COVERAGE FORM**
**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE FORM**
**EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE FORM**
**HOLE-IN-ONE COVERAGE FORM**
**ILLINOIS CONTRACTORS' LIMITED WORKSITE POLLUTION LIABILITY COVERAGE FORM**
**LIQUOR LIABILITY COVERAGE PART**
**MANUFACTURER'S ERRORS AND OMISSIONS COVERAGE FORM - CLAIMS-MADE**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCT WITHDRAWAL COVERAGE FORM**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**
**SEPTIC SYSTEMS DESIGN INSPECTION ERRORS AND OMISSIONS COVERAGE PART**

**A. Cancellation** (Common Policy Conditions) is deleted in its entirety and replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. We may cancel this policy by mailing to you written notice stating the reason for cancellation. If we cancel:

   **a.** For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   **b.** For a reason other than nonpayment of premium, we will mail the notice at least:

      **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

      **(2)** 60 days prior to the effective date of cancellation if the policy

has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation;

   **c.** Any insured has violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased;

   **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled we will send the first Named Insured any premium refund due. If we or the first Named Insured cancels, the refund will be pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**1. NONRENEWAL**

If we decide not to renew or continue this policy, we will mail you and your agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period.

If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**All Commercial Lines Coverage Parts, Coverage Forms, Policies and Endorsements subject to the federal Terrorism Risk Insurance Act and any amendments and extensions thereto**

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B. Cap On Losses from Certified Acts of Terrorism**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that ex-

ceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**C. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability, omission or absence of a terrorism exclusion, does not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part, Coverage Form, Policy or Endorsement such as losses excluded by:

1. Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination;

2. Exclusions that address pollutants, contamination, deterioration, fungi or bacteria; or

3. Any other exclusion,

regardless if the "certified act of terrorism" contributes concurrently or in any sequence to the loss.

**D. Sunset Clause**

If the federal Terrorism Risk Insurance Act expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

Includes copyrighted material of ISO Properties, Inc. and American Association of Insurance Services, with their permission.

# SIGNATURE ENDORSEMENT

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. The failure to countersign does not void coverage in Arizona, Virginia and Wisconsin.

Secretary                                                        President

The signature on any form, endorsement, policy, declarations, jacket or application other than the signature of the President or Secretary named above is deleted and replaced by the above signatures.

IA 4338 05 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**FARM COVERAGE PART**
**STANDARD PROPERTY POLICY**

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99,** the terms Coverage Part and Coverage Form in this endorsement are replaced by the term Policy.

**B.** The following is added to the **Legal Action Against Us** Condition:

The 2 year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

**C.** If this policy covers:

1. The following in **a.** and **b.**, then Paragraphs **2.** and **3.** apply:

   **a.** Real property used principally for residential purposes up to and including a four family dwelling; or

   **b.** Household or personal property that is usual or incidental to the occupancy of any premises used for residential purposes.

2. The second paragraph of the **Appraisal** Condition is deleted and replaced by the following:

   **a.** Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in **b.** below.

   **b.** We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

      **(1)** You demanded the appraisal; and

      **(2)** The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

3. The **Concealment, Misrepresentation or Fraud** Condition is replaced by the following:

   **CONCEALMENT, MISREPRESENTATION OR FRAUD**

   **a.** This Coverage Part or Coverage Form is void if you or any insured ("insured") commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

      **(1)** Was made with actual intent to deceive; or

      **(2)** Materially affected either our decision to provide this insurance or the hazard we assumed.

   However, this condition will not serve as a reason to void this Coverage Part or Coverage Form after the Coverage Part or Coverage Form has been in effect for one year or one policy term, whichever is less.

   **b.** We do not provide coverage under this Coverage Part or Coverage Form to you or any other insured ("insured") who, at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

      **(1)** This Coverage Part or Coverage Form;

      **(2)** The Covered Property;

      **(3)** Your interest in the Covered Property; or

      **(4)** A claim under this Coverage Part or Coverage Form.

   **c.** Notwithstanding the limitations stated in **3.a.** above, we may cancel the Coverage Part or Coverage Form in

accordance with the terms of the Cancellation Condition.

**D.** For the Commercial Property Coverage Part and the Standard Property Policy, the following exclusion and related provisions are added to Paragraph **B.2.** Exclusions in the Causes of Loss Forms and to any Coverage Form or policy to which a Causes of Loss Form is not attached:

   **1.** We will not pay for loss or damage arising out of any act an insured commits or conspires to commit with the intent to cause a loss.

   In the event of such loss, no insured is entitled to coverage, even insureds who did not commit or conspire to commit the act causing the loss.

   **2.** However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

   **a.** The loss arose out of a pattern of criminal domestic violence; and

   **b.** The perpetrator of the loss is criminally prosecuted for the act causing the loss.

   **3.** If we pay a claim pursuant to Paragraph **D.2.,** our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**E.** The **Intentional Loss Exclusion** in the Causes of Loss Form - Farm Property, Mobile Agricultural Machinery And Equipment Coverage Form and Livestock Coverage Form is replaced by the following:

   **1.** We will not pay for loss ("loss") or damage arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss ("loss").

   In the event of such loss ("loss"), no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss ("loss").

   **2.** However, this exclusion will not apply to deny payment to an innocent co-"insured" who did not cooperate in or contribute to the creation of the loss ("loss") if:

   **a.** The loss ("loss") arose out of a pattern of criminal domestic violence; and

   **b.** The perpetrator of the loss ("loss") is criminally prosecuted for the act causing the loss.

   **3.** If we pay a claim pursuant to Paragraph **E.2.,** our payment to the "insured" is limited to that "insured's" insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CIVIL UNION

This endorsement modifies insurance provided under the following:

CHEMICAL DRIFT LIMITED LIABILITY COVERAGE FORM
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
CONTRACTOR'S ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE
EMPLOYEE BENEFIT LIABILITY COVERAGE FORM
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART
EXCESS LIABILITY COVERAGE FORM
EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE FORM
HOLE-IN-ONE COVERAGE FORM
ILLINOIS CONTRACTORS' LIMITED WORKSITE POLLUTION LIABILITY COVERAGE FORM
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MANUFACTURER'S ERRORS AND OMISSIONS COVERAGE FORM - CLAIMS-MADE
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE
SEPTIC SYSTEMS DESIGN INSPECTION ERRORS AND OMISSIONS COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage - Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of your household, including a ward or foster child.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# NOTICE TO POLICYHOLDERS - EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY

This is a notice of a change in your policy. NO COVERAGE IS PROVIDED BY THIS NOTICE nor can it be construed to replace any provisions of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE for complete information on the coverage you are provided. If there is any conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

This notice applies to the following coverage parts:

**BUSINESSOWNERS PACKAGE POLICY**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**ELECTRONIC DATA LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE PART**
**FARM LIABILITY COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**PERSONAL LIABILITY ENDORSEMENT**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

This Notice provides information concerning the following new endorsements. More than one may apply to your renewal policy being issued by us:

**The following forms apply to Commercial General Liability Coverage Part (CG or GA prefix), Businessowners Package Policy (IB prefix), Farm Liability Coverage Form or Personal Liability Endorsement (FL prefix), or Umbrella or Excess Liability Coverage Parts (US or XS prefix).**

Forms: **GA 3024 05 14, FL 10 12 12 14, IB 320 05 14** or **US 3093 05 14** all titled:

**Exclusion - Access or Disclosure of Confidential or Personal Information and Data-Related Liability - With Limited Bodily Injury Exception**

When one of these endorsements is attached to your policy:

- For any liability or damages for Bodily Injury and Property Damage Liability, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.

- For any liability or damages for Personal and Advertising Injury Liability, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

Forms: **GA 3025 05 14, FL 10 13 12 14, IB 321 05 14** or **US 3094 05 14** all titled:

**Exclusion - Access or Disclosure of Confidential or Personal Information and Data-Related Liability - Limited Bodily Injury Exception Not Included**

When one of these endorsements is attached to your policy:

- For any liability or damages for Bodily Injury and Property Damage Liability, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage. However, when this endorsement is attached, it will result in a reduction of coverage due to the deletion of an exception with respect to damages because of bodily injury arising out of loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

- For any liability or damages for Personal and Advertising Injury Liability, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

Forms **CG 21 08 05 14 Exclusion - Access or Disclosure of Confidential or Personal Information (Coverage B only), IB 322 05 14 Exclusion - Access or Disclosure of Confidential or Personal Information (Personal and Advertising Injury Only),** and **US 3095 05 14** and **XS 345 05 14** Both titled: **Exclusion - Access or Disclosure of Confidential or Personal Information**

When one of these endorsements is attached to your policy, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage

Forms **GA 237 05 14 Electronic Data Liability Endorsement** and **FL 04 22 12 14 Electronic Data Liability**

With respect to damages arising out of access or disclosure of confidential or personal information, when this endorsement is attached to your policy:

- Under Bodily Injury and Property Damage Liability, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.

- Under Personal and Advertising Injury Liability, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**The following forms apply to the coverage(s) indicated under each description of the form number and title.**

**GA 3026 05 14 - Exclusion - Access or Disclosure of Confidential or Personal Information and Data-Related Liability - With Limited Bodily Injury Exception** (For use with The Owners and Contractors Protective Liability Coverage Part and Products/Completed Operations Coverage Part)

When this endorsement is attached to your policy, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.

**GA 3027 05 14 - Exclusion - Access or Disclosure of Confidential or Personal Information and Data-Related Liability - Limited Bodily Injury Exception Not Included** (For use with The Owners and Contractors Protective Liability and Products/Completed Operations Liability Coverage Parts)

When this endorsement is attached to your policy, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.

However, when this endorsement is attached, it will result in a reduction of coverage due to the deletion of an exception with respect to damages because of bodily injury arising out of loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

**CG 33 63 - Exclusion - Access, Disclosure or Unauthorized Use of Electronic Data** (For use with The Electronic Data Liability Coverage Part)

With respect to damages arising out of access or disclosure of confidential or personal information, when this endorsement is attached to your policy coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.

However, to the extent that damages arising out of theft or unauthorized viewing, copying, use, corruption, manipulation or deletion, of electronic data by any Named Insured, past or present employee, temporary worker or volunteer worker of the Named Insured may extend beyond loss of electronic data arising out of such theft or the other listed items, this revision may be considered a reduction in coverage.

**FL 10 14 12 14 - Exclusion - Electronic Data (Bodily Injury and Property Damage Liability Only) and Access or Disclosure of Confidential or Personal Information (Personal or Advertising Injury Liability Only)** (For use with Farm Liability Coverage Form or Personal Liability Endorsement)

With respect to bodily injury and property damage arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data, these changes are a reinforcement of coverage intent. Coverage for such injury or damage is not intended to be provided under the aforementioned forms.

However, to the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this revision may be considered a reduction in personal injury and advertising injury coverage.

# THE **CINCINNATI INSURANCE COMPANY**

### A Stock Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER:     **ECP 026 96 01**

Named Insured is the same as it appears on the Common Policy Declarations unless otherwise stated here.

**Loc.     (address)**
REFER TO IA904

| | | | | | | **OPTIONAL COVERAGES**<br>Applicable only when an entry is made | | | | | | |
| | **COVERAGE PROVIDED** | | | | | | | | | **Business Income Indemnity** | | |
| **Item** | **Coverage** | **Limits** | **Coin-surance** | **Covered Cause Of Loss** | | Inflation Guard (%) | Replace-ment Cost (x) | Replace-ment Cost Ind. Stock (x) | Agreed Value (x) | Monthly Limit (fraction) | Maximum Period (X) | Extended Period (Days) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BUSINESS INCOME W/EXTRA EXPENSE (a) | 12 MONTHS ALS | | SPECIAL | | | | | | | | |
| 1-1 | BUILDING | 596,000 | 90% | SPECIAL | | 2% | X | | | | | |
| 1-1 | BUSINESS PERSONAL PROPERTY | 396,500 | 90% | SPECIAL | | | X | | | | | |

DEDUCTIBLE: $500.00 unless otherwise stated $     1,000

**MORTGAGE HOLDER**

| Item | Name and Address |
|---|---|
| 1-1 | JP MORGAN CHASE BANK NA BUSINESS BANKING LOAN SERVICES IL1-0054<br>PO BOX 6026<br>CHICAGO, IL 60680 |

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| FM101 | 04/04 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) |
| FCP405 | 01/11 | CINCIPLUS® CINCIPAK™ MEDICAL / DENTAL OFFICE PROPERTY XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS |
| FCP201 | 01/11 | CINCIPAK™ COMMERCIAL PROPERTY AMENDATORY ENDORSEMENT |
| FCP238 | 09/15 | CINCIPAK™ MEDICAL OR DENTAL OFFICE POLLUTANT CLEAN-UP COVERED PROPERTY EXTENSION |
| FCP206 | 01/11 | CINCIPAK™ MEDICAL OR DENTAL OFFICE ACTUAL LOSS SUSTAINED BUSINESS INCOME ENDORSEMENT |
| FCP211 | 01/11 | CINCIPAK™ MEDICAL OR DENTAL OFFICE COMMERCIAL PROPERTY COVERAGE ENHANCEMENT |
| FCP217 | 03/11 | CINCIPLUS® CINCIPAK™ MEDICAL / DENTAL OFFICE PROPERTY XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT |
| FCP402 | 05/11 | CINCIPAK™ MEDICAL / DENTAL OFFICE BUSINESS INCOME (AND EXTRA EXPENSE) AMENDATORY ENDORSEMENT |
| FA286 | 01/13 | THE BRIDGE ENDORSEMENT |
| FA4028IL | 04/08 | ILLINOIS CHANGES |
| FA4042 | 11/07 | PROPERTY COVERAGE PART AMENDATORY ENDORSEMENT |
| FA450 | 11/04 | COMMERCIAL PROPERTY CONDITIONS |
| FA480 | 02/16 | LOSS PAYABLE PROVISIONS |
| FA245 | 05/11 | EQUIPMENT BREAKDOWN COVERAGE (INCLUDING PRODUCTION MACHINERY) |

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:
**FA213      04/04  BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM**

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS)

## TABLE OF CONTENTS

SECTION A. COVERAGE.................................................................................................3

  1.  Covered Property ................................................................................................3

     a.  Building.........................................................................................................3

     b.  Outdoor Signs..............................................................................................3

     c.  Outdoor Fences...........................................................................................3

     d.  Business Personal Property........................................................................3

  2.  Property Not Covered.........................................................................................4

     a.  Accounts, Deeds, Money or Securities .....................................................4

     b.  Animals........................................................................................................4

     c.  Automobiles .................................................................................................4

     d.  Contraband..................................................................................................4

     e.  Electronic Data............................................................................................4

     f.  Excavations, Grading & Backfilling.............................................................4

     g.  Foundations ................................................................................................4

     h.  Land, Water or Growing Crops ...................................................................4

     i.  Paved Surfaces ..........................................................................................4

     j.  Property While Airborne or Waterborne ......................................................4

     k.  Pilings or Piers............................................................................................4

     l.  Property More Specifically Insured .............................................................4

     m.  Retaining Walls ...........................................................................................4

     n.  Underground Pipes, Flues or Drains ..........................................................4

     o.  Valuable Papers & Records and Cost to Research....................................4

     p.  Vehicles or Self-Propelled Machines..........................................................5

     q.  Property While Outside of Buildings ...........................................................5

  3.  Covered Causes of Loss ...................................................................................5

     a.  Risks of Direct Physical Loss .....................................................................5

     b.  Exclusions...................................................................................................5

     c.  Limitations .................................................................................................10

  4.  Additional Coverages ......................................................................................11

     a.  Change in Temperature or Humidity ........................................................11

     b.  Debris Removal .........................................................................................11

     c.  Fire Department Service Charge ..............................................................12

     d.  Fire Protection Equipment Recharge ........................................................13

     e.  Inventory or Appraisal ...............................................................................13

     f.  Key and Lock Expense..............................................................................13

     g.  Ordinance or Law......................................................................................13

     h.  Pollutant Clean Up and Removal ..............................................................14

     i.  Preservation of Property............................................................................14

     j.  Rewards ....................................................................................................15

  5.  Coverage Extensions ......................................................................................15

     a.  Accounts Receivable.................................................................................15

Includes copyrighted material of ISO Properties, Inc.,
with its permission.  Includes copyrighted material with
permission of American Association of Insurance Services, Inc.

**FM 101 04 04**

**Page 1 of 35**

b.   Business Income and Extra Expense ................................................16

c.   Collapse ................................................................................19

d.   Electronic Data ........................................................................20

e.   Fairs or Exhibitions ..................................................................20

f.   Fences ..................................................................................20

g.   Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage ...............20

h.   Glass ..................................................................................21

i.   Newly Acquired or Constructed Property ........................................22

j.   Non-Owned Building Damage ....................................................23

k.   Outdoor Property ....................................................................23

l.   Personal Effects ......................................................................23

m.   Property Off Premises ..............................................................23

n.   Signs ..................................................................................24

o.   Trailers (Non-Owned Detached) ..................................................24

p.   Transportation ........................................................................24

q.   Utility Services ......................................................................24

r.   Valuable Papers and Records ....................................................25

s.   Water, Other Liquids, Powder or Molten Material Damage ...............26

SECTION B. LIMITS OF INSURANCE ......................................................26

SECTION C. DEDUCTIBLE ....................................................................26

1.   Deductible Examples ..................................................................26

2.   Glass Deductible ......................................................................27

SECTION D. LOSS CONDITIONS ............................................................27

1.   Abandonment ........................................................................27

2.   Appraisal ..............................................................................27

3.   Duties in the Event of Loss or Damage ........................................27

4.   Loss Payment ........................................................................28

5.   Recovered Property ..................................................................29

6.   Vacancy ................................................................................29

a.   Description of Terms ..............................................................29

b.   Vacancy Provisions ................................................................30

7.   Valuation ..............................................................................30

SECTION E. ADDITIONAL CONDITIONS ..................................................31

1.   Coinsurance ............................................................................31

2.   Mortgage Holders ....................................................................32

SECTION F. OPTIONAL COVERAGES ......................................................32

1.   Agreed Value ..........................................................................32

2.   Inflation Guard ........................................................................32

3.   Replacement Cost ....................................................................33

SECTION G. DEFINITIONS ....................................................................33

Includes copyrighted material of ISO Properties, Inc.,
with its permission.  Includes copyrighted material with
permission of American Association of Insurance Services, Inc.

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION G. DEFINITIONS.**

## SECTION A. COVERAGE

We will pay for direct physical "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

#### a. Building

Building, means the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

    (a) Machinery and equipment;

    (b) Building glass, including any lettering and ornamentation;

    (c) Signs attached to a building or structure that is Covered Property;

    (d) Awnings and canopies;

(4) Personal property owned by you that is used to maintain or service a covered building or its "premises", including:

    (a) Fire extinguishing equipment;

    (b) Outdoor furniture;

    (c) Floor coverings; and

    (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

    (a) Additions under construction, alterations and repairs to a covered building;

    (b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the "premises", used for making additions, alterations or repairs to a covered building.

#### b. Outdoor Signs

Your outdoor signs permanently installed and not attached to a covered building, and located within 1,000 feet of the "premises".

#### c. Outdoor Fences

Your outdoor fences.

#### d. Business Personal Property

Your Business Personal Property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the "premises". Your Business Personal Property consists of the following unless otherwise specified in the Declarations or on the **BUSINESS PERSONAL PROPERTY - SEPARATION OF COVERAGE ENDORSEMENT.**

(1) Furniture;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) The cost of labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

    (a) Made a part of the building or structure you occupy but do not own; and

    (b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property used in your business for which you have a contractual responsibility to insure. Such leased property is not considered per-

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04

Page 3 of 35

sonal property of others in your care, custody or control;

**(8)** Personal Property of Others that is in your care, custody or control or for which you are legally liable.

**(a)** This does not include personal effects owned by you, your officers, your partners, or if you are a limited liability company, your members or your managers, or your employees (including leased and temporary workers), except as provided in **5. Coverage Extensions, l. Personal Effects**;

**(b)** This does not include property of others for which you are legally liable as:

**1)** A carrier for hire; or

**2)** An arranger of transportation, including carloaders, consolidators, brokers, freight forwarders, or shipping associations; and

**(9)** Sales samples.

## 2. Property Not Covered

Covered Property does not include:

**a. Accounts, Deeds, Money or Securities**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable,** Accounts, bills, currency, deeds, food stamps or other evidences of debt, "money", notes or "securities";

**b. Animals**

Animals, unless

**(1)** Owned by others and boarded by you; or

**(2)** Owned by you and covered as "stock" while inside of buildings

and then only as provided in **3. Covered Causes of Loss, c. Limitations.**

**c. Automobiles**

Automobiles held for sale;

**d. Contraband**

Contraband, or property in the course of illegal transportation or trade;

**e. Electronic Data**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Elec-**

**tronic Data,** "Electronic data". This Paragraph **e.** does not apply to your "stock" of prepackaged software.

**f. Excavations, Grading & Backfilling**

The cost of excavations, grading, backfilling or filling;

**g. Foundations**

Foundations of buildings, structures, machinery or boilers, if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement.

**h. Land, Water or Growing Crops**

Land (including land on which the property is located), water, growing crops or lawns;

**i. Paved Surfaces**

Bridges, roadways, walks, patios or other paved surfaces;

**j. Property While Airborne or Waterborne**

Personal property while airborne or waterborne;

**k. Pilings or Piers**

Pilings, piers, bulkheads, wharves or docks;

**l. Property More Specifically Insured**

Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except as provided in **G. Other Insurance** of the **COMMERCIAL PROPERTY CONDITIONS**;

**m. Retaining Walls**

Retaining walls that are not part of any building described in the Declarations;

**n. Underground Pipes, Flues or Drains**

Underground pipes, flues or drains;

**o. Valuable Papers & Records and Cost to Research**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records,** the cost to research, replace or restore the information on "valuable papers and records", including those which exist as "electronic data".

This does not apply to "valuable papers and records" held for sale by you.

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04                                                                 Page 4 of 35

**p.** **Vehicles or Self-Propelled Machines**

Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the "premises".

This paragraph does not apply to:

**(1)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(2)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(3)** Rowboats or canoes out of water and located at the "premises"; or

**(4)** Trailers, but only as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, o. Trailers (Non-Owned Detached).**

**q.** **Property While Outside of Buildings**

The following property while outside of buildings (except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions**):

**(1)** Grain, hay, straw or other crops;

**(2)** Signs, except:

    **a)** Signs attached to a covered building or structure;

    **b)** Signs for which a Limit of Insurance is shown in the Declarations.

**(3)** Outdoor fences, except outdoor fences for which a Limit of Insurance is shown in the Declarations;

**(4)** Radio antennas, television antennas or satellite dishes; including their lead-in wiring, masts, and towers; and

**(5)** Trees, shrubs or plants (other than "stock" of trees, shrubs or plants).

**3.** **Covered Causes of Loss**

**a.** **Risks of Direct Physical Loss**

Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the "loss" is:

**(1)** Excluded in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions**; or

**(2)** Limited in **SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations**;

that follow.

**b.** **Exclusions**

**(1)** We will not pay for "loss" caused directly or indirectly by any of the following, unless otherwise provided. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**(a)** **Ordinance or Law**

Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law**, the enforcement of any ordinance or law:

**1)** Regulating the construction, use or repair of any building or structure; or

**2)** Requiring the tearing down of any building or structure, including the cost of removing its debris.

This exclusion applies whether "loss" results from:

**1)** An ordinance or law that is enforced even if the building or structure has not been damaged; or

**2)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of any building or structure, or removal of its debris, following a physical "loss" to that building or structure.

**(b)** **Earth Movement**

**1)** Earthquake, including any earth sinking, rising or shifting related to such event;

**2)** Landslide, including any earth sinking, rising or shifting related to such event;

**3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**4)** Earth sinking (other than "sinkhole collapse"), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04        Page 5 of 35

include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in (**b**) **1)** through **4)** above, results in fire or explosion, we will pay for the "loss" caused by that fire or explosion.

**5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the "loss" caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct "loss" resulting from the eruption of a volcano when the "loss" is caused by:

**a)** Airborne volcanic blast or airborne volcanic shock waves;

**b)** Ash, dust or particulate matter; or

**c)** Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical "loss" to the described property.

**6)** This exclusion **Earth Movement** does not apply to:

**a)** **SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable;**

**b)** **SECTION A. COVERAGE, 5. Coverage Extensions, p. Transportation;**

**c)** **SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records**; or

**d)** Office furniture that is covered Business Personal Property.

**(c)** **Governmental Action**

Seizure or destruction of property by order of governmental authority. However, we will pay for "loss" caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**(d)** **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

**(e)** **Utility Services**

**1)** Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, q. Utility Services**, the failure of power or other utility services supplied to the "premises", however caused, if the failure occurs away from the "premises". Failure includes lack of sufficient capacity and reduction in supply.

However, if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss.

**2)** This exclusion does not apply to Business Income coverage or Extra Expense coverage. Instead, **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (4) Special Exclusions** applies to these coverages.

**(f)** **War and Military Action**

**1)** War, including undeclared or civil war;

**2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**(g) Water**

1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

2) Mudslide or mudflow;

3) Water or waterborne material which backs up through or overflows or is discharged from a sewer, drain, septic system, sump pump or related equipment; or

4) Water or waterborne material under the ground surface pressing on, or flowing or seeping through:

   a) Foundations, walls, floors or paved surfaces;

   b) Basements, whether paved or not; or

   c) Doors, windows or other openings.

However, if water, as described in **(g)1)** through **(g)4)** above, results in fire, explosion or sprinkler leakage, we will pay for that portion of "loss" caused by that fire, explosion or sprinkler leakage.

5) This exclusion **Water** does not apply to:

   a) **SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable;**

   b) **SECTION A. COVERAGE, 5. Coverage Extensions, p. Transportation;**

   c) **SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records**; or

   d) Office furniture that is covered Business Personal Property.

**(h) "Fungi", Wet Rot, Dry Rot, and Bacteria**

1) Presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria. But if "fungi", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

2) This exclusion does not apply:

   a) When "fungi", wet or dry rot or bacteria results from fire or lightning; or

   b) To the extent that coverage is provided in **SECTION A. COVERAGE, 5. Coverage Extensions, g. "Fungi", Wet Rot, Dry Rot and Bacteria - Limited Coverage** with respect to "loss" from a cause of loss other than fire or lightning.

Exclusions **b.(1)(a)** through **b.(1)(h)** apply whether or not the "loss" event results in widespread damage or affects a substantial area.

**(2)** We will not pay for "loss" caused by or resulting from any of the following:

**(a) Electrical Current**

Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires. However, if artificially generated electrical current results in fire, we will pay for that portion of the "loss" caused by that fire.

**(b) Delay or Loss of Use**

Delay, loss of use or loss of market.

**(c) Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**(d) Miscellaneous Causes of Loss**

1) Wear and tear;

2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

3) Smog;

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04    Page 7 of 35

4) Settling, cracking, shrinking or expansion;

5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, if mechanical breakdown results in elevator collision, we will pay for that portion of "loss" caused by that elevator collision; or

7) The following causes of loss to personal property:

   a) Marring or scratching;

   b) Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, a. Change in Temperature or Humidity** and **5. Coverage Extensions, q. Utility Services;**

      i) Dampness or dryness of atmosphere; and

      ii) Changes in or extremes of temperature.

However, if an excluded cause of loss listed in **(2)(d) 1)** through **7)** results in a "specified cause of loss" or building glass breakage, we will pay for that portion of "loss" caused by that "specified cause of loss" or building glass breakage.

**(e) Explosion of Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. However, if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for that portion of "loss" caused by that fire or combustion explosion. We will also pay for "loss" caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages

through which the gases of combustion pass.

**(f) Water Seepage**

Continuous or repeated seepage or leakage of water or the presence or condensation of humidity, moisture, or vapor that occurs over a period of 14 days or more.

**(g) Freezing of Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protection systems) caused by or resulting from freezing, unless:

1) You did your best to maintain heat in the building or structure; or

2) You drained the equipment and shut off the supply if the heat was not maintained.

**(h) Dishonest Acts**

Dishonest or criminal acts by you, anyone else with an interest in the property, any of your or their partners, employees (including leased or temporary workers) directors, trustees, authorized representatives or if you are a limited liability company, your members or your managers, or anyone to whom you entrust the property for any purpose:

1) Acting alone or in collusion with others; or

2) Whether or not occurring during the hours of employment.

This **Dishonest Acts** exclusion does not apply to acts of destruction by your employees (including leased or temporary workers); except theft by employees (including leased or temporary workers) is not covered.

**(i) False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(j) Exposure to Weather**

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04                                                                 Page 8 of 35

Rain, snow, ice or sleet to personal property in the open.

**(k) Collapse**

Collapse, except as provided in **SECTION A. COVERGAE, 5. Coverage Extensions, c. Collapse.** However, if collapse results in a Covered Cause of Loss at the "premises", we will pay for that portion of "loss" caused by that Covered Cause of Loss.

**(l) Pollutants**

Discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" unless the discharge, dispersal, seepage, migration, release, escape or emission is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

This exclusion does not apply to "loss" to glass caused by chemicals applied to the glass.

**(m) Work Process**

Any processing or work upon Covered Property. But if "loss" by fire results, we will pay for that resulting "loss".

**(n) Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of "loss".

**(3)** We will not pay for "loss" caused by or resulting from any of the following: **(3)(a)** through **(3)(c)**. However, if an excluded cause of loss that is listed in **(3)(a)** through **(3)(c)** results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss:

**(a) Weather Conditions**

Weather conditions, but this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions,** **(1)(a)** through **(1)(h)** to produce the "loss".

**(b) Acts or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**(c) Defects, Errors, and Omissions**

**1)** An act, error, or omission (negligent or not) relating to:

**a)** Land use;

**b)** Design, specifications, construction, workmanship;

**c)** Planning, zoning, development, surveying, siting, grading, compaction; or

**d)** Maintenance, installation, renovation, repair, or remodeling

of part or all of any property on or off the "premises";

**2)** A defect, weakness, inadequacy, fault, or unsoundness in materials used in construction or repair of part or all of any property on or off the "premises"; or

**3)** The cost to make good any error in design.

**(4) Special Exclusions**

The Special Exclusions apply only to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense**; and if attached to this policy, the following coverage forms: **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM, BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM,** and **EXTRA EXPENSE COVERAGE FORM.**

We will not pay for:

**(a)** Except as provided in **5. Coverage Extensions, q. Utility Services**, any "loss" caused directly or indirectly by the failure of power or other utility service supplied to the "premises", however caused, if the failure occurs outside of a covered building. Failure includes lack of sufficient capacity and reduction in supply. However, if the failure of

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04     Page 9 of 35

power or other utility service results in a Covered Cause of Loss, we will pay for that portion of "loss" resulting from that Covered Cause of Loss.

**(b)** Any "loss" caused by or resulting from:

**1)** Damage or destruction of finished "stock"; or

**2)** The time required to reproduce finished "stock".

This Exclusion **(b)** does not apply to Extra Expense.

**(c)** Any "loss" caused by or resulting from damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(d)** Any increase of "loss" caused by or resulting from:

**1)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**2)** Suspension, lapse or cancellation of any license, lease or contract. However, if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such "loss" that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period of Indemnity Optional Coverage or any variation of these.

**(e)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(f)** Any other indirect "loss".

## c. <u>Limitations</u>

The following limitations apply to all policy forms and endorsements shown on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS**, unless otherwise stated:

**(1) Limitations - Various Types of Property**

We will not pay for "loss" to property as described and limited in this section. In addition, we will not pay for any "loss" that is a consequence of "loss" as described and limited in this section.

**(a) Steam Apparatus**

Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for "loss" to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(b) Hot Water Boilers**

Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(c) Building Interiors**

The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**2)** The "loss" is caused by or results from thawing of snow, sleet or ice on the building or structure.

**(d) Building Materials - Theft**

Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**1)** Building materials and supplies held for sale by you; or

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04                    Page 10 of 35

**2)** Business Income coverage or Extra Expense coverage.

**(e) Missing Property**

Property that is missing, where the only evidence of the "loss" is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**(f) Gutters and Downspouts**

Gutters and downspouts caused by or resulting from weight of snow, ice or sleet.

**(g) Transferred Property**

Property that has been transferred to a person or to a place outside the "premises" on the basis of unauthorized instructions.

**(2) Limitations - Various Property for Specified Causes**

We will not pay for "loss" to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**(a)** Animals, and then only if they are killed or their destruction is deemed necessary.

**(b)** Contractors equipment, machinery and tools owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**1)** If the property is located on or within 1,000 feet of the "premises"; or

**2)** To Business Income coverage or to Extra Expense coverage.

**(3) Limitation - Personal Property Theft**

This Limitation does not apply to Business Income coverage or to Extra Expense coverage. The special limit shown for each category, **(3)(a)** through **(3)(d)**, is the most we will pay for "loss" to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

**(a)** $2,500 for furs, fur garments and garments trimmed with fur.

**(b)** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**(c)** $2,500 for patterns, dies, molds and forms.

**(d)** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

**4. Additional Coverages**

Unless stated otherwise, **SECTION C. DEDUCTIBLE** does not apply to the Additional Coverages. The Additional Coverages Limits of Insurance apply on a per location basis unless stated otherwise.

**a. Change in Temperature or Humidity**

We will pay for "loss" to your covered Business Personal Property caused by a change in temperature or humidity or contamination by refrigerant resulting from damage by a Covered Cause of Loss to equipment used for refrigerating, cooling, humidifying, dehumidifying, air conditioning, heating, generating or converting power (including their connections and supply or transmission lines and pipes) when located on the "premises".

This Coverage is included within the Limits of Insurance shown in the Declarations.

**b. Debris Removal**

**(1)** Subject to Paragraphs **(3)** and **(4)** of this Additional Coverage, we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical "loss".

**(2)** This Additional Coverage does not apply to costs to:

**(a)** Extract "pollutants" from land or water; or

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04                                                    Page 11 of 35

**(b)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4),** the following provisions apply:

**(a)** The most we will pay for the total of direct physical "loss" plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained "loss".

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical "loss" to the Covered Property that has sustained "loss".

**(4)** We will pay up to an additional $10,000 for debris removal expense, for each "premises", in any one occurrence of physical "loss" to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical "loss" exceeds the Limit of Insurance on the Covered Property that has sustained "loss".

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical "loss" to the Covered Property that has sustained "loss".

Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical "loss" and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained "loss", plus $10,000.

**(5) Examples**

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of "Loss" | $ 50,000 |
| Amount of "Loss" Payable | $ 49,500 |
| ($50,000 - $500) | |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable | $ 10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the "loss" payable plus the deductible. The sum of the "loss" payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example #2**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of "Loss" | $ 80,000 |
| Amount of "Loss" Payable | $ 79,500 |
| ($80,000 - $500) | |
| Debris Removal Expense | $ 30,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $ 10,500 |
| Additional Amount | $ 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the "loss" payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4),** because the debris removal expense ($30,000) exceeds 25% of the "loss" payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the "loss" payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4).** Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $5,000 in any one occurrence for your liability, which

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04                                                                 Page 12 of 35

is determined prior to "loss", for fire department service charges:

**(1)** Assumed by contract or agreement; or

**(2)** Required by local ordinance.

This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**d.** **Fire Protection Equipment Recharge**

**(1)** We will pay for the expenses you incur to recharge your automatic fire suppression system or portable fire extinguishers when the equipment is discharged:

**(a)** To combat a covered fire to which this insurance applies;

**(b)** As a result of another covered Cause of Loss other than fire; or

**(c)** As a result of an accidental discharge.

**(2)** We will not pay your expenses to recharge fire protection equipment as a result of a discharge during testing or installation.

**(3)** If it is less expensive to do so, we will pay your costs to replace your automatic fire suppression system or portable fire extinguishers rather than recharge that equipment.

The most we will pay under this Additional Coverage is $25,000 in any one occurrence. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**e.** **Inventory or Appraisal**

**(1)** We will pay the necessary expenses you incur to prepare claim information as required by this Coverage Part. Expenses must result from:

**(a)** Taking inventories;

**(b)** Making appraisals; and

**(c)** Preparing a statement of loss and other supporting exhibits.

**(2)** We will not pay for any expenses:

**(a)** Incurred to prove that "loss" is covered;

**(b)** Incurred under **SECTION D. LOSS CONDITIONS, 2. Appraisal;**

**(c)** Incurred for examinations under oath;

**(d)** Billed by and payable to independent or public adjusters; or

**(e)** To prepare claims not covered by this Coverage Part.

The most we will pay under this Additional Coverage for any one occurrence is $10,000. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**f.** **Key and Lock Expense**

**(1)** If a key is lost, stolen, or damaged, we will pay for:

**(a)** The actual expense of the new keys; and

**(b)** The adjustment of locks to accept new keys; or

**(c)** If required, new locks, including the expense of their installation;

but only for locks at buildings or structures covered by this Coverage Part.

**(2)** This Coverage does not apply to keys that were given to former employees.

The most we will pay under this Additional Coverage is $1,000 per occurrence. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**g.** **Ordinance or Law**

**(1)** If a Covered Cause of Loss occurs to a covered building or structure, resulting in the enforcement of an ordinance or law that:

**(a)** Requires the demolition of undamaged parts of covered buildings or structures that are damaged or destroyed by a Covered Cause of Loss; or

**(b)** Regulates the construction or repair of buildings or structures, or establishes building, zoning, or land use requirements at the "premises"; and

**(c)** Is in force at the time that "loss" is sustained;

we will pay:

**(a)** For loss in value of the undamaged portion of the building or structure caused by enforcement of an ordinance or law that requires demolition of undamaged parts of the same building or structure;

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

**FM 101 04 04**      **Page 13 of 35**

**(b)** The cost to demolish and clear the site of undamaged parts of the building or structure; and

**(c)** The increased cost to:

**1)** Repair or reconstruct damaged portions of that building or structure; and

**2)** Reconstruct or remodel undamaged portions of that building or structure whether or not demolition is required;

when the increased cost is a consequence of enforcement of building, zoning or land use ordinance or law. However, this increased cost of construction applies only if the restored or remodeled building or structure is intended for occupancy similar to the building or structure it replaces, unless such occupancy is not permitted by zoning or land use ordinance or law.

**(d)** The increased cost to repair or reconstruct the following:

**1)** The cost of excavations, grading, backfilling and filling;

**2)** Foundation of the building;

**3)** Pilings;

**4)** Underground pipes, flues and drains.

The items listed in **(d)1)** through **(d)4)** above are deleted from **SECTION A. COVERAGE, 2. Property Not Covered**; but only with respect to the increased cost of construction coverage described in this Additional Coverage.

**(2)** We will not pay for:

**(a)** Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

**(b)** The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or

neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**(3)** We will not pay for "loss" due to any ordinance or law that:

**(a)** You were required to comply with before the "loss", even if the building was undamaged; and

**(b)** With which you failed to comply.

**(4)** The terms of this Additional Coverage apply separately to each building or structure covered by this policy.

**(5)** The most we will pay under this Additional Coverage is $10,000 per building. This is in addition to the Limits of Insurance shown in the Declarations.

**h.** **Pollutant Clean Up and Removal**

We will pay your expenses to extract "pollutants" from land or water at the "premises" if the discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each "premises" is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term". This is in addition to the Limits of Insurance shown in the Declarations.

**i.** **Preservation of Property**

If it is necessary to move Covered Property from the "premises" to preserve it from imminent "loss" by a Covered Cause of Loss, we will pay for any direct physical "loss" to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the "loss" occurs within 60 days after the property is first moved.

This Coverage is included within the Limits of Insurance shown in the Declarations.

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04 Page 14 of 35

### j. **Rewards**

We will pay to provide a reward for information that leads to a conviction for arson, theft, vandalism, or burglary. The conviction must involve a covered "loss" caused by arson, theft, vandalism, or burglary. The most we will pay for "loss" under this Additional Coverage is $10,000 in any one occurrence. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

## 5. **Coverage Extensions**

Unless amended within the Extension, each Extension applies to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the "premises".

The limits applicable to the Coverage Extensions are in addition to the Limits of Insurance shown in the Property Declarations. Limits of Insurance specified in these Extensions apply per location unless stated otherwise.

**SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**, does not apply to these Coverage Extensions.

### a. **Accounts Receivable**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1)** When you sustain "loss" to your accounts receivable records caused by a Covered Cause of Loss, we will pay:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary by the "loss"; and

**(d)** Other reasonable expenses that you incur to re-establish your records of accounts receivable.

**(2)** Coverage does not apply to:

**(a)** Records of accounts receivable in storage away from the "premises"; or

**(b)** Contraband, or property in the course of illegal transportation or trade.

**(3)** We will extend coverage to include:

**(a)** Removal

If you give us written notice within 30 days of removal of your records of accounts receivable because of imminent danger of "loss" from a Covered Cause of Loss, we will pay for "loss" while they are:

**1)** At a safe place away from your "premises"; or

**2)** Being taken to and returned from that place.

This Removal coverage is included within the Limit of Insurance applicable to this Coverage Extension.

**(b)** Away From Your Premises

We will pay up to $5,000 in any one occurrence, regardless of the number of locations, for "loss" caused by a Covered Cause of Loss to Accounts Receivable while they are away from your "premises".

This Away From Premises Limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

**(4)** **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension, except as follows:

**(a)** **Exclusion (1)(c) Governmental Action;**

**(b)** **Exclusion (1)(d) Nuclear Hazard;**

**(c)** **Exclusion (1)(f) War and Military Action.**

**(5)** In addition to Paragraph **(4)** of this Coverage Extension, we will not pay for "loss" resulting from any of the following:

**(a)** Dishonest or criminal acts by:

**1)** You, your partners, employees, directors, trustees or authorized representatives;

**2)** A manager or a member if you are a limited liability company;

**3)** Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04     Page 15 of 35

**4)** Anyone else entrusted with the records of accounts receivable for any purpose.

This Paragraph **(5)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

However, this Paragraph **(5)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

**(b)** Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**(c)** Bookkeeping, accounting or billing errors or omissions.

**(d)** Electrical or magnetic injury, disturbance or erasure of "electronic data" that is caused by or results from:

**1)** Programming errors or faulty machine instructions;

**2)** Faulty installation or maintenance of data processing equipment or component parts;

**3)** An occurrence that took place more than 100 feet from your "premises"; or

**4)** Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from your "premises".

But we will pay for direct "loss" caused by lightning.

**(e)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(f)** A "loss" that requires any audit of records or any inventory computation to prove its factual existence.

**(6)** **Determination of Receivables:**

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of "loss", the following method will be used:

**1)** Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the "loss" occurs; and

**2)** Adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the "loss" occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**1)** The amount of the accounts for which there is no "loss"; and

**2)** The amount of the accounts that you are able to re-establish or collect; and

**3)** An amount to allow for probable bad debts that you are normally unable to collect; and

**4)** All unearned interest and service charges.

The most we will pay for "loss" under this Coverage Extension is $25,000 in any one occurrence.

**b.** **Business Income and Extra Expense**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1)** **Business Income**

We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle, the "premises" include the area within

Includes copyrighted material of ISO Properties, Inc.,
with its permission. Includes copyrighted material with
permission of American Association of Insurance Services, Inc.

FM 101 04 04                                                                 Page 16 of 35

1000 feet of the site at which the "premises" are located.

**(2) Extra Expense**

We will pay "Extra Expense" you incur during the "period of restoration":

**(a)** To avoid or minimize the "suspension" of business and to continue "operations":

**1)** At the "premises"; or

**2)** At replacement locations or at temporary locations, including:

**a)** Relocation expenses; and

**b)** Costs to equip and operate the replacement or temporary locations; or

**(b)** To minimize the "suspension" of business if you cannot continue "operations".

However:

**(a)** We will pay "Extra Expense" to repair or replace any property, or to research, replace, or restore the lost information on damaged "valuable papers and records" only to the extent it reduces the amount of "loss" that otherwise would have been payable under this Coverage Part; and

**(b)** If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal "operations", the amount we will pay under this Coverage will be reduced by the salvage value of that property.

**(3) Tenant Premises**

If you are a tenant and occupy only part of the site at which the "premises" are located, for the purpose of this Coverage Extension only, your "premises" is the portion of the building that you rent, lease or occupy, including:

**(a)** Any area within the building or on the site at which the "premises" are located if that area services or is used to gain access to the "premises"; and

**(b)** Your personal property in the open (or in a vehicle) within 1,000 feet.

**(4) Civil Authority**

We will pay for the actual loss of "Business Income" you sustain and "Extra Expense" you incur caused by action of civil authority that prohibits access to the "premises" due to direct physical "loss" to property, other than at the "premises", caused by or resulting from any Covered Cause of Loss.

This coverage will apply for a period of up to 30 consecutive days from the date of that action.

**(5) Alterations and New Buildings**

We will pay for the actual loss of "Business Income" you sustain and "Extra Expense" you incur due to direct physical "loss" at the "premises" caused by or resulting from any Covered Cause of Loss to:

**(a)** New buildings or structures, whether complete or under construction;

**(b)** Alterations or additions to existing buildings or structures; and

**(c)** Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

**1)** Used in the construction, alterations or additions; or

**2)** Incidental to the occupancy of new buildings.

If such direct physical "loss" delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical "loss" had not occurred.

**(6) Newly Acquired Locations**

We will pay the actual loss of "Business Income" you sustain and "Extra Expense" you incur due to direct physical "loss" to Covered Property at any location you acquire caused by or resulting from a Covered Cause of Loss. This coverage for the Newly Acquired locations will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** You report values to us;

**(c)** 90 days pass from the date you acquire or begin to construct the Covered Property.

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04                                                                    Page 17 of 35

**(7)  Extended Business Income**

**(a)**  For "Business Income" Other Than "Rental Value", if the necessary "suspension" of your "operations" produces a "Business Income" or "Extra Expense" "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain and "Extra Expense" you incur during the period that:

**1)**  Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**2)**  Ends on the earlier of:

**a)**  The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical "loss" had occurred; or

**b)**  60 consecutive days after the date determined in **(a)1)** above.

However, Extended Business Income does not apply to loss of "Business Income" sustained or "Extra Expense" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct physical "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(b)**  For "Rental Value", if the necessary "suspension" of your "operations" produces a "Rental Value" "loss" payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you incur during the period that:

**1)**  Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**2)**  Ends on the earlier of:

**a)**  The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical "loss" had occurred; or

**b)**  60 consecutive days after the date determined in **(b)1)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct physical "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(8)  Interruption of Computer Operations**

**(a)**  Subject to all provisions of this Coverage Extension, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" as described in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data.**

**(b)**  Paragraph **(8)(a)** does not apply to "loss" sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in Paragraph **(8)(c)** has not been exhausted.

**(c)**  The most we will pay under Paragraph **(8)** of this Coverage Extension is $2,500 for all "loss" sustained and expense incurred in the "coverage term", regardless of the number of interruptions or the number of "premises" or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not carry over to the next "coverage term". With respect to an interruption that begins in a "coverage term" and continues or

Includes copyrighted material of ISO Properties, Inc., with its permission.  Includes copyrighted material with permission of American Association of Insurance Services, Inc.

results in additional "loss" or expense in a subsequent "coverage term", all "loss" and expense are deemed to be sustained in the "coverage term" in which the interruption began.

This $2,500 coverage for Interruption of Computer Operations does not increase the Limit of Insurance provided in this Coverage Extension.

The most we will pay for "loss" under this "Business Income" and "Extra Expense" Coverage Extension is $25,000 in any one occurrence.

**c.** **Collapse**

**(1)** With respect to buildings:

**(a)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(b)** A building or any part of a building that is in imminent danger of collapse is not considered to be in a state of collapse.

**(c)** A building that is standing or any part of a building that is standing is not considered to be in state of collapse even if it:

**1)** Has separated from another part of a building; or

**2)** Shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinking or expanding.

**(2)** We will pay for "loss" to Covered Property, caused by collapse of a building or any part of a building insured under this Coverage Part, if the collapse is caused by one or more of the following:

**(a)** "Specified Causes of Loss" and breakage of building glass as provided under this Coverage Part.

**(b)** Decay that is hidden from view, unless the presence of such decay is known or should reasonably have been known to an insured prior to collapse;

**(c)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known or should reasonably have been

known to an insured prior to collapse;

**(d)** Weight of people or personal property;

**(e)** Weight of rain that collects on a roof;

**(f)** Use of defective material or methods in construction, remodeling, or renovation if the collapse occurs during the course of the construction, remodeling, or renovation. However, if the collapse occurs after construction, remodeling, or renovation is complete and is caused in part by a cause of loss listed in **(2)(a)** through **(2)(e)** of this Coverage Extension, we will pay for "loss" even if the use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in **(1)(a)** through **(1)(c)** of this Coverage Extension do not limit the coverage otherwise provided for the causes of loss listed in **(2)(a), (2)(d), or (2)(e)** of this paragraph.

**(3)** If the following is Covered Property under this Coverage Part:

**(a)** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**(b)** Awnings, gutters and downspouts;

**(c)** Yard fixtures;

**(d)** Outdoor swimming pools;

**(e)** Fences;

**(f)** Piers, wharves and docks;

**(g)** Beach or diving platforms; including their appurtenances;

**(h)** Retaining walls; and

**(i)** Walks, roadways and other paved surfaces;

we will pay for "loss" caused by its collapse, if such "loss" is a direct result of the collapse of a building or structure insured under this Coverage Part. That building collapse must be caused by a cause of loss listed in **(2)(b)** through **(2)(f)** of this Coverage Extension.

**(4)** If personal property abruptly falls down or caves in and such collapse is not the

Includes copyrighted material of ISO Properties, Inc., with its permission.  Includes copyrighted material with permission of American Association of Insurance Services, Inc.

**FM 101 04 04**  Page 19 of 35

result of collapse of a building or structure, we will pay for "loss" to Covered Property caused by such collapse of personal property only if:

**(a)** The collapse was caused by a cause of loss listed in **(2)(a)** through **(2)(f)** of this Coverage Extension;

**(b)** The personal property that collapses is inside a building; and

**(c)** The property that collapses is not of a kind listed in **(3)** of this Coverage Extension, regardless of whether that kind of property is considered to be personal property or real property.

However, the coverage stated in **(4)** of this Coverage Extension does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinking or expanding.

**(5)** This Coverage Extension shall not increase the Limits of Insurance provided in this Coverage Part.

**d. Electronic Data**

**(1)** We will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss that applies to **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property.** To the extent that "electronic data" is not replaced or restored, the "loss" will be valued at the cost of replacement of the media on which the "electronic data" was stored with blank media of substantially identical type.

**(2)** For this Coverage Extension only, Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, that is designed to damage or destroy any part of the system or disrupt its normal operation. However, there is no coverage for "loss" caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to

inspect, design, install, modify, maintain, repair or replace that system or "electronic data".

**(3)** The most we will pay under this Coverage Extension is $2,500 for all "loss" sustained in the "coverage term", regardless of the number of occurrences of "loss" or the number of "premises" or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent "loss" sustained in the "coverage term". A balance remaining in a "coverage term" does not carry over to the next "coverage term". With respect to an occurrence which begins in the "coverage term" and continues or results in additional "loss" in a subsequent "coverage term", all "loss" is deemed to be sustained in the "coverage term" in which the occurrence began.

**e. Fairs or Exhibitions**

You may extend the insurance provided by this Coverage Part to apply to "loss" to your Covered Property, including covered property of others, while it is located at fairs or exhibitions. This Coverage Extension does not apply while Covered Property is in transit to or from the fair or exhibition.

The most we will pay for "loss" under this Coverage Extension is $10,000 in any one occurrence.

The Limit of Insurance provided under this Coverage Extension does not apply per location.

**f. Fences**

You may extend the insurance provided for Buildings to apply to "loss" to outdoor fences for which a Limit of Insurance is not shown in the Declarations that are located within 1,000 feet of the "premises". The most we will pay for "loss" under this Coverage Extension is $5,000 in any one occurrence.

**g. Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage**

**(1)** The coverage described in **g.(2)** and **g.(3)** only applies when the "fungi", wet or dry rot or bacteria is the result of a Covered Cause of Loss that occurs during the "coverage term" and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04    Page 20 of 35

**(2)** We will pay for "loss" by "fungi", wet or dry rot or bacteria. As used in this Coverage Extension, the term "loss" means:

**(a)** Direct physical "loss" to Covered Property caused by "fungi", wet or dry rot or bacteria, including the cost of removal of the "fungi", wet or dry rot or bacteria;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot or bacteria; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet or dry rot or bacteria are present.

**(3)** The coverage described under **g.(2)** of this Coverage Extension is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all "loss" arising out of all occurrences that take place in the "coverage term". With respect to a particular occurrence of "loss" which results in "fungi", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungi", wet or dry rot or bacteria continues to be present or active, or recurs, in a subsequent "coverage term".

**(4)** The coverage provided under this Coverage Extension does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in "loss" by "fungi", wet or dry rot or bacteria, and other "loss", we will not pay more, for the total of all "loss" than the applicable Limit of Insurance on the affected Covered Property.

If there is covered "loss" to Covered Property, not caused by "fungi", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Coverage Extension, except to the extent that "fungi", wet or dry rot or bacteria causes an increase in the "loss". Any such increase in the "loss" will be subject to the terms of this Coverage Extension.

**(5)** The terms of this Coverage Extension do not increase or reduce the coverage provided under:

**(a)** SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse;

**(b)** SECTION A. COVERAGE, 5. Coverage Extensions, s. Water, Other Liquids, Powder or Molten Material Damage

**(6)** The following **(6)(a)** or **(6)(b)** apply only if Business Income, Rental Value, or Extra Expense Coverage applies to the "premises" and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income, Rental Value, or Extra Expense Coverage.

**(a)** If the "loss" which resulted in "fungi", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to "loss" to property caused by "fungi", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of "loss" and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered "suspension" of "operations" was caused by "loss" other than "fungi", wet or dry rot or bacteria but remediation of "fungi", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for "loss" and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**h. Glass**

**(1)** If a Covered Cause of Loss occurs to building glass that is Covered Property, we will also pay necessary expenses you incur to:

**(a)** Put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

**(b)** Repair or replace encasing frames;

**(c)** Remove or replace obstructions (except expenses to remove or replace window displays); and

**(d)** Repair or replace alarm tapes.

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04     Page 21 of 35

**(2)** If you are a tenant at a covered "premises" and:

**(a)** The building you occupy is not Covered Property; and

**(b)** You are legally liable for physical "loss" to the building glass in that building;

we will pay up to $5,000 in any one occurrence for "loss" to that building glass, subject to the deductible as described in **SECTION C. DEDUCTIBLE.**

**(3)** For this Coverage Extension, **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension except as follows:

**(a)** Exclusion (1)(b) **Earth Movement;**

**(b)** Exclusion (1)(c) **Governmental Action;**

**(c)** Exclusion (1)(d) **Nuclear Hazard;**

**(d)** Exclusion (1)(f) **War and Military Action;**

**(e)** Exclusion (2)(d)1 Wear and tear; and

**(f)** As listed in **Exclusion (2)(d)2:** Rust or other corrosion, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

**i.** **Newly Acquired or Constructed Property**

**(1) Buildings**

If this Coverage Part provides coverage under **SECTION A. COVERAGE, 1. Covered Property, a. Building,** you may extend that insurance to apply to "loss" to:

**(a)** Your new buildings while being built on the "premises";

**(b)** Buildings you newly acquire currently at the "premises"; and

**(c)** Buildings you acquire at locations, other than the "premises", intended for:

**1)** Similar use as the building described in the Declarations; or

**2)** Use as a warehouse.

The most we will pay for "loss" to a building under this Coverage Extension is $1,000,000 for each building.

**(2) Business Personal Property**

**(a)** If this policy provides coverage under **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property,** you may extend that insurance to apply to "loss" to:

**1)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

**2)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at a "premises"; or

**3)** Business personal property that you newly acquire provided it was already located at the "premises" at the time of acquisition.

**(b)** This Extension does not apply to:

**1)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**2)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

The most we will pay for "loss" to your Business Personal Property under this Coverage Extension is $500,000 at each building.

**(3)** Insurance under this Coverage Extension will end when any of the following first occurs:

**(a)** This policy expires.

**(b)** 90 days pass from the date you acquire your new building or business personal property or begin construction on that part of the building that would qualify as Covered Property; or

**(c)** You report values to us.

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04                    Page 22 of 35

We will charge you additional premium for values reported from the date construction begins on that part of the building that would qualify as Covered Property, or you acquire the new property.

**j.** **Non-Owned Building Damage**

If you are a tenant, you may extend the insurance provided by this Coverage Part for Business Personal Property to "loss" that occurs to the building at a "premises" you occupy but do not own. Such "loss" must be caused by theft or attempted theft.

This Coverage Extension applies only if your lease makes you legally responsible for that part of the building sustaining "loss".

This Coverage Extension does not apply to:

**(1)** Glass, including lettering and ornamentation, and also necessary:

    **(a)** Repair or replacement of encasing frames or alarm tapes; and

    **(b)** Expenses incurred to board up openings or remove or replace obstruction.

**(2)** Building materials and equipment removed from the "premises".

The most we will pay for "loss" under this Coverage Extension is $25,000 in any one occurrence.

**k.** **Outdoor Property**

You may extend the insurance provided by this Coverage Part to apply to "loss" to your:

**(1)** Radio antennas, television antennas or satellite dishes (including their lead-in wiring, masts and towers);

**(2)** Trees, shrubs or plants (other than "stock" of trees, shrubs or plants); and

**(3)** If you are a tenant, to your awnings that are attached to a building you occupy;

including debris removal expense, but only if caused by or resulting from any of the following causes of loss if they are included as Covered Causes of Loss under this Coverage Part:

**(a)** Fire;

**(b)** Lightning;

**(c)** Explosion;

**(d)** Riot or Civil Commotion;

**(e)** Aircraft; or

**(f)** Falling objects.

The most we will pay for "loss" under this Coverage Extension is $5,000 in any one occurrence, but not more than $1,000 for any one tree, shrub or plant.

**l.** **Personal Effects**

You may extend the insurance that applies to your Business Personal Property to apply to "loss" to:

Personal effects owned by:

**(1)** You, your officers, or your partners, or if you are a limited liability company, your members or your managers; or

**(2)** Your employees (including temporary and leased employees), including tools owned by your employees that are used in your business. However, employee tools are not covered for theft.

This Coverage Extension does not apply to "money" or "securities".

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Coverage Extension has a $500 per occurrence limitation for "loss" by theft.

The most we will pay for "loss" under this Coverage Extension is $10,000 in any one occurrence.

**m.** **Property Off Premises**

**(1)** You may extend the insurance provided by this Coverage Part to apply to "loss" to your Covered Property, including personal property of others as described in **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property**, while it is away from the "premises", if it is:

    **(a)** Temporarily at a location you do not own, lease, or operate; or

    **(b)** In storage at a location you lease, provided the lease was executed for the first time after the beginning of the current "coverage term".

**(2)** This Coverage Extension does not apply to Covered Property at exhibitions or fairs or in transit.

The most we will pay for "loss" under this Coverage Extension is $10,000 in any one occurrence.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04                Page 23 of 35

**n.** **Signs**

You may extend the insurance provided by this Coverage Part, including debris removal expense, to apply to "loss" to signs not otherwise insured by this Coverage Part.

The most we will pay for "loss" under this Coverage Extension is $5,000 in any one occurrence.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**o.** **Trailers (Non-Owned Detached)**

**(1)** You may extend the insurance that applies to your Business Personal Property to apply to "loss" to trailers that you do not own, provided that:

   **(a)** The trailer is used in your business;

   **(b)** The trailer is temporarily in your care, custody or control at the "premises"; and

   **(c)** You have a contractual responsibility to pay for "loss" to the trailer.

**(2)** We will not pay for any "loss" that occurs:

   **(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

   **(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** This insurance is excess over the amount due, whether you can collect on it or not, from any other insurance covering such property.

**(4)** This Coverage Extension does not apply to any property inside or on the trailer.

The most we will pay for "loss" under this Coverage Extension is $5,000 in any one occurrence.

**p.** **Transportation**

You may extend the insurance provided by this Coverage Part to apply to "loss" to your Covered Property, including personal property of others as described in **SECTION A. COVERAGE, 1. Covered Property, d.**

**Business Personal Property**, while it is in or on a vehicle, including loading and unloading of the property.

The most we will pay for "loss" under this Coverage Extension is $10,000 in any one occurrence.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**q.** **Utility Services**

You may extend the insurance provided under this Coverage Part, including the insurance provided in **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense**, to apply to "loss" caused by the partial or complete suspension of the utility services listed below. The partial or complete suspension of services must be caused by direct damage to those services from a Covered Cause of Loss.

**(1)** Power Supply Services, meaning the following types of property supplying electricity, steam or natural gas to the "premises":

   **(a)** Utility generating plants;

   **(b)** Switching stations;

   **(c)** Substations;

   **(d)** Transformers; and

   **(e)** Transmission lines, excluding overhead transmission and distribution lines.

**(2)** Water Supply Services, meaning the following types of property supplying water to the "premises":

   **(a)** Pumping stations; and

   **(b)** Water mains.

**(3)** Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave, or television services to the "premises", such as:

   **(a)** Communication transmission lines including fiber optic transmission lines, excluding overhead transmission and distribution lines;

   **(b)** Coaxial cables; and

   **(c)** Microwave radio relays, excluding satellites.

**(4)** This Coverage Extension does not apply to "loss" to "electronic data", in-

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04

Page 24 of 35

cluding destruction or corruption of "electronic data".

The most we will pay for "loss" under this Coverage Extension is $25,000 in any one occurrence.

**r.** **Valuable Papers and Records**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1)** Subject to Paragraph **(3)** of this Coverage Extension, we will pay necessary costs you incur to research, replace or restore lost or damaged information on "valuable papers and records" that are your property or the property of others in your care, custody or control; resulting from "loss" caused by a Covered Cause of Loss.

**(2)** Coverage does not apply to:

**(a)** Property that cannot be replaced with other property of like kind and quality;

**(b)** Property held as samples or for delivery after sale;

**(c)** Property in storage away from the "premises", except as provided in **(4)(b)** of this Coverage Extension;

**(d)** Contraband, or property in the course of illegal transportation or trade;

**(e)** "Valuable papers and records" in the form of "electronic data", including the materials on which the "electronic data" is recorded.

**(3)** The most we will pay for "loss" is the least of the following amounts:

**(a)** The cost of reasonably restoring the damaged property to its condition immediately before the "loss";

**(b)** The cost of replacing the damaged property with substantially identical property; or

**(c)** The actual cash value of the damaged property at the time of "loss".

However, we will not pay for "loss" unless or until the damaged property is actually replaced or restored; and then only if such replacement or restoration occurs within 36 months from the date of "loss".

**(4)** We will extend coverage to include:

**(a)** **Removal**

If you give us written notice within 30 days of removal of your "valuable papers and records" because of imminent danger of "loss" from a Covered Cause of Loss, we will pay for "loss" while they are:

**1)** At a safe place away from your "premises"; or

**2)** Being taken to and returned from that place.

This Removal coverage is included within the Limits of Insurance applicable to this Coverage Extension.

**(b)** **Away From Your Premises**

We will pay up to $5,000 in any one occurrence, regardless of the number of locations, for "loss" caused by a Covered Cause of Loss to "valuable papers and records" while they are away from your "premises".

This Away From Premises Limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

**(5)** **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension except as follows:

**(a)** **Exclusion (1)(c) Governmental Action;**

**(b)** **Exclusion (1)(d) Nuclear Hazard; and**

**(c)** **Exclusion (1)(f) War and Military Action.**

**(6)** In addition to Paragraph **(5)** of this Coverage Extension, we will not pay for "loss" resulting from any of the following:

**(a)** Dishonest or criminal acts by:

**1)** You, your partners, employees, directors, trustees or authorized representatives;

**2)** A manager or a member if you are a limited liability company;

**3)** Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04      Page 25 of 35

**4)** Anyone else entrusted with the records of accounts receivable for any purpose.

This Paragraph **(6)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

However, this Paragraph **(6)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

**(b)** Errors or omissions in processing or copying. However, we will pay for that portion of direct "loss" caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Part.

**(c)** Electrical or magnetic injury, disturbance or erasure of electronic recordings. But we will pay for "loss" caused by lightning.

**(d)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

The most we will pay for "loss" under this Coverage Extension is $25,000 in any one occurrence.

**s.** **Water, Other Liquids, Powder or Molten Material Damage**

**(1)** If a covered "loss" to which this insurance applies was caused by or resulted from water or other liquid, powder or molten material damage, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

**(2)** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(a)** Results in discharge of any substance from an automatic fire protection system; or

**(b)** Is directly caused by freezing.

However, this Paragraph **s.(2)** does not apply to Business Income coverage or to Extra Expense coverage.

## SECTION B. LIMITS OF INSURANCE

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations, except as amended in **SECTION A. COVERAGE:**

**1.** **3. Covered Causes of Loss, c. Limitations.**

**2.** **4. Additional Coverages,** and

**3.** **5. Coverage Extensions.**

## SECTION C. DEDUCTIBLE

Except as otherwise provided, in any one occurrence of "loss", we will first reduce the amount of "loss" if required by **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** or **F. OPTIONAL COVERAGES, 1. Agreed Value.** If the adjusted amount of "loss" is less than or equal to the Deductible, we will not pay for that "loss". If the adjusted amount of "loss" exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of "loss", and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves "loss" to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**1.** **Deductible Examples**

**Example No. 1:**

(This example assumes there is no coinsurance penalty as outlined in **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**).

| | |
|---|---|
| Deductible: | $250 |
| Limit of Insurance - Bldg. 1: | $60,000 |
| Limit of Insurance - Bldg. 2: | $80,000 |
| "Loss" to Bldg. 1: | $60,100 |
| "Loss" to Bldg. 2: | $90,000 |

The amount of "loss" to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of "loss" in calculating the "loss" payable for Bldg. 1:

$60,100 - $250 = $59,850 "Loss" Payable - Bldg. 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of "loss" payable for Bldg. 2. "Loss" payable for Bldg. 2 is the Limit of Insurance of $80,000.

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04 Page 26 of 35

Total amount of "loss" payable: $59,850 + 80,000 = $139,850.

**Example No. 2:**

(This example also assumes there is no coinsurance penalty).

The Deductible and Limits of Insurance are the same as those in Example No. 1:

"Loss" to Bldg. 1:        $70,000

(Exceeds Limit of Insurance plus Deductible)

"Loss" to Bldg. 2:        $90,000

(Exceeds Limit of Insurance plus Deductible)

"Loss" Payable - Bldg. 1:        $60,000

(Limit of Insurance)

"Loss" Payable - Bldg. 2:        $80,000

(Limit of Insurance)

Total amount of "loss" payable: $140,000.

## 2. Glass Deductible

When "loss" to Covered Property only involves building glass, the Deductible for that "loss" will be the lesser of:

**a.** $500; or

**b.** The Deductible shown in the Declarations for that Covered Property.

## SECTION D. LOSS CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

## 1. Abandonment

There can be no abandonment of any property to us.

## 2. Appraisal

If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we still retain our right to deny the claim.

## 3. Duties In The Event of Loss or Damage

**a.** In the event of "loss" to Covered Property, you must see that the following are done in order for coverage to apply:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the "loss". Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the "loss" occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Keep a record of your expenses necessary to protect the Covered Property for consideration in the settlement of the claim. This will not increase your limit of insurance. However, in no event will we pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of "loss" claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis and permit us to make copies from your books and records.

**(7)** Submit a signed sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04        Page 27 of 35

**(9)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

### 4. Loss Payment

**a.** In the event of "loss" insured by this Coverage Part, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of **SECTION D. LOSS CONDITIONS, 7. Valuation** or any applicable provision that amends or supercedes this valuation condition.

**b.** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property, except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust "losses" with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** Our payment for "loss" to personal property of others and personal effects will only be for the account of the owner of the property.

**g.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**h.** We will pay for insured "loss" within 30 days after we receive the sworn proof of loss if you have complied with all of the terms of this Coverage Part; and

**(1)** We have reached agreement with you on the amount of "loss"; or

**(2)** An appraisal award has been made.

**i.** Loss Payment - Ordinance or Law.

With respect to **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law:**

**(1)** "Loss" to the building, including loss in value of the undamaged portion of the building due to enforcement of an ordinance or law, will be determined as follows:

**(a)** If the Replacement Cost option is indicated in the Declarations and the property is repaired or replaced, on the same "premises" or another premises; we will not pay more than the amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same "premises" and to the same height, floor area, style and comparable quality of the original property insured; or

**(b)** If the Replacement Cost option is shown in the Declarations and the property is not repaired or replaced, or if the Replacement Cost Coverage Option does not apply, we will not pay more than the actual cash value of the building at the time of "loss".

**(2)** For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the "premises".

**(3)** With respect to the Increased Cost of Construction:

**(a)** We will not pay for the increased cost of construction until the property is actually repaired or replaced, at the same "premises" or another premises; and unless the repairs or replacement are made as soon as reasonably possible after the "loss", not to exceed two years.

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04                    Page 28 of 35

**(b)** If the building is repaired or replaced at the same "premises", or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same "premises".

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

**j.** Loss Determination - Business Income and Extra Expense

With respect to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense,**

**(1)** The amount of "Business Income" and "Rental Value" "loss" will be determined based on:

**(a)** The Net Income of the business before the direct physical "loss" occurred;

**(b)** The likely Net Income of the business if no physical "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(c)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical "loss"; and

**(d)** Other relevant sources of information, including;

1) Your financial records and accounting procedures;

2) Bills, invoices and other vouchers; and

3) Deeds, liens or contracts.

**(2)** The amount of "Extra Expense" will be determined based on:

**(a)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical "loss"

had occurred. We will deduct from the total of such expenses:

1) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

2) Any "Extra Expense" that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(b)** Necessary expenses that reduce the "Business Income" and "Rental Value" "loss" that otherwise would have been incurred.

**(3) Resumption of Operations**

We will reduce the amount of your:

**(a)** "Business Income" and "Rental Value" "loss", other than "Extra Expense", to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or "stock") at the "premises" or elsewhere.

**(b)** "Extra Expense" "loss" to the extent you can return "operations" to normal and discontinue such "Extra Expense".

**(4)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

## 5. <u>Recovered Property</u>

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

## 6. <u>Vacancy</u>

**a.** <u>Description of Terms</u>

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04                                                                 Page 29 of 35

**(a)** When this Coverage Part is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this Coverage Part is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

   **1)** Rented to a lessee or sublessee and used by them to conduct their customary operations; or

   **2)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where "loss" occurs has been vacant for more than 60 consecutive days before that "loss", we will:

**(1)** Not pay for any "loss" caused by any of the following, even if they are Covered Causes of Loss:

   **(a)** Vandalism;

   **(b)** Sprinkler leakage, unless you have protected the system against freezing;

   **(c)** Building glass breakage;

   **(d)** Water damage;

   **(e)** Theft; or

   **(f)** Attempted theft.

**(2)** Reduce the amount we would otherwise pay for the "loss" by 15% with respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** of this Loss Condition.

## 7. Valuation

We will determine the value of Covered Property in the event of "loss" as follows:

**a.** At "Actual Cash Value" as of the time of "loss", except as provided in **b., c., d.,** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at actual cash value even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety glazing material if required by law.

**e.** Tenant's Improvements and Betterments at:

**(1)** "Actual Cash Value" of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

   **(a)** Multiply the original cost by the number of days from the "loss" or damage to the expiration of the lease; and

   **(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

   If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**(4)** For the purposes of valuation, tenants' improvements and betterments are not considered to be the personal property of others.

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04                                    Page 30 of 35

## SECTION E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS**.

### 1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any "loss" if the value of Covered Property at the time of "loss" times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of "loss" by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in step **(1)**;

**(3)** Multiply to the total amount of "loss", before the application of any deductible, by the figure determined in step **(2)**; and

**(4)** Subtract the deductible from the figure determined in step **(3)**.

We will pay the amount determined in step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the "loss" yourself.

**Example No. 1 (Underinsurance):**

| | |
|---|---|
| The value of the property is: | $250,000 |
| The coinsurance percentage is: | 80% |
| The Limit of Insurance is: | $100,000 |
| The Deductible is: | $250 |
| The amount of "loss" is: | $40,000 |

Step (1):

$250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):

$100,000 ÷ $200,000 = .50

Step (3):

$40,000 X .50 = $20,000

Step (4):

$20,000 - $250 = $19,750.

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

| | |
|---|---|
| The value of the property is: | $250,000 |
| The coinsurance percentage is: | 80% |
| The Limit of Insurance is: | $200,000 |
| The Deductible is: | $250 |
| The amount of "loss" is: | $40,000 |

Step (1):

$250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):

$200,000 ÷ $200,000 = 1.00

Step (3):

$40,000 X 1.00 = $40,000

Step (4):

$40,000 - $250 = $39,750.

We will pay no more than $39,750 "loss" in excess of the Deductible. No penalty applies.

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

The values of the property are:

| | |
|---|---|
| Bldg. at Location No. 1: | $75,000 |
| Bldg. at Location No. 2: | $100,000 |
| Personal Property at Location No. 2: | $75,000 |
| | 250,000 |

| | |
|---|---|
| The coinsurance percentage is: | 90% |
| The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is: | $180,000 |
| The Deductible is: | $1,000 |
| The amount of "loss" is: | |
| Bldg. at Location No. 2: | $30,000 |
| Personal Property at Location No. 2: | $20,000 |
| | $50,000 |

Step (1):

$250,000 X 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2):

$180,000 ÷ $225,000 = .80

---

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

**FM 101 04 04**

**Page 31 of 35**

Step (3):

    $50,000 X .80 = $40,000

Step (4):

    $40,000 - $1,000 = $39,000.

We will pay no more than $39,000. The remaining $11,000 is not covered.

## 2. Mortgage Holders

**a.** The term "mortgage holder" includes trustee.

**b.** We will pay for covered "loss" to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

    **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

    **(2)** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

**e.** If we pay the mortgage holder for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

    **(1)** The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

    **(2)** The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgage holder at least:

    **(1)** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

    **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgage holder at least ten days before the expiration date of this policy.

## SECTION F. OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

## 1. Agreed Value

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for "loss" to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the Agreed Value Optional Coverage is deleted from the policy, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage does not apply.

**c.** The terms of this Optional Coverage apply only to "loss" that occurs:

    **(1)** On or after the effective date of this Optional Coverage; and

    **(2)** Before the policy expiration date.

**d.** This Agreed Value Optional Coverage does not apply to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense.**

## 2. Inflation Guard

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

    **(1)** The Limit of Insurance that applied on the most recent of the Coverage Part inception date, the Coverage Part anniversary date, or any other Coverage Part change amending the Limit of Insurance, multiplied by

    **(2)** The percentage of annual increase shown in the Declarations, expressed

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04      Page 32 of 35

as a decimal (example: 8% is .08), multiplied by

(3) The number of days since the beginning of the current "coverage term" or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

Example:

If: The applicable Limit of Insurance is: $100,000

The Annual percentage increase is: 8%

The number of days since the beginning of the policy year (or last policy change) is: 146

The amount of increase is $100,000 X .08 X 146 ÷ 365 = $3,200

## 3. Replacement Cost

a. Replacement Cost (without deduction for depreciation) replaces "Actual Cash Value" in **SECTION D. LOSS CONDITIONS, 7. Valuation** of this **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.

b. This Optional Coverage does not apply to:

(1) Personal Property of others, except leased personal property as described in **SECTION A. COVERAGE, 1. Covered Property, d.(7).** The valuation of such leased personal property will be based on the amount for which you are liable under the lease, but not to exceed the replacement cost of the leased item.

(2) Personal effects;

(3) Contents of a residence;

(4) Manuscripts;

(5) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac;

(6) "Stock" unless the Replacement Cost including "Stock" option is shown in the Declarations; or

(7) Property, that at the time of "loss":

(a) Is outdated, or obsolete and is stored or not being used; or

(b) Has no practical value to you.

c. You may make a claim for "loss" covered by this insurance on an "Actual Cash Value"

basis instead of on a replacement cost basis. In the event you elect to have "loss" settled on an "Actual Cash Value" basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the "loss".

d. We will not pay on a replacement cost basis for any "loss":

(1) Until the lost or damaged property is actually repaired or replaced with other property of generally the same construction and used for the same purpose as the lost or damaged property; and

(2) Unless the repairs or replacement have been completed or at least underway within 2 years following the date of "loss".

e. We will not pay more for "loss" on a replacement cost basis than the least of:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace, on the same "premises", the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

f. The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use, or repair of any building or structure except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

## SECTION G. DEFINITIONS

1. **"Actual Cash Value"** means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

2. **"Business Income"** means the:

a. Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

b. Continuing normal operating expenses incurred, including payroll.

3. **"Computer programs"** means a set of related electronic instructions which direct the operations and functions of a computer or device

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

4. **"Coverage term"** means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

   a. The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

      (1) The day the policy period shown in the Declarations ends; or

      (2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

   b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

5. **"Electronic data"** means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

6. **"Extra Expense"** means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical "loss" to property caused by or resulting from a Covered Cause of Loss.

7. **"Finished Stock"** means "stock" you have manufactured, except "stock" you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

8. **"Fungi"** means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

9. **"Loss"** means accidental loss or damage.

10. **"Money"** means:

    a. Currency, coins and bank notes whether or not in current use; and

    b. Travelers checks, registered checks and money orders held for sale to the public.

11. **"Operations"** means:

    a. Your business activities occurring at the "premises"; and

    b. The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

12. **"Period of Restoration"** means the period of time that:

    a. Begins at the time of direct physical "loss".

    b. Ends on the earlier of:

       (1) The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

       (2) The date when business is resumed at a new permanent location.

    c. "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

       (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

       (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

    d. The expiration date of the policy will not cut short the "period of restoration".

13. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum and petroleum byproducts, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

    a. You are regularly or otherwise engaged in activities which taint or degrade the environment; or

    b. You use, generate or produce the "pollutant".

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

**FM 101 04 04**                                             **Page 34 of 35**

14. **"Premises"** means the Location of Premises described in the Declarations.

15. **"Rental Value"** means "Business Income" that consists of :

    a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

    b. Continuing normal operating expenses incurred in connection with that "premises", including:

       (1) Payroll; and

       (2) The amount of charges, which are the legal obligation of the tenant(s) but would otherwise be your obligations.

16. **"Securities"** means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

    a. Tokens, tickets, revenue and other stamps whether or not in current use; and

    b. Evidences of debt issued in connection with credit or charge cards, which are not of your own issue:

    but does not include "money". Lottery tickets held for sale are not "securities" or evidences of debt.

17. **"Sinkhole collapse"** means the sudden settlement or collapse of earth supporting the Covered Property into subterranean voids created by the action of water on a limestone or similar rock formation. This does not include:

    a. The cost of filling sinkholes;

    b. Sinking or collapse of land into man-made subterranean cavities; or

    c. The value of the land.

18. **"Specified Causes of Loss"** means fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    a. Falling objects does not include "loss" to:

       (1) Personal property in the open; or

       (2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

    b. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

19. **"Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

20. **"Suspension"** means:

    a. The slowdown or cessation of your business activities; and

    b. That a part or all of the "premises" is rendered untenantable.

21. **"Valuable Papers and Records"** means inscribed, printed or written documents, manuscripts or records, including abstracts, books, card index systems, deeds, drawings, films, maps, mortgages, or proprietary information.

    But "valuable papers and records" does not mean "money" or "securities" or "electronic data", including the materials on which the "electronic data" is recorded.

Includes copyrighted material of ISO Properties, Inc., with its permission. Includes copyrighted material with permission of American Association of Insurance Services, Inc.

FM 101 04 04                                                                 Page 35 of 35

# CinciPlus®
## CinciPak™
# MEDICAL / DENTAL OFFICE
## PROPERTY XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT
### SUMMARY OF COVERAGE LIMITS

This is a summary of the Coverages and the Limits of Insurance provided by the CinciPlus® CinciPak™ Medical / Dental Office Property XC+® (Expanded Coverage Plus) Endorsement, **FCP 217**, in combination with the Commercial Property Coverage Form, **FM 101**, and Business Income (And Extra Expense) Coverage Form, **FA 213**, which are included in this policy. **No coverage is provided by this summary.** Refer to endorsement **FCP 217** and the Commercial Property Coverage Form, **FM 101**, or Business Income (And Extra Expense) Coverage Form, **FA 213** to determine the scope of your insurance protection.

| **Blanket Coverages:** | **Blanket Coverage Limit:** | **Page No. FCP217** |
|---|---|---|
| | **$150,000** in total for all loss arising from all Blanket Coverages arising from a single occurrence, except as noted otherwise in the form. | |
| Accounts Receivable | | 1 |
| Debris Removal | | 5 |
| Electronic Data Processing Property (EDP): | | 1 |
| Duplicate and Backup Electronic Data | | 2 |
| Newly Acquired EDP | | 2 |
| In Transit or Away From Premises | | 3 |
| Worldwide Laptop Coverage | | 3 |
| Ordinance or Law (Increased Construction Costs and Demolition) | | 4 |
| Peak Season | | 5 |
| Personal Property of Others | | 5 |
| Tenant Move Back Expenses | | 4 |
| Valuable Papers and Records | | 4 |
| Water Backup from Sewers, Drains or Sump Pumps | | 9 |

| **Other Coverages** (not subject to Blanket Coverage Limit): | **Limit of Insurance:** | **Page No. FCP217** |
|---|---|---|
| Brands and Labels | $25,000 | 7 |
| Business Income and Extra Expense: | | |
| Interruption of Computer Operations | $25,000 (sub-limit, subject to a 24 hour deductible) | 1 |

| **Other Coverages**<br>(not subject to Blanket Coverage Limit): | **Limit of Insurance:** | Page No.<br>FCP217 |
|---|---|---|
| Inflation Guard | 4% on all Building Property referenced in the Declarations | 7 |
| Lessor's Leasehold Interest | Actual loss sustained up to $25,000 | 8 |
| Limitation - Personal Property Theft: | | 8 |
| Furs, fur garments and garments trimmed with fur | $2,500 | 8 |
| Jewelry, watches, watch movements, jewels, pearls and precious and semi-precious stones. | $5,000 (Limitation not applicable to watches and jewelry worth $500 or less per item.) | 8 |
| Bullion, gold, silver, platinum and other precious alloys or metals | $25,000 | 8 |
| Patterns, dies, molds and forms | $2,500 | 8 |
| Non-Owned Building Damage: | | 7 |
| Loss caused by theft, burglary or robbery | Up to the Business Personal Property (BPP) Limit of Insurance | 7 |
| Loss by any other Covered Cause of Loss | $25,000 or the BPP Limit of Insurance (whichever is less) | 7 |
| Ordinance or Law (other than Increased Construction Costs and Demolition) | Subject to the Building Limit of Insurance | 4 |
| Ordinance or Law - Increased Period of Restoration | $50,000 | 9 |
| Outdoor Property | $25,000 ($1,000 for any one tree, shrub or plant) | 4 |
| Temperature Change | $50,000 | 5 |
| Unauthorized Business Card Use | $5,000 | 8 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPak™

# COMMERCIAL PROPERTY AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

I. **SECTION A. COVERAGE**, Paragraph **2. Property Not Covered** is amended as follows:

Subparagraphs **f.**, **g.**, **i.**, **j.**, **k.**, **m.** and **n.** are deleted in their entirety.

II. **SECTION A. COVERAGE**, Paragraph **3. Covered Causes of Loss**, **b. Exclusions**, **(4) Special Exclusions** is amended as follows:

Special Exclusions **(b)** and **(c)** are deleted in their entirety.

III. **SECTION A. COVERAGE**, Paragraph **3. Covered Causes of Loss**, **c. Limitations** is amended as follows:

A. Subparagraph **(1) Limitations - Various Types of Property** is amended as follows:

1. Limitation **(c) Building Interiors** is deleted in its entirety and replaced by the following:

   **(c) Building Interiors**

   The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

   1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

   2) The "loss" is caused by or results from thawing of snow, sleet or ice on the building or structure.

2. Limitation **(d) Building Materials - Theft** is deleted in its entirety.

B. Subparagraph **(3) Limitation - Personal Property Theft**, item **(d)** is deleted in its entirety.

IV. **SECTION A. COVERAGE**, Paragraph **4. Additional Coverages** is amended as follows:

A. The following **Additional Coverages** are amended as follows:

1. The Limit of Insurance referenced in subparagraph **(4)** of **b. Debris Removal** is amended to $25,000.

2. The Limit of Insurance referenced in **c. Fire Department Service Charge** is amended to $25,000.

3. **Fire Protection Equipment Recharge - Actual Expenses Incurred**

   For this endorsement only, the last paragraph in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, d. Fire Protection Equipment Recharge** is deleted in its entirety and replaced by the following:

   This Coverage is in addition to the Limits of Insurance shown in the Declarations.

4. **g. Ordinance or Law** is amended as follows:

   a. The Limit of Insurance referenced in Paragraph **(5)** is amended to $25,000; and

   b. Paragraph **(1)** we will pay:, is amended to include the following:

      (e) The increased cost to repair, rebuild or reconstruct tenant's improvements and betterments, as described in **SECTION A. COVERAGE; 1. Covered Property, d. Business Personal Property,** subparagraph **(6)**, caused by enforcement of building, zoning or land use ordinance or law.

5. The Limit of Insurance referenced in **h. Pollutant Clean Up and Removal** is amended to $25,000.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

6. The number of days referenced in subparagraph **(2)** of **i. Preservation of Property** is amended to 90.

**B.** The following **Additional Coverages** are added:

1. **Peak Season Limit Increase**

   a. The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

   b. This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

      (1) The 12 months immediately preceding the date the "loss" occurs; or

      (2) The period of time you have been in business as of the date the "loss" occurs.

2. **Leasehold Improvements**

   If your lease is cancelled in accordance with a valid lease provision as the direct result of a Covered Cause of Loss to property at the location in which you are a tenant, and you cannot legally remove Tenant Improvements and Betterments, as described in **SECTION A. COVERAGE; 1. Covered Property, d. Business Personal Property,** subparagraph **(6)**, we will extend Business Personal Property coverage to apply to the unamortized value of Tenant Improvement and Betterment that remain and that you were forced to abandon.

   The most we will pay in any one occurrence for "loss" under this Additional Coverage is $25,000.

3. **Lease Assessment**

   Your Business Personal Property is extended to apply to your share of any assessment charged to all tenants by the building owner as a result of direct physical damage caused by or resulting from a Covered Cause of Loss to building property you occupy as agreed to in your written lease agreement.

   We will pay no more than $2,500 in any one occurrence for this Additional Coverage.

4. **Temporary Relocation of Property**

   (1) If Covered Property is removed from the "premises" and stored temporarily at a location you own, lease or operate while the "premises" is being renovated or remodeled, we will pay for direct physical "loss" of that stored property:

      (a) Caused by or resulting from a Covered Cause of Loss;

      (b) Up to $50,000 at each temporary location in any one occurrence; and

      (c) During the storage period of up to 90 consecutive days but not beyond the expiration of this policy.

   (2) This Additional Coverage does not apply if the stored property is more specifically insured.

**V. SECTION A. COVERAGE**, Paragraph **5. Coverage Extensions** is amended as follows:

**A.** The following **Coverage Extensions** are amended as follows:

1. Coverage Extension **a. Accounts Receivable** is amended as follows:

   a. The Limit of Insurance referenced in subparagraph **(3)(b)** Away From Your Premises is amended to $25,000; and

   b. The last Paragraph is deleted in its entirety and replaced by the following:

      The most we will pay for "loss" under this Coverage Extension is $50,000 in any one occurrence.

2. Coverage Extension **b. Business Income and Extra Expense** is amended to include the following:

   (9) Business Income From Dependent Properties

      (a) We will pay for the actual loss of "Business Income" you sustain due to physical "loss" at the premises of a dependent property caused by or resulting from any Covered Cause of Loss.

      However, this Coverage Extension does not apply when the only "loss" to dependent property is "loss" to

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

"electronic data", including destruction or corruption of "electronic data". If the dependent property sustains "loss" to "electronic data" and other property, coverage under this Coverage Extension will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Coverage Extension in any one occurrence is $10,000 for each dependent property location. This $10,000 of coverage for Business Income From Dependent Properties does not increase the Limit of Insurance provided in this Coverage Extension.

**(b)** We will reduce the amount of your "Business Income" loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

**1)** Source of materials; or

**2)** Outlet for your products.

**(c)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(d)** Dependent property means property owned by others whom you depend on to:

**1)** Deliver materials or services to you, or to others for your account. But, services does not mean water, communication or power supply services;

**2)** Accept your products or services;

**3)** Manufacture your products for delivery to your customers under contract for sale; or

**4)** Attract customers to your business.

The dependent property must be located in the coverage territory of this Coverage Part.

**(e)** The coverage period for "Business Income" under this Coverage Extension:

**1)** Begins twenty-four (24) hours after the time of direct physical "loss" caused by or resulting from any Covered Cause of Loss at the premises of the dependent property; and

**2)** Ends on the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

**(f)** The "Business Income" coverage period, as stated in Paragraph **(e)**, does not include any increased period required due to the enforcement of any ordinance or law that:

**1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the "Business Income" coverage period.

**3.** The Limit of Insurance referenced in **f. Fences** is amended to $10,000.

**4.** The Limit of Insurance referenced in **h. Glass** subparagraph **(2)** is amended to $25,000.

**5.** In Coverage Extension, **i. Newly Acquired or Constructed Property**, Paragraph **(3)(b)**, the number 90 is deleted and replaced by the number 180.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

6. The last paragraph of **j. Non-Owned Building Damage** is deleted in its entirety and replaced by the following:

   The most we will pay for "loss" under this Coverage Extension in any one occurrence is your Business Personal Property Limit of Insurance for the "premises" where the "loss" occurs.

7. Coverage Extension **k. Outdoor Property** is deleted in its entirety and replaced by the following:

   **k. Outdoor Property**

   You may extend the insurance provided by this Coverage Part to apply to "loss" to your:

   **(1)** Radio antennas, television antennas or satellite dishes (including their lead-in wiring, masts and towers); and

   **(2)** Trees, shrubs or plants (other than "stock" of trees, shrubs or plants);

   including debris removal expense, but only if caused by or resulting from any of the following causes of loss if they are included as Covered Causes of Loss under this Coverage Part:

   **(a)** Fire;

   **(b)** Lightning;

   **(c)** Explosion;

   **(d)** Riot or Civil Commotion;

   **(e)** Aircraft;

   **(f)** Falling objects;

   **(g)** Theft; or

   **(h)** Vehicle; and

   **(3)** Awnings that are attached to a building that you occupy as a tenant, including debris removal expense, caused by or resulting from any of the Covered Causes of Loss.

   The most we will pay for "loss" under this Coverage Extension is $10,000 in any one occurrence, but not more than $1,000 for any one tree, shrub or plant.

8. SECTION A, COVERAGE 5. **Coverage Extensions I. Personal Effects** is deleted in its entirety and replaced by the following:

   **I. Personal Effects**

   You may extend the insurance that applies to your Business Personal Property to apply to "loss" to:

   Personal effects owned by:

   **(1)** You, your officers, or your partners, or if you are a limited liability company, your members or your managers; or

   **(2)** Your employees (including temporary and leased employees), including tools owned by your employees that are used in your business.

   This Coverage Extension does not apply to "money" or "securities".

   The most we will pay for "loss" under this Coverage Extension is $25,000 in any one occurrence.

9. The Limit of Insurance referenced in **n, Signs** is amended to $10,000.

10. The Limit of Insurance referenced in **r. Valuable Papers and Records** subparagraph **(4)(b)** Away From Your Premises is amended to $25,000.

B. The following **Coverage Extensions** are added:

1. **Appurtenant Buildings and Structures**

   **a.** When a Limit of Insurance is shown in the Declarations for Building at the "premises", you may extend that insurance to apply to direct physical "loss" of incidental appurtenant buildings or structures, within 1,000 feet of that "premises", caused by or resulting from a Covered Cause of Loss.

   **b.** When a Limit of Insurance is shown in the Declarations for Business Personal Property at the "premises", you may extend that insurance to apply to direct physical "loss" of Business Per-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

sonal Property within incidental appurtenant buildings or structures within 1,000 feet of that "premises", caused by or resulting from a Covered Cause of Loss.

**c.** Incidental appurtenant buildings or structures include:

**(1)** Storage buildings;

**(2)** Carports;

**(3)** Garages;

**(4)** Pump houses; or

**(5)** Above ground tanks;

which have not been specifically described in the Declarations.

**d.** The most we will pay for "loss" under this Coverage Extension in any one occurrence for any combination of "loss" to Building and Business Personal Property is $50,000, regardless of the number of "premises" involved.

**e.** Payments made under this Coverage Extension are in addition to the applicable Limits of Insurance.

**2. Fine Arts**

**a.** You may extend the insurance provided by this Coverage Part to apply to paintings, etchings, pictures, tapestries, art glass windows, and other bona fide works of art of rarity, historical value, or artistic merit. The "loss" must be caused by or result from a Covered Cause of Loss.

**b.** For this Coverage Extension, the following exclusions in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** are deleted:

**(1)** Exclusion **(1)(b) Earth Movement**; and

**(2)** Exclusion **(1)(g) Water**.

**c.** For this Coverage Extension, **SECTION D. LOSS CONDITIONS, 7. Valuation** is deleted in its entirety and replaced by the following:

We will determine the value of Covered Property in the event of "loss" at the market value at the time of "loss".

**d.** The most we will pay for "loss" under this Coverage Extension is $25,000 in any one occurrence.

**3. Ordinance or Law - Increased Period of Restoration**

**a.** When:

**(1)** A Covered Cause of Loss occurs to property at the "premises"; and

**(2)** The Declarations show that you have coverage for Business Income and Extra Expense;

you may extend that insurance to apply to the amount of actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur during the increased period of "suspension" of "operations" caused by or resulting from the enforcement of any ordinance or law that:

**(1)** Regulates the construction, repair or replacement of any property;

**(2)** Requires the tearing down or replacement of any parts of property not damaged by a Covered Cause of Loss; and

**(3)** Is in force at the time of "loss".

**b.** This Coverage Extension applies only to the period that would be required, with reasonable speed, to reconstruct, repair or replace the property to comply with the minimum requirements of the ordinance or law.

**c.** This Coverage Extension does not apply to:

**(1)** Loss due to an ordinance or law that:

**(a)** You were required to comply with before the "loss", even if the property was undamaged; and

**(b)** You failed to comply with; or

**(2)** Costs associated with the enforcement of any ordi-

nance or law that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

**d.** The most we will pay for "loss" under this Coverage Extension in any one occurrence is $25,000 at each "premises".

**e.** Payments made under this Coverage Extension are in addition to the applicable Limits of Insurance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPak™
# MEDICAL OR DENTAL OFFICE POLLUTANT CLEAN-UP COVERED PROPERTY EXTENSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

For this endorsement only, **SECTION A - COVERAGES, COVERAGE 4. Additional Coverages, h. Pollutant Clean Up and Removal,** is deleted in its entirety and replaced with the following:

We will pay your expenses to extract "pollutants" from Covered Property and land or water at the "premises" if the discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each "premises" is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term". This is in addition to the Limits of Insurance shown in the Declarations.

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPak™

# MEDICAL OR DENTAL OFFICE ACTUAL LOSS SUSTAINED BUSINESS INCOME ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**A.** This endorsement applies to the following Coverage Forms:

**BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM**

**BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM**

**B.** For the purposes of this endorsement only, **SECTION A. COVERAGE, Additional Coverages, Extended Business Income, (1), (b), (ii)** is deleted in its entirety and replaced by the following, and **(iii)** is added:

**(ii)** 12 consecutive months after the date determined in **(1)(a)** above; or

**(iii)** 12 consecutive months after the date of direct physical "loss".

**C.** For the purposes of this endorsement only, **SECTION A. COVERAGE, Additional Coverages, Extended Business Income, (2), (b), (ii)** is deleted in its entirety and replaced by the following, and **(iii)** is added:

**(ii)** 12 consecutive months after the date determined in **(2)(a)** above; or

**(iii)** 12 consecutive months after the date of direct physical "loss".

**D.** For the purposes of this endorsement only, **SECTION F. DEFINITIONS, 7., b.** is deleted in its entirety and replaced by the following:

**b.** Ends on the earlier of:

**(1)** The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality;

**(2)** The date when business is resumed at a new permanent location; or

**(3)** 12 consecutive months after the date of direct physical "loss".

**E.** When 12 months ALS (an acronym of Actual Loss Sustained) is shown in the Declarations as the Limit of Insurance for Business Income for a specific item, **SECTION B. LIMITS OF INSURANCE** is deleted in its entirety for that item.

**F.** If the policy to which this endorsement is attached has been issued for a period of more than one year, then this business income coverage is subject to annual rerating.

**FCP 206 01 11**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPak™

# MEDICAL OR DENTAL OFFICE COMMERCIAL PROPERTY COVERAGE ENHANCEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

I. **SECTION A. COVERAGE**, Paragraph **3. Covered Causes of Loss**, **b. Exclusions**, is amended as follows:

Exclusions **(1)(b) Earth Movement** and **(1) (g) Water** do not apply to:

**A.** Covered Business Personal Property; or

**B. BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense**.

II. **SECTION A. COVERAGE**, Paragraph **5. Coverage Extensions** is amended as follows:

**A.** The following **Coverage Extensions** are amended as follows:

  **1. a. Accounts Receivable** is amended as follows:

    **a.** The Limit of Insurance referenced in subparagraph **(3)(b) Away From Your Premises** is amended to $25,000.

    **b.** The last Paragraph is deleted in its entirety and replaced by the following:

    The most we will pay for "loss" under this Coverage Extension is $100,000 in any one occurrence.

    This amendment of the Accounts Receivable Coverage Extension replaces, and is not in addition to, the amendment of the Accounts Receivable Coverage Extension in CinciPak™ Commercial Property Amendatory Endorsement.

  **2.** The Limit of Insurance referenced in **e. Fairs or Exhibitions** is amended to $25,000.

  **3. SECTION A, COVERAGE**, **5. Coverage Extensions, I. Personal Effects** is deleted in its entirety and replaced by the following:

  **I. Personal Effects**

  You may extend the insurance that applies to your Business Personal Property to apply to "loss" to:

  Personal effects owned by:

    **(1)** You, your officers, or your partners, or if you are a limited liability company, your members or your managers; or

    **(2)** Your employees (including temporary and leased employees), including tools owned by your employees that are used in your business.

  This Coverage Extension does not apply to "money" or "securities".

  This amendment of the Personal Effects Coverage Extension replaces, and is not in addition to, the amendment of the Personal Effects Coverage Extension in the CinciPak™ Commercial Property Amendatory Endorsement.

  **4.** The Limit of Insurance referenced in **m., Property Off Premises** is amended to $25,000.

  **5.** The Limit of Insurance referenced in **p.. Transportation** is amended to $25,000.

  **6. q. Utility Services** is deleted in its entirety and replaced by the following:

**q. Utility Services**

You may extend the insurance provided under this Coverage Part to apply to "loss" caused by the partial or complete suspension of the utility services listed below. The partial or complete suspension of services must be caused by direct damage to those services from a Covered Cause of Loss.

**(1)** Power Supply Services, meaning the following types of property supplying electricity, steam or natural gas to the "premises":

**(a)** Utility generating plants;

**(b)** Switching stations;

**(c)** Substations;

**(d)** Transformers; and

**(e)** Transmission lines, excluding overhead transmission and distribution lines.

**(2)** Water Supply Services, meaning the following types of property supplying water to the "premises":

**(a)** Pumping stations; and

**(b)** Water mains.

**(3)** Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave, or television services to the "premises", such as:

**(a)** Communication transmission lines including fiber optic transmission lines, excluding overhead transmission and distribution lines;

**(b)** Coaxial cables; and

**(c)** Microwave radio relays, excluding satellites.

**(4)** This Coverage Extension does not apply to "loss" to "electronic data", including destruction or corruption of "electronic data".

**7.** **r. Valuable Papers and Records** is amended as follows:

**a.** The following is added to Paragraph **(2)**:

**(f)** Two year old x-rays, and x-rays in excess of two years of age.

**b.** The Limit of Insurance referenced in subparagraph **(4)(b)** Away From Your Premises is amended to $25,000.

**c.** The last Paragraph is deleted in its entirety and replaced by the following:

The most we will pay for "loss" under this Coverage Extension is $100,000 in any one occurrence.

This amendment of the Valuable Papers and Records Coverage Extension replaces, and is not in addition to, the amendment of the Valuable Papers and Records Coverage Extension in the CinciPak™ Commercial Property Amendatory Endorsement.

**B.** The following **Coverage Extensions** are added:

**1.** **Tenant's Glass**

**a.** It is agreed and understood that Paragraph **(2)** of Coverage Extension **h. Glass** is deleted in its entirety and replaced by the following.

**b.** If you are a tenant at a covered "premises" and:

**(1)** The building you occupy is not Covered Property; and

**(2)** You are legally liable for physical "loss" to the building glass in that building;

we will pay for direct physical "loss" to that building glass, including lettering and ornamentation.

**c.** If a Covered Cause of Loss occurs to building glass, as provided for under this Coverage Extension, we will also pay necessary expenses you incur to:

**(1)** Put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

Includes copyrighted material of Insurance Services Office, Inc. with their permission.

**(2)** Repair or replace encasing frames;

**(3)** Remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include expenses to remove or replace window displays; and

**(4)** Repair or replace alarm tapes.

**d. SECTION A. COVERAGE, 3.b. Exclusions** does not apply to this Coverage Extension, except for:

**(1)** Exclusion **(1)(b) Earth Movement**;

**(2)** Exclusion **(1)(c) Governmental Action**;

**(3)** Exclusion **(1)(d) Nuclear Hazard**;

**(4)** Exclusion **(1)(f) War and Military Action**;

**(5)** Exclusion **(2)(d)1** Wear and tear; and

**(6)** As listed in Exclusion **(2)(d)2**:

Rust or other corrosion, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

**2. Water Backup from Sewers, Drains or Sump Pumps**

You may extend the insurance provided by this Coverage Part to apply to "loss" caused by or resulting from water or waterborne material that backs up through or overflows or is discharged from a sewer, drain, septic system, sump pump or related equipment.

**a.** For this Coverage Extension, **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(g) Water, 3)** is deleted in its entirety and replaced by the following:

**3)** Water or waterborne material which backs up through or overflows or is discharged from a sewer, drain, septic system, sump pump or related equipment, except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup from Sewers, Drains, or Sump Pumps.**

**b.** For this Coverage Extension, **SECTION C. DEDUCTIBLE** is amended by adding the following:

We will not pay for "loss" in any one occurrence caused by or resulting from water or waterborne material which backs up or overflows from a sewer, drain, septic system, sump pump or related equipment, until the amount of "loss" exceeds the Deductible shown in the Declarations, or $1,000, whichever is greater. We will then pay the amount of "loss" in excess of that deductible, up to the applicable limit indicated in Paragraph **c.** of this extension.

**c.** The most we will pay is $25,000 for any one occurrence.

Includes copyrighted material of Insurance Services Office, Inc. with their permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPlus®
# CinciPak™
# MEDICAL / DENTAL OFFICE
# PROPERTY XC+® (EXPANDED COVERAGE PLUS)
# ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE PART**

**The insurance coverage and Limits of Insurance provided by this endorsement are excess of, and apply in addition to, any similar or identical coverage provided by any other endorsement attached to the above referenced Coverage Parts, or by any other Coverage Part forming a part of the policy of insurance of which the above referenced Coverage Parts form a component.**

**SCHEDULE**

| Blanket Coverage Limit | The Limit of Insurance stated in the Summary of Coverage Limits |
|---|---|
| Applicable only to those coverages subject to the Blanket Coverage Limit, as indicated in this endorsement | |

**A. Accounts Receivable**

In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable**, the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay in any one occurrence for "loss" under this Coverage Extension is the Blanket Coverage Limit as provided in Section **T.** of this endorsement.

**B. Business Income and Extra Expense**

**Interruption of Computer Operations**

In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense**, is modified as follows for this endorsement only:

**1.** All references to $2,500 in Paragraph **b.(8)(c)** are deleted and replaced with the Limit of Insurance stated in the Summary of Coverage Limits.

**2. BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended as follows:

With respect to a "suspension" of "operations" caused only by an interruption in computer operations due to the destruction or corruption of "electronic data" as described in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data**, Paragraph **a.** of Definition **12. "Period of Restoration"** is deleted and replaced by the following:

**a.** Begins 24 hours after the time of direct physical "loss".

**C. Electronic Data Processing Property**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended by adding the following:

**Electronic Data Processing Property**

**(1) Covered Property**

You may extend the Coverage provided by this Coverage Part to apply to "loss" to Covered Property consisting of your:

**(a)** Data processing equipment;

**(b)** Air conditioning and other electrical equipment, used exclusively with your data processing equipment;

Includes copyrighted material of ISO
Properties, Inc., with its permission.

(c) Programming documentation and instruction manuals;

(d) "Electronic data", but only as excess over what is valid and collectible under **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data**;

(e) Media, meaning materials on which "electronic data" is recorded, such as magnetic tapes, disc packs, paper tapes and cards, floppy discs and compact discs used in processing units; and

(f) Property of others in your care, custody or control that is similar to property described in (**1)(a)** through **(e)** above.

**(2) Property Not Covered**

This Coverage Extension does not apply to:

(a) Accounts, records, documents and other "valuable papers and records" unless they are programming documentation or instruction manuals.

However, we will cover these items once they are converted to "electronic data" form.

(b) "Electronic data" or media that cannot be replaced with similar property of equal quality.

(c) Your property that you have rented or leased to someone else and that property is not at your "premises".

(d) Any machine or apparatus that is used for research, medical, diagnostic, surgical, dental or pathological purposes.

(e) "Production equipment".

**(3) Exclusions**

(a) For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply except as follows:

1) Exclusion **(1)(c) Governmental Action;**

2) Exclusion **(1)(d) Nuclear Hazard;**

3) Exclusion **(1)(f) War and Military Action;**

4) Exclusion **(2)(b) Delay or Loss of Use;**

5) Exclusion **(2)(d) Miscellaneous Causes of Loss, 1)** Wear and tear;

6) Exclusion **(2)(h) Dishonest Acts;**

7) Exclusion **(3)(b) Acts or Decisions**; and

8) Exclusion **(3)(c) Defects, Errors and Omissions.**

(b) In addition to Paragraph **(3)(a)** of this Coverage Extension, we will not pay for the following:

Hidden or latent defect, gradual deterioration, and depreciation. However, if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss".

**(4) Duplicate and Backup "Electronic Data"**

We will pay for "loss" resulting from any of the Covered Causes of Loss to duplicate and backup "electronic data" that you store at a premises not described in the Declarations providing such "electronic data" is not covered by another policy.

**(5) Newly Acquired Electronic Data Processing Property**

For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, i. Newly Acquired or Constructed Property** is deleted in its entirety and replaced by the following:

(a) We will pay for "loss" from a Covered Cause of Loss to newly acquired Covered Property described in Paragraph **(1)** of this Coverage Extension while at:

1) Any newly acquired location;

2) Any newly constructed or acquired buildings at a "premises"; or

3) Any "premises" described in the Declarations.

(b) Insurance under this Coverage Extension for such newly acquired property, or Covered Property already insured by this Coverage Extension which is moved to a newly

Includes copyrighted material of ISO Properties, Inc., with its permission.

acquired location, will end when any of the following first occurs:

1) This Coverage Part expires;

2) 90 days pass from the date you acquire your new property or move Covered Property to a newly acquired location; or

3) You report values to us.

**(6) In Transit or Away From Premises**

For this Coverage Extension only, **SECTION A. COVERAGE, 5. Coverage Extensions, e. Fairs or Exhibitions, m. Property Off Premises** and **p. Transportation** are deleted in their entirety and replaced by the following:

**(a)** You may extend the insurance provided by this Coverage Extension to apply to Covered Property as described in Paragraph **(1):**

1) While in or on a vehicle, including loading and unloading; or

2) While at a location that is not your "premises".

**(b)** This **In Transit or Away From Premises** coverage does not apply per location.

**(7) Worldwide Laptop Coverage**

**(a)** You may extend the insurance provided by this Coverage Extension to apply to your laptops, notebooks and similar highly portable personal computers, including their peripherals and accessories, while such specific Covered Property is:

1) In your or your employee's care, custody and control;

2) Not located at a premises you own or lease; and

3) Not located in the coverage territory stated in Paragraph **2.** of the Commercial Property Condition **H. Policy Period, Coverage Territory**, provided that location is not under a United States Department of State trade or travel restriction at the time of "loss".

**(b)** This **Worldwide Laptop Coverage** does not apply per location.

**(8) Electronic Data Processing Property Deductible**

For this Coverage Extension only, **SECTION C. DEDUCTIBLE** is amended to include the following:

We will not pay for "loss" in any one occurrence unless the amount of "loss" exceeds the Deductible shown in the Declarations. We will then pay the amount of "loss" in excess of the Deductible, up to the Limit of Insurance provided by this Coverage Extension.

However, "loss" caused by or resulting from any of the following Causes of Loss will have the greater of the Deductible shown in the Declarations or $1,000 as the applicable deductible:

**a.** "Loss" caused by faulty construction, error in design or processing, or service or work upon the data processing system;

**b.** "Loss" resulting in mechanical breakdown, short circuiting, blowout, or other electrical damage, unless caused by lightning; or

**c.** "Loss" caused by or resulting from interruption of power supply, power surge, blackout or brownout.

**(9) Electronic Data Processing Property Valuation**

For this Coverage Extension only, **SECTION D. LOSS CONDITIONS, 7. Valuation** is deleted in its entirety and replaced by the following:

**7. Valuation of Electronic Data Processing Property**

In the event of "loss", we will determine the value of Covered Property as described in Paragraph **(1)** of this Coverage Extension as follows:

**a.** Except for "electronic data"

**(1)** If you repair or replace this Electronic Data Processing property within a reasonable time following the "loss", the property will be valued at the full cost of repair or replacement.

However, the most we will pay is the least of the following:

**(a)** The actual cost to repair or restore the property with materials of like kind and quality;

**(b)** The cost of replacing that property with property of similar quality and function;

**(c)** The amount you actually and necessarily spend to repair or replace the property; or

**(d)** The Limit of Insurance applicable to the property.

**(2)** If you do not repair or replace this property within a reasonable time following a "loss", the most we will pay will be the least of the following:

**(a)** "Actual cash value" of the property;

**(b)** "Actual cash value" of repairs with material of like kind and quality; or

**(c)** The Limit of Insurance applicable to the property.

We reserve the right to repair or replace the property or to pay for the property in money.

In the event of "loss", the value of property will be determined at the time of "loss".

**b.** For "electronic data"

We will not pay more than the actual reproduction costs of your "electronic data". If you do not replace or reproduce your "electronic data" following the "loss", the most we will pay is the cost of blank media as described in Paragraph **C.(1)(e)** of this Coverage Extension.

**(10) Electronic Data Processing Property Additional Definition**

The following definition is added to **SECTION G. DEFINITIONS** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM:**

**"Production equipment"** means any machinery and related components, including any integrated or dedicated computer system, which is used, or can

be used, to produce or process other tangible property.

The most we will pay for "loss" under this Electronic Data Processing Property Coverage Extension in any one occurrence is the Blanket Coverage Limit as provided in Section **T.** of this endorsement .

**D. Ordinance or Law**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law, (5) i**s deleted in its entirety and replaced by the following:

**(5)** The most we will pay under this Additional Coverage in any one occurrence is the following:

**(a)** For **g.(1)**, under we will pay: **(a)**, this coverage is included within the Limit of Insurance shown in the Declarations as applicable to the covered Building property. This does not increase the Limit of Insurance.

**(b)** For **g.(1)**, under we will pay: **(b)**, **(c)**, and **(d)** combined, the Blanket Coverage Limit as provided in Section **T.** of this endorsement. This is in addition to the Limits of Insurance shown in the Declarations.

**E. Valuable Papers and Records**

In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records**, the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for "loss" in any one occurrence under this Coverage Extension is the Blanket Coverage Limit as provided in Section **T.** of this endorsement.

**F. Outdoor Property**

In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, k. Outdoor Property**, the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for "loss" under this Coverage Extension is the Limit of Insurance stated in the Summary of Coverage Limits in any one occurrence, but not more than the Limit of Insurance stated in the Summary of Coverage Limits for any one tree, shrub, or plant.

**G. Tenant Move Back Expenses**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVER-**

**AGE, 5. Coverage Extensions** is amended to include the following:

## Tenant Move Back Expenses

1.  We will reimburse you for expenses you pay for Covered Move Back Costs of your tenants who temporarily vacate a portion of the building at a "premises". The vacancy must have occurred while the portion of the building rented by your tenant could not be occupied due to direct physical "loss" to your Covered Property caused by or resulting from a Covered Cause of Loss during the "coverage term". The move back must be completed within 60 calendar days after the portion of the building rented by your tenant has been repaired or rebuilt and is ready for occupancy.

2.  Covered Move Back Costs means only documented, reasonable and necessary costs of:

    a.  Packing, insuring and transporting business personal property;

    b.  Re-establishing electric utility and communication services, less refunds from discontinued services;

    c.  Assembling and setting up fixtures and equipment; or

    d.  Unpacking and re-shelving stock and supplies.

3.  If your tenants have valid and collectible insurance for Covered Move Back Costs, we will pay only for the amount of Covered Move Back Costs in excess of the amount payable from such other insurance.

4.  The most we will pay for the sum of all Covered Move Back Costs in any one occurrence under this Coverage Extension is the Blanket Coverage Limit as provided in Section **T.** of this endorsement.

## H. Peak Season

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

## Peak Season

1.  In the event that the limit of insurance stated in the Declarations for Business Personal Property is insufficient to fully insure a covered "loss" due to a Peak Season Demand for your inventory, you may apply the Blanket Coverage Limit as

provided in Section **T.** of this endorsement to that "loss".

2.  Peak Season Demand means a temporary (90 consecutive days or less) increase in your inventory to meet a seasonal demand as verified by:

    a.  Your previous inventory records for that historical period of time; and

    b.  Custom and practice in your industry.

## I. Personal Property of Others

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

## Personal Property of Others

In the event that the limit of insurance stated in the Declarations for Business Personal Property is insufficient to fully insure a covered "loss" to both your Covered Property and that which would specifically be the subject of **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property**, Subpart **(8)**, you may apply the Blanket Coverage Limit as provided in Section **T.** of this endorsement to such property as contemplated by **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property**, Subpart **(8)**.

## J. Debris Removal

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

In the event that the limits of insurance stated in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, b. Debris Removal** are insufficient to fully cover a "loss" insured thereunder, you may apply the Blanket Coverage Limit as provided in Section **T.** of this endorsement to such "loss" as is insured under Additional Coverage **b. Debris Removal**.

## K. Temperature Change

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

## Temperature Change

1.  **Coverage**

    a.  For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM,**

**SECTION A. COVERAGE, 1. Covered Property** is deleted in its entirety and replaced by the following:

Covered Property means "perishable stock" located in a building at a "premises".

**b.** For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered** is deleted in its entirety and replaced by the following:

Covered Property does not include:

"Perishable Stock" Not in Buildings

"Perishable stock" located on buildings, in or on vehicles, or otherwise in the open.

**2. Covered Causes of Loss**

For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, a. Risks of Direct Physical Loss** is deleted in its entirety and replaced by the following:

**a. Risks of Direct Physical Loss**

Covered Causes of Loss means "loss" from "temperature change" to Covered Property unless "loss" is:

**(1)** Excluded in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions**; or

**(2)** Limited in **SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations**;

that follow.

**3. Excluded Causes of Loss**

**a.** For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension, except as follows:

**(1)** Exclusion **(1)(b) Earth Movement**;

**(2)** Exclusion **(1)(c) Governmental Action;**

**(3)** Exclusion **(1)(d) Nuclear Hazard;**

**(4)** Exclusion **(1)(f) War and Military Action;**

**(5)** Exclusion **(1)(g) Water**; or

**(6)** Exclusion **(1)(h) "Fungi", Wet Rot, Dry Rot, and Bacteria.**

**b.** In addition to Paragraph **3.a.** of this Coverage Extension, we will not pay for "loss" caused by or resulting from any of the following:

**(1)** The disconnecting of any heating, refrigerating, cooling or humidity control system from the source of its power;

**(2)** The deactivation of electrical power caused by the manipulation of any switch or other device (on "premises") used to control the flow of electrical power or current;

**(3)** The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

**(a)** Lack of fuel, or

**(b)** Governmental order;

**(4)** The inability of a power source at the "premises" to provide sufficient power due to the lack of generating capacity to meet demand; or

**(5)** Breaking of any glass that is a permanent part of any heating, refrigeration, cooling or humidity control unit.

**4. Limits of Insurance**

For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION B. LIMITS OF INSURANCE** is deleted in its entirety and replaced by the following:

**SECTION B. LIMITS OF INSURANCE**

**a.** The most we will pay for "loss" caused by "temperature change" in any one occurrence is the Limit of Insurance stated in the Summary of Coverage Limits.

**b.** The Limit of Insurance is not an additional amount of insurance and will not increase the Limit of Insurance shown in the Declarations for Business Personal Property or "stock".

Includes copyrighted material of ISO Properties, Inc., with its permission.

5. **Duties in the Event of Loss**

For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 3. Duties in the Event of Loss or Damage, a.(2)** is deleted in its entirety and replaced by the following:

**(2)** All claims under this "Temperature Change" Coverage Extension should be reported immediately upon occurrence. Include a description of the damaged "stock". All damaged "stock" must be available for inspection and verification.

6. **Definitions**

The following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS:**

a. **"Perishable stock"** means personal property:

**(1)** Preserved and maintained under controlled conditions; and

**(2)** Susceptible to "loss" if the controlled conditions change.

b. **"Temperature change"** means:

**(1)** The fluctuation or total interruption of electrical power, either on or off "premises", resulting from conditions beyond your control.

**(2)** Mechanical breakdown of any refrigerating or cooling apparatus or equipment (on "premises") including the blowing of any fuse, fuses, or circuit breakers.

**(3)** Contamination by refrigerant.

**(4)** The freezing of "perishable stock" resulting from the faulty operation of any stationary heating plant, when such "perishable stock" is contained within a building at the "premises".

**L. Non-Owned Building Damage**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, j. Non-Owned Building Damage** is deleted in its entirety and replaced by the following:

If you are a tenant, you may extend the insurance provided by this Coverage Part for Business Personal Property to "loss" that occurs to the building at a "premises" you occupy but do not own.

This Coverage Extension applies only if your lease makes you legally responsible for that part of the building sustaining "loss".

This Coverage Extension does not apply to:

**(1)** Glass, including lettering and ornamentation, and also necessary:

**(a)** Repair or replacement of encasing frames or alarm tapes; and

**(b)** Expenses incurred to board up openings or remove or replace obstruction.

**(2)** Building materials and equipment removed from the "premises".

The most we will pay for "loss" under this Coverage Extension in any one occurrence is:

**(1)** The actual "loss" sustained up to the applicable Limit of Insurance for Business Personal Property for "loss" caused by theft, burglary or robbery, or the attempt of the foregoing; or

**(2)** The applicable Limit of Insurance for Business Personal Property or the Limit of Insurance stated in the Summary of Coverage Limits, whichever is less, for "loss" caused by any other Covered Cause of Loss, not referenced in **(1)** above.

**M. Inflation Guard**

Per **SECTION F. OPTIONAL COVERAGES, 2. Inflation Guard,** the percentage (%) stated in the Summary of Coverage Limits applies to all Building Property referenced in the Declarations. This coverage is excess of any Inflation Guard coverage specifically referenced in the Declarations.

**N. Brands and Labels**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Brands and Labels**

1. If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may:

a. Stamp "salvage" on the merchandise or its containers, if the stamp

Includes copyrighted material of ISO Properties, Inc., with its permission.

will not physically damage the merchandise; or

**b.** Remove the brands or labels, if doing so will not physically damage the merchandise. You must relabel the merchandise or its containers to comply with the law.

**2.** We will pay reasonable costs you incur up to the Limit of Insurance stated in the Summary of Coverage Limits in total in any one occurrence to perform the activities described in **1.a.** and **1.b.** above.

**O. Limitation - Personal Property Theft**

In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations, Limitation (3) Personal Property Theft** is deleted in its entirety and replaced by the following:

**(3) Limitation - Personal Property Theft**

This Limitation does not apply to Business Income coverage or to Extra Expense coverage. The special limit shown for each category, **(3)(a)** through **(3)(d)**, is the most we will pay for "loss" to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

**(a)** The Limit of Insurance stated in the Summary of Coverage Limits for furs, fur garments and garments trimmed with fur.

**(b)** The Limit of Insurance stated in the Summary of Coverage Limits for jewelry, watches, watch movements, jewels, pearls and precious and semi-precious stones. This limit does not apply to jewelry and watches worth $500 or less per item.

**(c)** The Limit of Insurance stated in the Summary of Coverage Limits for bullion, gold, silver, platinum and other precious alloys or metals.

**(d)** The Limit of Insurance stated in the Summary of Coverage Limits for patterns, dies, molds and forms.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

**P. Lessor's Leasehold Interest**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVER-**

**AGE, 4. Additional Coverages** is amended to include the following:

**Lessor's Leasehold Interest**

**1.** We will pay for the cost of Covered Leasehold Interest you sustain due to the cancellation of lease contracts by your tenants. The cancellation must result from direct physical "loss" to your Covered Property at the "premises" caused by or resulting from a Covered Cause of Loss during the "coverage term".

**2.** Covered Leasehold Interest:

**a.** Means the difference between the:

**(1)** Rent you were collecting at the "premises" prior to the direct physical "loss"; and

**(2)** "Rental value" of the "premises" after the direct physical "loss" has been repaired or rebuilt; and

**b.** Does not mean refunds or rebates of:

**(1)** Prepaid rent;

**(2)** Security or other deposits made by your tenants; or

**(3)** Insurance, taxes or other payments made on your behalf by tenants.

**3.** The most we will pay under this Additional Coverage is the least of:

**a.** Your Covered Leasehold Interest for the 12 months immediately following the "period of restoration" plus the 90 days of Extended Business Income but ending with the normal expiration date of each cancelled lease; or

**b.** The Limit of Insurance stated in the Summary of Coverage Limits for all Covered Leasehold Interest of all your tenants canceling their leases arising out of an occurrence at a "premises".

**Q. Unauthorized Business Card Use**

**1. BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

**Unauthorized Business Card Use**

We will pay for your loss of "money" or charges and costs you incur that result directly from the unauthorized use of

credit, debit or charge cards issued in your business name, including:

**a.** Fund transfer cards;

**b.** Charge plates; or

**c.** Telephone cards.

The most we will pay under this Additional Coverage in any one occurrence is the Limit of Insurance stated in the Summary of Coverage Limits.

**2. BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered** is amended by deleting Paragraph **a.** in its entirety and replacing it with the following:

Covered Property does not include:

**a. Accounts, Deeds, Money or Securities**

Except as provided in **SECTION A. COVERAGE:**

(1) **4. Additional Coverages, Unauthorized Business Card Use**; and

(2) **5. Coverage Extensions, a. Accounts Receivable,**

Accounts, bills, currency, deeds, food stamps or other evidences of debt, "money", notes or "securities";

**R. Ordinance or Law - Increased Period of Restoration**

In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, Ordinance or Law - Increased Period of Restoration**, paragraph **d.** is deleted in its entirety and replaced by the following:

**d.** The most we will pay for "loss" under this Coverage Extension in any one occurrence is the Limit of Insurance stated in the Summary of Coverage Limits at each "premises".

**S. Water Backup from Sewers, Drains or Sump Pumps**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended by adding the following:

**Water Backup from Sewers, Drains or Sump Pumps**

You may extend the insurance provided by this Coverage Part to apply to "loss" caused by or resulting from water or waterborne material that backs up through or overflows or is discharged from a sewer, drain, septic system, sump pump or related equipment.

(1) For this Coverage Extension, **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(g) Water, 3)** is deleted in its entirety and replaced by the following:

3) Water or waterborne material which backs up through or overflows or is discharged from a sewer, drain, septic system, sump pump or related equipment, except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup from Sewers, Drains, or Sump Pumps.**

(2) For this Coverage Extension, **SECTION C. DEDUCTIBLE** is amended by adding the following:

We will not pay for "loss" in any one occurrence caused by or resulting from water or waterborne material which backs up or overflows from a sewer, drain, septic system, sump pump or related equipment, until the amount of "loss" exceeds the Deductible shown in the Declarations, or $1,000, whichever is greater. We will then pay the amount of "loss" in excess of that deductible, up to the applicable limit indicated in Paragraph **(3)** of this extension.

(3) The most we will pay for any one occurrence under this Coverage Extension is the Blanket Coverage Limit as provided in Section **T.** of this endorsement.

**T. Blanket Coverage Limit**

We will pay up to the Limit of Insurance stated in the Schedule of this endorsement in total in any one occurrence for the sum of all "loss" insured under coverages provided in this endorsement which are subject to the Blanket Coverage Limit. You may apportion this Limit among these coverages as you choose.

Includes copyrighted material of ISO Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPak™

# MEDICAL / DENTAL OFFICE BUSINESS INCOME (AND EXTRA EXPENSE) AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE PART**

**SCHEDULE**

| Valued Daily Loss of Income | | | |
|---|---|---|---|
| Location | Building | Limit Per Day | Number of Days |
| 1 | 1 | 6,500 | 40 |
| | | | |
| | | | |
| | | | |
| | | | |

**I.** **SECTION A. COVERAGE**, Paragraph **5. Additional Coverages** of the Business Income (and Extra Expense) Coverage Part is amended to include the following:

**e. Utility Services**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by the partial or complete suspension of the utility services listed below. The partial or complete suspension of services must be caused by direct physical "loss" to those services from a Covered Cause of Loss.

**(1)** Communications Supply Services, meaning property supplying communication services, including telephone, radio, microwave, or television services to the "premises", such as:

**(a)** Communication transmission lines including fiber optic transmission lines, excluding overhead transmission and distribution lines;

**(b)** Coaxial cables; and

**(c)** Microwave radio relays, excluding satellites.

**(2)** Power Supply Services, meaning the following types of property supplying electricity, steam or natural gas to the "premises":

**(a)** Utility generating plants;

**(b)** Switching stations;

**(c)** Substations;

**(d)** Transformers; and

**(e)** Transmission lines, excluding overhead transmission and distribution lines.

**(3)** Water Supply Services, meaning the following types of property supplying water to the "premises":

**(a)** Pumping Stations; and

**(b)** Water mains.

**(4)** This Additional Coverage does not apply to "loss" to "electronic data" including destruction or corruption of "electronic data".

**f. Valued Daily Loss of Income**

**(1)** We will pay the stated Limit Per Day indicated in the Schedule of this endorsement for loss of income due to the necessary "suspension" of your "operations" during the "period of res-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

toration" caused by or resulting from any Covered Cause of Loss, up to the Number of Days indicated in the Schedule of this endorsement.

**(2)** A day is defined as a period of twenty-four hours, beginning at midnight, and during which the "operations" of the insured were or normally would be performed. We shall pay the Limit Per Day indicated in the Schedule of this endorsement for each full day of total "suspension" of business conducted by you at the "premises" where the "loss" occurred.

**(3)** For each day, during which there is a partial "suspension" of your "operations", a part of the Limit Per Day indicated in the Schedule of this endorsement will be paid. That part of the Limit Per Day will be calculated by determining the ratio of reduced hours of "operations" compared to normal hours of "operations", times the Limit Per Day indicated in the Schedule of this endorsement.

**(4)** You agree that if you could resume complete or partial "operations" at your "premises" or at another location, the amount we pay you shall be determined as if such complete or partial "operations" had been resumed.

**II.** **SECTION F. DEFINITIONS** of the Business Income (and Extra Expense) Coverage Part is amended as follows:

With respect to a "suspension" of "operations" insured under **SECTION A. COVERAGE**, Paragraph **5. Additional Coverages, e. Utility Services** of the Business Income (and Extra Expense) Coverage Part, Paragraph **a.** of Definition **7. "Period of Restoration"** is deleted and replaced by the following:

**a.** Begins 24 hours after the time of direct physical "loss".

**III.** **SECTION A. COVERAGE, 3.b. Exclusions** of the Commercial Property Coverage Part is amended as follows:

**A.** Exclusions **(1)(b) Earth Movement** and **(1)(g) Water** do not apply to Business Income and Extra Expense Coverage.

**B.** **Special Exclusion (4)(a)** does not apply to the insurance coverage provided under this endorsement.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.



# THE BRIDGE ENDORSEMENT
## TABLE OF CONTENTS

Begins on Page:

Schedule of Coverage Limits ...................................................................................................2

SECTION I - COVERAGES..........................................................................................................3

A.  Business Travel Benefit ..................................................................................................3

B.  Conference Cancellation ................................................................................................3

C.  Donation Security ..........................................................................................................4

D.  Emergency Travel Expense ............................................................................................5

E.  Fundraising Event Cancellation Expense ......................................................................5

F.  Image Restoration and Counseling Expense .................................................................6

G.  Key Individual Replacement Expense............................................................................6

H.  Kidnap Expense .............................................................................................................7

I.  Lease Assessment..........................................................................................................7

J.  Leasehold Improvements ..............................................................................................8

K.  Political Unrest Evacuation Expense..............................................................................8

L.  Premises Boundary Increase .........................................................................................9

M.  Temporary Meeting Space Expense ..............................................................................9

N.  Travel Delay Expense .....................................................................................................9

O.  Unauthorized Business Card Use ................................................................................10

P.  Unintentional Error in Description ...............................................................................10

Q.  Workplace Violence Counseling Expense.....................................................................10

R.  Deductible....................................................................................................................11

SECTION II - CONDITIONS......................................................................................................11

# THE BRIDGE ENDORSEMENT
## BRIDGE SCHEDULE OF COVERAGE LIMITS

| <u>Coverages:</u> | <u>Limit of Insurance:</u> |
|---|---|
| Business Travel Benefit | $50,000 |
| Conference Cancellation | $25,000 |
| Donation Security | $50,000 |
| Emergency Travel Expense | $50,000 |
| Fundraising Event Cancellation Expense | $25,000 |
| Image Restoration and Counseling Expense | $50,000 |
| Key Individual Replacement Expense | $50,000 |
| Kidnap Expense | $50,000 |
| Lease Assessment | $2,500 |
| Leasehold Improvements | $25,000 |
| Political Unrest Evacuation Expense | $25,000 ($5,000 per employee) |
| Temporary Meeting Space Expense | $25,000 |
| Travel Delay Expense | $1,500 |
| Unauthorized Business Card Use | $1,500 |
| Workplace Violence Counseling Expense | $50,000 |

| **Deductible:** |
|---|
| $500.00 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# THE BRIDGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**The insurance coverage and Limits of Insurance provided by this endorsement are excess of, and apply in addition to, any similar or identical coverage provided by any other endorsement attached to this Coverage Part, or by any other Coverage Part forming a part of the policy of insurance of which this Coverage Part forms a component.**

**SECTION I - COVERAGES**

**A. Business Travel Benefit**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

Business Travel Benefit

**1.** We will pay you the business travel benefit if your current "director or officer" while occupying, as a fare-paying passenger, a public conveyance provided and operated by a commercial transportation carrier for regular passenger service by land, water, or air suffers "injury" while traveling for purposes related to your business pursuits during the "coverage term".

**2.** We will not pay business travel benefit for "injury" caused directly or indirectly by any of the following:

**a.** An intentional injury by the insured, "director or officer" or decedent;

**b.** An act of suicide or attempted suicide by the insured, "director or officer" or decedent;

**c.** An act of war; or

**d.** A disease process the insured, "director or officer" or decedent was diagnosed with prior to the suffered "injury" for which coverage under this Coverage Extension is sought.

**3.** For **Business Travel Benefit** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS,** is amended to include the following:

"Injury" means:

**a.** Accidental loss of life caused by physical injury to the body;

**b.** Accidental loss of limbs or multiple fingers; or

**c.** Accidental total loss of sight, speech or hearing.

The "injury" outlined in Paragraphs **a.**, **b.**, and **c.** above must physically occur to the current "director or officer".

**4.** For **Business Travel Benefit** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS,** is amended to include the following:

"Director or officer" means that particular current director or current officer for which coverage under this Coverage Extension is sought.

The most we will pay for all "injury" under **Business Travel Benefit** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**B. Conference Cancellation**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

Conference Cancellation

**1.** We will reimburse the insured for any "business-related conference expense" incurred and not reimbursed by any other source as the result of a cancellation of a conference or convention. The cancellation must be the direct result of an order made by a civil authority responding to a "natural catastrophe" or to a "communicable disease" outbreak during the "coverage term".

**2.** For **Conference Cancellation** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

a. "Business-related conference expense" means those expenses incurred by you for your employee(s)scheduled to attend a conference or convention provided that the employee(s) was (were) registered for the conference or convention at least 30 days prior to the conference's or convention's cancellation.

b. "Communicable disease " means any disease or any related or resulting diseases, viruses, complexes, symptoms, manifestations, effects, conditions or illnesses, except this endorsement does not apply to any "loss" directly or indirectly attributable to Anthrax, Avian Influenza, Crimean-Congo Hemorrhagic Fever, Dengue Hemorrhagic Fever, Ebola Hemorrhagic Fever, Francisella Tularensis, Influenza, Lassa Fever, Marburg Hemorrhagic Fever, Meningococcal disease, Plague, Rift Valley Fever, Severe Acute Respiratory Syndrome, Smallpox, Tularemia, Yellow Fever or any pandemic or similar influenza which is defined by the United States Center for Disease Control as virulent human influenza that may cause global outbreak, or pandemic, or serious illness.

c. "Natural catastrophe" means hurricane, tornado, earthquake or flood.

The most we will pay for all "business related conference expense" under **Conference Cancellation** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

C. **Donation Security**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Donation Security**

1. We will reimburse you for a "failed donation" incurred and not reimbursed by any other source.

2. For non-cash donations, the value of the "failed donation" will be determined based on the fair market value of the non-cash item at the time of the "failed donation".

3. For **Donation Security** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

"Failed donation" means notice to the insured during the "coverage term" of:

a. The bankruptcy or reorganization of any donor whereby such bankruptcy or reorganization prevents the donor from honoring a written pledge, made during the "coverage term", of funds or other measurable, tangible property to the insured provided that the donor has never been in bankruptcy or filed for bankruptcy/reorganization prior to the time the donor's pledge was made to you; or

b. The unemployment or "incapacitation" of an individual donor during the "coverage term" preventing the donor from honoring a prior written pledge of funds or other measurable, tangible property to the insured provided that, if the donor is an individual who becomes unemployed or "incapacitated":

(1) Neither you nor the donor shall have had reason to believe the donor would become unemployed or "incapacitated" prior to the donation date;

(2) The individual donor is unemployed or "incapacitated" for at least 60 days before payment is made by the Company; and

(3) There is a written pledge of funds or other measurable, tangible property dated during the "coverage term".

4. For **Donation Security** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

"Incapacitated or incapacitation" means a person who is impaired by physical injury, physical illness, or physical disability. The cause of the physical injury, physical illness or physical disability must be accidental.

5. A donation amount which is to be collected by you over a period of more than 12 months will be deemed a single donation.

The most we will pay for all "failed donations" under **Donation Security** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**D. Emergency Travel Expense**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

Emergency Travel Expense

1. We will reimburse the reasonable "emergency travel expense", while traveling for purposes related to your business pursuits during the "coverage term", incurred by your current director or officer and necessitated by a "certified act of terrorism" which:

   **a.** Occurs during the "coverage term"; or

   **b.** Begins to occur during the "coverage term".

2. For **Emergency Travel Expense** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

   **a.** "Emergency travel expense" means:

   **(1)** Hotel expense incurred, and not reimbursed by any other source, as the result of the cancellation of scheduled transportation by a commercial transportation carrier for regular passenger service by land, water, or air. The cancellation must occur within forty-eight hours of a "certified act of terrorism"; and

   **(2)** The increased amount incurred and not reimbursed by any other source for air or train fare resulting from cancelling and rescheduling a form of transportation to replace a similarly scheduled form of transportation canceled by a commercial transportation carrier.

   **b.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   **(1)** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **(2)** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy of affect the conduct of the United States Government by coercion.

The most we will pay for all emergency travel expenses under **Emergency Travel Expense** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**E. Fundraising Event Cancellation Expense**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

Fundraising Event Cancellation Expense

1. We will reimburse you for fundraising event related expense incurred, and not reimbursed by any other source, due to the cancellation of a fundraising event. However:

   **a.** The canceled fundraising event must not be rescheduled within the "coverage term"; and

   **b.** The fundraising event cancellation must be the direct result of an order made by a civil authority responding to a "natural catastrophe" or a "communicable disease" outbreak during the "coverage term".

2. For **Fundraising Event Cancellation Expense** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

   **a.** "Communicable disease" means any disease or any related or resulting diseases, viruses, complexes, symptoms, manifestations, effects, conditions or illnesses, except this endorsement does not apply to any "loss" directly or indirectly attributable to Anthrax, Avian Influenza, Crimean-Congo Hemorrhagic Fever, Dengue Hemorrhagic Fever, Ebola Hemorrhagic Fever, Francisella Tularensis, Influenza, Lassa Fever, Marburg Hemorrhagic Fever, Meningococcal

disease, Plague, Rift Valley Fever, Severe Acute Respiratory Syndrome, Smallpox, Tularemia, Yellow Fever or any pandemic or similar influenza which is defined by the United States Center for Disease Control as virulent human influenza that may cause global outbreak, or pandemic, or serious illness.

**b.** "Natural catastrophe" means hurricane, tornado, earthquake or flood.

The most we will pay for all fundraising event cancellation expenses under **Fundraising Event Cancellation Expense** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**F. Image Restoration and Counseling Expense**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

**Image Restoration and Counseling Expense**

**1.** We will pay your "image restoration and counseling expense" resulting from a "covered event" that occurs during the "coverage term".

**2.** For **Image Restoration and Counseling Expense** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

**a.** "Covered event" means an actual or alleged act, attempt or threat of sexual misconduct or sexual molestation directed at one or more of your clients while in your care, custody and control, committed by you, any of your partners, directors, officers, employees, independent contractors or volunteers.

**b.** "Image restoration and counseling expense" means reasonable fees and expenses you necessarily incur after a "covered event" occurs for:

**(1)** The services of a public relations or similar professional image restoration organization to assist or advise you in order to minimize negative publicity and restore or otherwise positively communicate the image of your "operations".

**(2)** Legal counseling and professional psychological counseling or other necessary professional mental health treatment for you, any of your partners, directors, officers or employees as a result of a "covered event". These "image restoration and counseling expenses" are payable only if and when the accused is acquitted or is discharged from being accused of committing the "covered event".

**(3)** The recruitment of a replacement for an officer who has been relieved of their duties in your "operations" as a result of the "covered event".

The most we will pay for all "image restoration and counseling expense" under **Image Restoration and Counseling Expense** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**G. Key Individual Replacement Expense**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Key Individual Replacement Expense**

**1.** We will pay the reasonable "replacement expense" incurred, and not reimbursed by any other source, to replace your Chief Executive Officer or your Executive Director if your incumbent Chief Executive Officer or Executive Director is unable to continue due to death or permanent disability resulting from an injury that takes place during the "coverage term".

**2.** For **Key Individual Replacement Expense** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS**, is amended to include the following:

"Replacement expense" means:

**a.** Costs of advertising the employment position opening;

**b.** Travel, lodging, and meals incurred in interviewing job applicants for the position opening; and

**c.** Reasonable extra expenses incurred with our prior consent in finding, interviewing and negotiating with the job applicants including, but not limited to, overtime pay, costs to verify

the background and references of the applicants and legal expenses incurred to draw up employment contracts.

The most we will pay for all "replacement expense" under **Key Individual Replacement Expense** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**H. Kidnap Expense**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Kidnap Expense**

1. We will pay the reasonable "kidnap expense" incurred by you or your current director or officer as a result of the "kidnap" of a "covered person" that takes place during the "coverage term".

    This coverage does not apply to any "kidnapping" by or at the direction of any past or present family member of the "covered person".

2. For **Kidnap Expense** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

    a. "Covered person" means:

        (1) Any current director or officer of the named insured; or

        (2) The spouse, parent, or child of a current director or officer of the named insured.

    b. "Kidnap", "kidnapped", or "kidnapping" means the illegal taking and holding of a "covered person" by an individual who demands a "ransom". The "ransom" must specifically be demanded from your assets as a condition for the release of the "covered person".

    c. "Kidnap expense" means:

        (1) Fees and expenses of an independent negotiator you have hired with our prior approval;

        (2) Incurred interest of loans taken for the purpose of paying "ransom", provided that the loan is repaid within seven days of the insured receiving reimbursement from us;

        (3) Travel and accommodation expenses incurred by any current director or officer of the named insured;

        (4) Reward paid by the insured, with our prior approval, to an "informant" for information which leads to the arrest and conviction of parties responsible for a "kidnapping", provided that the offer of such reward is approved by the local law enforcement officials; and

        (5) Gross salary including bonuses and allowances paid by you to your "kidnapped" director or officer which is contractually due at the time the "kidnapping" occurs. The salary will be paid for a period beginning on the date of the "kidnap" and will end upon the earlier of:

            (a) Up to 30 days after the release of the director or officer, if the director or officer has not yet returned to work;

            (b) The discovery of the death of the director or officer;

            (c) 120 days after we receive the last credible evidence following the "kidnapping" that the director or officer is still alive;

            (d) 12 months after the date of the "kidnapping"; or

            (e) The exhaustion of the kidnap expense limit.

    d. "Ransom" means money or other consideration demanded or paid for the release of a "covered person".

The most we will pay for all "kidnap expense" under **Kidnap Expense** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**I. Lease Assessment**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

**Lease Assessment**

Your Business Personal Property insurance coverage is extended to apply to your share of any assessment charged to all tenants by the building owner as a result of direct physical

damage caused by or resulting from a Covered Cause of Loss that occurs during the "coverage term" to building property you occupy at a "premises" as agreed to in your written lease agreement.

The most we will pay for all "loss" under **Lease Assessment** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**J.    Leasehold Improvements**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

**Leasehold Improvements**

If your lease is cancelled in accordance with a valid lease provision as the direct result of a Covered Cause of Loss to property during the "coverage term" at a "premises" you occupy as a tenant, and you cannot legally remove Tenant Improvements and Betterments, as described in **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property, (6)** we will extend your Business Personal Property insurance coverage to apply to the unamortized value of Tenant Improvement and Betterment that remain and that you were forced to abandon.

The most we will pay for all "loss" under **Leasehold Improvements** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**K.    Political Unrest Evacuation Expense**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Political Unrest Evacuation Expense**

**1.**    We will reimburse any current director, officer, employee or volunteer of the named insured for "emergency evacuation expense" that is incurred as the direct result of "political unrest" outside of the United States of America, its territories and possessions, Puerto Rico or Canada. We will only pay "emergency evacuation expense" directly related to traveling for your business pursuits and we will only pay "emergency evacuation expenses" not reimbursed by any other source. The "political unrest" must occur in the country where your current director, officer, employee or volunteer is traveling and the "political un-

rest" must occur during the "coverage term".

No coverage is granted for travel to countries in a state of "political unrest" at the time of departure of the travel or countries under a United States Department of State trade or travel restriction at the time of incident of "political unrest".

**2.**    For **Political Unrest Evacuation Expense** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

**a.**    "Emergency evacuation expense" means:

**(1)**    Additional lodging expenses;

**(2)**    Additional transportation costs;

**(3)**    The cost of obtaining replacement of lost or stolen travel documents necessary for evacuation from the area of "political unrest"; and

**(4)**    Translation services, message transmittals and other communication expenses provided that these expenses are not otherwise reimbursable.

**b.**    "Political unrest" means:

**(1)**    A short-term condition of disturbance, turmoil or agitation within a foreign country that poses imminent risks to the security of citizens of the United States;

**(2)**    A long-term condition of disturbance, turmoil or agitation that makes a foreign country dangerous or unstable for citizens of the United States; or

**(3)**    A condition of disturbance, turmoil or agitation in a foreign country that constrains the United States Government's ability to assist citizens of the United States, due to the closure or inaccessibility of an embassy or consulate or because of a reduction of its staff for which either an alert or travel warning has been issued by the United States Department of State.

The most we will pay for all "emergency evacuation expenses" under **Political Unrest Evacuation Expense** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**L. Premises Boundary Increase**

Any reference to 1,000 feet in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM,**

1. **SECTION A. COVERAGE, 1. Covered Property, a. Building, (5)(b);** or

2. **SECTION A. COVERAGE, 1. Covered Property, b. Outdoor Signs;** or

3. **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property;** or

4. **SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations, (2) Limitations - Various Property for Specified Causes, (b), 1);** or

5. **SECTION A. COVERAGE, 5. Coverage Extensions;** or

6. **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense, (1) Business Income;** or

7. **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense, (3) Tenant Premises, (b);** or

8. **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense, (5) Alterations and New Buildings, (c);** or

9. **SECTION A. COVERAGE, 5. Coverage Extensions, f. Fences;**

is increased to 1,800 feet.

**M. Temporary Meeting Space Expense**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Temporary Meeting Space Expense**

We will reimburse you the meeting space rental expense incurred, and not reimbursed by any other source, due to the temporary unavailability of your primary meeting office space on the "premises". The unavailability of your primary meeting space must be the result of direct physical loss to a climate control system or hot water heater during the "coverage term". However, **Temporary Meeting Space Expense** does not apply to the renting of a temporary meeting space solely for use by you, your "employees", your officers or directors unless the temporary meeting space is also required for meeting with vendors, clients or customers outside your organization.

The most we will pay for all temporary meeting space rental expenses under **Temporary Meeting Space Expense** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**N. Travel Delay Expense**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Travel Delay Expense**

1. We will reimburse your current director or officers any "travel delay expense" incurred, and not reimbursed by any other source, as a result of delay or cancellation of any regularly scheduled travel on a commercial transportation carrier. The regularly scheduled travel must be directly related to your business pursuits and the cause of the cancellation must occur during the "coverage term". However, we will only pay for "travel delay expense" first incurred seventy-two (72) hours after the cancellation occurred.

   We will not pay for "travel delay expense" due to a "certified act of terrorism".

2. For Travel Delay Expense only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

   a. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

      (1) The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

      (2) The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy of affect the conduct of

the United States Government by coercion.

**b.** "Travel delay expense" means the following travel-related expense for which your director or officer produces a receipt:

**(1)** Meals and lodging;

**(2)** Alternative transportation;

**(3)** Clothing and necessary toiletries; or

**(4)** Emergency prescription and non-prescription drug expenses.

The most we will pay for all "travel delay expense" under **Travel Delay Expense in any once "coverage term"** is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**O. Unauthorized Business Card Use**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

<u>**Unauthorized Business Card Use**</u>

**1.** We will pay for your loss of "money" or charges and costs you incur that result directly from the unauthorized use of credit, debit or charge cards issued in your business name, including:

**(a)** Fund transfer cards;

**(b)** Charge plates; or

**(c)** Telephone cards.

**2.** For this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered, a. Accounts, Deeds, Money or Securities** is deleted in its entirety and replaced with the following:

> <u>**Accounts, Deeds, Money or Securities**</u>
>
> Except as provided in SECTION A. COVERAGE, 4. Additional Coverages, Unauthorized Business Card Use; and **5. Coverage Extensions, a. Accounts Receivable**, Accounts, bills, currency, deeds, food stamps or other evidences of debt, "money", notes or "securities".

**3.** The most we will pay for all loss of money or charges and costs under **Unauthorized Business Card Use** in any one "coverage term" is the Limit of Insurance

indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**P. Unintentional Error in Description**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS** is amended to include the following:

An unintentional error in the description of the occupancy or address of Covered Property will not impair this insurance, provided you report the error to us as soon as practicable after the error becomes known to you.

**Q. Workplace Violence Counseling Expense**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

<u>**Workplace Violence Counseling Expense**</u>

**1.** We will reimburse you for emotional counseling expense incurred and not reimbursed by any other source resulting from a "workplace violence" incident at your "premises" during the "coverage term". The emotional counseling expenses incurred must have been for:

**a.** Your employees who were victims of, or witnesses to the "workplace violence";

**b.** The spouse, parents or children of your employees who were victims of, or witnesses to the "workplace violence"; and

**c.** Any other person or persons who directly witnessed the "workplace violence" incident.

**2.** For **Workplace Violence Counseling Expense** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include:

"Workplace violence" means any intentional use of deadly force by any person with intent to cause harm and that results in physical injury or death of any person while on the insured's "premises".

The most we will pay for all emotional counseling expense under **Workplace Violence Counseling Expense** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

### R. Deductible

For this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FROM, SECTION C. DEDUCTIBLE** is deleted in its entirety and replaced by the following:

We will not pay for an insured event in any one occurrence until the amount of the insured event exceeds the Deductible indicated in the Bridge Schedule of Coverage Limits. We will then pay the amount of the insured event in excess of the Deductible, up to the applicable Limit of Insurance in the Bridge Schedule of Coverage Limits in this endorsement.

## SECTION II - CONDITIONS

**A.** For purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 3. Duties In The Event of Loss or Damage**, is deleted in its entirety and replaced by the following:

**3. Duties In The Event of an Insured Event**

   **a.** In the event of an insured event for which this coverage is sought, you must see that the following are done in order for coverage to apply:

     **(1)** Notify the police if a law may have been broken; however, this does not apply to **SECTION I - COVERAGES, H. KIDNAP EXPENSE.**

     **(2)** Give us prompt notice of the insured event. Include a description of any property involved.

     **(3)** As soon as possible, give us a description of how, when and where the insured event occurred.

     **(4)** Take all reasonable steps to protect any property involved from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Keep a record of your expenses necessary to protect any property involved for consideration in the settlement of the claim. This will not increase your limit of insurance. However, in no event will we pay for any subsequent insured event resulting from a cause of loss that is not a Covered Cause of Loss.

     **(5)** At our request, give us complete inventories of any damaged and undamaged property. Include

quantities, costs, values and the amount claimed as the result of the insured event.

     **(6)** As often as may be reasonably required, permit us to inspect any property proving the insured event and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis and permit us to make copies from your books and records.

     **(7)** Submit a signed sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

     **(8)** Cooperate with us in the investigation or settlement of the claim.

     **(9)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

   **b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**B.** For purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 3. Loss Payment,** paragraphs **a.** through **h.** are deleted in their entirety and replaced by the following:

   **a.** In the event of an event insured by this Coverage Part, at our option, we will either:

     **(1)** Pay the value of lost or damaged property;

     **(2)** Pay the cost of repairing or replacing the lost or damaged property;

     **(3)** Take all or any part of the property at an agreed or appraised value; or

     **(4)** Repair, rebuild or replace the property with other property of like kind and quality.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of **SECTION D. LOSS CONDITIONS, 7. Valuation** or any applicable provision that amends or supercedes this valuation condition.

**b.** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property, except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in any property for which coverage is sought.

**e.** We may adjust amounts payable as the result of an insured event with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the property for which coverage is sought.

**f.** Our payment for "loss" to personal property of others and personal effects will only be for the account of the owner of the property.

**g.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**h.** We will pay for an insured event within 30 days after we receive the sworn proof of loss if you have complied with all of the terms of this Coverage Part; and

**(1)** We have reached agreement with you on the amount of the insured event; or

**(2)** An appraisal award has been made.

**C.** For purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 7. Valuation,** the first sentence is deleted in its entirety and replaced by the following:

**7. Valuation**

We will determine the value of any property involved in the event of an insured event as follows:

**a.** At "Actual Cash Value" as of the time of the insured event, except as provided in **b., c., d.,** and **e.** below.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

Exclusion **(1)(d) Nuclear Hazard** in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** is deleted in its entirety and replaced by the following:

**(1)(d) Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused. However, if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the "loss" caused by that fire.

**FA 4028 IL 04 08**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROPERTY COVERAGE PART
# AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**MORTGAGE HOLDER'S INSURANCE COVERAGE PART**

**A. Gutters and Downspouts**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS), SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations, (1) Limitations - Various Types of Property, (f) Gutters and Downspouts** is deleted in its entirety.

**B. Pollutant Definition**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS), SECTION G. DEFINITIONS, 13. "Pollutants"** and **MORTGAGE HOLDER'S INSURANCE COVERAGE FORM, SECTION V. DEFINITIONS, 18. "Pollutants"** are deleted in their entirety and replaced by the following definition:

**"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** You use, generate or produce the "pollutant".

FA 4042 11 07

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. Concealment, Misrepresentation or Fraud**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of "loss", the breach of condition does not exist.

**C. Insurance Under Two or More Coverages**

If two or more of this policy's coverages apply to the same "loss", we will not pay more than the actual amount of the "loss".

**D. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical "loss" occurred.

**E. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**F. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. Other Insurance**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered "loss". Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same "loss", other than that described in **1.** above, we will pay only for the amount of covered "loss" in excess of the amount due from that other insurance, whether you can collect on it or not. **However, we will not reimburse any deductible or difference between Actual Cash Value and Replacement Cost valuations.** We will not pay more than the applicable Limit of Insurance.

**H. Policy Period, Coverage Territory**

Under this Coverage Part:

**1.** We cover "loss" commencing:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

**2.** The coverage territory:

**a.** The United States of America (including its territories and possessions);

**b.** Puerto Rico; and

**c.** Canada.

**I. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after "loss" to im-

pair them. But you may waive your rights against another party in writing:

**1.** Prior to a "loss" to your Covered Property or Covered Income.

**2.** After a "loss" to your Covered Property or Covered Income only if, at time of "loss", that party is one of the following:

    **a.** Someone insured by this insurance;

    **b.** A business firm:

        **(1)** Owned or controlled by you; or

        **(2)** That owns or controls you; or

    **c.** Your tenant.

This will not restrict your insurance.

**J. Definitions**

**1.** "Loss" means accidental loss or damage.

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**SCHEDULE**

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|-----|------|------------------------------|------------------------------------------|
| 1 | 1 | | B |

AMERICAN CHARTERED BANK, ISAOA
2205 BUTTERFIELD RD
DOWNERS GROVE, IL 60515-1157

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment**, as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. Contract of Sale**

**1.** The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**3.** For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

**2.** We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

## SCHEDULE

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|-----|------|------------------------------|-----------------------------------------|
| 1   | 1    |                              | B                                       |

JP MORGAN CAHSE BANK NA BUSINESS BANKING LOAN SERVICES IL1-0054
PO BOX 6026
CHICAGO, IL 60680-6026

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment**, as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. Contract of Sale**

**1.** The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**3.** For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

**2.** We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

## SCHEDULE

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|-----|------|------------------------------|------------------------------------------|
| 1 | 1 | | B |

SPD DEVELOPMENT LLC
545 N RAND RD
LAKE ZURICH, IL 60047-3134

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment**, as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. Contract of Sale**

**1.** The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**3.** For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

**2.** We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

## SCHEDULE

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|-----|------|------------------------------|-----------------------------------------|
| 1 | 1 | | B |

WELLS FARGO PRACTICE FINANCE A DIVISION OF WELLS FARGO BANK NA
2000 POWELL ST
4TH FLOOR
EMERYVILLE, CA 94608-1804

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment**, as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

      (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

      (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. Contract of Sale**

**1.** The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**3.** For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

**2.** We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN COVERAGE

### (Including Production Machinery)

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE FORM**

## A. COVERAGE

1. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE** is amended by adding the following:

   We will pay for direct damage to Covered Property caused by or resulting from an "accident" at the "premises".

2. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** is amended by:

   a. Adding the following to **(1)(e) Utility Services, (1)(g) Water 1), (2)(a) Electrical Current, (2)(d) Miscellaneous Causes of Loss, (2)(j) Exposure to Weather, (3)(a) Weather Conditions, (3)(b) Acts or Decisions**, and **(3)(c) Defects, Errors, and Omissions:**

      However, this exclusion does not apply if these causes of loss are caused by, or result from, an "accident" to Covered Property at the "premises".

   b. Deleting in its entirety **(2)(e) Explosion of Steam Apparatus.**

3. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations** is amended:

   a. By deleting in its entirety:

      (1) **(1)(a)** Steam Apparatus; and

      (2) **(1)(b)** Hot Water Boilers,

   b. And by adding the following:

      The following limitations apply only to "loss" covered by this endorsement. The sublimits provided in Paragraphs **(1)**, **(2)** and **(3)** below are included within, and are not in addition to, the Limit of Insurance shown in the Declarations as applicable to the Covered Property. These limits, or the applicable Limit of Insurance shown in the Declarations as applicable to the Covered Property, whichever is less,

apply. These limits apply to direct damage only.

(1) **Ammonia Contamination Limitation**

   If Covered Property is contaminated by ammonia as a result of an "accident" to Covered Property at the "premises", the most we will pay for this kind of damage, including salvage expense, is $50,000 per location.

(2) **Data, Media and Software Restoration**

   If "electronic data" is destroyed or corrupted as a result of an "accident" to covered equipment, the most we will pay for the expenses incurred by you for the restoration of that "electronic data" is $50,000 for all loss sustained in the "coverage term", regardless of the number of "accidents" or the number of "premises" involved.

(3) **"Hazardous Substance" Limitation**

   The following applies despite the operation of the Ordinance or Law Exclusion.

   If Covered Property is damaged, contaminated or polluted by a "hazardous substance" as a result of an "accident" to Covered Property at the "premises", the most we will pay for any additional expenses incurred by you for clean up, repair, replacement or disposal of that property is $50,000. As used here, additional expenses mean expenses incurred beyond those for which we would be liable if no "hazardous substance" had been involved.

## B. Additional Coverages

For the purposes of the coverages in this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION**

**FA 245 05 11**                                                                 **Page 1 of 3**

**A. COVERAGE, 4. Additional Coverages** is amended as follows:

**1.** The first paragraph is deleted in its entirety and replaced with the following:

All other terms and conditions of this Coverage Part, including Limits of Insurance and deductibles, apply to these Additional Coverages.

**2.** The following is added:

**a. Drying Out**

If electrical equipment included in Covered Property requires "drying out" as a result of a "flood", the reasonable expense incurred for the "drying out" will be covered. This Additional Coverage is included within the Limit of Insurance shown in the Declarations as applicable to the Covered Property.

**b. Expediting Expenses**

With respect to "loss" covered by this endorsement, and with respect to your damaged Covered Property, we will pay the reasonable extra cost to:

**(1)** Make temporary repairs;

**(2)** Expedite permanent repairs; and

**(3)** Expedite permanent replacement.

**c. Non-Owned Utility Service Equipment**

We will pay for indirect loss resulting from an "accident" to non-owned utility equipment described in **E. Definitions, 1.a.(6)** but we will not pay for any expense to repair or replace direct damage to non-owned utility equipment that:

**(1)** You do not own, lease or rent, or

**(2)** That is not in your care custody and control.

This Additional Coverage is included within the Limit of Insurance shown in the Declarations as applicable to the Covered Property.

**C. Deductible**

For the purposes of the coverages in this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION C. DEDUCTIBLE** is amended by adding the following:

The deductible applicable to "loss" covered by this endorsement is $500, or the deductible indicated in the Declarations as being applicable to the lost or damaged Covered Property, whichever is greater.

**D. Conditions**

For the purposes of the coverages in this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS** is amended by adding the following:

**1. Suspension**

Whenever any covered equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against "loss" from an "accident" to that covered equipment. This can be done by delivering or mailing a written notice of suspension to:

**a.** Your last known address; or

**b.** The address where the covered equipment is located.

Once suspended in this way, your insurance can be reinstated only by written notice from us.

If we suspend your insurance, you will get a pro rata refund of premium for that covered equipment. However, the suspension will be effective even if we have not yet made or offered a refund.

**2. Inspection**

If any Covered Property requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf.

**E. Definitions**

For the purposes of the coverages in this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended by adding the following:

**1. a.** "Accident" means a sudden and accidental breakdown of the following covered equipment:

**(1)** Any boiler;

**(2)** Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents;

**(3)** Any piping and its accessory equipment;

**(4)** Any refrigeration or air conditioning system; or

**(5)** Any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

**(6)** Equipment of a type described in definition **a.(1)** through **(5)** above which you do not own, lease or rent and is not in your care, custody or control that is on or within one mile of a covered "location", and is supplying you with electricity, gas, water, steam, heat, refrigeration, air conditioning or communication services.

At the time the breakdown occurs, it must become apparent by physical damage that requires repair or replacement of the covered equipment or part thereof.

**b.** None of the following is an "accident":

**(1)** Depletion, deterioration, corrosion or erosion, wear and tear;

**(2)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(3)** The functioning of any safety or protective device; or

**(4)** The breakdown of any structure or foundation.

**c.** None of the following are covered equipment:

**(1)** Any sewer piping, underground gas piping, or piping forming a part of a sprinkler system;

**(2)** Water piping other than boiler feed water piping, boiler condensate return piping or water piping forming a part of a refrigeration or air conditioning system;

**(3)** Insulating or refractory material;

**(4)** Vehicle, elevator, escalator, conveyor, hoist or crane; or

**(5)** Felt, wire, screen, die, extrusion plate, swing hammer, grinding disc, cutting blade, non-electrical cable, chain, belt, rope, clutch plate, brake pad, nonmetallic part, or any part or tool subject to periodic replacement.

**d.** If a strike, riot, civil commotion, act of sabotage or vandalism results in an "accident", this insurance applies. However, the War and Military Action Exclusion and the conditions of this Coverage Part still apply.

**2.** **"Drying out"** means restoration of electrical equipment to service following a "flood" by removal of excess moisture from that equipment including:

**a.** Application of heat or controlled electrical current, circulation of air, or use of dehumidification equipment, after rinsing the electrical equipment with clean fresh water if necessary to flush away "flood" debris;

**b.** "Drying out" can be done in place or equipment can be disconnected and removed to a repair facility for drying if necessary.

**c.** "Drying out" does not include or apply to:

**(1)** Replacement or repair of any electrical equipment or parts thereof; or

**(2)** Any expense related to deconstruction, demolition, or reconstruction of any building component, structure or part thereof to gain access to electrical equipment.

**3.** **"Flood"** means a general and temporary condition of partial or complete inundation of normally dry land areas due to:

**a.** The overflow of inland or tidal waters;

**b.** The unusual or rapid accumulation or runoff of surface waters from any source; or

**c.** Mudslides or mudflows, which are caused by flooding as defined above in Paragraph **3.b.** For the purpose of this Covered Cause of Loss, a mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

All flooding in a continuous or protracted event will constitute a single "flood".

**4.** **"Hazardous Substance"** means a substance declared to be hazardous to health by a governmental agency.

**5.** **"Production Machinery"** means:

**a.** Production or process machine or apparatus that processes, forms, cuts, shapes grinds or conveys raw material, material in process or finished products, and the computers and their peripherals that control or operate such a machine or apparatus.

**b.** Machine or apparatus used for research, medical, diagnostic, surgical, dental or pathological purposes, and computers and their peripherals that control or operate such a machine or apparatus.

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F. DEFINITIONS.**

## SECTION A. COVERAGE

Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

**a.** Business Income including "Rental Value".

**b.** Business Income other than "Rental Value".

**c.** "Rental Value".

If option **a.** above is selected, the term Business Income will include "Rental Value". If option **c.** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

1. **Business Income**

   **a.** We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical "loss" to property at a "premises" which is described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle, the "premises" include the area within 1,000 feet of the site at which the "premises" are located.

   **b.** Business Income means the:

      **(1)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

      **(2)** Continuing normal operating expenses incurred, including payroll.

   **c.** If you are a tenant and occupy only part of the site at which the "premises" are located, for the purposes of this Coverage Part only, your "premises" is the portion of the building which you rent, lease or occupy, including:

      **(1)** Any area within the building or on the site at which the "premises" are located if that area services or is used to gain access to the described "premises".

      **(2)** Your personal property in the open (or in a vehicle) within 1,000 feet.

2. **Extra Expense**

   **a.** We will pay the actual and necessary Extra Expense you incur due to direct physical "loss" to property at a "premises" which is described in the Declarations and for which an Extra Expense Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle, the "premises" include the area within 1,000 feet of the site at which the "premises" are located.

   **b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical "loss" to property caused by or resulting from a Covered Cause of Loss. Coverage pertains to expenses incurred (other than the expense to repair or replace property) to:

      **(1)** Avoid or minimize the "suspension" of business and to continue "operations":

         **(a)** At the "premises"; or

         **(b)** At replacement locations or at temporary locations, including:

            **1)** Relocation expenses; and

            **2)** Costs to equip and operate the replacement or temporary locations.

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

**(3)** To the extent it reduces the amount of "loss" that otherwise would have been payable under this Coverage Part, we will pay any Extra Expense to:

**(a)** Repair or replace any property; or

**(b)** Research, replace or restore the lost information on damaged "valuable papers and records".

However, if any property obtained for temporary use during the "period of restoration" remains after the resumption of normal "operations", the amount we will pay under this Coverage will be reduced by the salvage value of that property.

**c.** If you are a tenant and occupy only part of the site at which the "premises" are located, for the purposes of this Coverage Part only, your "premises" is the portion of the building which you rent, lease or occupy, including:

**(1)** Any area within the building or on the site at which the "premises" are located if that area services or is used to gain access to the described "premises".

**(2)** Your personal property in the open (or in a vehicle) within 1,000 feet.

### 3. Covered Causes of Loss

See **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss.**

### 4. Limitation for Electronic Data

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of "electronic data", or any "loss" to "electronic data", except as provided under **SECTION A. COVERAGE, 5. Additional Coverages, d. Interruption of Computer Operations.**

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of "electronic data", or any "loss" to "electronic data", except as provided under **SECTION A. COVERAGE, 5. Additional Coverages, d. Interruption of Computer Operations.**

### 5. Additional Coverages

The Additional Coverages are not additional Limits of Insurance.

#### a. Civil Authority

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the "premises" due to direct physical "loss" to property, other than at the "premises", caused by or resulting from any Covered Cause of Loss.

This coverage for Business Income will begin immediately after the time of that action and will apply for a period of up to 30 days from the date of that action.

This coverage for Extra Expense will begin immediately after the time of that action and will end:

**(1)** 30 consecutive days after the time of that action; or

**(2)** When your Business Income coverage ends;

whichever is later.

#### b. Alterations and New Buildings

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical "loss" at the "premises" caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

**(a)** Used in the construction, alterations or additions; or

**(b)** Incidental to the occupancy of new buildings.

If such direct physical "loss" delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical "loss" had not occurred.

#### c. Extended Business Income

**(1)** Business Income Other Than "Rental Value"

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this Coverage Part, we will pay for the actual loss of Business Income you incur during the period that:

**(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical "loss" had occurred; or

**(ii)** 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of Business Income must be caused by direct physical "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(2)** "Rental Value"

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you incur during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical "loss" had occurred; or

**(ii)** 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct physical "loss" at the described "premises" caused by or resulting from any Covered Cause of Loss.

**d.** **Interruption of Computer Operations**

**(1)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

**(2)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage - **Interruption of Computer Operations** is $2,500 for all "loss" sustained and expense incurred in any "coverage term", regardless of the number of interruptions or the number of "premises", locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for "loss" or expense sustained or incurred as a result of subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not increase the amount of insurance in the next "coverage term". With respect to any interruption which begins in one "coverage term" and continues or results in additional loss or expense in that subsequent "coverage term", all "loss" and expense is

deemed to be sustained or incurred in the "coverage term" in which the interruption began.

**(4)** This Additional Coverage - **Interruption in Computer Operations** does not apply to "loss" sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in paragraph **(3)** of this Additional Coverage has not been exhausted.

## 6. Coverage Extension

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance. **SECTION D. ADDITIONAL CONDITION, 1. Coinsurance** does not apply to this Coverage Extension.

### Newly Acquired Locations

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than property situated at fairs or exhibitions.

**b.** The most we will pay for "loss" under this Extension for the sum of Business Income loss and Extra Expense incurred is $100,000 at each location.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 90 days pass from the date you acquire your new building or business personal property or begin construction on that part of the building that would qualify as Covered Property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date construction begins on that part of the building that would qualify as Covered Property, or you acquire the new property.

## SECTION B. LIMITS OF INSURANCE

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## SECTION C. LOSS CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

## 1. Appraisal

If we and you disagree on the amount of Net Income and operating expense or the amount of "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

## 2. Duties in the Event of Loss

**a.** You must see that the following are done in the event of "loss":

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical "loss". Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when, and where the direct physical "loss" occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do

Includes copyrighted material of ISO Properties, Inc., with its permission.

this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3.** <u>Loss Determination</u>

**a.** The amount of Business Income "loss" will be determined based on:

**(1)** The Net Income of the business before the direct physical "loss" occurred;

**(2)** The likely Net Income of the business if no physical "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical "loss"; and

**(4)** Other relevant sources of information, including;

**(a)** Your financial records and accounting procedures;

**(b)** Bills, invoices and other vouchers; and

**(c)** Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

**(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical "loss" had occurred. We will deduct from the total of such expenses:

**(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(2)** Necessary expenses that reduce the Business Income "loss" that otherwise would have been incurred.

**c.** <u>Resumption of Operations</u>

We will reduce the amount of your:

**(1)** Business Income "loss", other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the "premises" or elsewhere.

**(2)** Extra Expense "loss" to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4.** <u>Loss Payment</u>

We will pay for insured "loss" within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and

**a.** We have reached agreement with you on the amount of "loss"; or

**b.** An appraisal award has been made.

**SECTION D. ADDITIONAL CONDITION**

**1.** <u>Coinsurance</u>

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS**.

We will not pay the full amount of any Business Income "loss" if the Limit of Insurance for Business Income is less than:

**a.** The Coinsurance percentage shown for Business Income in the Declarations; times

**b.** The sum of:

Includes copyrighted material of ISO Properties, Inc., with its permission.

**(1)** The Net Income (Net Profit or Loss before income taxes), and

**(2)** Operating expenses, including payroll expenses,

that would have been earned or incurred (had no "loss" occurred) by your "operations" at the "premises" for the 12 months following the inception, or last previous anniversary date, of this Coverage Part (whichever is later).

Instead, we will determine the most we will pay using the following steps:

**1.** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this Coverage Part by the Coinsurance percentage;

**2.** Divide the Limit of Insurance for the described "premises" by the figure determined in Step **1.**; and

**3.** Multiply the total amount of "loss" by the figure determined in Step **2.**

We will pay the amount determined in Step **3.** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the "loss" yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

**1.** Prepaid freight - outgoing;

**2.** Returns and allowances;

**3.** Discounts;

**4.** Bad debts;

**5.** Collection expenses;

**6.** Cost of raw stock and factory supplies consumed (including transportation charges);

**7.** Cost of merchandise sold (including transportation charges);

**8.** Cost of other supplies consumed (including transportation charges);

**9.** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

**10.** Power, heat and refrigeration expenses that do not continue under contract (if form **CP 15 11** is attached);

**11.** All ordinary payroll expenses or the amount of payroll expense excluded (if form **FA 465** is attached); and

**12.** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion - not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example No. 1 (Underinsurance):**

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date of this Coverage Part at the "premises" would have been — $400,000

The Coinsurance percentage is — 50%

The Limit of Insurance is — $150,000

The amount of "loss" is — $80,000

Step 1: $400,000 X 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2: $150,000 ÷ $200,000 = .75

Step 3: $ 80,000 X .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example No. 2 (Adequate Insurance):**

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date of this Coverage Part at the "premises" would have been — $400,000

The Coinsurance percentage is — 50%

The Limit of Insurance is — $200,000

The amount of "loss" is — $80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $80,000 (amount of "loss").

Includes copyrighted material of ISO Properties, Inc., with its permission.

This condition does not apply to Extra Expense.

## SECTION E. OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

1. **Maximum Period of Indemnity**

   a. **SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to this Coverage Part at the "premises" to which this Optional Coverage applies.

   b. The most we will pay for the total of Business Income "loss" and Extra Expense is the lesser of:

      (1) The amount of Business income "loss" sustained and Extra Expense incurred during the 120 days immediately following the beginning of the "period of restoration"; or

      (2) The Limit of Insurance shown in the Declarations.

2. **Monthly Limit of Indemnity**

   a. **SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to this Coverage Part at the "premises" to which this Optional Coverage applies.

   b. The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

      (1) The Limit of Insurance, multiplied by

      (2) The fraction shown in the Declarations for this Optional Coverage.

**Example:**

When:  The Limit of Insurance is   $120,000

The fraction shown in the Declarations for this Optional Coverage is   1/4

The most we will pay for "loss" in each period of 30 consecutive days is:

$120,000 X 1/4 = $30,000

If, in this example, the actual amount of "loss" is:

| Days | 1-30 | $40,000 |
|---|---|---|
| Days | 31-60 | 20,000 |
| Days | 61-90 | 30,000 |
| | | $90,000 |

We will pay:

| Days | 1-30 | $30,000 |
|---|---|---|
| Days | 31-60 | 20,000 |

| Days | 61-90 | 30,000 |
|---|---|---|
| | | $80,000 |

The remaining $10,000 is not covered.

3. **Business Income Agreed Value**

   a. To activate this Optional Coverage:

      (1) A Business Income Report/Work Sheet must be made a part of this Coverage Part and must show financial data for your "operations":

         (a) During the 12 months prior to the date of the Work Sheet; and

         (b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

      (2) The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown on the Declarations.   The Agreed Value should be at least equal to:

         (a) The Coinsurance percentage shown in the Declarations; multiplied by

         (b) The amount of Net Income and Operating Expenses for the following 12 months you report on the Work Sheet.

   b. Except as noted in **c.** below, the **ADDITIONAL CONDITION Coinsurance**, is suspended until the expiration date of this Coverage Part.

   c. We will reinstate the **ADDITIONAL CONDITION Coinsurance**, automatically if you do not submit a new Work Sheet and Agreed Value:

      (1) When you request a change in your Business Income Limit of Insurance; or

      (2) When you request the coinsurance percentage be changed on the Work Sheet.

   d. If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any "loss" than the amount of "loss" multiplied by:

      (1) The Business Income Limit of Insurance; divided by

      (2) The Agreed Value.

**Example:**

When:  The Limit of Insurance is   $100,000

---

FA 213 04 04  Includes copyrighted material of ISO Properties, Inc., with its permission.

The Agreed Value is      $200,000

The amount of "loss" is     $ 80,000

Step (a): $100,000 ÷ $200,000 = .50

Step (b): .50 X $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

4. **Extended Period of Indemnity**

In **SECTION A. COVERAGE, 5. Additional Coverages, c. Extended Business Income**, the number "60" in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

## SECTION F. DEFINITIONS

1. **"Computer programs"** means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

2. **"Coverage term"** means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

   a. The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

      (1) The day the policy period shown in the Declarations ends; or

      (2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

   b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

3. **"Electronic data"** means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

4. **"Finished Stock"** means stock you have manufactured.

   "Finished Stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

5. **"Loss"** means accidental loss or damage.

6. **"Operations"** means:

   a. Your business activities occurring at the "premises"; and

   b. The tenantability of the "premises", if coverage for Business Income including "Rental Value" or "Rental Value" applies.

7. **"Period of Restoration"** means the period of time that:

   a. Begins at the time of direct physical "loss".

   b. Ends on the earlier of:

      (1) The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

   c. "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

   d. The expiration date of the Coverage Part will not cut short the "period of restoration".

8. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused di-

rectly or indirectly by the "pollutants" and whether:

**a.** You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** You use, generate or produce the "pollutant".

9. **"Premises"** means the Location of Premises described in the Declarations.

10. **"Rental Value"** means Business Income that consists of:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

**b.** Continuing normal operating expenses incurred in connection with that "premises", including:

**(1)** Payroll; and

**(2)** The amount of charges, which are the legal obligation of the tenant(s) but would otherwise be your obligations.

11. **"Suspension"** means:

**a.** The slowdown or cessation of your business activities; and

**b.** That a part or all of the "premises" is rendered untenantable if coverage for Business Income including "Rental Value" or "Rental Value" applies.

12. **"Valuable Papers and Records"** means inscribed, printed or written documents, manuscripts or records, including abstracts, books, card index systems, deeds, drawings, films, maps, mortgages, or proprietary information. But "valuable papers and records" does not mean "money" or "securities" or "electronic data", including the materials on which the "electronic data" is recorded.

Includes copyrighted material of ISO Properties, Inc., with its permission.

# THE CINCINNATI INSURANCE COMPANY

**A Stock Insurance Company**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: **ECP 026 96 01**

Named Insured is the same as it appears in the Common Policy Declarations

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $ 2,000,000 | |
| GENERAL AGGREGATE LIMIT | $ 4,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 4,000,000 | |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 2,000,000 | ANY ONE PERSON OR ORGANIZATION |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | | ANY ONE |
| $100,000 limit unless otherwise indicated herein: | $ 2,000,000 | PREMISES |
| MEDICAL EXPENSE LIMIT | | |
| $5,000 limit unless otherwise indicated herein: | $ SEE GCP203 | ANY ONE PERSON |

| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|
| | | A - Area<br>B - Payroll<br>C - Gross Sales<br>D - Units<br>E - Other | Products /<br>Completed<br>Operations | All Other | Products /<br>Completed<br>Operations | All Other |
| LOC. 1 - IL | | | | | | |
| DENTISTS | 06034 | A 3,000 | | 147.672 | | 443 |
| INCL PROD AND/OR COMP OP | | | | | | |
| BROADENED COVERAGE | 20291 | | | 2.5% | | 150 MP |
| BI EXCEPTIONS TO POLLUTANT EXCLUSION | 20410 | | | 2% | | 50 MP |

The General Liability Coverage Part is subject to an annual minimum premium.

TOTAL ANNUAL PREMIUM  **$ 643**

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:**

| | | |
|---|---|---|
| GA101 | 12/04 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| GA4251 | 01/06 | NOTICE TO POLICYHOLDERS - MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS |
| GCP203 | 05/11 | CINCIPAK™ COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT |
| CG2027 | 11/85 | ADDITIONAL INSURED - CO-OWNER OF INSURED PREMISES |
| CG2244 | 07/98 | EXCLUSION - SERVICES FURNISHED BY HEALTH CARE PROVIDERS |
| GA3024 | 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| GA4205IL | 10/01 | ILLINOIS CHANGES - KNOWN INJURY OR DAMAGE |
| GA4250 | 11/05 | MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS |
| GA478 | 12/04 | BODILY INJURY EXCEPTIONS TO POLLUTANT EXCLUSION |
| GCP201 | 05/11 | CINCIPAK™ COMMERCIAL GENERAL LIABILITY AMENDATORY ENDORSEMENT |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS**.

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

        No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**.

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph **1.d.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

    c. "Bodily injury" or "property damage" which:

        (1) Occurs during the "coverage term"; and

        (2) Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

        includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

    d. You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

        (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

        (3) First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

        (4) Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

        (5) Becomes aware, or reasonably should have become aware, of a

condition from which "bodily injury" or "property damage" is substantially certain to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured sustained in the "workplace";

(2) An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or

(3) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraphs **(1)** or **(2)** above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollutant**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, Paragraph **(a)** does not apply to:

1) "Bodily injury" to any person injured while on any premises, site or location owned or occupied by, or rented or loaned to, you provided:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**a)** The injury is caused by the inadequate ventilation of vapors;

**b)** The person injured is first exposed to such vapors during the policy period; and

**c)** Within 30 days of such first exposure, the person injured is clinically diagnosed or treated by a physician for the medical condition caused by the exposure to such vapors. However, Paragraph **c)** does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

This exception **1)** shall apply only to Named Insureds; we shall have no duty to defend or pay damages for any person or organization that is not a Named Insured. However, this paragraph does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

For the purpose of the exception granted in Paragraph **1)** only, vapors means any gaseous or airborne irritant or airborne contaminant, including smoke, fumes, vapor or soot, but excluding asbestos, which is discharged, dispersed, emitted, released or escapes from materials, machinery or equipment used in the service or maintenance of the premises. Vapors does not mean any gaseous or airborne irritants or contaminants used in a manufacturing process or which is the product or by-product of any manufacturing process;

**2)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to this Coverage Part as an additional insured with respect to your ongoing operations or "your work" performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**3)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**1)** Any insured; or

**2)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, Paragraph **(d)** does not apply to:

**1)** "Bodily injury" or "property damage" arising out of the discharge, dispersal, seepage, migration, release, es-

cape or emission of fuels, lubricants or other operating fluids, or exhaust gases, which are needed to perform, or are the result of, the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted with the intent to cause "bodily injury" or "property damage" or with the knowledge that "bodily injury" or "property damage" is substantially certain to occur, or if such fuels, lubricants or other operating fluids, or exhaust gases, are brought on or to the premises, site or location with such intent to escape, seep or migrate, or be discharged, dispersed, released or emitted as part of the operations being performed by such insured, contractor or subcontractor;

**2)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**3)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the op-

erations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, Paragraphs **(2)(a)** and **(b)** do not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of an insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire or explosion) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days, for which the amount we will pay is limited to the Damage To Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.    Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.    Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.    Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**    "Your product";

**(2)**    "Your work"; or

**(3)**    "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.    Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p.    Asbestos**

"Bodily injury" or "property damage" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q.    Employment-Related Practices**

"Bodily injury" to:

**(1)**    A person arising out of any:

**(a)**    Refusal to employ that person;

**(b)**    Termination of that person's employment; or

**(c)**    Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)**    The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)**    Whether the insured may be liable as an employer or in any other capacity; and

**(2)**    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**r.    Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, prior to the "coverage term" in which such "bodily injury" or "property damage" occurs or begins to occur.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that "bodily injury" or "property damage" has occurred or has begun to occur at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

**(3)** First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

**(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

**s.** **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

**t.** **Distribution of Material in Violation of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **q.** do not apply to "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner, for which the amount we will pay is limited to the Damage to Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.** **Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**.

**b.** This insurance applies to "personal and advertising injury" only if:

**(1)** The "personal and advertising injury" is caused by an offense arising out of your business; and

**(2)** The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period; and

**(3)** Prior to the "coverage term" in which the "personal and advertising injury" offense is committed, you did not know, per Paragraph **1.d.** below, that the offense had been committed or had begun to be committed, in whole or in part.

**c.** "Personal and advertising injury" caused by an offense which:

**(1)** Was committed during the "coverage term"; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have been committed;

includes any continuation, change or resumption of that offense after the end of the "coverage term" in which it first became known by you.

**d.** You will be deemed to know that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

**(3)** First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

**(4)** Becomes aware, or reasonably should have become aware, by any means, other than as described in **(3)** above, that the offense had been committed or had begun to be committed; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

**2.** **Exclusions**

This insurance does not apply to:

**a.** **Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b.** **Material Published With Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c.** **Material Published Prior to Coverage Term**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the later of the following:

**(1)** The inception of this Coverage Part; or

**(2)** The "coverage term" in which insurance coverage is sought.

**d.** **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e.** **Contractual Liability**

"Personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" is caused by or arises out of an offense committed subsequent to the execution of the contract or agreement. When a claim for such "personal and advertising injury" is made, we will defend that claim, provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

**f.** **Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g.** **Quality or Performance of Goods - Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h.** **Wrong Description of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i.** **Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, pat-

ent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j.  Insureds in Media and Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **17. a., b.** and **c.** of "personal and advertising injury" under **SECTION V - DEFINITIONS**.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.  Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board any insured hosts, owns, or over which any insured exercises control.

**l.  Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.  Employment Related Practices**

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**n.  Pollutant**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time.

**o.  Pollutant-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**p.  Asbestos**

"Personal and advertising injury" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q.  Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that a "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part, prior to the "coverage term" in which such offense

was committed or began to be committed.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that a "personal and advertising injury" offense has been committed or has begun to be committed at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

**(3)** First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

**(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that the "personal and advertising injury" offense had been committed or had begun to be committed; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

**r. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**s. Distribution of Material in Violation of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C. MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within three years of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

### a. Any Insured

To any insured, except "volunteer workers".

### b. Hired Person

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

### c. Injury on Normally Occupied Premises

To a person injured on that part of premises you own or rent that the person normally occupies.

### d. Workers' Compensation and Similar Laws

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

### e. Athletic Activities

To any person injured while officiating, coaching, practicing for, instructing or participating in any physical exercises or games, sports, or athletic contests or exhibitions of an athletic or sports nature.

### f. Products-Completed Operations Hazard

Included within the "products-completed operations hazard".

### g. Coverage A Exclusions

Excluded under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we become obligated to pay and which falls within the applicable limit of insurance. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by

you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

  **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

  **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

  **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

  **(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

  **(a)** Owned, occupied or used by; or

  **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by,

  you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

  **(1)** With respect to liability arising out of the maintenance or use of that property; and

  **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  **a.** Insurance under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

  **b.** **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

  **c.** **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits".

**2. a.** The General Aggregate Limit is the most we will pay for the sum of:

  **(1)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

  **(2)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

  **(3)** Damages under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY.**

  This General Aggregate Limit will not apply if either the Location General Aggre-

gate Limit of Insurance, Paragraph **2.b.**, or the Construction Project General Aggregate Limit of Insurance, Paragraph **2.c.** applies.

**b.** A separate Location General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each location owned by, or rented or leased to you and is the most we will pay for the sum of:

**(1)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(2)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS,**

which can be attributed to operations at only a single location owned by, or rented or leased to you.

**c.** A separate Construction Project General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each construction project and is the most we will pay for the sum of:

**(1)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(2)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

which can be attributed only to ongoing operations and only at a single construction project.

**d.** Only for the purpose of determining which General Aggregate Limit of Insurance, **2.a., 2.b.,** or **2.c.**, applies:

**(1)** Location means premises involving the same or connecting lots, or premises, whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**(2)** Construction project means a location you do not own, rent or lease where ongoing improvements, alterations, installation, demolition or maintenance work is performed by you or on your behalf. All connected ongoing improvements, alterations, installation, demolition or maintenance work performed by you or on

your behalf at the same location for the same persons or organizations, no matter how often or under how many different contracts, will be deemed to be a single construction project.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.a.** above, the Personal and Advertising Injury Limit is the most we will pay under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2. or 3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**; and

**b.** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS**;

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage to Premises Rented to You Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire or explosion, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under **COVERAGE C. MEDICAL PAYMENTS** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1.** **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2.** **Duties in the Event of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or

a "personal and advertising injury" offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable

under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar insurance for "your work";

**(b)** That is Fire or Explosion insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to

premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g. Aircraft, Auto or Watercraft**.

**(2)** Any other primary insurance available to the insured covering liability for damages arising out of the premises or operations, or the products and completed operations, for which the insured has been added as an additional insured by attachment of an endorsement.

**(3)** Any other insurance:

**(a)** Whether primary, excess, contingent or on any other basis, except when such insurance is written specifically to be excess over this insurance; and

**(b)** That is a consolidated (wrap-up) insurance program which has been provided by the prime contractor/project manager or owner of the consolidated project in which you are involved.

When this insurance is excess, we will have no duty under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance

shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**6. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If:

**(1)** The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

**(2)** The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7. Representations**

By accepting this Coverage Part, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this Coverage Part in reliance upon your representations.

**8. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**10. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Part and any other Coverage Form, Coverage Part or policy issued to you by us or any company affiliated with us apply to the same "occurrence" or "personal and advertising injury" offense, the aggregate maximum limit of insurance under all the Coverage Forms, Coverage Parts or policies shall not exceed the highest applicable limit of insurance under any one Coverage Form, Coverage Part or policy. This condition does not apply to any Coverage Form, Coverage Part or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Part.

**11. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article. For purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

**2.** "Authorized representative" means:

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are "authorized representatives".

**(2)** A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

**(3)** A limited liability company, your members and your managers are "authorized representatives".

**(4)** An organization other than a partnership, joint venture or limited liability company, your "executive officers" and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

**(5)** A trust, your trustees are "authorized representatives".

**b.** Your "employees":

**(1)** Assigned to manage your insurance program; or

**(2)** Responsible for giving or receiving notice of an "occurrence", "personal and advertising injury" offense, claim or "suit";

are also "authorized representatives".

**3.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**4.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at

12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**6.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication,

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement to which we agree.

**7.** "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**8.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**9.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**10.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**11.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**12.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury", "property damage" or "personal and advertising injury" arising out of construction or demolition operations, within 50 feet of any rail-

road property and affecting any rail-road bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engi-neer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, re-ports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(3)** Under which the insured, if an archi-tect, engineer or surveyor, assumes liability for an injury or damage aris-ing out of the insured's rendering or failure to render professional serv-ices, including those listed in Para-graph **(2)** above and supervisory, in-spection, architectural or engineering activities;

**(4)** That indemnifies an advertising, pub-lic relations or media consulting firm for "personal and advertising injury" arising out of the planning, execution or failure to execute marketing com-munications programs. Marketing communications programs include but are not limited to comprehensive marketing campaigns; consumer, trade and corporate advertising for all media; media planning, buying, monitoring and analysis; direct mail; promotion; sales materials; design; presentations; point-of-sale materi-als; market research; public relations and new product development;

**(5)** Under which the insured, if an adver-tising, public relations or media con-sulting firm, assumes liability for "personal and advertising injury" arising out of the insured's rendering or failure to render professional services, including those services listed in Paragraph **(4)**, above;

**(6)** That indemnifies a web-site designer or content provider, or Internet search, access, content or service provider for injury or damage arising out of the planning, execution or fail-ure to execute Internet services. Internet services include but are not limited to design, production, distri-bution, maintenance and administra-tion of web-sites and web-banners; hosting web-sites; registering do-main names; registering with search

engines; marketing analysis; and providing access to the Internet or other similar networks; or

    **(7)** Under which the insured, if a web-site designer or content provider, or Internet search, access, content or service provider, assumes liability for injury or damage arising out of the insured's rendering or failure to ren-der Internet services, including those listed in Paragraph **(6)**, above.

**13.** "Leased worker" means a person leased to you by a labor leasing firm under an agree-ment between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes su-pervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**14.** "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a me-chanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**15.** "Mobile equipment" means any of the follow-ing types of land vehicles, including any at-tached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use princi-pally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, dig-gers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrap-ers or rollers;

    **e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to

permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**18.** "Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** The insured uses, generates or produces the "pollutant".

**19.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed; or

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a schedule, states that products-completed operations are included.

**20.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**21.** "Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

**22.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**23.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**24.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of "occurrence".

**25.** "Your product":

**a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)** You;

        **(b)** Others trading under your name; or

        **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**26.** "Your work":

**a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)** The providing of or failure to provide warnings or instructions.

# NUCLEAR ENERGY LIABILITY EXCLUSION
## (Broad Form)

1.  The insurance does not apply:

    A.  Under any Liability Coverage, to "bodily injury" or "property damage":

        (1) With respect to which an insured under this Coverage Part is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this Coverage Part not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C.  Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

        (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured, or (b) has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

        (3) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2.  As used in this exclusion:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "special nuclear material" or "by-product material".

    "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

    "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

    "Nuclear facility" means:

    A.  Any "nuclear reactor";

    B.  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

    C.  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**D.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# NOTICE TO POLICYHOLDERS - MOBILE EQUIPMENT
# SUBJECT TO MOTOR VEHICLE INSURANCE LAWS

This is a notice of a change in your policy. NO COVERAGE IS PROVIDED BY THIS NOTICE nor can it be construed to replace any provisions of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE for complete information on the coverage you are provided. If there is any conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**GA 4250** Mobile Equipment Subject to Motor Vehicle Insurance Laws has been added to your policy.

This endorsement revises the definitions of "mobile equipment" and "auto" to those definitions used prior to the introduction of Commercial General Liability Form, **GA 101 12 04.** This endorsement only applies if you have no Auto Coverage Form in force or the land vehicle does not meet the definition of auto in your Auto Coverage Form.

**GA 4251 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPak™

# COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A. Endorsement - Table of Contents:**

**Coverage:**      **Begins on Page:**

1. Employee Benefit Liability Coverage.................................................................................................2
2. Unintentional Failure to Disclose Hazards .......................................................................................7
3. Medical Payments.............................................................................................................................7
4. 180 Day Coverage for Newly Formed or Acquired Organizations ...................................................7
5. Waiver of Subrogation .....................................................................................................................7
6. Automatic Additional Insured - Specified Relationships:  .................................................................8
   - Managers or Lessors of Premises;
   - Lessor of Leased Equipment;
   - Vendors; and
   - State or Political Subdivisions - Permits Relating to Premises
7. Property Damage to Borrowed Equipment .....................................................................................10
8. Employees as Insureds - Specified Health Care Services:  .............................................................11
   - Nurses;
   - Emergency Medical Technicians; and
   - Paramedics
9. Broadened Notice of Occurrence....................................................................................................11

**B. Limits of Insurance:**

The Commercial General Liability Limits of Insurance apply to the insurance provided by this endorsement, except as provided below:

**1. Employee Benefit Liability Coverage**

| | |
|---|---|
| Each Employee Limit: | $ 1,000,000 |
| Aggregate Limit: | $ 3,000,000 |
| Deductible: | $      1,000 |

**3. Medical Payments**

| | |
|---|---|
| Medical Expense Limit: | $    10,000 |

**7. Property Damage to Borrowed Equipment**

| | |
|---|---|
| Each Occurrence Limit: | $    10,000 |
| Deductible: | $       250 |

**C. Coverages**

   **1. Employee Benefit Liability Coverage**

      **a.** The following is added to **SECTION I - COVERAGES: Employee Benefit Liability Coverage.**

        **(1) Insuring Agreement**

          **(a)** We will pay those sums that the insured becomes legally obligated to pay as damages caused by any act, error or omission of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any claim or "suit" that may result. But:

             **1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE;** and

             **2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

          No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

          **(b)** This insurance applies to damages only if the act, error or omission, is negligently committed in the "administration" of your "employee benefit program"; and

             **1)** Occurs during the policy period; or

             **2)** Occurred prior to the "first effective date" of this endorsement provided:

                **a)** You did not have knowledge of a claim or "suit" on or before the "first effective date" of this endorsement.

                   You will be deemed to have knowledge of a claim or "suit" when any "authorized representative";

                   **i)** Reports all, or any part, of the act, error or omission to us or any other insurer;

                   **ii)** Receives a written or verbal demand or claim for damages because of the act, error or omission; and

                **b)** There is no other applicable insurance.

        **(2) Exclusions**

          This insurance does not apply to:

          **(a) Bodily Injury, Property Damage or Personal and Advertising Injury**

            "Bodily injury", "property damage" or "personal and advertising injury".

          **(b) Dishonest, Fraudulent, Criminal or Malicious Act**

            Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

          **(c) Failure to Perform a Contract**

            Damages arising out of failure of performance of contract by any insurer.

          **(d) Insufficiency of Funds**

            Damages arising out of an insufficiency of funds to

meet any obligations under any plan included in the "employee benefit program".

**(e) Inadequacy of Performance of Investment / Advice Given With Respect to Participation**

Any claim based upon:

**1)** Failure of any investment to perform;

**2)** Errors in providing information on past performance of investment vehicles; or

**3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**(f) Workers' Compensation and Similar Laws**

Any claim arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**(g) ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**(h) Available Benefits**

Any claim for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**(i) Taxes, Fines or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**(j) Employment-Related Practices**

Any liability arising out of any:

**(1)** Refusal to employ;

**(2)** Termination of employment;

**(3)** Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, acts or omissions; or

**(4)** Consequential liability as a result of **(1)**, **(2)** or **(3)** above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(3) Supplementary Payments**

**SECTION I - COVERAGES, SUPPLEMENTARY PAYMENTS - COVERAGES A AND B** also apply to this Coverage.

**b. Who is an Insured**

As respects Employee Benefit Liability Coverage, **SECTION II - WHO IS AN INSURED** is deleted in its entirety and replaced by the following:

**(1)** If you are designated in the Declarations as:

**(a)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(b)** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds but only with respect to the conduct of your business.

**(c)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insur-

eds, but only with respect to their duties as your managers.

**(d)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(e)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**(2)** Each of the following is also an insured:

**(a)** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**(b)** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**(c)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**(3)** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However, coverage under this provision:

**(a)** Is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**(b)** Does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**c.** **Limits of Insurance**

As respects Employee Benefit Liability Coverage, **SECTION III - LIMITS OF INSURANCE** is deleted in its entirety and replaced by the following:

**(1)** The Limits of Insurance shown in Section **B. Limits of Insurance, 1. Employee Benefit Liability Coverage** and the rules below fix the most we will pay regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought;

**(c)** Persons or organizations making claims or bringing "suits";

**(d)** Acts, errors or omissions; or

**(e)** Benefits included in your "employee benefit program".

**(2)** The Aggregate Limit shown in Section **B. Limits of Insurance, 1. Employee Benefit Liability Coverage** of this endorsement is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**(3)** Subject to the limit described in **(2)** above, the Each Employee Limit shown in Section **B. Limits of Insurance, 1. Employee Benefit Liability Coverage** of this endorsement is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(a)** An act, error or omission; or

**(b)** A series of related acts, errors or omissions, regardless of the amount of time that lapses between such acts, errors or omissions,

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

**(4) Deductible Amount**

**(a)** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Declarations as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

**(b)** The deductible amount stated in the Declarations applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**(c)** The terms of this insurance, including those with respect to:

**1)** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or claim,

apply irrespective of the application of the deductible amount.

**(d)** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**d. Additional Conditions**

As respects **Employee Benefit Liability Coverage, SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended as follows:

**(1)** Item **2. Duties in the Event of Occurrence, Offense, Claim or Suit** is deleted in its entirety and replaced by the following:

**2. Duties in the Event of an Act, Error or Omission, or Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a claim. To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any

person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**(2)** Item **5. Other Insurance** is deleted in its entirety and replaced by the following:

**5.** **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

**a.** **Primary Insurance**

This insurance is primary except when **c.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

**b.** **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable

limit of insurance to the total applicable limits of insurance of all insurers.

**c.** **No Coverage**

This insurance shall not cover any loss for which the insured is entitled to recovery under any other insurance in force previous to the effective date of this Coverage Part.

**e.** **Additional Definitions**

As respects **Employee Benefit Liability Coverage, SECTION V - DEFINITIONS** is amended as follows:

**(1)** The following definitions are added:

**1.** "Administration" means:

**a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Interpreting the "employee benefit programs";

**c.** Handling records in connection with the "employee benefit programs"; or

**d.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include:

**a.** Handling payroll deductions; or

**b.** The failure to effect or maintain any insurance or adequate limits of coverage of insurance, including but not limited to unemployment insurance, social security benefits, workers' compensation and disability benefits.

**2.** "Cafeteria plans" means plans authorized by applica-

ble law to allow "employees" to elect to pay for certain benefits with pre-tax dollars.

3. "Employee benefit programs" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

c. Unemployment insurance, social security benefits, workers' compensation and disability benefits; and

d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies.

4. "First effective date" means the date upon which coverage was first effected in a series of uninterrupted renewals of insurance coverage.

(2) The following definitions are deleted in their entirety and replaced by the following:

21. "Suit" means a civil proceeding in which money damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

c. An appeal of a civil proceeding.

8. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

2. **Unintentional Failure to Disclose Hazards**

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 7. Representations** is hereby amended by the addition of the following:

Based on our dependence upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we will not reject coverage under this Coverage Part based solely on such failure.

3. **Medical Payments**

The Medical Expense Limit of Any One Person as stated in the Declarations is amended to the limit shown in Section **B. Limits of Insurance**, **3. Medical Payment** of this endorsement.

4. **180 Day Coverage for Newly Formed or Acquired Organizations**

**SECTION II - WHO IS AN INSURED** is amended as follows:

Subparagraph **a.** of Paragraph **4.** is hereby deleted and replaced by the following:

**a.** Insurance under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**5. Waiver of Subrogation**

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 9. Transfer of Rights of Recovery Against Others to Us** is hereby amended by the addition of the following:

We waive any right of recovery we may have because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a written contract requiring such waiver with that person or organization and included in the "products-completed operations hazard". However, our rights may only be waived prior to the "occurrence" giving rise to the injury or damage for which we make payment under this Coverage Part. The insured must do nothing after a loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce those rights.

**6. Automatic Additional Insured - Specified Relationships**

**a.** The following is hereby added to **SECTION II - WHO IS AN INSURED**:

**(1)** Any person or organization described in Paragraph **6.a.(2)** below (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of:

**(a)** A written contract or agreement; or

**(b)** An oral agreement or contract where a certificate of insurance showing that person or organization as an additional insured has been issued,

is an insured, provided:

**(a)** The written or oral contract or agreement is:

**1)** Currently in effect or becomes effective during the policy period; and

**2)** Executed prior to an "occurrence" or offense

to which this insurance would apply; and

**(b)** They are not specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part.

**(2)** Only the following persons or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insureds is limited as provided herein:

**(a)** The manager or lessor of a premises leased to you with whom you have agreed per Paragraph **6.a.(1)** above to provide insurance, but only with respect to liability arising out of the ownership, maintenance or use of that part of a premises leased to you, subject to the following additional exclusions:

This insurance does not apply to:

**1)** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2)** Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured.

**(b)** Any person or organization from which you lease equipment with whom you have agreed per Paragraph **6.a.(1)** above to provide insurance. Such person(s) or organization(s) are insureds solely with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s). However, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**(c)** Any person or organization (referred to below as vendor) with whom you have agreed per Paragraph **6.a.(1)** above to provide insurance, but

only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1) The insurance afforded the vendor does not apply to:

   a) "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b) Any express warranty unauthorized by you;

   c) Any physical or chemical change in the product made intentionally by the vendor;

   d) Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f) Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g) Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2) This insurance does not apply to any insured person or organization:

   a) From whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products; or

   b) When liability included within the "products-completed operations hazard" has been excluded under this Coverage Part with respect to such products.

(d) Any state or political subdivision with which you have agreed per Paragraph **6.a.(1)** above to provide insurance, subject to the following additional provision:

This insurance applies only with respect to the following hazards for which the state or political subdivision has issued a permit in connection with premises you own, rent or control and to which this insurance applies:

1) The existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees,

hoist away openings, sidewalk vaults, street banners, or decorations and similar exposures; or

**2)** The construction, erection, or removal of elevators; or

**3)** The ownership, maintenance, or use of any elevators covered by this insurance.

**(3)** Any insurance provided to an additional insured designated under Paragraph **6.a.(2)** Subparagraphs **(a), (b)** and **(d)** does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the sole negligence or willful misconduct of the additional insured or their agents, "employees" or any other representative of the additional insured.

**b.** **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is hereby amended as follows:

Condition **5. Other Insurance** is amended to include:

**(1)** Where required by a written contract or agreement, this insurance is primary and / or noncontributory as respects any other insurance policy issued to the additional insured, and such other insurance policy shall be excess and / or noncontributing, whichever applies, with this insurance.

**(2)** Any insurance provided by this endorsement shall be primary to other insurance available to the additional insured except:

**(a)** As otherwise provided in **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 5. Other Insurance, b. Excess Insurance**; or

**(b)** For any other valid and collectible insurance available to the additional insured as an additional insured by attachment of an endorsement to another insurance policy that is written on an excess basis. In such case, the coverage provided under this endorsement shall also be excess.

**7.** **Property Damage to Borrowed Equipment**

**a.** The following is hereby added to Exclusion **j. Damage to Property** of Paragraph **2. Exclusions** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY.**

Paragraphs **(3)** and **(4)** of this exclusion do not apply to tools or equipment loaned to you, provided they are not being used to perform operations at the time of loss.

**b.** With respect to the insurance provided by this section of the endorsement, the following additional provisions apply:

**(1)** The Limits of Insurance shown in the Declarations are replaced by the limits designated in Section **B. Limits of Insurance, 7. Property Damage to Borrowed Equipment** of this endorsement with respect to coverage provided by this endorsement. These limits are inclusive of and not in addition to the limits being replaced. The Limits of Insurance shown in Section **B. Limits of Insurance, 7. Property Damage to Borrowed Equipment** of this endorsement fix the most we will pay in any one "occurrence" regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought; or

**(c)** Persons or organizations making claims or bringing "suits".

**(2)** **Deductible Clause**

**(a)** Our obligation to pay damages on your behalf applies only to the amount of damages for each "occurrence" which are in excess of the deductible amount stated in Section **B. Limits of Insurance, 7. Property Damage to Borrowed Equipment** of this endorsement. The limits of insurance will not be reduced by the application of such deductible amount.

**(b)** **SECTION IV - COMMER-CIAL GENERAL LIABILITY CONDITIONS, 2. Duties in the Event of Occurrence, Offense, Claim or Suit,** applies to each claim or "suit" irrespective of the amount.

**(c)** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**8.** **Employees as Insureds - Specified Health Care Services**

It is hereby agreed that Paragraph **2.a.(1)(d)** of **SECTION II - WHO IS AN INSURED,** does not apply to your "employees" who provide professional health care services on your behalf as duly licensed:

**a.** Nurses;

**b.** Emergency Medical Technicians; or

**c.** Paramedics,

in the jurisdiction where an "occurrence" or offense to which this insurance applies takes place.

**9.** **Broadened Notice of Occurrence**

Paragraph **a.** of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 2. Duties in the Event of Occurrence, Offense, Claim or Suit** is hereby deleted and replaced by the following:

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

This requirement applies only when the "occurrence" or offense is known to an "authorized representative".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED--CO-OWNER OF INSURED PREMISES

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

### SCHEDULE

**Location of Premises:**
545 N RAND RD
LAKE ZURICH, IL 60047-3134

**Name of Person or Organization:**
SPD DEVELOPMENT LLC
545 N RAND RD
LAKE ZURICH, IL 60047-3134

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability as co-owner of the premises shown in the Schedule.

**CG 20 27 11 85**    Copyright, Insurance Services Office, Inc., 1984

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - SERVICES FURNISHED BY HEALTH CARE PROVIDERS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

| Description Of Operations: |
| --- |
| DENTIST |
|  |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability**:

With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The rendering or failure to render:

    a. Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages;

    b. Any health or therapeutic service, treatment, advice or instruction; or

    c. Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming.

2. The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

3. The handling or treatment of dead bodies, including autopsies, organ donation or other procedures.

Copyright, Insurance Services Office, Inc., 1997

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** Exclusion **2.s.** of **Section I - Coverage A - Bodily Injury and Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**s. Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal and Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access or Disclosure of Confidential or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** Paragraph **d.** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement** is deleted in its entirety and replaced by the following:

    **d.** You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

        **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

        **(3)** First observes the "bodily injury" or "property damage";

        **(4)** Becomes aware by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

        **(5)** Becomes aware of a condition from which "bodily injury" or "property damage" was substantially certain to occur.

**B.** **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, r. Additional Insured Prior Knowledge** is deleted in its entirety and replaced by the following:

    **r.** **Additional Insured Prior Knowledge**

    An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, prior to the "coverage term" in which such "bodily injury" or "property damage" occurs or begins to occur.

    An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that "bodily injury" or "property damage" has occurred or has begun to occur at the earliest time when that additional insured, or any one of its owners, members, part-

ners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

    **(3)** First observes the "bodily injury" or "property damage";

    **(4)** Becomes aware by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

    **(5)** Becomes aware of a condition from which "bodily injury" or "property damage" was substantially certain to occur.

**C.** **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 1. Insuring Agreement** is deleted in its entirety and replaced by the following:

    **1.** **Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I -**

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

**COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**.

**b.** This insurance applies to "personal and advertising injury" only if:

**(1)** The "personal and advertising injury" is caused by an offense arising out of your business; and

**(2)** The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period.

**D.** **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, q. Additional Insured Prior Knowledge** is deleted in its entirety.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g.** Aircraft, Auto or Watercraft is replaced by the following:

This insurance does not apply to:

**g.** **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises that you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.**

**(2)** or **f. (3)** of the definition of "mobile equipment".

**B.** **SECTION II - WHO IS AN INSURED** is amended to include:

**4.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**C.** **SECTION V - DEFINITIONS, 3.** "Auto" and **15.** "Mobile equipment" are replaced by the following:

**3.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

Includes copyrighted material of ISO Properties, Inc., with its permission

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted;

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**D.** This endorsement does not apply to any liability arising from an "occurrence" caused by or arising from any land vehicle if:

    **1.** You have an Auto Coverage Form in force at the time of the "occurrence"; and

    **2.** The land vehicle meets the definition of auto in your Auto Coverage Form or policy, regardless of whether or not such land vehicle is:

        **a.** A covered auto under such Auto Coverage Form or policy; or

        **b.** Specifically described on a schedule of covered autos on your Auto Coverage Form or policy.

Includes copyrighted material of ISO Properties, Inc., with its permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# BODILY INJURY EXCEPTIONS TO POLLUTANT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

For purposes of insurance provided by this endorsement:

1. **Sudden and Accidental Exception**

   Exclusion **f. Pollutant, (1)(a)** and **(1)(d)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** do not apply to "bodily injury" provided:

   **a.** The "release" of "pollutants" from which the "bodily injury" arises is "sudden" and "accidental"; and

   **b.** The injured person's first exposure to such "pollutants" occurred during the policy period; and

   **c.** The injured person is clinically diagnosed or treated by a physician for the "bodily injury" caused by exposure to such "pollutants" within one year of such first exposure.

2. **Amendment to On Premises Exception**

   The on premises exception to the Pollutant Exclusion, **f.(1)(a)1) c)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, is deleted in its entirety and replaced by the following:

   **c)** Within one year of such first exposure, the person injured is clinically diagnosed or treated by a physician for the medical condition caused by the exposure to such vapors. However, Paragraph **c)** does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

3. **Off Premises Exception**

   Exclusion **f. Pollutant (1)(d)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** does not apply to "bodily injury" that is caused by "gaseous or airborne pollutants" provided:

   **a.** The injured person's first exposure to "gaseous or airborne pollutants" occurred during the policy period; and

   **b.** The injured person is clinically diagnosed or treated by a physician for the "bodily injury" caused by the exposure to "gaseous or airborne pollutants" within one year of such first exposure.

4. **Amended Who Is An Insured**

   As respects the insurance provided by Paragraphs **1.** and **3.** of this endorsement, the **Sudden and Accidental Exception** and the **Off Premises Exception, SECTION II - WHO IS AN INSURED** is deleted in its entirety and replaced by the following:

   The coverage afforded shall apply only to Named Insureds. We shall have no duty to defend or pay damages for any person or organization that is not a Named Insured.

5. **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS 5. Other Insurance b. Excess Insurance** is amended to include the following:

   The insurance provided by Paragraphs **1. Sudden and Accidental Exception** and **3. Off Premises Exception**, of this endorsement is excess over any other valid and collectible insurance, whether primary, excess, contingent or on any other basis, except insurance written specifically to cover as excess over the limits of insurance that apply in this endorsement.

6. As respects the insurance provided by Paragraphs **1.** and **3.** of this endorsement, **SECTION V - DEFINITIONS** is amended to add the following:

   1. "Accidental" means unintended and unexpected.

   2. "Gaseous or airborne pollutants" means "pollutants" which:

      **(a)** Are a gas, smoke, fume, vapor or other similar airborne substance; and

      **(b)** Are the result of the "release" of such "pollutants" from materials, machinery or equipment brought on or to the "work site" by any Named Insured or any "employees", contractors or subcontractors working di-

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.

rectly or indirectly on any Named Insured's behalf.

"Gaseous or airborne pollutants" does not include asbestos or lead.

3.  "Release" means actual discharge, dispersal, seepage, migration, release, escape or emission.

4.  "Sudden" means abrupt, immediate and brief as well as unexpected and without prior notice. "Sudden" has a temporal element which requires that the "release" of "pollutants" begins and ends within a brief period of time. A "release" of a "pollutant" which results from a series of ongoing events which constitute a course of conduct or course of business is not "sudden".

5.  "Work site" means any premises, site or location while a Named Insured or a Named Insured's "employees", contractors or subcontractors are performing operations directly or indirectly on the Named Insured's behalf, provided the premises, site or location is not owned or occupied by or rented or loaned to a Named Insured.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPak™

# COMMERCIAL GENERAL LIABILITY AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**I.** **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** Paragraph **2. Exclusions** is amended as follows:

**A.** Exclusion **j. Damage to Property** is deleted in its entirety and replaced by the following:

**j.** **Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of an insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire, explosion, lightning, smoke, soot or water) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days, for which the amount we will pay is limited to the Damage To Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**B.** The last Paragraph of **2. Exclusions** is deleted in its entirety and replaced by the following:

Exclusions **c.** through **q.** do not apply to "property damage" by fire, explosion, lightning, smoke, soot or water to premises while rented to you or temporarily occupied by you with permission of the owner, for which the amount we will pay is limited to the Damage to Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

**II.** **SECTION I - COVERAGES, SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**, is amended as follows:

**A.** Paragraph **2.** is deleted in its entirety and replaced by the following:

**2.** Up to $1,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**B.** Paragraph **4.** is deleted in its entirety and replaced by the following:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

**III. SECTION III - LIMITS OF INSURANCE**, Paragraph **6.** is deleted in its entirety and replaced by the following:

6. Subject to **5.** above, the Damage to Premises Rented to You Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, explosion, lightning, smoke, soot or water, while rented to you or temporarily occupied by you with permission of the owner.

**IV. SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**, Condition **5. Other Insurance** Paragraph **b.(1)(b)** is deleted in its entirety and replaced by the following:

**(b)** That is Fire, Explosion, lightning, smoke, soot or Water Damage insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**V. SECTION V. - DEFINITIONS**, Definition **12.** "Insured contract" Paragraph **a.** is deleted in its entirety and replaced by the following:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" by fire, explosion, lightning, smoke, soot or water to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

# THE CINCINNATI INSURANCE COMPANY

**A Stock Insurance Company**

# ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS

**NOTICE: INSURANCE COVERAGE UNDER ANY PARTICULAR COVERAGE INCLUDED WITHIN THIS FORM IS NOT IN FORCE UNLESS THE CORRESPONDING SECTION OF THESE DECLARATIONS HAS BEEN COMPLETED.**

Attached to and forming a part of POLICY NUMBER: ECP 026 96 01

Named Insured is the same as it appears in the Common Policy Declarations

**COVERAGE PROVISIONS** (Only those items marked by an [x], where so indicated, are applicable):

## Limits of Insurance:

| | Limit of Insurance: |
|---|---|
| | ☐ Blanket: |

[x] **Coverage A - Electronic Data Processing Property:** ................................................. $

[x] **See Scheduled Premises Endorsement**

[x] **Coverage A - Coverage Extensions:**

**Limit of Insurance - Unless Otherwise Stated:**

| | | | | |
|---|---|---|---|---|
| a. | Debris Removal: ........................................................... $50,000 | - | $ | |
| b. | Duplicate and Backup Electronic Media and Records: ........................................................... $10,000 | - | $ | 25,000 |
| c. | Off Premises: 20% of the Coverage **A** Limit of Insurance subject to a maximum of: $50,000 | | $ | |
| d. | Pollutant Clean Up and Removal ................................. $10,000 | - | $ | |
| e. | Recharge or Refill of a Fire Protection Device: ........................................................... $50,000 | - | $ | |
| f. | Third Party Host: ........................................................... $10,000 | - | $ | |

| | Limit of Insurance: |
|---|---|
| | ☐ Blanket: |

[x] **Coverage B - Business Income and Extra Expense:** ................................................. $

[x] **See Scheduled Premises Endorsement**

[x] **Coverage C - Additional Coverages:**

**Limit of Insurance - Unless Otherwise Stated:**

| | | | |
|---|---|---|---|
| 1. | Denial of Service ........................................................... $ 10,000 | - | $ |
| 2. | Loss Establishment Expenses ................................... $ 5,000 | - | $ |
| 3. | Malicious Code ........................................................... $ 10,000 | - | $ |
| 4. | Unauthorized Use ....................................................... $ 10,000 | - | $ |

**Note:** The maximum aggregate Limit of Insurance for any Additional Coverage in any one "coverage term" is three times the Limit of Insurance stated here.

## Deductibles:

| | Deductible: |
|---|---|
| **Coverage A:** | |
| Basic: ........................................................... $ | 1,000 |
| Specified Losses: ........................................................... $ | 2,500 |
| **Coverage B:** | (Hours) 24 |

## FORMS AND / OR ENDORSEMENTS APPLICABLE TO ELECTRONIC DATA PROCESSING COVERAGE FORM:

| | | |
|---|---|---|
| MA123 | 08/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM (EDP) - TABLE OF CONTENTS |
| MA4050IL | 04/10 | OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT |
| MA135 | 11/99 | COMMERCIAL INLAND MARINE CONDITIONS |
| MA4015 | 06/07 | SCHEDULED PREMISES ENDORSEMENT |
| MA489IL | 11/16 | ILLINOIS CHANGES |

**LOSS PAYEE (if any)**

**SPECIAL PROVISIONS (if any)**

# ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM (EDP) - TABLE OF CONTENTS

**Coverage Part Provision:**          **Begins on Page:**

**Preamble** ...........................................................................................................................................3

**Section I - Coverages:** ..............................................................................................................3

    **Coverage A - Electronic Data Processing Property:** ...................................................3

      **1.** Insuring Agreement.........................................................................................................3
      **2.** Covered Property.............................................................................................................3
      **3.** Property Not Covered......................................................................................................3
      **4.** Covered Causes of Loss.................................................................................................3
      **5.** Coverage Extensions:.....................................................................................................3
        **a.** Debris Removal .......................................................................................................3
        **b.** Duplicate and Backup Electronic Media and Records ............................................4
        **c.** Off Premises ...........................................................................................................4
        **d.** Pollutant Clean Up and Removal............................................................................4
        **e.** Preservation of Property..........................................................................................4
        **f.** Recharge or Refill of a Fire Protection Device .......................................................5
        **g.** Third Party Host.......................................................................................................5
        **h.** Newly Acquired Property.........................................................................................5

    **Coverage B - Business Income and Extra Expense:** ...................................................5

      **1.** Insuring Agreement.........................................................................................................5
      **2.** Covered Property.............................................................................................................5
      **3.** Property Not Covered......................................................................................................5
      **4.** Covered Causes of Loss.................................................................................................5
      **5.** Additional Coverage:.......................................................................................................5
      Extended Business Income ....................................................................................................5

    **Coverage C - Additional Coverages:** ............................................................................5

      **1.** Denial of Service .............................................................................................................6
      **2.** Loss Establishment Expenses........................................................................................6
      **3.** Malicious Code................................................................................................................6
      **4.** Unauthorized Use ...........................................................................................................6

  **Section II - Exclusions** ..............................................................................................................6

  **Section III - Limits of Insurance and Deductibles:** ..................................................................8

**1.** Limits of Insurance: ..................................................................................................................8
**2.** Deductibles: ..............................................................................................................................8
    **a.** Coverage **A** ......................................................................................................................8
    **b.** Coverage **B** ......................................................................................................................8
    **c.** Coverage **C** ......................................................................................................................8

  **Section IV - Additional Conditions:** ..........................................................................................8

**1.** Coverage **A** - Electronic Data Processing Property - Conditions:...........................................8
    Valuation .....................................................................................................................................9
**2.** Coverage **B** - Business Income and Extra Expense - Conditions: ...........................................9
    **a.** Appraisal..........................................................................................................................9
    **b.** Loss Determination..........................................................................................................9
    **c.** Resumption of Operations.............................................................................................10
**3.** Common Conditions:..............................................................................................................10
    **a.** Duties in the Event of Loss............................................................................................10
    **b.** Blanket Insurance ..........................................................................................................11
    **c.** Joint Insured...................................................................................................................11
    **d.** Legal Action Against Us.................................................................................................11

# ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM (EDP) - TABLE OF CONTENTS

| | | |
|---|---|---|
| **e.** | Loss Payee | 11 |
| **f.** | Multi-Year Policies | 11 |
| **g.** | Non-Accumulation of Limits of Insurance | 12 |
| **h.** | Other Insurance | 12 |
| **i.** | Protective Safeguards | 12 |
| **j.** | Recoveries | 12 |
| **k.** | Transfer of Your Rights of Recovery Against Others to Us | 12 |

**Section V - Definitions:** ........................................................................... 12

| | | |
|---|---|---|
| **1.** | "Actual cash value" | 12 |
| **2.** | "Business income" | 13 |
| **3.** | "Computer system" | 13 |
| **4.** | "Coverage term" | 13 |
| **5.** | "Coverage territory" | 13 |
| **6.** | "Denial of service" | 13 |
| **7.** | "Electronic media and records" | 13 |
| **8.** | "Electronic securities" | 13 |
| **9.** | "Evidences of debt" | 13 |
| **10.** | "Extra expense" | 13 |
| **11.** | "Hardware" | 13 |
| **12.** | "Loss" | 13 |
| **13.** | "Loss establishment expenses" | 14 |
| **14.** | "Malicious code" | 14 |
| **15.** | "Mechanical breakdown" | 14 |
| **16.** | "Money" | 14 |
| **17.** | "Occurrence" | 14 |
| **18.** | "Operations" | 14 |
| **19.** | "Other property" | 14 |
| **20.** | "Period of restoration" | 14 |
| **21.** | "Pollutants" | 14 |
| **22.** | "Premises" | 14 |
| **23.** | "Production equipment" | 14 |
| **24.** | "Securities" | 14 |
| **25.** | "Service agreement" | 14 |
| **26.** | "Specified causes of loss" | 14 |
| **27.** | "Sudden and accidental" | 15 |
| **28.** | "Suspension" | 15 |
| **29.** | "Telecommunications equipment" | 15 |
| **30.** | "Temporarily" | 15 |
| **31.** | "Unauthorized use" | 15 |
| **32.** | "Valuable papers and records" | 15 |

# ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **Section V - Definitions.**

**Section I - Coverages**

**Coverage A - Electronic Data Processing Property**

**1. Insuring Agreement**

We will pay for "loss" to Covered Property resulting from a Covered Cause of Loss.

**2. Covered Property**

Covered Property, as used in Coverage **A** of this Coverage Part, means the following type of property:

**a.** Your "hardware";

**b.** Climate control equipment, and other electrical equipment, used exclusively with your "hardware";

**c.** Your "electronic media and records";

**d.** Your "telecommunications equipment";

**e.** Your programming documentation and instruction manuals; and

**f.** Similar property of others in your care, custody or control,

While located:

**a.** On your "premises" or within one thousand (1,000) feet thereof (except as may be provided in the **Section I - Coverages, Coverage A - Electronic Data Processing Property, 5. Coverage Extensions**); and

**b.** In the "coverage territory" (except as may be provided in the **Section I - Coverages, Coverage A - Electronic Data Processing Property, 5. Coverage Extensions**).

**3. Property Not Covered**

Covered Property does not include:

**a.** "Electronic media and records" that cannot be replaced with similar property of like kind and quality.

**b.** Property that you have rented or leased to another person or organization and is not at your "premises".

**c.** Contraband or property in the course of illegal transit or trade.

**d.** "Production equipment".

**e.** Copyrights, patents, trademarks, trade secrets or other intellectual property.

**f.** Personally identifiable information of persons or entities other than you or your employees.

**g.** Property held as samples or for sale.

**h.** Records of accounts receivable.

**i.** Any machine or apparatus that is used for research, medical, diagnostic, surgical, dental or pathological purposes.

**j.** "Electronic securities", "evidences of debt", "money" and "securities".

**k.** "Valuable papers and records".

**4. Covered Causes of Loss**

Covered Causes of Loss, with respect to Coverage **A**, means risks of direct "loss" to Covered Property except those causes of "loss" listed in **Section II - Exclusions.**

**5. Coverage Extensions**

Unless stated otherwise, the Limits of Insurance referenced in the following Coverage Extensions are in addition to, and not included within, **Section III - Limits of Insurance and Deductibles, 1. Limits of Insurance** for Coverage **A**.

**a. Debris Removal**

**(1)** We will pay your expense to remove the debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within one hundred-eighty (180) days of the date of direct "loss".

(2) The most we will pay under this Coverage Extension is twenty-five (25) percent (%) of:

    (a) The amount we pay for the direct "loss" to Covered Property; plus

    (b) The deductible in this Coverage Part applicable to that "loss".

This Coverage Extension is included within the Limit of Insurance shown in the Declarations for Coverage **A**. However, if:

    (a) The sum of direct "loss" and debris removal expense exceeds the Limit of Insurance for Coverage **A**; or

    (b) The debris removal expense exceeds the amount payable under the twenty-five (25) percent (%) limitation in this Coverage Extension;

we will pay up to the additional Limit of Insurance for Debris Removal stated in the Declarations for each "premises" in any one "occurrence".

(3) This Coverage Extension does not apply to costs to:

    (a) Extract "pollutants" from land or water; or

    (b) Remove, restore or replace polluted land or water.

**b.** **Duplicate and Backup Electronic Media and Records**

We will pay up to the Limit of Insurance for Duplicate and Backup Electronic Media and Records stated in the Declarations in any one "occurrence" for "loss" to "electronic media and records" due to a Covered Cause of Loss while such property is stored away from your "premises" other than "temporarily".

This Coverage Extension does not apply to "loss" insured under the Third Party Host Coverage Extension.

**c.** **Off Premises**

We will pay up to the Limit of Insurance for Off Premises stated in the Declarations in any one "occurrence" for "loss" to Covered Property due to a Covered Cause of Loss while such property is away from your "premises":

(1) "Temporarily" in transit;

(2) "Temporarily" in storage; or

(3) In the custody of your employee for the purpose of conducting your business.

This is not an additional Limit of Insurance. It is included within the Coverage **A** Limit of Insurance.

This Coverage Extension applies to Covered Property whether or not it is located within the "coverage territory".

If the Limit of Insurance stated in the Declarations is other than the $50,000 maximum stated, then the Limit of Insurance that applies to all "loss" in any one "occurrence" is the greater of the limit stated or the twenty percent (20%) of the Coverage **A** Limit of Insurance limitation.

**d.** **Pollutant Clean Up and Removal**

(1) We will pay your expenses to extract "pollutants" from land or water at the "premises" if the discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants":

    (a) Is from Covered Property;

    (b) Is caused by a Covered Cause of Loss; and

    (c) Occurs during the policy period.

The expenses will be paid only if they are reported to us in writing within one hundred eighty (180) days of the date on which the Covered Cause of Loss occurs.

(2) This Coverage Extension does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

(3) The most we will pay under this Coverage Extension for each "premises" for the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term" is the Limit of Insurance stated in the Declarations for Pollutant Clean Up and Removal.

**e.** **Preservation of Property**

If it is necessary to move Covered Property from the "premises" to preserve it from "loss" by a Covered Cause of Loss, we will pay for any direct "loss" to that property:

Includes copyrighted material of ISO Properties, Inc., and American Association of Insurance Services with their permission.

**(1)** While it is being moved or while "temporarily" stored at a location other than a "premises"; and

**(2)** Only if the "loss" occurs within thirty (30) days after the property is first moved.

This Coverage Extension is included within the Limit of Insurance shown in the Declarations for Coverage **A**.

**f. Recharge or Refill of a Fire Protection Device**

We will pay for your expense to recharge or refill any fire protective devices that are designed specifically to protect Covered Property when these devices have been discharged in a "loss" insured by Coverage **A** of this Coverage Part or have been accidentally discharged. The most we will pay in any one "loss" or "sudden and accidental" discharge is the Limit of Insurance for Recharge or Refill of a Fire Protection Device stated in the Declarations.

**g. Third Party Host**

We will pay up to the Limit of Insurance for Third Party Host stated in the Declarations in any one "occurrence" for "loss" to:

Your "electronic media and records" away from your "premises" due to a Covered Cause of Loss, but only while such "electronic media and records" are hosted in the "hardware" of a third party information technology provider, with whom you have directly contracted for such service.

This is not an additional Limit of Insurance. It is included within the Coverage **A** Limit of Insurance.

This Coverage Extension:

**(1)** Applies to "electronic media and records" whether or not they are located within the "coverage territory"; and

**(2)** Does not apply to "loss" insured under the Duplicate and Backup Electronic Media and Records Coverage Extension.

**h. Newly Acquired Property**

We will provide coverage as follows:

**(1)** On newly acquired Covered Property up to the total limit shown on the Declarations Page for Total Covered Property whether located at a current location or newly acquired location,

but in no event shall we pay more than $250,000 under this Coverage Extension for any one "loss".

You will report such newly acquired property, or Covered Property already insured by this policy which is moved to a newly acquired location, to us within 90 days from the date the Covered Property is acquired or moved, as the case may be, and pay any additional premium due. If you do not report such property or movement of property , coverage will cease automatically after the 90 days has elapsed. However, in no event shall coverage be extended beyond the expiration of this policy.

**Coverage B - Business Income and Extra Expense**

**1. Insuring Agreement**

We will pay your actual loss of "business income" as well as "extra expense" that results from the necessary "suspension" of your "operations" during the "period of restoration" due to "loss" to Covered Property resulting from a Covered Cause of Loss.

**2. Covered Property**

Covered Property, as used in Coverage **B** of this Coverage Part, is the same as that applicable to Coverage **A**.

**3. Property Not Covered**

Covered Property does not include Property Not Covered under Coverage **A**.

**4. Covered Causes of Loss**

Covered Causes of Loss, with respect to Coverage **B**, means risks of direct "loss" to Covered Property except those causes of "loss" listed in **Section II - Exclusions**.

**5. Additional Coverage**

This Additional Coverage does not provide additional Limits of Insurance.

**Extended Business Income**

If the necessary "suspension" of your "operations" produces a "business income" loss payable under this Coverage Part, we will pay for the actual loss of "business income" you incur during the period that:

**a.** Begins on the date Covered Property is actually repaired, rebuilt or replaced and "operations" are resumed; and

**b.** Ends on the earlier of:

**(1)** The date you could restore your "operations", with reasonable speed, to the level which would generate the "business income" that would have existed if no direct "loss" to Covered Property due to a Covered Cause of Loss had occurred; or

**(2)** Sixty (60) consecutive days after the date determined in **5.a.** above.

However, Extended Business Income does not apply to loss of "business income" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where your "premises" are located.

## Coverage C - Additional Coverages

The Limits of Insurance provided in the following Additional Coverages are included within and are not in addition to the Limits of Insurance applicable to Coverages **A** or **B**, unless stated otherwise therein.

**1. Denial of Service**

We will pay up to the Limit of Insurance stated in the Declarations for Denial of Service for loss of "business income" or "extra expense" under Coverage **B** caused by a "denial of service".

**2. Loss Establishment Expenses**

Subsequent to the detection of a potential "loss" insured under Coverage **A** or **B**, we will pay up to the Limit of Insurance stated in the Declarations for "loss establishment expenses" incurred within ninety (90) days of the detection of the "loss" or potential "loss".

This Limit of Insurance is in addition to the Limits of Insurance for Coverages **A** and **B**.

**3. Malicious Code**

We will pay up to the Limit of Insurance stated in the Declarations for Malicious Code for all "loss", loss of "business income" or "extra expense" under Coverages **A** and **B** arising from the introduction of a "malicious code" to your "electronic media and records" or "hardware" by any person or organization other than:

**(1)** You;

**(2)** Your partners;

**(3)** Your directors;

**(4)** Your officers;

**(5)** Your trustees;

**(6)** Your members, if you are a limited liability company; or

**(7)** A person or organization, other than your employees, to whom you have entrusted Covered Property.

**4. Unauthorized Use**

We will pay up to the Limit of Insurance stated in the Declarations for Unauthorized Use for all "loss", loss of "business income" or "extra expense" under Coverages **A** and **B** arising from "unauthorized use" by any person or organization other than:

**(1)** You;

**(2)** Your partners;

**(3)** Your directors;

**(4)** Your officers;

**(5)** Your trustees;

**(6)** Your members, if you are a limited liability company; or

**(7)** A person or organization, other than your employees, to whom you have entrusted Covered Property.

**Section II - Exclusions**

**Coverage A - Electronic Data Processing Property and Coverage B - Business Income and Extra Expense - Exclusions**

The following exclusions apply to Coverages **A** and **B**, unless stated otherwise herein.

**1.** We will not pay for a "loss", loss of "business income" or "extra expense" caused directly or indirectly by any of the following. Such "loss", loss of "business income" or "extra expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss", loss of "business income" or "extra expense":

**a. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Part.

**b. Nuclear Hazard**

**(1)** Any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination from any other cause.

**c. Satellite Communications**

The disruption or failure of any satellite communication system, or any part thereof.

**d. War and Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**e. Utility Interruption**

The intentional suspension of any utility service by you or the utility provider.

**f. Tidal Wave or Tsunami**

Tidal wave or tsunami, even if attributable to an earthquake or volcanic eruption.

2. We will not pay for a "loss", loss of "business income" or "extra expense" caused by or resulting from any of the following:

**a.** Delay or loss of market, except as may be provided under Coverage **B**.

**b.** Dishonest or criminal acts by you, any of your partners, directors, trustees, officers, members or managers (if you are a limited liability company) or anyone entrusted with the property, except employees, whether or not acting alone or in collusion with others or whether or not occurring during the hours of employment. But this exclusion does not apply to a carrier for hire.

**c.** Discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" unless the discharge, dispersal, seepage, migration, release, escape or emission is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

**d.** Interruption, disruption, or slow down in normal network service or function due to activity on the network or network server.

This exclusion does not apply to "denial of service".

**e.** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**f.** Unauthorized instructions to transfer property to any person or to any place.

**g.** Bookkeeping, accounting or billing errors or omissions.

**h.** Any processing or work upon Covered Property. But if "loss" by fire results, we will pay for that resulting "loss", loss of "business income" or "extra expense".

**i.** "Denial of service", "malicious code" or "unauthorized use".

However, this exclusion shall not apply to the extent that insurance coverage is provided under **Section I - Coverages, Coverage C - Additional Coverages.**

3. We will not pay for a "loss", loss of "business income" or "extra expense" caused by or resulting from any of the following. But if "loss", loss of "business income" or "extra expense" caused by a Covered Cause of Loss results, we will pay for that resulting "loss", loss of "business income" or "extra expense":

**a.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**b.** Wear and tear, hidden or latent defect, gradual deterioration, or depreciation.

**c.** The failure of "hardware" or "electronic media and records" to function as designed or anticipated to function by you or any other person or organization providing, designing or recommending said "hardware" or "electronic media and records" to you.

However, this exclusion will not apply if the failure of "hardware" or "electronic media and records" to function is caused by:

(1) A Covered Cause of Loss emanating from a source external to the "hardware" or "electronic media and records"; or

(2) The "sudden and accidental" "mechanical breakdown" of "hardware".

4. Insurance provided by Coverages **A** and **B** does not apply to:

   a. Payment of costs, fees, or other expenses you incur in establishing either the existence or the amount of "loss", loss of "business income" or "extra expense", except as provided for under **Section I - Coverages, Coverage C - Additional Coverages, 2. Loss Establishment Expenses.**

   b. "Loss", loss of "business income" or "extra expense", or any part thereof, the proof of which as to its existence or amount is dependent solely upon:

      (1) An inventory computation;

      (2) A profit and loss computation; or

      (3) An audit of records.

5. Insurance provided by Coverage **A** does not apply to loss of "business income" or "extra expense".

**Section III - Limits of Insurance and Deductibles**

1. **Limits of Insurance**

   a. The most we will pay for any one "occurrence" is the applicable Limits of Insurance for Coverages **A** and **B** and **Coverage C - Additional Coverages, 2. Loss Establishment Expenses** stated in the Declarations or any endorsement amendatory thereof.

   b. With respect to **Section I - Coverages, Coverage C - Additional Coverages:**

      (1) Under **Coverage C - Additional Coverages, 2. Loss Establishment Expenses,** we will not pay more than the lesser of:

         (a) The Limit of Insurance stated in the Declarations for Loss Establishment Expenses; or

         (b) The actual cost of the "loss" insured under Coverages **A** or **B** in "Loss establishment expenses".

      (2) In the event that a single "occurrence" involves one or more of the following:

         (a) "Denial of service";

         (b) "Malicious code"; or

         (c) "Unauthorized use",

         the most we will pay in total is the single highest Limit of Insurance ap-

plicable to the Additional Coverages applicable to the "loss".

      (3) The most we will pay for all "loss" in any "coverage term" for each Additional Coverage is three times the Limit of Insurance stated for each in the Declarations.

2. **Deductibles**

   a. **Coverage A**

      We will not pay for "loss" in any one "occurrence" until the amount of the adjusted "loss" before applying the applicable Limits of Insurance exceeds the Deductible shown in the Deductible section of the Declarations for Coverage **A**. We will then pay the amount of the adjusted "loss" in excess of the Deductible, up to the applicable Limit of Insurance.

      (1) The Basic Deductible shown on the Declarations applies to "loss" from all Covered Causes of Loss except those referenced in **(2)** below.

      (2) The Specified Losses Deductible shown on the Declarations applies to "loss" caused by "sudden and accidental" "mechanical breakdown" or artificially generated electrical disturbance.

   b. **Coverage B**

      We will not pay your actual loss of "business income" or "extra expense" arising from any one "loss" until and unless the necessary "suspension" of your "operations" has exceeded the Deductible in hours stated in the Declarations for Coverage **B**. We will then pay the amount of your actual loss of "business income" or "extra expense" in excess of the Deductible, up to the Limit of Insurance.

   c. **Coverage C**

      We will not pay for "loss", loss of "business income", "extra expenses" or "loss establishment expenses" under **Section I - Coverages, Coverage C - Additional Coverages** unless and until an insured "loss", loss of "business income" or "extra expenses" under Coverage **A** or **B** exceeds their deductible.

**Section IV - Additional Conditions**

The following Conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

1. **Coverage A - Electronic Data Processing Property - Conditions**

The following Condition applies to Coverage **A** only:

**Valuation**

In the **COMMERCIAL INLAND MARINE CONDITIONS, GENERAL CONDITIONS, F. Valuation** is replaced by the following with respect to Covered Property under Coverage **A**:

**a.** Valuation of Covered Property under Coverage **A**, other than that described in Paragraph **b.** below:

If you repair or replace this property with due diligence following "loss", the property will be valued at the full cost of repair or replacement. However, the most we will pay is the least of the following:

**(1)** The cost of replacing that property with property of similar or greater quality and function, provided the cost is no greater than the original purchase price of the property plus twenty (20) percent (%);

**(2)** The amount you actually and necessarily spend to repair or replace the property; or

**(3)** The Limit of Insurance applicable to the property.

If you do not repair or replace this property with due diligence following "loss", the most we will pay will be the least of the following:

**(a)** The "actual cash value" of the property;

**(b)** The "actual cash value" of repairs with material of like kind and quality; or

**(c)** The Limit of Insurance applicable to the property.

We reserve the right to repair or replace the property or to pay for the property in "money".

In the event of "loss", the value of property will be determined as of the date of "loss".

**b.** Valuation of "electronic media and records":

**(1)** We will not pay for more than the actual reproduction costs of covered "electronic media and records".

**(2)** But we will not pay the cost to duplicate research or operations that were developed away from your "premises" that led to the develop-

ment of your "electronic media and records" or that led to the development of any proprietary or confidential information or intellectual property.

**(3)** If you do not replace or reproduce the "electronic media and records", the most we will pay is the cost of blank "electronic media and records".

The most we will pay is the Limit of Insurance shown on the Declarations.

**2. Coverage B - Business Income and Extra Expense - Conditions**

The following Conditions apply to Coverage **B** only:

**a. Appraisal**

In the **COMMERCIAL INLAND MARINE CONDITIONS, LOSS CONDITIONS, B. Appraisal** is replaced by the following:

If you and we disagree on the amount of Net Income and operating expense or the amount of loss, either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that a judge of a court having jurisdiction make selection. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each will:

**(1)** Pay its chosen appraiser; and

**(2)** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**b. Loss Determination**

**(1)** The amount of "business income" loss will be determined based on:

**(a)** The Net Income of the business before the Covered Cause of Loss occurred;

**(b)** The likely Net Income of the business if no Covered Cause of Loss had occurred, but not including any Net Income that likely would have resulted from an increase in the volume of

business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(c)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the Covered Cause of Loss; and

**(d)** Other relevant sources of information, including:

**1)** Your financial records and accounting procedures;

**2)** Bills, invoices and other vouchers; and

**3)** Deeds, liens or contracts.

**(2)** The amount of "extra expense" will be determined based on:

**(a)** All necessary and reasonable expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no Covered Cause of Loss had occurred. We will deduct from the total of such expenses:

**1)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**2)** Any "extra expense" that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(b)** All necessary and reasonable expenses that reduce the "business income" loss that otherwise would have been incurred.

**c. Resumption of Operations**

**(1)** We will reduce the amount of your:

**(a)** "Business income" loss other than "extra expense", to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise

or stock) at the "premises" or elsewhere.

**(b)** "Extra expense" loss to the extent you can return "operations" to normal and discontinue such "extra expense".

**(2)** If you do not resume "operations" or do not resume "operations" as quickly as possible, we will pay based on the length of time it should have taken with due diligence to resume operations as quickly as possible.

**3. Common Conditions**

The following Conditions apply to all Coverages provided under this Coverage Part:

**a. Duties in the Event of Loss**

In the **COMMERCIAL INLAND MARINE CONDITIONS, LOSS CONDITIONS, C. Duties in the Event of Loss** is replaced by the following:

**(1)** In the event of:

**(a)** "Loss" to Covered Property; or

**(b)** Loss of, or loss from damage to Covered Property, or a situation that may result in loss of, or loss from damage to Covered Property,

You must see that the following are done:

**1)** Notify the police if a law may have been broken.

**2)** Notify us as soon as possible. Include a description of any property involved.

**3)** As soon as possible, give us a description of how, when and where the loss occurred.

**4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside in the best possible order for examination.

**MA 123 08 07**

Includes copyrighted material of ISO Properties, Inc., and American Association of Insurance Services with their permission.

**Page 10 of 15**

5) As often as may be reasonably required, permit us to:

    **a)** Inspect the property proving the loss;

    **b)** Examine your books, records, "electronic media and records" and "hardware";

    **c)** Take samples of damaged and undamaged property for inspection, testing and analysis; and

    **d)** Make copies from your books, records, "electronic media and records" and "hardware".

6) Send us signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

7) Cooperate with us in the investigation or settlement of the claim.

8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

9) Make no statement that will assume any obligation or admit any liability, for any loss for which we may be liable, without our prior written consent.

10) Promptly send us any legal papers or notices received concerning the loss.

**(2)** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**b. Blanket Insurance**

If blanket insurance is indicated ( ☒ ) in the Declarations, the Limit of Insurance for that Coverage applies to all "premises" within the "coverage territory".

**c. Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered under this policy, then the next Named Insured will become the first Named Insured.

**(2)** If any Insured or partner, officer, or member or manager (applicable to limited liability companies) of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**(3)** An employee of any Insured is considered to be an employee of every Insured.

**(4)** If this insurance or any of its coverages is cancelled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

**(5)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

**d. Legal Action Against Us**

In the **COMMERCIAL INLAND MARINE CONDITIONS, GENERAL CONDITIONS, B. Legal Action Against Us** is replaced by the following:

No one may bring legal action against us under this Coverage Part unless:

**(1)** There has been full compliance with all the terms of this Coverage Part;

**(2)** At least ninety (90) days has passed since you filed proof of loss with us; and

**(3)** Brought within two (2) years from the date you discover the loss in question.

**e. Loss Payee**

For Covered Property in which both you and a Loss Payee listed in the Declarations have an insurable interest, we will:

**(1)** Adjust "losses" with you; and

**(2)** Pay any claim for insured "loss" jointly to you and the Loss Payee, as interests may appear.

**f. Multi-Year Policies**

If this Coverage Part is issued for more than one annual policy period, the premium may be adjusted at the inception of each following "coverage term" based on our rates in effect at that time.

**g. Non-Accumulation of Limits of Insurance**

Regardless of the number of "coverage terms" this insurance remains in force or the number of premiums paid, no Limit of Insurance accumulates from year to year or period to period.

**h. Other Insurance**

In the **COMMERCIAL INLAND MARINE CONDITIONS, LOSS CONDITIONS, F. Other Insurance** is replaced by the following:

**(1)** If you have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**(2)** If there is other insurance covering the same loss or damage, other than that described in **(1)** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**(3)** Irrespective of Paragraphs **h.(1)** or **(2)** above, this Coverage Part is always excess of a "service agreement". We will pay only the amount of insured "loss" that is not covered by the "service agreement" in the form of repairs or other compensation. But we will not pay more than the applicable Limit of Insurance.

**i. Protective Safeguards**

You must maintain the protective safeguards stated by you to be in effect at a "premises" when this coverage began.

If you fail to keep the protective safeguards:

**1)** In working condition at a "premises"; and

**2)** In operation when you are closed to business;

Coverage for which the protective safeguards apply is automatically suspended at that "premises" if you fail to notify us immediately. This suspension will last until the equipment or services are back in operation.

**j. Recoveries**

In the **COMMERCIAL INLAND MARINE CONDITIONS, LOSS CONDITIONS, I. Recoveries** is replaced by the following:

**(1)** Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

**(a)** To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance plus the Deductible Amount, if any;

**(b)** Then to us, until we are reimbursed for the settlement made;

**(c)** Then to you, until you are reimbursed for that part of loss equal to the Deductible Amount, if any.

**(2)** You will pay us the amount of all recoveries you receive for a "loss" paid by us. But any recoveries in excess of the amount we have paid belong to you.

**(3)** Recoveries do not include any recovery from insurance, suretyship, reinsurance, security or indemnity taken for our benefit.

**k. Transfer of Your Rights of Recovery Against Others to Us**

In the **COMMERCIAL INLAND MARINE CONDITIONS, LOSS CONDITIONS, K. Transfer of Rights of Recovery Against Others to Us** is replaced by the following:

You must transfer to us all of your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**Section V - Definitions**

The following terms, when appearing in quotation marks, have the following meanings wherever used in this Coverage Part:

**1.** "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

Includes copyrighted material of ISO Properties, Inc., and American Association of Insurance Services with their permission.

2. "Business income" means the:

    a. Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

    b. Continuing normal operating expenses incurred, including payroll.

3. "Computer system" means a configuration of "hardware" and "electronic media and records", including "telecommunications equipment" which may be integrated into or connected to such "hardware", purposely designed to perform a particular function or functions.

4. "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

    a. The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

        (1) The day the policy period shown in the Declarations ends; or

        (2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

    b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

5. "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada.

6. "Denial of service" means the malicious and intentional inundating of your "computer system" with messages, instructions, queries or requests that deplete resources enough to restrict, limit or prevent access for the purposes of nuisance, sabotage or malicious tampering which has the effect of:

    a. Depleting system resources available through the Internet to authorized external users of your "computer system"; and

    b. Impeding Internet access of authorized external users to your "computer system".

7. "Electronic media and records" means information, facts, instructions, concepts and programs converted and stored in a form usable in "hardware". It also includes the materials, such as magnetic tapes, disc packs, paper tapes and cards, floppy discs and compact discs, upon which such information, facts, instructions, concepts and programs are recorded and stored.

8. "Electronic securities" means any share, participation, or other interest in property of, or an enterprise of, the issuer or an obligation of the issuer which:

    a. Is a type commonly dealt in upon securities exchanges or markets;

    b. Is either one of a class or series or by its terms divisible into a class or series of shares, participations, interests, or obligations; and

        (1) Is not represented by an instrument;

        (2) Is part of a master or global certificate; or

        (3) Represents a paper certificate that has been surrendered by a financial institution and which paper certificate has been combined into a master depository note and the paper certificates are immobilized and such security is shown as an electronic entry on the account of the transferor, pledgor, or pledgee on the books of a Central Depository.

9. "Evidences of debt" means instruments executed by your customer and held by you which in the regular course of business are treated as evidencing the customer's debt to you, including records of charges and accounts receivable.

10. "Extra expense" means the necessary and reasonable expenses you incur during the "period of restoration" that you would not have incurred if there had been no "loss" due to a Covered Cause of Loss to Covered Property.

11. "Hardware" means an assemblage of electronic machine components capable of accepting and processing "electronic media and records" for the purpose of producing desired results.

    However, "hardware" does not include "telecommunications equipment".

12. "Loss" means:

**a.** "Sudden and accidental" physical loss or physical damage; and

**b.** With respect only to "denial of service", "malicious code" or "unauthorized use", also includes "sudden and accidental" damage, loss of use, loss of access or loss of functionality.

**13.** "Loss establishment expenses" means actual and necessary expenses incurred at our request to assist you in establishing either the existence or the amount of loss insured under this Coverage Part.

**14.** "Malicious code" means a computer code created for the purpose of destroying, corrupting or otherwise adversely affecting a "computer system".

**15.** "Mechanical breakdown" means the malfunction or failure of moving or electronic parts, component failure, faulty installation or blowout.

**16.** "Money" means:

**a.** Currency, coins, and bank notes in current use and having a face value;

**b.** Travelers checks, registered checks, and money orders held for sale to the public; and

**c.** Electronic cash equivalents.

**17.** "Occurrence" means an act or event or a series of related acts or events that result in a Covered Cause of Loss.

**18.** "Operations" means your business activities occurring at the "premises".

**19.** "Other property" means any tangible property of value other than "money", "securities", "electronic securities", or "electronic media and records".

However, "other property" does not include copyrights, patents, trademarks, trade secrets or other intellectual property.

**20.** "Period of restoration" means that period of time that:

**a.** Begins with the end of the time deductible for Coverage **B** referenced in the Declarations. Such deductible commences on the date and time of direct "loss" to Covered Property due to a Covered Cause of Loss; and

**b.** Ends on the earlier of:

**(1)** The date you could restore your "operations", with reasonable speed, to the condition that would have existed if no direct "loss" to Covered Prop-

erty due to a Covered Cause of Loss had occurred; or

**(2)** As long as it would reasonably take to repair, rebuild or replace the damaged Covered Property.

**21.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** You use, generate or produce the "pollutant".

**22.** "Premises" means any building you lease, rent or own and while you occupy it in conducting your business.

**23.** "Production equipment" means any machinery and related components, including any integrated or dedicated "computer system", which is used, or can be used, to produce or process other tangible property.

**24.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or "other property" and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** "Evidences of debt" issued in connection with credit or charge cards not issued by you.

**25.** "Service agreement" means a service plan or warranty, or other similar service or warranty agreement, even if it is characterized as insurance.

**26.** "Specified causes of loss" means: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the "sudden and accidental" sinking or collapse of

land into underground empty spaces created by the action of water on limestone or dolomite. This cause of "loss" does not include:

 **(1)** The cost of filling sinkholes; or

 **(2)** Sinking or collapse of land into manmade underground cavities.

**b.** Falling objects does not include "loss" to:

 **(1)** Covered Property in the open; or

 **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means "sudden and accidental" discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

**27.** "Sudden and accidental" means abrupt, immediate and brief as well as unintended and unexpected and without prior notice.

**28.** "Suspension" means the complete or partial cessation of your business activities.

**29.** "Telecommunications equipment" means telephones, including any related switching systems or similar equipment, fax machines and other similar equipment used to transmit voice or "electronic media and records" communications over telephone lines, data lines or air waves.

However, "telecommunications equipment" does not include "hardware".

**30.** "Temporarily" means:

**a.** Not permanently; and

**b.** For a period of 30 consecutive days or less.

**31.** "Unauthorized use" means:

**a.** Illegal or malicious entry into your "computer system" by a person not authorized to do so by you which results in the distortion or corruption of such "computer system"; or

**b.** Entry into or use of your "computer system" by a party:

 **(1)** Not authorized by you to do so; or

 **(2)** Authorized by you to do so, but who does so to use it in an unauthorized manner,

Which results in the distortion or corruption of your "computer system".

**32.** "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE PART**

**Section IV - Additional Conditions, 3. Common Conditions** is amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage will not be provided under this policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. Abandonment

There can be no abandonment of any property to us.

### B. Appraisal

If we and you disagree on the value of the property or the amount of "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. Duties in the Event of Loss

You must see that the following are done in the event of "loss" to Covered Property:

1. Notify the police if a law may have been broken.

2. Give us prompt notice of the "loss". Include a description of the property involved.

3. As soon as possible, give us a description of how, when and where the "loss" occurred.

4. Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss. Also if feasible, set the damaged property aside and in the best possible order for examination.

5. Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our consent.

6. Permit us to inspect the property and records proving "loss".

7. If requested, permit us to question you under oath, at such times as may be reasonably required, about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

8. Send us a signed, sworn statement of "loss" containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

9. Promptly send us any legal papers or notices received concerning the "loss".

10. Cooperate with us in the investigation or settlement of the claim.

### D. Insurance Under Two or More Coverages

If two or more of this policy's coverages apply to the same "loss", we will not pay more than the actual amount of the "loss".

### E. Loss Payment

We will pay or make good any "loss" covered under this Coverage Part within 30 days after:

1. We reach agreement with you;

2. The entry of final judgment; or

3. The filing of an appraisal award.

We will not be liable for any part of a "loss" that has been paid or made good by others.

### F. Other Insurance

If you have other insurance covering the same "loss" as the insurance under this Coverage Part, we will pay only the excess over what you should have received from the other insurance. We will pay the excess whether you can collect on the other insurance or not.

### G. Pair, Sets or Parts

1. Pair or Set

In case of "loss" to any part of a pair or set we may:

a. Repair or replace any part to restore the pair or set to its value before the "loss"; or

b. Pay the difference between the value of the pair or set before and after the "loss".

2. Parts

In case of "loss" to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**H.   Privilege to Adjust with Owner**

In the event of "loss" involving property of others in your care, custody or control, we have the right to:

**1.**   Settle the "loss" with the owners of the property. A receipt for payment from the owners of that property will satisfy any claim of yours.

**2.**   Provide a defense for legal proceedings brought against you. If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this insurance.

**I.   Recoveries**

Any recovery or salvage on a "loss" will accrue entirely to our benefit until the sum paid by us has been made up.

**J.   Reinstatement of Limit After Loss**

The Limit of Insurance will not be reduced by the payment of any claim, except for total "loss" of a scheduled item, in which event we will refund the unearned premium on that item.

**K.   Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this insurance has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after "loss" to impair them.

**GENERAL CONDITIONS**

**A.   Concealment, Misrepresentation or Fraud**

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

**1.**   This Coverage Part;

**2.**   The Covered Property;

**3.**   Your interest in the Covered Property; or

**4.**   A claim under this Coverage Part.

**B.   Legal Action Against Us**

No one may bring a legal action against us under this Coverage Part unless:

**1.**   There has been full compliance with all the terms of this Coverage Part; and

**2.**   The action is brought within 2 years after you first have knowledge of the "loss".

**C.   Liberalization**

If, within 45 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**D.   No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property, will benefit from this insurance.

**E.   Policy Period**

We cover "loss" commencing during the policy period shown in the Declarations.

**F.   Valuation**

The value of property will be the least of the following amounts:

**1.**   The actual cash value of that property;

**2.**   The cost of reasonably restoring that property to its condition immediately before "loss"; or

**3.**   The cost of replacing that property with substantially identical property.

In the event of "loss", the value of property will be determined as of the time of "loss".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SCHEDULED PREMISES ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE PART**

**I.** **Schedule:**

| Location Number | Coverage A Limit of Insurance | Coverage B Limit of Insurance |
|---|---|---|
| 1-1 | 40,000 | 10,000 |

**Blanket Insurance:**

| Location Number | Coverage A Limit of Insurance | Coverage B Limit of Insurance |
|---|---|---|

**Newly Acquired Property**

Limit of Insurance: $250,000 - Unless Otherwise Stated

**II.** **Section I - Coverages** is amended as follows:

**Section I - Coverages, Coverage A - Electronic Data Processing Property**, **Paragraph 5. Coverage Extensions** is amended to include the following:

**NEWLY ACQUIRED PROPERTY**

**(1)** We will pay up to the Limit of Insurance for Newly Acquired Property stated in the Schedule of this endorsement in any one "occurrence" for "loss" to "newly acquired" Covered Property due to a Covered Cause of Loss:

**(a)** In excess of the Limit of Insurance for Coverage **A** applicable to the "premises" stated in the Schedule of this endorsement; or

**(b)** At a location you lease, rent or own in the "coverage territory" and while you occupy it in conducting your business, but which has not yet been reported to us as a "premises".

**(2)** You will report such "newly acquired" Covered Property to us within ninety (90) days of its acquisition and pay any additional premium due. Insurance coverage under this Coverage Extension ceases at the earlier of:

**(a)** Ninety (90) days elapsing from the date of acquisition; or

**(b)** The expiration of the policy period.

**III.** **Section IV - Additional Conditions** is amended as follows:

**3.** **Common Conditions, b. Blanket Insurance** is hereby deleted and replaced by the following:

**b. Blanket Insurance**

If blanket insurance is indicated by (☒) in the Schedule of the Scheduled Premises Endorsement, the Limit of Insurance for each Coverage applies to all "premises" listed in the endorsement.

**IV. Section V - Definitions** is amended as follows:

**A.** Definition **22.** "Premises" is hereby deleted and replaced by the following:

**22.** "Premises" means any building located at an address referenced in the Schedule of the Scheduled Premises Endorsement you lease, rent or own and while you occupy it in conducting your business.

**B.** The following definition is added:

"Newly acquired" means:

**a.** First acquired; or

**b.** First moved to a new location within the "coverage territory" not yet reported to us as a "premises",

since the inception of the current "coverage term".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

### COMMERCIAL INLAND MARINE COVERAGE PART

**A. CANCELLATION** (Common Policy Conditions) is deleted in its entirety and replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. **a.** We may cancel this policy by mailing to you written notice stating the reason for cancellation.

   **b.** If we cancel nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   **c.** If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

      **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for less than 60 days.

      **(2)** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation;

   **c.** Any insured has violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased;

   **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled we will send the first Named Insured any premium refund due. If we or the first Named Insured cancel, the refund will be pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail written notice of nonrenewal no less than 60 days before the expiration date to:

   **a.** You; and

   **b.** The broker, if known to us, or the agent of record.

2. Even if we do not comply with these terms, this policy will terminate:

   **a.** On the expiration date if:

      **(1)** You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

      **(2)** We have indicated our willingness to renew this policy to you or your representative; or

      **(3)** You have notified us or our agent that you do not want to renew this policy.

   **b.** On the effective date of any other insurance replacing this policy.

**C. Mailing of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

**D.** Commercial Inland Marine General Condition **B. LEGAL ACTION AGAINST US** is replaced by the following:

**B. LEGAL ACTION AGAINST US**

No one may bring a legal action against us:

**1.** Until there has been full compliance with all the terms of this Coverage Part; and

**2.** More than 2 years after you first file a sworn proof of "loss" document with our agent or us. But we will extend this 2-year period by the number of days between the date you filed a sworn proof of "loss" document and the date the claim is denied in whole or in part by us.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# THE CINCINNATI INSURANCE COMPANY

**A Stock Insurance Company**

# CRIME AND FIDELITY COVERAGE PART DECLARATIONS (COMMERCIAL ENTITIES)

Attached to and forming part of POLICY NUMBER: **ECP 026 96 01**

Named Insured is the same as it appears in the Common Policy Declarations

Item    Location (address)
REFER TO CA911

Employee Benefit Plan(s) Included as Insureds:

**Coverage is Written:**

☒ Primary      ☐ Excess      ☐ Coindemnity      ☐ Concurrent

Coverage is provided only for the Crime Coverage for which a Limit of Insurance is shown below:

| Insuring Agreements Forming Part of This Coverage Part | Limit of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|
| 1. Employee Theft | $ 100,000 | $ 500 |
| 2. Forgery or Alteration | $ 25,000 | $ 500 |
| 3. Inside the Premises - Theft of Money and Securities | $ 15,000 | $ 500 |
| 4. Inside the Premises - Robbery or Safe Burglary of Other Property | $ | $ |
| 5. Outside the Premises | $ 5,000 | $ 500 |
| 6. Computer Fraud | $ | $ |
| 7. Funds Transfer Fraud | $ | $ |
| 8. Money Orders and Counterfeit Money | $ 10,000 | $ 500 |

**If added by Endorsement, Insuring Agreement(s):**

$          $

Forms and endorsements applicable to this Coverage Part at policy inception.

| | | |
|---|---|---|
| CR0020 | 05/06 | COMMERCIAL CRIME COVERAGE FORM (DISCOVERY FORM) |
| CCP402 | 02/14 | CINCIPAK™ MEDICAL / DENTAL OFFICE COMMERCIAL CRIME AMENDATORY ENDORSEMENT |
| CA440 | 08/07 | COMMERCIAL CRIME COVERAGE FORM AMENDATORY ENDORSEMENT |
| CA470IL | 11/16 | ILLINOIS CHANGES |
| CA911 | 08/07 | CRIME AND FIDELITY SCHEDULE OF LOCATIONS |

The Crime and Fidelity Coverage Part (Commercial Entities) consist of this Declaration Form and the Commercial Crime Coverage Form.

# COMMERCIAL CRIME COVERAGE FORM
# (DISCOVERY FORM)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

**A. Insuring Agreements**

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss Condition **E.1.g.:**

**1. Employee Theft**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

**2. Forgery or Alteration**

**a.** We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

**(1)** Made or drawn by or drawn upon you; or

**(2)** Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

**b.** If you are sued for refusing to pay any instrument covered in Paragraph **2.a.**, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

**3. Inside The Premises - Theft of Money and Securities**

**a.** We will pay for loss of "money" and "securities" inside the "premises" or "banking premises":

**(1)** Resulting directly from "theft" committed by a person present inside such "premises" or "banking premises"; or

**(2)** Resulting directly from disappearance or destruction.

**b.** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

**c.** We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

**4. Inside the Premises - Robbery or Safe Burglary of Other Property**

**a.** We will pay for loss of or damage to "other property":

**(1)** Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

**(2)** Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

**b.** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

© ISO Properties, Inc., 2005

c. We will pay for loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

**5. Outside the Premises**

a. We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

b. We will pay for loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

**6. Computer Fraud**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

a. To a person (other than a "messenger") outside those "premises"; or

b. To a place outside those "premises".

**7. Funds Transfer Fraud**

We will pay for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**8. Money Orders and Counterfeit Money**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

a. Money orders issued by any post office, express company or bank that are not paid upon presentation; or

b. "Counterfeit money" that is acquired during the regular course of business.

**B. Limit of Insurance**

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any

one of those Insuring Agreements or Coverages.

**C. Deductible**

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**D. Exclusions**

1. This insurance does not cover:

a. **Acts Committed by You, Your Partners or Your Members**

Loss resulting from "theft" or any other dishonest act committed by:

(1) You; or

(2) Any of your partners or "members";

whether acting alone or in collusion with other persons.

b. **Acts of Employees Learned of by You Prior to the Policy Period**

Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

c. **Acts Of Employees, Managers, Directors, Trustees or Representatives**

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

(1) Whether acting alone or in collusion with other persons; or

(2) While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1.**

d. **Confidential Information**

Loss resulting from:

(1) The unauthorized disclosure of your confidential information including, but not limited to, pat-

ents, trade secrets, processing methods or customer lists; or

**(2)** The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non-public information.

**e. Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**f. Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

**(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**g. Legal Fees, Costs and Expenses**

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement **A.2.**

**h. Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation or radioactive contamination, however caused.

**i. Pollution**

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**j. War and Military Action**

Loss or damage resulting from:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** Insuring Agreement **A.1.** does not cover:

**a. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**b. Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**c. Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

**3.** Insuring Agreements **A.3.**, **A.4.** and **A.5.** do not cover:

**a. Accounting or Arithmetical Errors or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

**b. Exchanges or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**c. Fire**

Loss or damage resulting from fire, however caused, except:

**(1)** Loss of or damage to "money" and "securities"; and

**(2)** Loss from damage to a safe or vault.

**d. Money Operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e. Motor Vehicles or Equipment and Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

**f. Transfer or Surrender of Property**

**(1)** Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

**(a)** On the basis of unauthorized instructions;

**(b)** As a result of a threat to do bodily harm to any person;

**(c)** As a result of a threat to do damage to any property;

**(d)** As a result of a threat to introduce a denial of service attack into your computer system;

**(e)** As a result of a threat to introduce a virus or other malicious instruction into your computer system which is designed to damage, destroy or corrupt data or computer programs stored within your computer system;

**(f)** As a result of a threat to contaminate, pollute or render substandard your products or goods; or

**(g)** As a result of a threat to disseminate, divulge or utilize:

**(i)** Your confidential information; or

**(ii)** Weaknesses in the source code within your computer system.

**(2)** But, this Exclusion does not apply under Insuring Agreement **A.5.** to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

**(a)** Had no knowledge of any threat at the time the conveyance began; or

**(b)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g. Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h. Voluntary Parting of Title to or Possession of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**4.** Insuring Agreement **A.6.** does not cover:

**a. Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

**b. Funds Transfer Fraud**

Loss resulting from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**c. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

5. Insuring Agreement **A.7.** does not cover:

   **COMPUTER FRAUD**

   Loss resulting from the use of a computer to fraudulently cause a transfer of "money", "securities" or "other property".

## E. Conditions

The following Conditions apply in addition to the Common Policy Conditions:

1. **Conditions Applicable to all Insuring Agreements**

   a. **Additional Premises or Employees**

      If, while this insurance is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this insurance. Notice to us of an increase in the number of "premises" or "employees" need not be given and no additional premium need be paid for the remainder of the Policy Period shown in the Declarations.

   b. **Concealment, Misrepresentation or Fraud**

      This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

      (1) This insurance;

      (2) The property covered under this insurance;

      (3) Your interest in the property covered under this insurance; or

      (4) A claim under this insurance.

   c. **Consolidation - Merger or Acquisition**

      If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

      (1) You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this insurance to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

      (2) For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

   d. **Cooperation**

      You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

   e. **Duties in the Event of Loss**

      After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

      (1) Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement **A.1.** or **A.2.**) involves a violation of law, you must also notify the local law enforcement authorities.

      (2) Submit to examination under oath at our request and give us a signed statement of your answers.

      (3) Produce for our examination all pertinent records.

      (4) Give us a detailed, sworn proof of loss within 120 days.

      (5) Cooperate with us in the investigation and settlement of any claim.

   f. **Employee Benefit Plans**

      (1) The "employee benefit plans" shown in the Declarations (hereafter referred to as Plan) are included as Insureds under Insuring Agreement **A.1.**

      (2) If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for Insuring Agree-

ment **A.1.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**(3)** With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement **A.1.** is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(4)** If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**(5)** If two or more Plans are insured under this insurance, any payment we make for loss:

**(a)** Sustained by two or more Plans; or

**(b)** Of commingled "funds" or "other property" of two or more Plans;

resulting directly from an "occurrence" will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

**(6)** The Deductible Amount applicable to Insuring Agreement **A.1.** does not apply to loss sustained by any Plan.

**g. Extended Period to Discover Loss**

We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

**(1)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insur-

ance provides coverage for loss sustained prior to its effective date.

**(2)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**h. Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

**(2)** If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

**(4)** If this insurance or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

**(a)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(b)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**(5)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

**(6)** Payment by us to the first Named Insured for loss sustained by any Insured, other than an "employee benefit plan", shall fully release us on account of such loss.

**i.** **Legal Action Against Us**

You may not bring any legal action against us involving loss:

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of loss with us; and

**(3)** Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**j.** **Liberalization**

If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this insurance.

**k.** **Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

**(1)** **Primary Insurance**

When this insurance is written as primary insurance, and:

**(a)** You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

**(b)** You have other insurance covering the same loss other than that described in Paragraph **(1)(a)**, we will only pay for the amount of loss that exceeds:

**(i)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

**(ii)** The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

**(2)** **Excess Insurance**

**(a)** When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

**(b)** However, if loss covered under this insurance is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations, by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

**l.** **Ownership of Property; Interests Covered**

The property covered under this insurance is limited to property:

**(1)** That you own or lease; or

**(2)** That you hold for others whether or not you are legally liable for the loss of such property.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

**m.** **Policy Bridge - Discovery Replacing Loss Sustained**

**(1)** If this insurance replaces insurance that provided you with an extended period of time after cancellation in which to discover loss and which did not terminate

at the time this insurance became effective:

**(a)** We will not pay for any loss that occurred during the Policy Period of that prior insurance which is "discovered" by you during the extended period to "discover" loss, unless the amount of loss exceeds the Limit of Insurance and Deductible Amount of that prior insurance. In that case, we will pay for the excess loss subject to the terms and conditions of this policy.

**(b)** However, any payment we make for the excess loss will not be greater than the difference between the Limit of Insurance and Deductible Amount of that prior insurance and the Limit of Insurance shown in the Declarations. We will not apply the Deductible Amount shown in the Declarations to this excess loss.

**(2)** The Other Insurance Condition **E.1.k.** does not apply to this Condition.

**n. Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

**o. Recoveries**

**(1)** Any recoveries, whether effected before or after any payment under this insurance, whether made by us or you, shall be applied net of the expense of such recovery:

**(a)** First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

**(b)** Second, to us in satisfaction of amounts paid in settlement of your claim;

**(c)** Third, to you in satisfaction of any Deductible Amount; and

**(d)** Fourth, to you in satisfaction of any loss not covered under this insurance.

**(2)** Recoveries do not include any recovery:

**(a)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

**(b)** Of original "securities" after duplicates of them have been issued.

**p. Territory**

This insurance covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**q. Transfer of Your Rights of Recovery Against Others to Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**r. Valuation - Settlement**

**(1)** The value of any loss for purposes of coverage under this policy shall be determined as follows:

**(a)** Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

**(i)** At face value in the "money" issued by that country; or

**(ii)** In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

**(b)** Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

**(i)** Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

**(ii)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of:

**i.** Market value of the "securities" at the close of business on the day the loss was "discovered"; or

**ii.** The Limit of Insurance applicable to the "securities".

**(c)** Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

**(i)** The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

**(ii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property; or

**(iii)** The Limit of Insurance applicable to the lost or damaged property.

With regard to Paragraphs **r.(1)(c)(i)** through **r.(1)(c)(iii),** we will not pay on a replacement cost basis for any loss or damage:

**i.** Until the lost or damaged property is actually repaired or replaced; and

**ii.** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

**(2)** We will, at your option, settle loss or damage to property other than "money":

**(a)** In the "money" of the country in which the loss or damage occurred; or

**(b)** In the United States of America dollar equivalent of the "money" of the country in which the loss or damage occurred determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

**(3)** Any property that we pay for or replace becomes our property.

**2. Conditions Applicable to Insuring Agreement A.1.**

**a. Termination as to Any Employee**

This Insuring Agreement terminates as to any "employee":

**(1)** As soon as:

**(a)** You; or

**(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

**(2)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If

notice is mailed, proof of mailing will be sufficient proof of notice.

**b. Territory**

We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition **E.1.p.** for a period of not more than 90 consecutive days.

**3. Conditions Applicable to Insuring Agreement A.2.**

**a. Deductible Amount**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

**b. Electronic and Mechanical Signatures**

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

**c. Proof of Loss**

You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**d. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.p.** does not apply to Insuring Agreement **A.2.**

**4. Conditions Applicable to Insuring Agreements A.4. and A.5.**

**a. Armored Motor Vehicle Companies**

Under Insuring Agreement **A.5.,** we will only pay for the amount of loss you cannot recover:

**(1)** Under your contract with the armored motor vehicle company; and

**(2)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**b. Special Limit of Insurance for Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

**(1)** Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

**(2)** Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**5. Conditions Applicable to Insuring Agreement A.6.**

**a. Special Limit of Insurance for Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**b. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.p.** does not apply to Insuring Agreement **A.6.**

**F. Definitions**

**1.** "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

**2.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**3.** "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

**4.** "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party

under circumstances which, if true, would constitute a loss under this insurance.

**5.** "Employee":

**a.** "Employee" means:

**(1)** Any natural person:

**(a)** While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other dishonest act committed by the "employee";

**(b)** Who you compensate directly by salary, wages or commissions; and

**(c)** Who you have the right to direct and control while performing services for you;

**(2)** Any natural person who is furnished temporarily to you:

**(a)** To substitute for a permanent "employee" as defined in Paragraph **a.(1)**, who is on leave; or

**(b)** To meet seasonal or short-term work load conditions;

while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises";

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **a.(2)**;

**(4)** Any natural person who is:

**(a)** A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; and

**(b)** A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

**(5)** Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained as a consultant while performing services for you;

**(6)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person having care and custody of property outside the "premises";

**(7)** Any "employee" of an entity merged or consolidated with you prior to the effective date of this insurance; or

**(8)** Any of your "managers", directors or trustees while:

**(a)** Performing acts within the scope of the usual duties of an "employee"; or

**(b)** Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

**b.** "Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph **5.a.**

**6.** "Employee benefit plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

**7.** "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**8.** "Fraudulent instruction" means:

**a.** An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

**b.** A written instruction (other than those described in Insuring Agree-

ment **A.2.)** issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

**c.** An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.

**9.** "Funds" means "money" and "securities".

**10.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**11.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**12.** "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

**13.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Travelers checks, register checks and money orders held for sale to the public.

**14.** "Occurrence" means:

**a.** Under Insuring Agreement **A.1.:**

**(1)** An individual act;

**(2)** The combined total of all separate acts whether or not related; or

**(3)** A series of acts whether or not related;

committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, before such Policy Period or both.

**b.** Under Insuring Agreement **A.2.:**

**(1)** An individual act;

**(2)** The combined total of all separate acts whether or not related; or

**(3)** A series of acts whether or not related;

committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, before such Policy Period or both.

**c.** Under All Other Insuring Agreements:

**(1)** An individual act or event;

**(2)** The combined total of all separate acts or events whether or not related; or

**(3)** A series of acts or events whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, before such Policy Period or both.

**15.** "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this insurance.

**16.** "Premises" means the interior of that portion of any building you occupy in conducting your business.

**17.** "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

**a.** Caused or threatened to cause that person bodily harm; or

**b.** Committed an obviously unlawful act witnessed by that person.

**18.** "Safe burglary" means the unlawful taking of:

**a.** Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

**b.** A safe or vault from inside the "premises".

**19.** "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by

actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**20.** "Theft" means the unlawful taking of property to the deprivation of the Insured.

**21.** "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "funds":

**a.** By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

**b.** By means of written instructions (other than those described in Insuring Agreement **A.2.**) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

**22.** "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPak™

# MEDICAL/DENTAL OFFICE COMMERCIAL CRIME AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME COVERAGE PART**

**I.**   Section **D. Exclusions**, Paragraph **3.** is modified by deleting in its entirety subparagraph **d. Money Operated Devices**.

**II.**   Section **E. Conditions, 1. Conditions Applicable to All Insuring Agreements, f. Employee Benefit Plans, (1)** is deleted in its entirety and replaced by the following:

**(1)**   "Employee benefit plans" (hereafter referred to as Plan) are included as Insureds under Insuring Agreement **A.1.**

**III.**   Section **F. Definitions** is amended by deleting definition **6.** "Employee benefit plan" in its entirety and replacing it with the following:

**6.**   "Employee benefit plan" means any welfare or pension benefit plan that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

Includes copyrighted material of ISO Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL CRIME COVERAGE FORM
# AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME COVERAGE FORM**

**A.** It is agreed that **E. Conditions, 1. Conditions Applicable to all Insuring Agreements, j. Liberalization** is deleted in its entirety and replaced by the following:

**j.   Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.**   The date we implemented the change in your state; or

**b.**   The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**B.** It is agreed that **D. Exclusions, 1. i. Pollution** is deleted in its entirety and replaced by the following:

**i.   Pollutants**

Loss or damage caused by or resulting from pollutants. Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.**   You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.**   You use, generate or produce the pollutant.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

> **COMMERCIAL CRIME COVERAGE FORM**
> **CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM (DISCOVERY FORM)**
> **EMPLOYEE THEFT AND FORGERY POLICY**
> **GOVERNMENT CRIME COVERAGE FORM**

**A.** The **Cancellation** Common Policy Condition or the **Cancellation of Policy** Condition is deleted in its entirety and replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. **Cancellation of Policies in Effect 60 Days or Less**

   a. We may cancel this policy by mailing to you written notice stating the reason for cancellation.

   b. If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   c. If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

      (1) 30 days prior to the effective date of cancellation if the policy has been in effect for less than 60 days.

      (2) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. **60 Days or More**

   If this policy has been in effect for more than 60 days, we may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained through a material misrepresentation;

   c. Any insured has violated any of the terms and conditions of the policy;

   d. The risk originally accepted has measurably increased;

   e. Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled we will send the first Named Insured any premium refund due. If we or the first Named Insured cancel, the refund will be pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

If we decide not to renew or continue this policy, we will mail you and your agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing of Notices**

We will mail cancellation and nonrenewal notices to the last addresses known to us. Proof of mailing will be sufficient proof of notice.

**D.** Under the Commercial Crime Coverage Form, Commercial Crime Policy, Government Crime Coverage Form, Government Crime Policy and Employee Theft And Forgery Policy, the **Legal Action Against Us** Condition is replaced by the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**LEGAL ACTION AGAINST US**

You may not bring any legal action against us involving loss:

1. Unless you have complied with all the terms of this insurance; and

2. Until 90 days after you have filed proof of loss with us; and

3. Unless brought within 2 years from the date you "discover" the loss. But we will extend this 2-year period by the number of days between the date proof of loss is filed and the date the claim is denied in whole or in part.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CRIME AND FIDELITY SCHEDULE OF LOCATIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME COVERAGE FORM**
**COMMERCIAL CRIME POLICY**
**EMPLOYEE THEFT AND FORGERY POLICY**
**GOVERNMENT CRIME COVERAGE FORM**
**GOVERNMENT CRIME POLICY**

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 545 N RAND RD | | | |
| | LAKE ZURICH, IL 60047-3134 | | | |

CA 911 08 07

## The Cincinnati Insurance Company

A Stock Insurance Company

# DENTIST'S
# PROFESSIONAL LIABILITY COVERAGE PART DECLARATIONS
# (OCCURRENCE)

Attached to and forming part of POLICY NUMBER:  **ECP 026 96 01**    Effective Date  **10-14-2017**

**Named Insured** is the same as it appears in the Common Policy Declarations unless another entry is made here.

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| $ | 1,000,000 | Each Dental Incident Limit - COVERAGE A - PROFESSIONAL LIABILITY |
| $ | 5,000 | Any One Person - COVERAGE B - FIRST AID PAYMENTS |
| $ | 3,000,000 | Aggregate Limit |

### Who Is Covered Under This Insurance:

| Name | Code | Premium |
|---|---|---|
| SANDY POINT DENTAL PC | 80239 | INCL |
| | | |
| JOHN M MCNERNEY DDS | 80227 | 1,489 |
| SAM CALABRESE DDS | 80227 | 1,711 |

### FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| PA128 | 10/11 | DENTIST'S PROFESSIONAL LIABILITY OCCURRENCE COVERAGE FORM |
| PA206 | 08/07 | MEDICAL WASTE DEFENSE EXPENSES REIMBURSEMENT COVERAGE |
| PA258 | 03/16 | PATIENT INFORMATION PRIVACY INCIDENT COVERAGE |
| PA322 | 03/13 | EXCLUSION - GENERAL ANESTHESIA |
| PA4150IL | 08/07 | ILLINOIS CHANGES - DENTIST'S PROFESSIONAL LIABILITY OCCURRENCE COVERAGE FORM |
| PA205 | 11/13 | DEPARTMENT OF PROFESSIONAL REGULATION (DPR) COVERAGE |

# DENTIST'S PROFESSIONAL LIABILITY OCCURRENCE COVERAGE FORM - TABLE OF CONTENTS

**Coverage Part Provision:**                                                                 **Begins on Page:**

Preamble ........................................................................................................................2

**SECTION I - COVERAGES:** ..........................................................................................2

**COVERAGE A. PROFESSIONAL LIABILITY:** .............................................................2

   **1. Insuring Agreement** ...........................................................................................2

   **2. Exclusions:** .......................................................................................................2

      **a.** Aircraft, Auto or Watercraft ...........................................................................2
      **b.** Asbestos ........................................................................................................2
      **c.** Contractual Liability .......................................................................................2
      **d.** Discrimination .................................................................................................2
      **e.** Dishonest, Criminal or Malicious Acts ...........................................................2
      **f.** Employer's Liability ........................................................................................2
      **g.** Employment-Related Practices .......................................................................3
      **h.** Nuclear ..........................................................................................................3
      **i.** Other Operations ............................................................................................3
      **j.** Pollutant .........................................................................................................3
      **k.** Sexual Molestation, Misconduct or Assault ...................................................3
      **l.** War .................................................................................................................4
      **m.** Workers' Compensation and Similar Laws .....................................................4
      **n.** Botulinum Toxin or Dermal Fillers .................................................................4

   **3. Supplementary Payments - Coverage A.** ...........................................................4

**COVERAGE B. FIRST AID PAYMENTS** .........................................................................4

   **1. Insuring Agreement** ...........................................................................................4

   **2. Exclusions:** .......................................................................................................5

      **a.** Excluded Under Coverage A. .........................................................................5
      **b.** First Aid Services Provided by You .................................................................5
      **c.** Workers' Compensation and Similar Laws .....................................................5
      **d.** Failure to Diagnose .......................................................................................5

**SECTION II - WHO IS AN INSURED** ............................................................................5

**SECTION III - LIMITS OF INSURANCE** .......................................................................5

**SECTION IV - CONDITIONS:** .......................................................................................6

   **1.** Bankruptcy .........................................................................................................6
   **2.** Duties in the Event of Dental Incident, Claim or Suit ..........................................6
   **3.** Legal Action Against Us .....................................................................................6
   **4.** Liberalization .....................................................................................................6
   **5.** Multi-Year Policies .............................................................................................6
   **6.** Other Insurance .................................................................................................6
   **7.** Representations .................................................................................................6
   **8.** Separation of Insureds .......................................................................................7
   **9.** Transfer of Rights of Recovery Against Others to Us ..........................................7
   **10.** When We Do Not Renew ...................................................................................7

**SECTION V - DEFINITIONS:** ........................................................................................7

   **1.** "Coverage term" ................................................................................................7
   **2.** "Coverage territory" ...........................................................................................7
   **3.** "Damages" ........................................................................................................7
   **4.** "Dental incident" ...............................................................................................7
   **5.** "Independent contractor" ....................................................................................8
   **6.** "Pollutants" .......................................................................................................8
   **7.** "Profession or Professional services" .................................................................8
   **8.** "Suit" .................................................................................................................8
   **9.** "Workplace" .......................................................................................................8

# DENTIST'S PROFESSIONAL
# LIABILITY OCCURRENCE COVERAGE FORM

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and what is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS**.

## SECTION I - COVERAGES

## COVERAGE A. PROFESSIONAL LIABILITY

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as "damages" due to injury caused by a "dental incident" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply. We may, at our discretion, investigate any "dental incident" and, only with your written consent, settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for "damages" is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. PROFESSIONAL LIABILITY**; or first aid expenses under **SECTION I - COVERAGES, COVERAGE B. FIRST AID PAYMENTS**.

   No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SECTION I - COVERAGES, COVERAGE A. PROFESSIONAL LIABILITY**, Paragraph **3. Supplementary Payments - Coverage A.**

   **b.** This insurance applies to injury only if:

      **(1)** The "dental incident" takes place in the "coverage territory"; and

      **(2)** The earlier of the following first occurs during the "coverage term":

         **(a)** The first injury arising from the "dental incident" occurs; or

         **(b)** The first injury arising from the "dental incident" begins to occur.

**2. Exclusions**

   This insurance does not apply to:

   **a. Aircraft, Auto or Watercraft**

      Injury arising out of the ownership, maintenance, operation, use, entrustment, loading or unloading of any motor vehicle, trailer, watercraft, or aircraft.

   **b. Asbestos**

      Injury arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

   **c. Contractual Liability**

      Any liability for which the insured is obligated to pay "damages" by reason of the assumption of liability in a contract or agreement. However, this exclusion does not apply to liability for "damages" that the insured would have in the absence of the contract or agreement.

   **d. Discrimination**

      Any liability based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving non-employment related discrimination.

   **e. Dishonest, Criminal or Malicious Acts**

      Acts, errors, omissions or malpractice of any insured that are dishonest, criminal or malicious.

   **f. Employer's Liability**

      Injury, sickness or disease, including death, suffered by:

      **(1)** An employee of an insured sustained in the "workplace";

      **(2)** An employee of an insured arising out of the performance of duties re-

Includes copyrighted material of ISO Properties, Inc., with its permission.

lated to the conduct of the insured's business; or

**(3)** The spouse, child, parent, brother or sister of that employee as a consequence of **(1)** or **(2)** above.

This exclusion applies:

**(1)** Whether an insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury, sickness or disease, including death.

**g.** **Employment-Related Practices**

Injury to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of injury to that person at whom any of the employment-related practices described in Paragraphs **(1)(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(1)(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

**h.** **Nuclear**

Any liability based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the hazardous properties, including radioactive, toxic or explosive properties, of any nuclear material. Nuclear material means any source material, special nuclear material, or by-product materials as those terms are defined under the Atomic Energy Act of 1954 or any amendments thereto.

**i.** **Other Operations**

"Damages" for which the insured may be held liable as a:

**(1)** Proprietor, superintendent, executive officer, stockholder or member of the board of directors, trustees or governors of any hospital, sanitarium, clinic with bed and board facilities, nursing home; or

**(2)** Laboratory; or

**(3)** Any other business enterprise.

Paragraph **(2)** of this exclusion does not apply to work completed for a patient of an insured by a laboratory owned and operated by you.

**j.** **Pollutant**

Loss, injury, cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants", including any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for "damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**k.** **Sexual Molestation, Misconduct or Assault**

Any claim made against an insured for any act of sexual molestation, sexual misconduct or sexual assault. However, we will defend any civil "suit" against an insured seeking "damages" which would be covered if this exclusion did not apply. In such case, we will pay only the fees, costs and expenses of such defense unless:

**(1)** The insured is convicted of a criminal offense arising from the alleged act of sexual molestation, sexual misconduct or sexual assault;

**(2)** The insured pleads guilty or no contest to a criminal charge or charges arising from the alleged act of sexual molestation, sexual misconduct or sexual assault;

**(3)** The insured admits to their personal participation in or condoning of the alleged act of sexual molestation, sexual misconduct or sexual assault; or

**(4)** The insured's personal participation in or condoning of the alleged act of sexual molestation, sexual misconduct or sexual assault is determined to have occurred by a court of competent jurisdiction in a civil action,

at which point our duty to defend the insured or pay "damages" on behalf of the insured shall cease.

**l. War**

Injury, however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**m. Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**n. Botulinum Toxin or Dermal Fillers**

"Damages" arising or resulting from any cosmetic dermal procedures including botulinum toxins, hyaluronic acid products, collagen injections, dermabrasions, dermal fillers, or any other similar or related procedures.

**3. Supplementary Payments - Coverage A.**

We will pay with respect to any claim we investigate or settle or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

**c.** The cost of bonds to release attachments but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**e.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**COVERAGE B. FIRST AID PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay first aid expenses as described in Paragraph **b.** below that result from physical injury to a person that occurs immediately while an insured is physically rendering "professional services" to that person, provided that:

**(1)** The injury takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the injury; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable Limits of Insurance. We will pay reasonable first aid expenses for:

**(1)** First aid administered at the time of the injury;

Includes copyrighted material of ISO Properties, Inc., with its permission.

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**c.** We will make these payments only with your consent.

## 2. Exclusions

We will not pay for first aid expenses:

**a. Excluded Under Coverage A.**

Resulting from liability excluded under **COVERAGE A. PROFESSIONAL LIABILITY**.

**b. First Aid Services Provided by You**

Resulting from first aid services provided by you, any insured or anyone else you have contracted with to provide such services.

**c. Workers' Compensation and Similar Laws**

To a person, whether or not an employee of the insured, if benefits for the injury are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**d. Failure to Diagnose**

Resulting from the failure to diagnose or treat any condition.

## SECTION II - WHO IS AN INSURED

**1.** Each individual designated in the Who Is Covered Under This Insurance section of the Dentist's Professional Liability Coverage Part Declarations is an insured.

**2.** The following entities, if listed in the Who Is Covered Under This Insurance section of the Dentist's Professional Liability Coverage Part Declarations, are insured to the extent set forth below:

**a.** A partnership or joint venture, including its members or partners, but only with respect to the conduct of your business;

**b.** A limited liability company, including its members and managers. However:

**(1)** Members are insureds only with respect to the conduct of your business; and

**(2)** Managers are insureds only with respect to their duties as your managers; and

**c.** An organization other than a partnership, joint venture or limited liability company, including:

**(1)** Its executive officers and directors, but only with respect to their duties as your executive officers or directors; and

**(2)** Its stockholders, but only with respect to their liability as stockholders,

but only for the acts, errors, omissions or malpractice of others. However, none of the foregoing are insureds with respect to "professional services" they furnish or which are furnished by a person under their personal direction, control or supervision.

**3.** The legal representative of an insured who dies is an insured, but only with respect to duties as such. That representative will have all rights and duties under this Coverage Part.

**4.** The employees and "independent contractor" dental hygienists and dental assistants of those insureds described in Paragraphs **1.** or **2.** above, but only while acting within the scope of their duties as such and only with respect to "professional services" performed on behalf of an insured described in Paragraphs **1.** or **2.** above.

However, employed or "independent contractor" physicians, nurse anesthetists or dentists are not insureds.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Dentist's Professional Liability Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Claims made or "suits" brought; or

**b.** Persons or organizations making claims or bringing "suits".

**2.** Subject to **3.** below, the Each Dental Incident Limit is the most we will pay for the sum of:

**a.** "Damages" under COVERAGE **A**; and

**b.** First Aid expenses under COVERAGE **B**;

arising out of any one "dental incident".

**3.** The Aggregate Limit is the most we will pay for the sum of:

**a.** "Damages" under COVERAGE **A**; and

**b.** First Aid expenses under COVERAGE **B**;

Includes copyrighted material of ISO Properties, Inc., with its permission.

for all claims or "suits" to which this insurance applies.

**4.** Subject to **2.** above, the First Aid Expenses Limit is the most we will pay under COVER-AGE **B.** for all first aid expenses because of injury sustained by any one person.

**5.** The Limits of Insurance as described in Paragraphs **1., 2.** and **3.** of **SECTION III - LIMITS OF INSURANCE** apply separately to each insured. However, only one Each Dental Incident Limit and one Aggregate Limit shall apply collectively to all insureds described in **SECTION II - WHO IS AN INSURED**, Paragraph **2.**

**6.** The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

## SECTION IV - CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of an insured or of an insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties in the Event of Dental Incident, Claim or Suit**

**a.** You must see to it that we are notified promptly of every "dental incident" which may result in a claim. Notice should include:

**(1)** How, when and where the "dental incident" took place; and

**(2)** The names and addresses of any injured persons and witnesses.

**b.** If a claim is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the claim or "suit".

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury, sickness or disease to which this insurance may also apply.

**d.** No insureds will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our written consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for "damages" from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for "damages" that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the "coverage term", we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this insurance as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this insurance became effective; and

will be considered as included until the end of the current Policy Period. We will make no additional premium charge for this additional coverage during the interim.

**5. Multi-Year Policies**

If this Coverage Part is issued for more than one year, the premium shall be computed annually based on our rates or premiums in effect at each anniversary.

**6. Other Insurance**

This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

**7. Representations**

By accepting this Coverage Part, you agree:

Includes copyrighted material of ISO Properties, Inc., with its permission.

**a.** The statements in the Dentist's Professional Liability Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this Coverage Part in reliance upon your representations.

**8. Separation of Insureds**

Except with respect to any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each insured were the only insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**10. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

**1.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The date the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**2.** "Coverage territory" means anywhere in the world provided the original claim or "suit" for such "damages" or first aid expenses is brought within the United States of America, its territories or possessions, Puerto Rico or Canada.

**3.** "Damages" means monetary compensation payable because of an injury, sickness or disease, including death, to which this insurance applies.

**4.** "Dental incident":

**a.** Means any act, error, omission or malpractice arising out of the providing of or failing to provide "professional services" by:

**(1)** An insured;

**(2)** An employee of an insured;

**(3)** Any person acting under an insured's personal direction, control or supervision;

**(4)** Any person for whose acts an insured is legally liable; or

**(5)** An insured while acting as an instructor of dentistry or as a member of a formal dental accreditation, standards review or similar professional board or committee; and

**b.** For purposes of determining what we will pay under this coverage:

**(1)** All injury resulting from a series of acts or omissions in rendering "professional services" to one person; or

**(2)** All injury occurring while an insured is acting as an instructor of dentistry or as a member of a formal dental accreditation, standards review or similar professional board or committee in connection with a single person or organization; or

**(3)** All injury arising out of or in connection with the continuous or repeated exposure to substantially the same conditions,

shall be considered as arising from one "dental incident" regardless of the time

frame over which such "dental incidents" or injury occur. A "dental incident" shall be deemed to have occurred in the "coverage term" in which the earliest "dental incident" occurred.

5. "Independent contractor" means a natural person who provides "professional services" on your behalf.

6. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

   a. The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

   b. The insured uses, generates or produces the "pollutant".

7. "Profession" or "Professional services" means the practice of:

   a. Dentistry by a duly licensed dentist;

   b. Dental hygiene by a duly licensed dental hygienist;

   c. Dental assisting by a duly licensed dental assistant;

   d. Dental consulting by a licensed dentist; or

   e. Rendering an opinion as a dental expert by a licensed dentist when retained to examine human remains,

as prescribed by the applicable statutes and licensing laws of the jurisdictions which the insured practices.

8. "Suit" means a civil proceeding in which "damages" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which "damages" are claimed and to which the insured must submit or does submit with our consent;

   b. Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the insured submits with our consent; or

   c. An appeal of a civil proceeding.

9. "Workplace" means that place and during such hours to which the employee sustaining injury was assigned by you, or any other person or entity acting on your behalf, to work on the date the injury was suffered.

Includes copyrighted material of ISO Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MEDICAL WASTE DEFENSE EXPENSES
# REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

**DENTIST'S PROFESSIONAL LIABILITY OCCURRENCE COVERAGE FORM**

### SCHEDULE

Limit of Insurance: $50,000 "Defense Expenses"

**A. SECTION I - COVERAGES** is amended to include the following:

**COVERAGE D. MEDICAL WASTE DEFENSE EXPENSES REIMBURSEMENT**

**1. Insuring Agreement**

We will reimburse you for the "defense expenses" you incur as a result of a "civil suit" alleging you violated a law or regulation governing the disposal of medical waste. This coverage applies only to a "civil suit" which is brought against you during the policy period. We have no right or duty to defend you for any such "civil suit".

No other obligation or liability to pay sums or perform acts or services is covered.

**2. Exclusions**

This insurance does not apply to:

**a.** Any incident that is insured under another provision which forms a part of this policy or any other policy in which it is more specifically described.

**b.** A "civil suit" arising from any incident that took place prior to the effective date of this policy.

**B. SECTION III - LIMITS OF INSURANCE** is deleted in its entirety and replaced by the following with respect only to the insurance coverage afforded under this endorsement:

**1.** The Limit of Insurance stated in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** "Civil suits" brought; or

**c.** Persons or organizations bringing "civil suits".

**2.** The "Defense Expenses" Limit of Insurance stated in the Schedule of this endorsement is the most we will reimburse for the sum of all "civil suits" to which this insurance applies.

**3.** The Limit of Insurance provided under this endorsement applies separately to each "coverage term".

**C. SECTION IV - CONDITIONS** is amended to include the following:

**Duties in the Event of Civil Suit**

You must see to it that we are notified in writing as soon as practicable that a "civil suit" to which this insurance applies has been brought against you. Notice should include:

**a.** How, when and where the incident that resulted in a "civil suit" took place; and

**b.** Copies of notices or other legal papers received in connection with the "civil suit".

**D. SECTION V - DEFINITIONS** is amended to include:

**1.** "Civil suit" means a civil proceeding brought against you by a federal or state environmental protection agency to which this insurance applies.

**2.** "Defense expenses" means necessary and reasonable legal fees, costs and expenses incurred by you as a result of an investigation, defense and appeal of a "civil suit". "Defense expenses" shall not include your remuneration or overhead expenses.

All other terms and conditions of this policy remain unchanged.

**PA 206 08 07**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PATIENT INFORMATION PRIVACY INCIDENT COVERAGE

This endorsement modifies insurance provided under the following:

DENTIST PROFESSIONAL LIABILITY COVERAGE FORM
DENTIST PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS-MADE

### SCHEDULE

**Information Privacy Incident Limit**: $25,000

1. For this endorsement only, **SECTION I - COVERAGE, 1. Insuring Agreement,** Paragraph **a.** is amended to include the following:

   We will pay on your behalf "defense expenses" and "damages" you are legally obligated to pay for an "information privacy incident".

2. For this endorsement only, the last paragraph of **SECTION III - LIMITS OF INSURANCE** is amended to include the following:

   The amount shown in the **Schedule** for **Information Privacy Incident Limit** on this endorsement is the most we will pay for all claims arising out of a single "information privacy incident". The **Information Privacy Incident Limit** provided under this endorsement applies separately to each "coverage term".

3. For this endorsement only, **SECTION IV - CONDITIONS** is amended as follows:

   Condition **2. Duties of the Insured in the Event of a Dental Incident, Claim or Suit** is amended to include the following:

   You must see to it that we are notified promptly in writing of every claim made, investigation or disciplinary proceeding brought against you alleging an "information privacy incident" to which this insurance applies. All other provisions of the **Duties in the Event of a Dental Incident, Claim or Suit** Condition apply.

4. For this endorsement only, **SECTION V - DEFINITIONS** is amended to include the following:

   **a.** "Defense expenses" means fees, costs or expenses incurred by us or by you, including reasonable fees charged by an attorney retained by you, with our written consent, to defend you in a civil investigation or disciplinary proceeding arising out of an "information privacy incident".

   **b.** "Information privacy incident" means an act, error or omission by you which results in a breach or violation of U.S. federal and/or state statutes and regulations in connection with the care, custody and control of personal identifying financial or medical information of your patients in the scope of your "professional health care services". The laws for which breaches or violations are intended to be covered by this endorsement include, but are not limited to:

   **(1)** The Health Insurance Portability & Accountability Act of 1996 (HIPAA) including any amendments;

   **(2)** The Gramm-Leach-Bliley Act of 1999 (GLB) including any amendments; and

   **(3)** State laws directly related to privacy protection of patients.

5. For this endorsement only, **SECTION V - DEFINITIONS,** "Profession" or "Professional services" is amended to include the following:

   "Profession" or "Professional services" means the practice of:

   **f.** Maintaining the confidentiality and security of personal identifying financial or medical information of your patients in conformance with U.S. federal and/or state statutes and regulations.

   "Profession" or "Professional services" also includes services performed by any person as a:

   **a.** Member of a formal accreditation, standards review or equivalent professional board or committee of the Named Insured; or

   **b.** Person charged with executing the directives of such board or committee.

   Any such act or omission together with all related acts or omissions in the furnishing of such services to any one person shall be considered one "information privacy incident".

6. For this endorsement only, **SECTION V - DEFINITIONS,** "Damages" is deleted in its entirety and replaced by the following:

PA 258 03 16

"Damages" means all monetary damages, including civil fines or penalties, which are payable because of injury to which this Coverage Part applies.

Damages do not include:

**a.** Criminal fines or penalties imposed by law;

**b.** Punitive or exemplary damages, the multiplied portion of multiplied damages;

**c.** Any amount for which you are not financially liable; or

**d.** Any award that is uninsurable under the law governing this Coverage Part.

All other terms and conditions of this Coverage Part remain unchanged.

**PA 258 03 16**

**Page 2 of 2**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - GENERAL ANESTHESIA

This endorsement modifies insurance provided under the following:

**DENTIST'S PROFESSIONAL LIABILITY OCCURRENCE COVERAGE FORM**

**SECTION I - COVERAGES, COVERAGE A. PROFESSIONAL LIABILITY, 2. Exclusions** is amended to include the following:

This insurance does not apply to:

Any liability for "damages" arising out of the use of general anesthesia or deep sedation, unless the general anesthesia or deep sedation is administered:

**1.** By a person other than an insured that is certified and accredited in the administration of general anesthesia; and

**2.** In facilities and with equipment, personnel, processes and procedures meeting all applicable regulatory or statutory requirements.

**PA 322 03 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - DENTIST'S PROFESSIONAL LIABILITY OCCURRENCE COVERAGE FORM

This endorsement modifies insurance provided under the following:

**DENTIST'S PROFESSIONAL LIABILITY OCCURRENCE COVERAGE FORM**

**A. SECTION I - COVERAGE, 2. Exclusions, a. Abuse or Molestation** and **j. Pollutant** are deleted in their entirety and replaced by the following:

**a. Abuse or Molestation**

With respect to any person who actively participates in any actual, alleged or threatened abuse or molestation of any person, this insurance does not apply to:

Any liability based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual, alleged or threatened abuse or molestation of any person.

**j. Pollutant**

Injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time except injury arising out of heat, smoke or fumes from a hostile fire. Hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**B. SECTION IV - CONDITIONS, 6. Other Insurance** is deleted in its entirety and replaced by the following:

**6. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part our obligations are limited.

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**PA 4150 IL 08 07**

Includes copyrighted material of ISO Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEPARTMENT OF PROFESSIONAL REGULATION (DPR) COVERAGE

This endorsement modifies insurance provided under the following:

**DENTIST'S PROFESSIONAL LIABILITY OCCURRENCE COVERAGE FORM**

**Schedule**

**Limits of Insurance**

| | |
|---|---|
| Each Investigation | $ 25,000 |
| Aggregate | $ 75,000 |

**A. SECTION I - COVERAGES** is amended to include the following:

**COVERAGE C. DEPARTMENT OF PROFESSIONAL REGULATION (DPR) INVESTIGATIONS**

**1. Insuring Agreement**

**a.** We will pay "investigation expenses" incurred by an insured who becomes the subject of a Department of Professional Regulation (DPR), or a similar state regulatory board, investigation. However, the amount we will pay for "investigation expenses" is limited as described in Section **B.** of this endorsement.

**b.** This insurance applies to an investigation, as described in Paragraph **1.a.** above, only if the investigation is commenced due to a "dental incident" that is insured under **COVERAGE A. PROFESSIONAL LIABILITY** of this Coverage Part.

No other obligation or liability to pay sums or perform acts or services is covered.

**2. Exclusions**

This insurance does not apply to "investigation expenses" incurred:

**a. Medicare or Medicaid**

To defend an insured for any issues related to Medicare and/or Medicaid billing, including, but not limited to, allegations of billing errors or fraudulent billing.

**b. Suspension or Revocation of License**

Due to the suspension or revocation of an insured's license.

**B. SECTION III - LIMITS OF INSURANCE** is deleted in its entirety and replaced by the following with respect only to the insurance coverage afforded under this endorsement:

**1.** The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Investigations commenced; or

**c.** Persons or organizations commencing investigations.

**2.** Subject to **3.** below, the Each Investigation Limit is the most we will pay for the sum of "investigation expenses" under COVERAGE **C.** arising out of any one investigation.

**3.** The Aggregate Limit is the most we will pay for the sum of "investigation expenses" under COVERAGE **C.** for all investigations to which this insurance applies.

The Limits of Insurance provided under this endorsement apply separately to each "coverage term".

**C. SECTION IV - CONDITIONS** is amended to include the following:

**Duties in the Event of a Department of Professional Regulation (DPR) Investigation**

You, and any other involved insured, must see to it that we receive written notice of any DPR

investigation within 30 days after you, or any other insured, have received notice of a DPR investigation.

**D.** **SECTION V - DEFINITIONS** is amended to include the following:

"Investigation expenses" means:

**a.** Reasonable fees, costs and expenses charged by attorneys or arbitrators for a Department of Professional Regulation (DPR), or similar state regulatory board, investigation brought against an insured;

**b.** All other reasonable and necessary fees, costs and expenses resulting from the investigation; and

**c.** Up to $500 per day for actual loss of earnings suffered by the insured under investigation because of time off from work while attending a Department of Professional Regulation (DPR), or similar state regulatory board, hearing.

"Investigation expenses" shall not include:

**(1)** Payments made under **SECTION I - COVERAGES**, **COVERAGE A.**, Paragraph **3. Supplementary Payments - Coverage A.;**

**(2)** Salary charges of regular "employees" or officials of ours or fees and expenses of independent adjusters;

**(3)** Salaries, loss of earnings, reimbursement for the insured's time or attendance required in any investigation except as provided in Paragraph **c.** above;

**(4)** Other remuneration by or to any insured; or

**(5)** Fines or penalties resulting from a Department of Professional Regulation (DPR), or similar state regulatory board, investigation.

All other terms and conditions of this policy remain unchanged.

# THE CINCINNATI INSURANCE COMPANY
## CINCINNATI, OHIO
### BUSINESS AUTO COVERAGE PART DECLARATIONS

**ITEM ONE**
Attached to and forming part of POLICY NUMBER: **EBA 026 96 01**
Named Insured is the same as it appears in the Common Policy Declarations.

**ITEM TWO**  **SCHEDULE OF COVERAGES AND COVERED AUTOS**
This coverage part provides only those coverages where a premium or "incl" is shown in the premium column below. The limit of Insurance for each coverage listed is subject to all applicable policy provisions. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 8, 9 | $ 2,000,000 | INCL |
| PERSONAL INJURY PROTECTION (or equivalent No-fault coverage) | | Separately stated in each P.I.P. endorsement minus $          Ded. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault coverage) | | Separately stated in each added P.I.P. endorsement | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in each P. P. I. endorsement minus $          Ded for each accident | |
| AUTO. MEDICAL PAYMENTS | | $ | |
| UNINSURED MOTORISTS | 8, 9 | $ 2,000,000 | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 8, 9 | $ SEE AA4183 | INCL |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 8 | Actual cash value or cost of repair, Whichever is less minus $ SEE AA4183 Ded. For each covered auto. But no Deductible applies to loss caused by Fire or lightning. See Item Three for hired or borrowed "autos" | INCL |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $          Ded. For Each covered auto. For loss caused by mischief or vandalism. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 8 | Actual cash value or cost of repair, Whichever is less minus $ SEE AA4183 Ded for each covered auto. See Item Three for hired or borrowed "autos". | INCL |
| PHYSICAL DAMAGE INSURANCE TOWING AND LABOR | | $          for each disablement of a private passenger auto | |
| PREMIUM FOR ENDORSEMENTS | | | |
| | | *ESTIMATED TOTAL PREMIUM | INCL |

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:
AA4183    02/06  AUTOMOBILE SCHEDULE
AA101     03/06  BUSINESS AUTO COVERAGE FORM
AA2009    01/17  CHANGES - TOWING AND LABOR
AA296     07/12  CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

```
AA4044IL   01/15  ILLINOIS UNINSURED MOTORISTS COVERAGE
AA4045IL   11/08  ILLINOIS UNDERINSURED MOTORISTS COVERAGE
AA4136IL   01/15  ILLINOIS CHANGES
AA4231     08/08  SUPPLEMENTARY SCHEDULE FOR BUSINESS AUTO--ITEMS FOUR, FIVE, AND
                  SIX
AA4263IL   04/10  OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT
CA0270     08/94  ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL
```

* This policy may be subject to final audit

# QUICK REFERENCE
# COMMERCIAL AUTO COVERAGE PART
# BUSINESS AUTO COVERAGE FORM
## READ YOUR POLICY CAREFULLY

## DECLARATIONS PAGES

Named Insured and Mailing Address
Policy Period
Description of Business
Coverages and Limits of Insurance

## SECTION I - COVERED AUTOS                                          Beginning on Page

Description of Covered Auto Designation Symbols...........................................................1
Owned Autos You Acquire After the Policy Begins ........................................................1
Certain Trailers, Mobile Equipment and
Temporary Substitute Autos.............................................................................................. 2

## SECTION II - LIABILITY COVERAGE

Coverage ............................................................................................................................ 2
Who is an Insured .............................................................................................................. 2
Coverage Extensions
    Supplementary Payments............................................................................................. 2
    Out of State................................................................................................................... 3
Exclusions .......................................................................................................................... 3
Limit of Insurance.............................................................................................................. 5

## SECTION III - PHYSICAL DAMAGE COVERAGE

Coverage ............................................................................................................................ 7
Exclusions .......................................................................................................................... 7
Limit of Insurance.............................................................................................................. 8
Deductible........................................................................................................................... 8

## SECTION IV - BUSINESS AUTO CONDITIONS

Loss Conditions
    Appraisal for Physical Damage Loss ........................................................................... 9
    Duties in the Event of Accident, Claim, Suit or Loss.................................................. 9
    Legal Action Against Us............................................................................................... 9
    Loss Payment - Physical Damage Coverages............................................................. 9
    Transfer of Rights of Recovery Against Others to Us ................................................ 10
General Conditions
    Bankruptcy .................................................................................................................... 10
    Concealment, Misrepresentation or Fraud................................................................... 10
    Liberalization ................................................................................................................. 10
    No Benefit to Bailee - Physical Damage Coverages ................................................... 10
    Other Insurance ............................................................................................................. 10
    Premium Audit............................................................................................................... 10
    Policy Period, Coverage Territory ............................................................................... 10
    Two or More Coverage Forms or Policies Issued by Us............................................. 11

## SECTION V - DEFINITIONS ....................................................................................... 11

## COMMON POLICY CONDITIONS

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

## ENDORSEMENTS (If Any)

# AUTOMOBILE SCHEDULE

## ITEM THREE

Attached to and forming a part of Policy Number **EBA 026 96 01**, effective **10-14-2017**

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

POLICY LIMITS

State: **IL**

| Bodily Injury: | **2,000,000 CSL** | Property Damage: | **INCLUDED** |
|---|---|---|---|
| UM/UIM: | **2,000,000** | | |

**Veh. No.** Vehicle Information

| **HIRED AND NON-OWNED** | | | | Class: | | Territory | |
|---|---|---|---|---|---|---|---|
| **OTC-COMP DED: N/A** | | | | Coll Ded: **N/A** | | | |

| BI | PD | MP | OTC | COLL | UM | | TOTAL |
|---|---|---|---|---|---|---|---|
| **INCL** | **INCL** | **N/A** | **N/A** | **N/A** | **INCL** | | **INCL** |

| **HIRED AUTO PHYSICAL DAMAGE** | | | **LIMIT: 40,000** | | | Class: | Territory |
|---|---|---|---|---|---|---|---|
| **OTC-COMP DED: 250** | | | | Coll Ded: **500** | | | |

| BI | PD | MP | OTC | COLL | UM | | TOTAL |
|---|---|---|---|---|---|---|---|
| | | | 54 | 81 | | | 135 |

SYMBOLS:

| | | | |
|---|---|---|---|
| BI | -- Bodily Injury | SPEC | -- Specified Perils |
| PD | -- Property Damage | COLL | -- Collision |
| MP | -- Medical Payments | UM | -- Uninsured Motorists |
| OTC | -- Other Than Collision (ACV Coverage applies unless Stated Amount Value is indicated) | UIM | -- Underinsured Motorists |
| | | PIP | -- Personal Injury Protection |
| CAC | -- Combined Additional Coverage | T&L | -- Towing and Labor Costs |
| FT&S | -- Fire, Theft, and Supplemental | RR | -- Rental Reimbursement |

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer **to SECTION V - DEFINITIONS**.

## SECTION I - COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description of Covered Auto Designation Symbols**

**SYMBOL          DESCRIPTION**

**1 =** ANY "AUTO".

**2 =** OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

**3 =** OWNED PRIVATE PASSENGER "AUTOS" ONLY. Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins.

**4 =** OWNED "AUTOS" OTHER THAN PRIVATE PASSENGER "AUTOS" ONLY. Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins.

**5 =** OWNED "AUTOS" SUBJECT TO NO-FAULT. Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged.

**6 =** OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those "autos" you own that because of the law in the state where

they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

**7 =** SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in ITEM THREE).

**8 =** HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees" or partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

**9 =** NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

**B. Owned Autos You Acquire After the Policy Begins**

**1.** If Symbols 1, 2, 3, 4, 5, or 6 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

**2.** But, if Symbol 7 is entered next to a coverage in ITEM TWO of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

**a.** We already cover all "autos" that you own for that coverage or it replaces

an "auto" you previously owned that had that coverage; and

**b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment and Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

**1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

**2.** "Mobile equipment" while being carried or towed by a covered "auto".

**3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** "Loss"; or

**e.** Destruction.

# SECTION II - LIABILITY COVERAGE

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who is an Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(1)** The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

quired because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b.** **Out-of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1.** **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the "insured" or which is in fact expected or intended by the "insured", even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**2.** **Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3.** **Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4.** **Employee Indemnification and Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" sustained in the "workplace";

**b.** An "employee" of the "insured" arising out of the performance of duties related to the conduct of the "insured's" business; or

**c.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** or **b.** above.

This Exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract" other than a contract or agreement with a labor leasing firm. For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement of Property by Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollutant**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

However, this exception to Paragraph **a.** does not apply if the fuels, lubricants, fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed or released.

Paragraphs **b.** and **c.** of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**d.** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(1)** If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor; or

**(2)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

Subparagraph **d.(1)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This

insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

**D. Mobile Equipment Subject to Motor Vehicle Insurance Laws**

As respects **SECTION II - LIABILITY COVERAGE** any land vehicle, which would qualify as "mobile equipment", except that it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged, is considered a covered "auto" under **SECTION II - LIABILITY COVERAGE,** irrespective of the Auto Designation Symbols shown for **SECTION II - LIABILITY COVERAGE** in the Declarations.

# SECTION III - PHYSICAL DAMAGE COVERAGE

**A. Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   **(1)** The covered "auto's" collision with another object; or

   **(2)** The covered "auto's" overturn.

   **b. Specified Causes of Loss Coverage**

   Caused by:

   **(1)** Fire, lightning or explosion;

   **(2)** Theft;

   **(3)** Windstorm, hail or earthquake;

   **(4)** Flood;

   **(5)** Mischief or vandalism; or

   **(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c. Collision Coverage**

   Caused by:

   **(1)** The covered "auto's" collision with another object; or

   **(2)** The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   **a.** Glass breakage;

   **b.** "Loss" caused by hitting a bird or animal; and

   **c.** "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   **a. Transportation Expenses**

   We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered

"auto" is returned to use or we pay for its "loss".

**b. Loss of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown; or

**b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal for Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties in the Event of Accident, Claim, Suit or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is "loss" to a covered "auto" or its equipment you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment - Physical Damage Coverages**

At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Cov-

erage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

**3. Liberalization**

If within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

a. The date we implemented the change in your state; or

b. The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**4. No Benefit to Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

   **a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

      **(1)** Excess while it is connected to a motor vehicle you do not own.

      **(2)** Primary while it is connected to a covered "auto" you own.

   **b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

   **c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

   **d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

   **a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

   **b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

   **a.** During the Policy Period shown in the Declarations; and

   **b.** Within the coverage territory.

The coverage territory is:

   **a.** The United States of America;

   **b.** The territories and possessions of the United States of America;

   **c.** Puerto Rico;

   **d.** Canada; and

   **e.** Anywhere in the world if:

      **(1)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

      **(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V - DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

    **1.** A land motor vehicle, "trailer" or semi-trailer designed for travel on public roads; or

    **2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

    **1.** Any request, demand, order or statutory or regulatory requirement that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    **2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

    **a.** That are, or that are contained in any property that is:

        **(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

        **(2)** Otherwise in the course of transit by or on behalf of the "insured";

        **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto"; or

    **b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

    **c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

    **(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    **(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    **(2)** The discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage.

Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract":

**1.** Means:

**a.** A lease of premises;

**b.** A sidetrack agreement;

**c.** An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**f.** That part of any other contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

**2.** Does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; or

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** Power cranes, shovels, loaders, diggers or drills; or

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

**5.** Vehicles not described in Paragraphs **1., 2., 3.,** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in Paragraphs **1., 2., 3.,** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

---

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and their by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**1.** The "insured" is regularly or otherwise engaged in activities which taint or degrade the environment; or

**2.** The "insured" uses, generates or produces the "pollutant".

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

**Q.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of the "accident".

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazard-

ous properties" of "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "byproduct material";

"Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - TOWING AND LABOR

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 2. Towing** is deleted in its entirety and replaced with:

   2. **Towing**

      We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" is disabled. However, the labor must be performed at the place of disablement.

**AA 2009 01 17**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE

This endorsement modifies insurance provided by the following:

### BUSINESS AUTO COVERAGE FORM

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**1. SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 4.** is deleted in its entirety and replaced with:

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

**a.** Permanently installed in or upon the covered "auto";

**b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

**c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

**d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

**2. SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limits of Insurance, 1.** is deleted in its entirety and replaced with:

**1.** The most we will pay for:

**a.** "Loss" to any covered "auto" is the lesser of;

**(1)** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**(2)** The cost of repairing or replacing the damaged or stolen property with other property of like kind or quality.

**b.** All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss", is up to $1,000, if, at the time of "loss", such electronic equipment is:

**(1)** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

**(2)** Removable from a permanently installed housing unit as described in Paragraph **b.1.** above; or

**(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**3. AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE ADDED LIMITS**

The sub-limit in Paragraph **1.b.** above is in addition to the Limit of Insurance shown in the Schedule of the Audio, Visual and Data Equipment Coverage endorsement, if purchased.

AA 296 07 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS UNINSURED MOTORISTS COVERAGE

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as a Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named Insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Illinois, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below.

| Endorsement Effective:<br>10-14-2017 | Policy Number:<br>EBA 026 96 01 |
|---|---|
| Named Insured:<br><br>SANDY POINT DENTAL PC | |

## SCHEDULE

| Limit of Insurance |
|---|
| $ REFER TO AA4183          Each "Accident" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of:

   **a.** An "uninsured motor vehicle" as defined in Paragraph **F.4.a.** and **b.** because of "bodily injury":

      **(1)** Sustained by the "insured"; and

      **(2)** Cause by an "accident".

   **b.** An "uninsured motor vehicle" as defined in Paragraph **F.4.c.** because of "bodily injury" sustained by the "insured".

   The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle". The "insured" shall be required to prove all elements of the "insured's" claim

that are necessary to recover from the owner or operator of the "uninsured motor vehicle".

2. We will pay under this endorsement only if the limits of insurance under all applicable liability bonds or policies have been partially or fully exhausted by payment of judgments or settlements.

3. Any judgment for damages arising out of a "suit" brought without our written consent to both the "suit" and the judgment is not binding on us.

**B. Who is an Insured**

The following are "insureds":

1. If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

**a.** Natural persons specifically listed as a Named Insured on this endorsement;

**b.** "Family members" of natural persons specifically listed as a Named Insured on this endorsement;

**c.** Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction; and

**d.** Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a., b.** or **c.**

**2.** If an entity other than a natural person is listed as a Named Insured on this endorsement, and no natural persons are listed as a Named Insured in the endorsement, the following persons are "insureds":

**a.** Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

**b.** Any natural person is an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

## C. Exclusions

This insurance does not apply to any of the following:

**1.** Any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) without our consent.

**2.** The direct or indirect benefit of any insurer or self-insurer under any personal injury protection benefits, workers' compensation, disability benefits, pension statutes or similar laws.

**3.** "Bodily injury" sustained by an "insured" while the "insured" is operating, or "occupying" a "motor vehicle" owned by, furnished to, or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse, or a resident relative of such Named Insured, if the "motor vehicle" is not specifically identified in the Coverage Form or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

**4.** "Bodily injury" suffered by any person while operating or "occupying" a "motor vehicle" without reasonable belief that he or she is entitled to do so.

**5.** Punitive or exemplary damages.

## D. Limit of Insurance

**1.** Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims-made or vehicles involved in the "accident", the most we will pay for all damages, including, but not as a separate claim, damages claimed by any person or organization for care, loss of services, or death due to and arising out of any one "accident" is the limit of **Uninsured Motorists Coverage** shown in the Schedule or the Declarations.

We will apply the limit shown in the schedule or the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

**a.** $25,000 for "bodily injury" to any one person due to and arising out of any one "accident", and

**b.** $50,000 for "bodily injury" to two or more persons due to and arising out of any one "accident".

This provision will not change our total limit of insurance.

**2.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form.

We will not make a duplicate payment under this endorsement for any element of "loss" for which payment has been made by or for anyone who is legally liable.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any personal injury protection benefits, workers' compensation, disability benefits, pension statutes or similar laws, including medical payments made under any statute.

**3.** The limit of insurance provided in this endorsement shall be reduced by all sums available for payment to the "insured" for "bodily injury" under all liability bonds or policies covering persons or organizations legally liable for the "accident".

## E. Changes in Conditions

The **Conditions** for **Illinois Uninsured Motorists Coverage** are changed as follows:

1. With respect to an "uninsured motor vehicle", the **Other Insurance Condition** in the Business Auto and Garage Coverage Forms and **Other Insurance Primary and Excess Insurance** Provisions in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   **a.** The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

   **b.** Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible uninsured motorists insurance. We will pay only the amount by which the limit of insurance for this coverage exceeds the limits of such other insurance.

   **c.** If the coverage under this endorsement is provided:

   **(1)** On a primary basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of insurance bears to the total of all applicable limits of insurance for coverage on a primary basis.

   **(2)** On an excess basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of insurance bears to the total of all applicable limits of insurance for coverage on an excess basis.

2. **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

   **a.** You or any other involved "insured" must promptly notify the police if a hit-and-run driver is involved;

   **b.** You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought; and

   **c.** You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the "accident" and all insurers who may be obligated to provide coverage.

3. **Transfer of Rights of Recovery Against Others to Us** does not apply.

4. The following **Condition** is added:

   **Reimbursement And Trust**

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

5. **Legal Action Against Us** is replaced by the following:

   No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Uninsured Motorists Coverage of this Coverage Form unless the "insured" has satisfied all of the things that "insured" is required to do under the terms and conditions of this endorsement. Any claim or "suit" for Uninsured Motorists Coverage must be brought within two (2) years of the date of the "accident" causing the "bodily injury" or one (1) year after the date the liability insurer of the "uninsured motor vehicle" becomes insolvent, whichever is later. Our subrogation rights also must not be prejudiced.

6. The following **Condition** is added:

   **Arbitration**

   **a.** If we and an "insured" do not agree:

   **(1)** Whether that person is legally entitled to recover damages from a party responsible for the "accident"; or

   **(2)** As to the amount of damages that may be recovered;

   the matter may be settled by arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated.

   The "insured" and we must mutually agree to arbitrate the disagreements. If the "insured" and we do not agree to arbitrate, then the disagreement will be resolved in a court having competent jurisdiction.

   If arbitration is used, each party will select an arbitrator. The two arbitrators

Includes copyrighted material of ISO
Properties, Inc., with its permission.

will select a third. If they cannot agree within 45 days as to the third arbitrator, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

**(1)** Pay the expenses it incurs; and

**(2)** Bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. If arbitration is submitted to the American Arbitration Association, then the American Arbitration Association rules shall apply to all matters except medical opinions. As to medical opinions, if the amount of damages being sought:

**(1)** Is equal to or less than the minimum limit for "bodily injury" liability specified by the Illinois Safety Responsibility Law, then the American Arbitration Association rules shall apply.

**(2)** Exceeds the minimum limit for "bodily injury" liability specified by the Illinois Safety Responsibility Law, then the rules of evidence that apply in the circuit court for placing medical opinions into evidence shall apply.

In all other arbitration proceedings, local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to the amount of damages not exceeding the lesser of either:

**(1)** $75,000 for "bodily injury" to any one person/$150,000 for "bodily injury" to two or more persons caused by any one "accident"; or

**(2)** The Limit of Uninsured Motorists Insurance shown in the Schedule or Declarations.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured on this endorsement. Such relation may be by blood, marriage or adoption and may include a ward or foster child.

**2.** "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails or any similar vehicle.

**3.** "Occupying" means in, upon, getting in, on, out or off.

**4.** "Uninsured motor vehicle" means a land "motor vehicle" or "trailer":

**a.** For which no liability bond or policy applies at the time of an "accident".

**b.** For which an insuring or bonding company denies coverage or is or becomes insolvent.

**c.** That is a hit-and-run vehicle and neither the operator nor owner can be identified. The vehicle must either:

**(1)** Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

**(2)** Cause "bodily injury" to an "insured" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

We will only accept competent evidence which may include the testimony, under oath, of a person making claim under this or similar coverage.

However, "uninsured motor vehicle" does not include any "motor vehicle":

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.

**b.** Owned by any governmental unit or agency.

**c.** Designed for use mainly off public roads while not on public roads.

**d.** Owned by or furnished or available for your regular use or that of any "family member" or any other "insured".

**e.** For which liability coverage is afforded under this Coverage Form.

Includes copyrighted material of ISO Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS UNDERINSURED MOTORISTS COVERAGE

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as a Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Illinois, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 10-14-2017 | EBA 026 96 01 |
| Named Insured:<br><br>SANDY POINT DENTAL PC | |

SCHEDULE

| Limit of Liability | |
|---|---|
| $ REFER TO AA4183 | Each Accident |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle". The "insured" shall be required to prove all elements of the "insured's" claim that are necessary to recover from the owner or operator of the "underinsured" motor vehicle".

2. We will pay under this endorsement only if **a.** or **b.** below applies:

    **a.** The limits of insurance under all applicable liability bonds or policies have

been partially or fully exhausted by payment of judgments or settlements; or

**b.** A "tentative settlement" has been made between an "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer and legal representative of such person(s) or organization(s) and we:

   **(1)** Have been given a prompt written notice of such settlement and advance payment to the "insured" equal to the "tentative settlement" within 30 days after receipt of notification; or

   **(2)** We and an "insured" have reached a "settlement agreement".

3. Any judgment for damages arising out of a "suit" brought without our written consent to both the "suit" and the judgment is not binding on us.

Includes copyrighted material of ISO Properties, Inc., with its permission.

## B. Who is an Insured

The following are "insureds":

**1.** If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

   **a.** Natural persons specifically listed as a Named Insured on this endorsement;

   **b.** "Family members" of natural persons specifically listed as a Named Insured on this endorsement;

   **c.** Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction; and

   **d.** Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a., b.** or **c.**

**2.** If an entity other than a natural person is listed as the Named Insured on this endorsement, and no natural persons are listed as Named Insureds in the Declarations, the following persons are "insureds":

   **a.** Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

   **b.** Any natural person is an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

## C. Exclusions

This insurance does not apply to any of the following:

**1.** Any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) without our consent.

**2.** The direct or indirect benefit of any insurer under any personal injury protection, workers' compensation, disability benefits, pension statutes or similar law.

**3.** "Bodily injury" sustained by an "insured" while the "insured" is operating or "occupying" a "motor vehicle" owned by, furnished to, or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse or a resident relative of such Named Insured, if the "motor vehicle" is not specifically identified in the Coverage Form or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

**4.** "Bodily injury" suffered by any person while operating or "occupying" a "motor vehicle" without reasonable belief that he or she is entitled to do so.

**5.** Punitive or exemplary damages.

## D. Limit of Insurance

**1.** Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims-made or vehicles involved in the "accident", the most we will pay for all damages, including, but not as a separate claim, damages claimed by any person or organization for care, loss of services, or death due to and arising out of any one "accident" is the limit of **Underinsured Motorists Coverage** shown in the Schedule or the Declarations.

**2.** Except in the event of a "settlement agreement", the limit of insurance provided in this endorsement shall be reduced by all sums available for payment:

   **a.** To the "insured" for "bodily injury" under all liability bonds or policies covering persons or organizations legally liable for the "accident".

   **b.** Under any automobile medical payments coverage. However, the limit of insurance provided in this endorsement shall not be reduced by any sums paid or payable under Social Security disability benefits.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form.

We will not make duplicate payment under this endorsement for element of "loss" for which payment has been made by or for anyone who is legally liable.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any personal injury protection, workers' compensation, disability benefits, pension statutes or similar law, including medical payments made under any statute

3. In the event of a "settlement agreement", the maximum limit of insurance provided in this endorsement shall be the amount by which the limit of insurance provided in this endorsement exceeds the limits of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

**E. Changes in Conditions**

The **Conditions** for **Illinois Underinsured Motorists Coverage** are changed as follows:

1. With respect to an "underinsured motor vehicle", the **Other Insurance Condition** in the Business Auto and Garage Coverage Forms and **Other Insurance Primary and Excess Insurance** Provisions in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

a. The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

b. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible underinsured motorists insurance. We will pay only the amount by which the limit of insurance for this coverage exceeds the limits of such other insurance.

c. If the coverage under this endorsement is provided:

(1) On a primary basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of insurance bears to the total of all applicable limits of insurance for coverage on a primary basis.

(2) On an excess basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of insurance bears to the total of all applicable limits of insurance for coverage on an excess basis.

2. **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

a. A person seeking Underinsured Motorists Coverage must promptly notify us in writing of a "tentative settlement" between the "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s) and allow us 30 days to advance payment to that "insured" in an amount equal to the "tentative settlement" to preserve our rights against the person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s).

b. File "suit" against the person(s) or organization(s) who may be legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s), prior to the conclusion of a "settlement agreement". Such "suit" cannot be abandoned or settled without giving us notice in writing of a "tentative settlement" between the "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s) and allowing us 30 days to advance payment to that "insured" in an amount equal to that settlement to preserve our rights against the person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s);

c. You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought; and

d. You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the "accident" and all insurers who may be obligated to provide coverage.

3. The following is added to **Transfer of Rights of Recovery Against Others to Us:**

**Transfer of Rights of Recovery Against Others to Us** does not apply to damages caused by an "accident" with an "underinsured motor vehicle" if we:

**a.** Have been given prompt written notice of a "tentative settlement" between an "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s); and

**b.** Fail to advance payment to the "insured" in an amount equal to the "tentative settlement" within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the "tentative settlement" within 30 days after receipt of notification:

**a.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

**b.** We also have a right to recover the advanced payment.

However, in the event of a "settlement agreement", we shall be entitled to recover only for amounts which exceed the limit of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

**4.** The following **Condition** is added:

**Reimbursement And Trust**

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

However, in the event of a "settlement agreement", we shall be entitled to recover only for amounts which exceed the limit of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

**5.** **Legal Action Against Us** is replaced by the following:

No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Underinsured Motorists Coverage of this Coverage Form unless the "insured" has satisfied all of the things that "insured" is required to do under the terms and conditions of this endorsement. Any claim or "suit" for Underinsured Motorists Coverage must be brought within two (2) years of the date of the "accident" causing the "bodily injury" or one (1) year after the date the liability insurer of the "uninsured motor vehicle" becomes insolvent, whichever is later. Our subrogation rights also must not be prejudiced.

**6.** The following **Condition** is added:

**Arbitration**

**a.** If we and an "insured" do not agree:

**(1)** Whether that person is legally entitled to recover damages from a party responsible for the "accident"; or

**(2)** As to the amount of damages that may be recovered;

the matter may be settled by arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated.

The "insured" and we must mutually agree to arbitrate the disagreements. If the "insured" and we do not agree to arbitrate, then the disagreement will be resolved in a court having competent jurisdiction.

If arbitration is used, each party will select an arbitrator. The two arbitrators will select a third. If they cannot aggress within 45 days as to the third arbitrator, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

**(1)** Pay the expenses it incurs; and

**(2)** Bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

**(1)** Whether the "insured" is legally entitled to recover damages from a party responsible for the "accident"; and

**(2)** The amount of damages.

**F.** **Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured on this endorsement. Such relation may be by blood, marriage or adoption, and may include a ward or foster child.

**2.** "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck,

semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails or any similar vehicle.

**3.** "Occupying" means in, upon, getting in, on, out or off.

**4.** "Settlement agreement" means we and an "insured" agree that the "insured" is legally entitled to recover, from the person(s) or organization(s) who may be legally responsible for the "accident", or the legal representative of such person(s) or organization(s), damages for "bodily injury" and, without arbitration, agree also as to the amount of damages. Such agreement is final and binding regardless of any subsequent judgment or settlement reached by the "insured" with the person(s) or organization(s) who may be legally responsible for the "accident", or the legal representative of such person(s) or organization(s),.

**5.** "Tentative settlement" means an offer from the person(s) or organization(s) who may be legally responsible for the "accident", or the legal representative of such person(s) or organization(s), to compensate an "insured"

for damages incurred because of "bodily injury" sustained in an "accident" involving an "underinsured motor vehicle".

**6.** "Underinsured motor vehicle" means a land "motor vehicle" or "trailer" of any type for which the sum of the limits of coverage available for payment to the "insured" under all liability bonds or policies covering person(s) or organization(s) liable to the "insured" at the time of an "accident" are less than the Limit of Insurance for this coverage or reduced by payments to others injured in the accident to an amount which is less than the Limit of Insurance for this coverage. However, "underinsured motor vehicle" does not include any "motor vehicle":

**a.** Owned or operated by any self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amount required by that motor vehicle law.

**b.** Owned by any governmental unit or agency.

**c.** Designed for use mainly off public roads while not on public roads.

**d.** Which is an "uninsured motor vehicle".

**e.** Owned by, furnished or available for the regular use of any "insured", other than the named insured, or a "family member" of a named insured.

**f.** For which liability coverage is afforded under this Coverage Form.

Includes copyrighted material of ISO Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

For a covered "auto" licensed or principally garaged in Illinois, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes in Liability Coverage**

1. Paragraph **A.1.b.(3)** of the **Who is an Insured** provision does not apply.

2. Our **Limit of Insurance** applies except that we will apply the limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   **a.** $25,000 for "bodily injury" to any one person caused by any one "accident",

   **b.** $50,000 for "bodily injury" to two or more persons caused by any one "accident", and

   **c.** $20,000 for "property damage" caused by any one "accident".

   This provision will not change our total **Limit of Insurance.**

**B. Changes in Physical Damage Coverage**

The following is added to the **Limit of Insurance** provision with respect to repair or replacement resulting in better than like kind or quality and supercedes any provision to the contrary:

3. We may deduct for betterment if:

   **a.** The deductions reflect a measurable decrease in market value attributable to the poorer condition of, or prior damage to, the vehicle.

   **b.** The deductions are for prior wear and tear, missing parts and rust damages that is reflective of the general overall condition of the vehicle considering its age. In this event, deductions may not exceed $500.

**C. Changes in Conditions**

The **Other Insurance** condition is changed by the addition of the following:

Liability Coverage provided by this Coverage Form for any "auto" you do not own is primary if:

1. The "auto" is owned or held for sale or lease by a new or used vehicle dealership;

2. The "auto" is operated by an "insured" with the permission of the dealership described in Paragraph **1.** while your "auto" is being repaired or evaluated; and

3. The Limit of Insurance for Liability Coverage under this policy is at least:

   **a.** $100,000 for "bodily injury" to any one person caused by any one "accident",

   **b.** $300,000 for "bodily injury" to two or more persons caused by any one "accident", and

   **c.** $50,000 for "property damage" caused by any one "accident".

Includes copyrighted material of ISO Properties, Inc., with its permission.

## SUPPLEMENTARY SCHEDULE FOR BUSINESS AUTO - ITEMS FOUR, FIVE, AND SIX

Attached to and forming a part of:
Form AA 505 (Business Auto Coverage Part)

E B A  0 2 6  9 6  0 1

**NUMBER**

### ITEM FOUR SCHEDULE OF HIRED OR

### BORROWED COVERED AUTO COVERAGE AND PREMIUMS.

**LIABILITY COVERAGE--RATING BASIS, COST OF HIRE**

| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | PREMIUM |
|---|---|---|---|
| | | | |
| | | | TOTAL PREMIUM |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

### PHYSICAL DAMAGE COVERAGE

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | RATE PER EACH $100 ANNUAL COST OF HIRE | MINIMUM PREMIUM | PREMIUM |
|---|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE, COST OF REPAIRS OR $40,000 WHICHEVER IS LESS MINUS $250 DED. FOR EACH COVERED AUTO, FOR ALL LOSS EXCEPT FIRE OR LIGHTNING | | | | INCL |
| SPECIFIED CAUSES OF LOSS | ACTUAL CASH VALUE, COST OF REPAIRS OR $ WHICHEVER IS LESS MINUS $25 DED. FOR EACH COVERED AUTO, FOR LOSS CAUSED BY MISCHIEF OR VANDALISM | | | | |
| COLLISION | ACTUAL CASH VALUE, COST OF REPAIRS OR $40,000 WHICHEVER IS LESS MINUS $500 DED. FOR EACH COVERED AUTO | | | | INCL |
| | | | TOTAL PREMIUM | | INCL |

### ITEM FIVE SCHEDULE FOR NONOWNERSHIP LIABILITY

| Named Insured's Business | Rating Basis | Number | Premium |
|---|---|---|---|
| Other than a Social Service Agency | Number of Employees | | |
| | Number of Partners | | |
| Social Service Agency | Number of Employees | | |
| | Number of Volunteers | | |
| | TOTAL PREMIUM | | |

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, 1985

**AA 4231 08 08**                    **Page 1 of 2**

**ITEM SIX SCHEDULE FOR GROSS RECEIPTS OR MILEAGE BASIS–LIABILITY COVERAGE–PUBLIC AUTO OR LEASING RENTAL CONCERNS**

| Estimated Yearly | RATES | | PREMIUMS | |
|---|---|---|---|---|
| | ☐ Per $100 of Gross Receipts | | | |
| | ☐ Per Mile | | | |
| ☐ Gross Receipts | LIABILITY | AUTO MEDICAL COVERAGE | LIABILITY PAYMENTS | AUTO MEDICAL COVERAGE PAYMENTS |
| ☐ Mileage | | | | |
| | | | | |
| | TOTAL PREMIUMS | | | |
| | MINIMUM PREMIUMS | | | |

When used as a premium basis:

FOR PUBLIC AUTOS

Gross Receipts means the total amount to which you are entitled for transporting passengers, mail or merchandise during the policy period regardless of whether you or any other carrier originate the transportation. Gross Receipts does not include:

**A.** Amounts you pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.

**B.** Advertising Revenue.

**C.** Taxes which you collect as a separate item and remit directly to a governmental division.

**D.** C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing units operated during the policy period.

FOR RENTAL OR LEASING CONCERNS

Gross receipts means the total amount to which you are entitled for the leasing or rental of "autos" during the policy period and includes taxes except those taxes which you collect as a separate item and remit directly to a governmental division.

Mileage means the total of all live and dead mileage developed by all the autos you leased or rented to others during the policy period.

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, 1985

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** of the **BUSINESS AUTO COVERAGE FORM** and **SECTION V - GARAGE CONDITIONS, B. General Conditions** of the **GARAGE COVERAGE FORM** are amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage will not be provided under this policy.

**AA 4263 IL 04 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**a.** The first Named Insured shown in the Declarations may cancel this policy by mailing us advance written notice of cancellation.

**b.** When this policy is in effect 61 days or more or is a renewal or continuation policy, we may cancel only for one or more of the following reasons by mailing you written notice of cancellation stating the reasons for cancellation.

   **(1)** Nonpayment of premium.

   **(2)** The policy was obtained through a material misrepresentation.

   **(3)** Any "insured" has violated any of the terms and conditions of the policy.

   **(4)** The risk originally accepted has measurably increased.

   **(5)** Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured.

   **(6)** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the Illinois insurance laws.

**c.** If we cancel for nonpayment of premium, we will mail you at least 10 days written notice.

**d.** If this policy is cancelled for other than nonpayment of premium and the policy is in effect:

   **(1)** 60 days or less, we will mail you at least 30 days written notice.

   **(2)** 61 days or more, we will mail you at least 60 days written notice.

**e.** If this policy in cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**f.** The effective date of cancellation stated in the notice shall become the end of the policy period.

**g.** Our notice of cancellation will state the reason for cancellation.

**h.** A copy of the notice will also be sent to your agent or broker and the loss payee.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

If we decide not to renew or continue this policy, we will mail you, your agent or broker and the loss payee written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C.** **Mailing of Notices**

We will mail cancellation and nonrenewal notices to the last addresses known to us. Proof of mailing will be sufficient proof of notice.

**CA 02 70 08 94**      Copyright, Insurance Services Office, Inc., 1994

# The Cincinnati Insurance Company

A Stock Insurance Company

## CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Attached to and forming part of POLICY NUMBER: `ECP 026 96 01`          Effective Date `10-14-2017`

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:** `10-14-2017`

### Limits of Insurance and Deductible

| | Insuring Agreement | Annual Aggregate | Sublimit | | Deductible |
|---|---|---|---|---|---|
| **A** | Response Expenses | $50,000 | | | $1,000 |
| | | | Named Malware | $50,000 | |
| | | | Forensic IT Review | $5,000 | |
| | | | Legal Review | $5,000 | |
| | | | PR Services | $5,000 | |
| | | | Regulatory Fines and Penalties | $10,000 | |
| | | | PCI Fines and Penalties | $10,000 | |
| **B** | Defense and Liability | $50,000 | | | $1,000 |
| | | | Named Malware | $50,000 | |
| **C** | Identity Recovery | $25,000 | | | $250 |
| | | | Lost Wages and Child and Elder Care | $5,000 | |
| | | | Mental Health Counseling | $1,000 | |
| | | | Miscellaneous Unnamed Costs | $1,000 | |

| | TOTAL ANNUAL PREMIUM | $186 |
|---|---|---|

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 35 |
| 2 YEAR | 71 |
| 3 YEAR | 94 |
| 4 YEAR | 118 |
| 5 YEAR | 129 |
| 6 YEAR | 141 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

HC102      01/16  CINCINNATI DATA DEFENDER™ COVERAGE FORM
HC460IL    03/16  ILLINOIS CHANGES - CINCINNATI DATA DEFENDER™ COVERAGE PART

---

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

## TABLE OF CONTENTS

**Coverage Part Provision:**                                                    **Begins on Page:**

Preamble ........................................................................................................................................3

SECTION I - COVERAGES .............................................................................................................3

A.  Insuring Agreements .................................................................................................................3

    1.  Insuring Agreement A - Response Expenses ........................................................3
    2.  Insuring Agreement B - Defense and Liability .......................................................5
    3.  Insuring Agreement C - Identity Recovery ............................................................5

B.  Exclusions ..................................................................................................................................5

    1.  Applicable to Insuring Agreements **A** and **B** ..........................................................5

        a.  Criminal Investigations or Proceedings ....................................................5
        b.  Deficiency Correction ................................................................................5
        c.  Extortion ....................................................................................................5
        d.  Fraudulent, Dishonest or Criminal Acts ...................................................6
        e.  Non-monetary Relief .................................................................................6
        f.  Previously Reported Data Compromises ...................................................6
        g.  Prior Data Compromises ...........................................................................6
        h.  Prior or Pending Litigation ........................................................................6
        i.  Reckless Disregard ...................................................................................6
        j.  Unencrypted Data .....................................................................................6
        k.  Uninsurable ...............................................................................................6
        l.  Willful Complicity .......................................................................................6

    2.  Applicable to Insuring Agreement **C** ........................................................................6

        a.  Fraudulent, Dishonest or Criminal Acts ...................................................6
        b.  Professional or Business Identity ..............................................................6
        c.  Unreported Identity Theft ..........................................................................6

    3.  Applicable to Insuring Agreements **A, B** and **C** .....................................................6

        a.  Nuclear ......................................................................................................6
        b.  War ............................................................................................................6

SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE ..........................................................7

SECTION III - DEFENSE AND SETTLEMENT .................................................................................8

SECTION IV - CONDITIONS ...........................................................................................................9

    1.  Bankruptcy .................................................................................................................9
    2.  Due Diligence .............................................................................................................9
    3.  Duties in the Event of a Claim or Loss .......................................................................9
    4.  Help Line ...................................................................................................................10
    5.  Legal Action Against Us ...........................................................................................10
    6.  Legal Advice .............................................................................................................10
    7.  Office of Foreign Assets Control (OFAC) Compliance...............................................11
    8.  Other Insurance .......................................................................................................11
    9.  Pre-Notification Consultation ...................................................................................11
    10. Representations ........................................................................................................11
    11. Separation of Insureds .............................................................................................11
    12. Service Providers .....................................................................................................11
    13. Services ....................................................................................................................11
    14. Subrogation ..............................................................................................................12
    15. Valuation - Settlement ..............................................................................................12
    16. When We Do Not Renew ...........................................................................................12

## TABLE OF CONTENTS (CONT'D)

**Coverage Part Provision:** **Begins on Page:**

**SECTION V - EXTENDED REPORTING PERIODS** ................................................................12

**SECTION VI - DEFINITIONS** ...............................................................................................13

| | | |
|---|---|---|
| 1. | "Affected individual" | 13 |
| 2. | "Authorized representative" | 13 |
| 3. | "Claim" | 13 |
| 4. | "Coverage term" | 14 |
| 5. | "Coverage territory" | 14 |
| 6. | "Data compromise liability" | 14 |
| 7. | "Defense costs" | 14 |
| 8. | "Employee" | 14 |
| 9. | "Executive" | 15 |
| 10. | "Identity recovery case manager" | 15 |
| 11. | "Identity recovery expenses" | 15 |
| 12. | "Identity recovery insured" | 16 |
| 13. | "Identity theft" | 16 |
| 14. | "Insured" | 16 |
| 15. | "Loss" | 16 |
| 16. | "Malware-related compromise" | 16 |
| 17. | "Named insured" | 16 |
| 18. | "Personal data compromise" | 16 |
| 19. | "Personally identifying information" | 17 |
| 20. | "Personally sensitive information" | 17 |
| 21. | "Policy period" | 17 |

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** - **Definitions**.

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which an Aggregate Limit of Insurance is shown in the Declarations:

**1. Insuring Agreement A - Response Expenses**

**a.** Coverage under Insuring Agreement **A** - Response Expenses applies only if all of the following conditions are met:

**(1)** There has been a "personal data compromise"; and

**(2)** Such "personal data compromise" is first discovered by you during the "coverage term"; and

**(3)** Such "personal data compromise" took place in the "coverage territory"; and

**(4)** Such "personal data compromise" is reported to us within 60 days after the date it is first discovered by you.

**b.** If the conditions listed in **a.** above have been met, then we will provide coverage for the following expenses when they arise directly from the "personal data compromise" described in **a.** above and are necessary and reasonable. Coverages **(4)** and **(5)** apply only if there has been a notification of the "personal data compromise" to "affected individuals" as covered under coverage **(3)**.

**(1) Forensic IT Review**

Professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the "personal data compromise" and the number and identities of the "affected individuals".

This does not include costs to analyze, research or determine any of the following:

**(a)** Vulnerabilities in systems, procedures or physical security;

**(b)** Compliance with PCI or other industry security standards; or

**(c)** The nature or extent of loss or damage to data that is not "personally identifying information" or "personally sensitive information".

If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Forensic IT Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(2) Legal Review**

Professional legal counsel review of the "personal data compromise" and how you should best respond to it. If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Legal Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(3) Notification to Affected Individuals**

We will pay your necessary and reasonable costs to provide notification of the "personal data compromise" to "affected individuals".

**(4) Services to Affected Individuals**

We will pay your necessary and reasonable costs to provide the following services to "affected individuals":

**(a)** The following services apply to any "personal data compromise".

**1)** Informational Materials

A packet of loss prevention and customer support information.

**2)** Help Line

A toll-free telephone line for "affected individuals" with questions about the "personal data compromise". Where applicable, the line can also be used to request additional services as listed in **(b)1)** and **2)** below.

Note, calls by "affected individuals" or their representatives to the Help Line do not constitute the making of a "claim" under Insuring Agreement **B** - Defense and Liability.

**(b)** The following additional services apply to "personal data compromise" events involving "personally identifying information".

**1)** Credit Report and Monitoring

A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This service is subject to the "affected individual" enrolling for this service with the designated service provider.

**2)** Identity Restoration Case Management

As respects any "affected individual" who is or appears to be a victim of "identity theft" that may reasonably have arisen from the "personal data compromise", the services of an identity restoration professional who will assist that "affected individual" through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

**(5) PR Services**

Professional public relations firm review of and response to the potential impact of the "personal data compromise" on your business relationships.

This includes costs to implement public relations recommendations of such firm. This may include advertising and special promotions designed to retain your relationship with "affected individuals". However, we will not pay for promotions:

**(a)** Provided to any of your "executives" or "employees"; or

**(b)** Costing more than $25 per "affected individual".

**(6) Regulatory Fines and Penalties**

Any fine or penalty imposed, to the extent such fine or penalty is legally insurable under the law of the applicable jurisdiction.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(7) PCI Fines and Penalties**

Any Payment Card Industry fine or penalty imposed under a contract to which you are a party. PCI Fines and Penalties do not include any increased transaction costs.

**2. Insuring Agreement B - Defense and Liability**

**a.** Coverage under Insuring Agreement **B** - Defense and Liability applies only if all of the following conditions are met:

**(1)** During the "coverage term" or any applicable Extended Reporting Period, you first receive notice of a "claim" which:

**(a)** Arises from a "personal data compromise" that:

**1)** Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy period";

**2)** Took place in the "coverage territory"; and

**3)** Was submitted to us and covered under Insuring Agreement **A** - Response Expenses; and

**(b)** Is brought by one or more "affected individuals" or by a governmental entity on behalf of one or more "affected individuals"; and

**(2)** Such "claim" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**b.** If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" "defense costs" and "data compromise liability" directly arising from the "claim".

**c.** All "claims" caused by a single "personal data compromise" will be deemed to have been made at the time that notice of the first of those "claims" is received by you.

**3. Insuring Agreement C - Identity Recovery**

**a.** Coverage under Insuring Agreement **C** - Identity Recovery applies only if all of the following conditions are met:

**(1)** There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this Coverage Part; and

**(2)** Such "identity theft" is first discovered by the "identity recovery insured" during the "coverage term"; and

**(3)** Such "identity theft" took place in the "coverage territory"; and

**(4)** Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured".

**b.** If the conditions listed in **a.** above have been met, then we will provide the following to the "identity recovery insured":

**(1)** Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

**(2)** Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft".

**B. Exclusions**

**1.** Applicable to Insuring Agreements **A** and **B** only:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Criminal Investigations or Proceedings**

Any criminal investigations or proceedings.

**b. Deficiency Correction**

Costs to research or correct any deficiency. This includes, but is not limited to, any deficiency in your systems, procedures or physical security that may have contributed to a "personal data compromise".

**c. Extortion**

Any extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

---

**d. Fraudulent, Dishonest or Criminal Acts**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

**e. Non-monetary Relief**

That part of any "claim" seeking any non-monetary relief.

**f. Previously Reported Data Compromises**

The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

**g. Prior Data Compromises**

Any "personal data compromise" first occurring before the Retroactive Date shown in the Declarations, or any "claim" arising from a "personal data compromise" that first occurred prior to the Retroactive Date shown in the Declarations.

**h. Prior or Pending Litigation**

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

**i. Reckless Disregard**

Your reckless disregard for the security of "personally identifying information" or "personally sensitive information" in your care, custody or control.

**j. Unencrypted Data**

Any "personal data compromise" involving data that is being transmitted electronically, unless such data is encrypted to protect the security of the transmission.

**k. Uninsurable**

Any amount not insurable under applicable law.

**l. Willful Complicity**

The "insured's" intentional or willful complicity in a "personal data compromise".

**2.** Applicable to Insuring Agreement **C** only:

This insurance does not apply to:

**a. Fraudulent, Dishonest or Criminal Acts**

Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any "authorized representative" of an "identity recovery insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "identity recovery insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

**b. Professional or Business Identity**

The theft of a professional or business identity.

**c. Unreported Identity Theft**

An "identity theft" that is not reported in writing to the police.

**3.** Applicable to Insuring Agreements **A, B** and **C**:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Nuclear**

Nuclear reaction or radiation or radioactive contamination, however caused.

**b. War**

**(1)** War, including undeclared or civil war or civil unrest;

**(2)** Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

## SECTION II - LIMITS OF INSURANCE AND DE-DUCTIBLE

**A.** Insuring Agreement **A** - Response Expenses:

**1.** The most we will pay under Insuring Agreement **A** - Response Expenses is the Response Expenses Limit of Insurance stated in the Declarations.

**2.** The Response Expenses Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Response Expenses arising out of all "personal data compromise" events which are first discovered by you during the "coverage term". This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

**3.** A "personal data compromise" may be first discovered by you in one "coverage term" but cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "personal data compromise" will be subject to the Response Expenses Limit of Insurance applicable to the "coverage term" when the "personal data compromise" was first discovered by you.

**4.** The most we will pay under Insuring Agreement **A** - Response Expenses for "loss" arising from any "malware-related compromise" is the Named Malware sublimit stated in the Declarations. This sublimit is included within and not in addition to the Aggregate Limit of Insurance referenced in Paragraph **2.** For the purpose of the Named Malware sublimit, all "malware-related compromises" that are caused, enabled or abetted by the same virus or other malicious code are considered to be a single "personal data compromise".

**5.** The most we will pay under Insuring Agreement **A** - Response Expenses for Forensic IT Review, Legal Review, PR Services, Regulatory Fines and Penalties and PCI Fines and Penalties coverages for "loss" arising from any one "personal data compromise" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.** PR Services coverage is also subject to a limit per "affected individual" as described in Section **I., A.1.b.(5)** PR Services.

**6.** Coverage for Services to "affected individuals" is limited to costs to provide such services for a period of up to one year from the date of the notification to the "affected individuals". Notwithstanding the foregoing, coverage for Identity Restoration Case Management services initiated within such one year period may continue for a period of up to one year from the date such Identity Restoration Case Management services are initiated.

**7.** Response Expenses coverage is subject to the Response Expenses Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "personal data compromise" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount in order to respond effectively to a "personal data compromise" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**B.** Insuring Agreement **B** - Defense and Liability:

**1.** The most we will pay under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) is the Limit of Insurance stated in the Declarations.

**2.** The Insuring Agreement **B** - Defense and Liability Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for all "loss" covered under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) arising out of all "claims".

**3.** The most we will pay under Defense and Liability coverage for "loss" arising from any "malware-related compromise" is the Named Malware sublimit stated in the Declarations. This sublimit is included within and not in addition to the Aggregate Limit of Insurance referenced in Paragraph **2.** For the purpose of the Named Malware sublimit, all "malware-related compromises" that are caused, enabled or abetted by the same virus or other malicious code are considered to be a single "claim".

**4.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Defense and Liability Limit for the immediately preceding "coverage term".

**5.** The Insuring Agreement **B** - Defense and Liability coverage is subject to the Deductible stated in the Declarations. You shall be responsible for such deductible

amount as respects each "claim" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim" or "loss" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**C.** Insuring Agreement **C** - Identity Recovery:

**1.** Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the Limit of Insurance available for "identity recovery expenses".

**2.** Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Annual Aggregate Limit of Insurance stated in the Declarations per "identity recovery insured". Regardless of the number of "identity theft" incidents, this limit is the most we will pay for the total of all "loss" arising out of all "identity thefts" suffered by one "identity recovery insured" which are first discovered by the "identity recovery insured" during the "coverage term". If an "identity theft" is first discovered in one "coverage term" and continues into other "coverage terms", all "loss" arising from such "identity theft" will be subject to the aggregate Limit of Insurance applicable to the "coverage term" when the "identity theft" was first discovered.

**3.** Legal costs as provided under Item **d.** of the definition of "identity recovery expenses" are part of, and not in addition to, the aggregate limit described in Paragraph **2.**

**4.** Item **e.** (Lost Wages) and Item **f.** (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

**5.** Item **g.** (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate limit described in Paragraph **2.** Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

**6.** Item **h.** (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

**7.** Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Identity Recovery Deductible stated in the Declarations. Each "identity recovery insured" shall be responsible for such deductible amount only once during each "coverage term". This deductible applies only to "identity recovery expenses".

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

**1.** We will have the right and duty to select counsel and defend the "insured" against any "claim" covered by Insuring Agreement **B** - Defense and Liability, regardless of whether the allegations of such "claim" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" seeking damages or other relief not insured by Insuring Agreement **B** - Defense and Liability.

**2.** We may, with your written consent, make any settlement of a "claim" which we deem reasonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

**3.** We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim", after the Insuring Agreement **B** - Defense and Liability Limit of Insurance has been exhausted.

**4.** We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance which accrues:

**a.** After entry of judgment; and

**b.** Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire In-

suring Agreement **B** - Defense and Liability Limit of Insurance.

These interest payments shall be in addition to and not part of the Defense and Liability Limit.

## SECTION IV – CONDITIONS

**1. Bankruptcy**

Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

**2. Due Diligence**

You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to comply with, reasonable and industry-accepted protocols for:

**a.** Providing and maintaining appropriate physical security for your premises, computer systems and hard copy files;

**b.** Providing and maintaining appropriate computer and Internet security;

**c.** Maintaining and updating at appropriate intervals backups of computer data;

**d.** Protecting transactions, such as processing credit card, debit card and check payments; and

**e.** Appropriate disposal of files containing "personally identifying information" or "personally sensitive information", including shredding hard copy files and destroying physical media used to store electronic data.

**3. Duties in the Event of a Claim or Loss**

**a.** If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

**(1)** The specific details, including the date, of the circumstance;

**(2)** The alleged injuries or damage sustained or which may be sustained;

**(3)** The names of potential claimants; and

**(4)** The manner in which the "insured" first became aware of the circumstance.

Any subsequent "claim" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

**b.** If a "claim" is brought against any "insured", you must:

**(1)** Immediately record the specifics of the "claim" and the date received; and

**(2)** Provide us with written notice, as soon as practicable, but in no event more than 60 days after the date the "claim" is first received by you.

**(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

**(4)** Authorize us to obtain records and other information;

**(5)** Cooperate with us in the investigation, settlement or defense of the "claim";

**(6)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" to which this insurance may also apply; and

**(7)** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim".

**c.** In the event of a "personal data compromise" covered under Insuring Agreement **A** - Response Expenses, you must see that the following are done:

**(1)** Notify the police if a law may have been broken.

**(2)** Notify us as soon as practicable, but in no event more than 60 days after the "personal data compromise". Include a description of any property involved.

**(3)** As soon as possible, give us a description of how, when and where the "personal data compromise" occurred.

**(4)** As often as may be reasonably required, permit us to:

**(a)** Inspect the property proving the "personal data compromise";

**(b)** Examine your books, records, electronic media and records and hardware;

**(c)** Take samples of damaged and undamaged property for inspection, testing and analysis; and

**(d)** Make copies from your books, records, electronic media and records and hardware.

**(5)** Send us signed, sworn proof of loss containing the information we request to investigate the "personal data compromise". You must do this within 60 days after our request. We will supply you with the necessary forms.

**(6)** Cooperate with us in the investigation of the "personal data compromise" or settlement of the "loss".

**(7)** If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

**(8)** Make no statement that will assume any obligation or admit any liability, for any loss for which we may be liable, without our prior written consent.

**(9)** Promptly send us any legal papers or notices received concerning the "personal data compromise" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4. Help Line**

For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-866-219-9831**. The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

**a.** Information and advice for how to respond to a possible "identity theft"; and

**b.** Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records that support his or her claim for "identity recovery expenses".

**5. Legal Action Against Us**

**a.** No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

**(2)** To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

**b.** You may not bring any legal action against us involving "loss":

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of "loss" with us; and

**(3)** Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**6. Legal Advice**

We are not your legal advisor. Our determination of what is or is not covered under this Coverage Part does not represent advice or counsel from us about what you should or should not do.

### 7. Office of Foreign Assets Control (OFAC) Compliance

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

### 8. Other Insurance

**a.** If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part by reference in such other policy to this policy's policy number.

**b.** When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

### 9. Pre-Notification Consultation

You agree to consult with us prior to the issuance of notification to "affected individuals". We assume no responsibility under this Coverage Part for any services promised to "affected individuals" without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under Condition **12.** Service Providers. You must provide the following at our pre-notification consultation with you:

**a.** The exact list of "affected individuals" to be notified, including contact information.

**b.** Information about the "personal data compromise" that may appropriately be communicated with "affected individuals".

**c.** The scope of services that you desire for the "affected individuals". For example, coverage may be structured to provide fewer services in order to make those services available to more "affected individuals" without exceeding the available Response Expenses Limit.

### 10. Representations

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

### 11. Separation of Insureds

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom a "claim" is made.

### 12. Service Providers

**a.** We will only pay under this Coverage Part for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this Coverage Part. We will not unreasonably withhold such approval.

**b.** Prior to the Pre-Notification Consultation described in the Pre-Notification Consultation Condition above, you must come to agreement with us regarding the service provider(s) to be used for the Notification to Affected Individuals and Services to Affected Individuals. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

**(1)** Such alternate service provider must be approved by us;

**(2)** Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had suggested; and

**(3)** Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

### 13. Services

The following conditions apply as respects any services provided to you or any "affected individual" or "identity recovery insured" by us, our designees or any service firm paid for in whole or in part under this Coverage Part:

**a.** The effectiveness of such services depends on the cooperation and assistance

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

of you, "affected individuals" and "identity recovery insureds".

**b.** All services may not be available or applicable to all individuals. For example, "affected individuals" and "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

**c.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**d.** Except for the services of an "identity recovery case manager" under Insuring Agreement **C** - Identity Recovery, which we will provide directly, you will have a direct relationship with the professional service firms paid for in whole or in part under this Coverage Part. Those firms work for you.

## 14. Subrogation

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, will be distributed as follows:

**a.** To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

**b.** Then to us, until we are reimbursed for the payment under this Coverage Part;

**c.** Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

## 15. Valuation - Settlement

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is

agreed upon, or the other component of "loss" is due, respectively.

## 16. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - EXTENDED REPORTING PERIODS

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

**1.** You shall have the right to the Extended Reporting Periods described in this section, in the event that:

**a.** You or we cancel this Coverage Part;

**b.** You or we refuse to renew this Coverage Part; or

**c.** We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

**2.** If an event as specified in Paragraph **1.** has occurred, you shall have the right to the following:

**a.** An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written notice of a "claim" of which you first receive notice during said Automatic Extended Reporting Period for any "personal data compromise" occurring on or after the Retroactive Date shown on the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

**b.** Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "claim" of which you first receive notice during said Supplemental Extended Reporting Period for any "personal data compromise" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

**c.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods shall be part of, and not in addition to, the Defense and Liability Limit of Insurance for the immediately preceding "coverage term".

## SECTION VI - DEFINITIONS

**1.** "Affected individual" means any person who is your current, former or prospective customer, client, patient, member, owner, student, "executive" or "employee" and whose "personally identifying information" or "personally sensitive information" is lost, stolen, accidentally released or accidentally published by a "personal data compromise" covered under this Coverage Part. This definition is subject to the following provisions:

**a.** "Affected individual" does not include any business or organization. Only an individual person may be an "affected individual".

**b.** An "affected individual" must have a direct relationship with your interests as insured under this policy. The following are examples of individuals who would not meet this requirement:

**(1)** If you aggregate or sell information about individuals as part of your business, the individuals about whom you keep such information do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an "employee" of yours.

**(2)** If you store, process, transmit or transport records, the individuals whose "personally identifying information" or "personally sensitive information" you are storing, processing, transmitting or transporting for another entity do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an "employee" of yours.

**(3)** You may have operations, interests or properties that are not insured under this policy. Individuals who have a relationship with you through such other operations, interests or properties do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an "employee" of the operation insured under this policy.

**c.** An "affected individual" may reside anywhere in the world.

**2.** "Authorized representative" means a person or entity authorized by law or contract to act on behalf of an "identity recovery insured".

**3.** "Claim":

**a.** Means:

**(1)** A civil proceeding in which it is alleged that one or more "affected individuals" suffered damages arising from:

**(a)** A "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses section of this Coverage Part and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses; or

**(b)** The violation of a governmental statute or regulation arising from a "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses.

**(2)** "Claim" includes:

**(a)** An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent;

**(b)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(c)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

**b.** Does not include any demand or action brought by or on behalf of someone who is:

**(1)** Your "executive";

**(2)** Your owner or part-owner; or

**(3)** A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action. "Claim" will include proceedings brought by such individuals in their capacity as "affected individuals", but only to the extent that the damages claimed are the same as would apply to any other "affected individual".

**c.** Does not include any demand or action brought by or on behalf of an organization, business, institution or any other party that is not an "affected individual" or governmental entity.

**4.** "Coverage term" means the following individual increment, or if a multi-year "policy period", increments, of time, which comprise the "policy period" of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the "policy period" shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**5.** "Coverage territory" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses, anywhere in the world.

**b.** With respect to Insuring Agreement **B** - Defense and Liability, anywhere in the world, however, "claims" must be brought in the United States (including its territories and possessions), Puerto Rico or Canada.

**c.** With respect to Insuring Agreement **C** - Identity Recovery, anywhere in the world

**6.** "Data compromise liability":

**a.** Means the following, when they arise from a "claim":

**(1)** Damages, judgments or settlements to "affected individuals";

**(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

**(3)** Pre-judgment interest on that part of any judgment paid by us.

**b.** Does not include:

**(1)** Damages, judgments or settlements to anyone who is not an "affected individual";

**(2)** Civil or criminal fines or penalties imposed by law;

**(3)** Punitive or exemplary damages;

**(4)** The multiplied portion of multiplied damages;

**(5)** Taxes; or

**(6)** Matters which may be deemed uninsurable under the applicable law.

**7.** "Defense costs":

**a.** Means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "claim" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

**b.** Do not include the salaries or wages of your "employees" or "executives", or your loss of earnings.

**8.** "Employee" means any natural person, other than an "executive", who was, now is or will be:

**a.** Employed on a full- or part-time basis by you;

**b.** Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

**c.** Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **8.b.**; or

**d.** Your volunteer worker, which includes unpaid interns.

**9.** "Executive" means any natural person who was, now is or will be:

**a.** The owner of a sole proprietorship that is a "named insured"; or

**b.** A duly elected or appointed:

(1) Director;

(2) Officer;

(3) Managing Partner;

(4) General Partner;

(5) Member (if a limited liability company);

(6) Manager (if a limited liability company); or

(7) Trustee,

of a "named insured".

**10.** "Identity recovery case manager" means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured". This includes, with the permission and cooperation of the "identity recovery insured", written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

**11.** "Identity recovery expenses" means the following when they are reasonable and necessary expenses that are incurred as a direct result of an "identity theft" suffered by an "identity recovery insured":

**a.** Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft".

**b.** Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft".

**c.** Costs for credit reports from established credit bureaus.

**d.** Fees and expenses for an attorney approved by us for the following:

(1) The defense of any civil suit brought against an "identity recovery insured".

(2) The removal of any civil judgment wrongfully entered against an "identity recovery insured".

(3) Legal assistance for an "identity recovery insured" at an audit or hearing by a governmental agency.

(4) Legal assistance in challenging the accuracy of the "identity recovery insured's" consumer credit report.

(5) The defense of any criminal charges brought against an "identity recovery insured" arising from the actions of a third party using the personal identity of the "identity recovery insured".

**e.** Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self-employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

**f.** Actual costs for supervision of children or elderly or infirm relatives or dependents of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**g.** Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**h.** Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft".

(1) Such costs include:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(a)** Costs by the "identity recovery insured" to recover control over his or her personal identity.

**(b)** Deductibles or service fees from financial institutions.

**(2)** Such costs do not include:

**(a)** Costs to avoid, prevent or detect "identity theft" or other loss.

**(b)** Money lost or stolen.

**(c)** Costs that are restricted or excluded elsewhere in this Coverage Part or policy.

**12.** "Identity recovery insured" means the following:

**a.** When the entity insured under this Coverage Part is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the "named insured".

**b.** When the "named insured" under this Coverage Part is a partnership, the "identity recovery insureds" are the current partners.

**c.** When the "named insured" under this Coverage Part is a corporation or other form of organization, other than those described in **a.** or **b.** above, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured entity. However, if and only if there is no one who has such an ownership position, then the "identity recovery insured" shall be:

**(1)** The chief executive of the insured entity; or

**(2)** As respects a religious institution, the senior ministerial employee.

**d.** The legally recognized spouse of any individual described in **a.**, **b.** or **c.** above.

An "identity recovery insured" must always be an individual person. The "named insured" under this Coverage Part is not an "identity recovery insured".

**13.** "Identity theft" means the fraudulent use of "personally identifying information". This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

**14.** "Insured" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses any "named insured".

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

**(1)** Any "named insured"; and

**(2)** Any "employee" or "executive" of a "named insured", but:

**(a)** Only for the conduct of the "named insured's" business within the scope of his or her employment or duties as an "executive"; and

**(b)** Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

**c.** With respect to Insuring Agreement **C** - Identity Recovery any "named insured".

**15.** "Loss" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses:

Those expenses enumerated in Section **I**, **A.**, Paragraph **1.b.**

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

**(1)** "Defense costs"; and

**(2)** "Data compromise liability".

**c.** With respect to Insuring Agreement **C** - Identity Recovery, "identity recovery expenses".

**16.** "Malware-related compromise" means a "personal data compromise" that is caused, enabled or abetted by a virus or other malicious code that, at the time of the "personal data compromise", is named and recognized by the CERT® Coordination Center, McAfee®, Secunia, Symantec or other comparable third party monitors of malicious code activity.

**17.** "Named insured" means the entity or entities shown in the Declarations as a Named Insured.

**18.** "Personal data compromise" means the loss, theft, accidental release or accidental publication of "personally identifying information" or "personally sensitive information" as respects one or more "affected individuals". If the loss, theft, accidental release or accidental publication involves "personally identifying infor-

**HC 102 01 16**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Page 16 of 17**

mation", such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

**a.** At the time of the loss, theft, accidental release or accidental publication, the "personally identifying information" or "personally sensitive information" need not be at the insured premises but must be in the direct care, custody or control of:

**(1)** You; or

**(2)** A professional entity with which you have a direct relationship and to which you (or an "affected individual" at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, processing, transmission or transportation of such information.

**b.** "Personal data compromise" includes disposal or abandonment of "personally identifying information" or "personally sensitive information" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

**(1)** The failure to use appropriate safeguards must be accidental and not reckless or deliberate; and

**(2)** Such disposal or abandonment must take place during the time period for which this Coverage Part is effective.

**c.** "Personal data compromise" includes situations where there is a reasonable cause to suspect that such "personally identifying information" or "personally sensitive information" has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

**d.** All incidents of "personal data compromise" that are discovered at the same time or arise from the same cause will be considered one "personal data compromise".

**19.** "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an "affected individual" or "identity recovery insured". This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

**20.** "Personally sensitive information" means private information specific to an individual the release of which requires notification of "affected individuals" under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

**21.** "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CINCINNATI DATA DEFENDER™ COVERAGE PART

This endorsement modifies insurance provided under the following:

**CINCINNATI DATA DEFENDER™ COVERAGE PART**

**A. SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE** is amended to delete in their entirety subparagraphs **1.** and **2.** of Paragraph **B.** and replace them with the following:

1. The most we will pay under Insuring Agreement **B** - Defense and Liability (other than pre and post-judgment interest) is the Limit of Insurance stated in the Declarations.

2. The Insuring Agreement **B** - Defense and Liability Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for all "loss" covered under Insuring Agreement **B** - Defense and Liability (other than pre and post-judgment interest) arising out of all "claims".

**B. SECTION III - DEFENSE AND SETTLEMENT** is amended to delete in its entirety Paragraph **4.** and replace it with the following:

4. We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance which accrues:

   **a.** Before entry of judgment; or

   **b.** After entry of judgment, but before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Defense and Liability Limit of Insurance.

   These interest payments shall be in addition to and not part of the Defense and Liability Limit.

**C.** The following is added to **SECTION IV - CONDITIONS, 5. Legal Action Against Us**:

The 2 year period for legal action against us is extended by the number of days between the date the proof of "loss" is filed with us and the date we deny the "claim" in whole or in part.

**D. SECTION IV - CONDITIONS** is amended to delete in its entirety Condition **7.** and replace it with the following:

7. **Office of Foreign Assets Control (OFAC) Compliance**

   Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage will not be provided.

**E. SECTION IV - CONDITIONS** is amended to delete in its entirety Condition **8.** and replace it with the following:

8. **Other Insurance**

   If any "loss" resulting from any "claim" is insured by any other valid policy, we shall not be liable under this policy for a greater proportion of such "loss" than the applicable Limit of Insurance stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such "loss", unless such other insurance is purchased specifically to apply in excess of the Limit of Liability stated in the Declarations of this policy.

**F. SECTION IV - CONDITIONS** is amended to delete in its entirety Condition **10.** and replace it with the following:

10. **Representations**

    You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of the policy if such misrepresentation is made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.

**G. SECTION VI - DEFINITIONS** is amended to delete definition **6.** "Data compromise liability" in its entirety and replace it with the following:

**6.** "Data compromise liability":

    **a.** Means the following, when they arise from a "claim":

        **(1)** Damages, judgments or settlements to "affected individuals"; and

        **(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order.

    **b.** Does not include:

        **(1)** Damages, judgments or settlements to anyone who is not an "affected individual";

        **(2)** Civil or criminal fines or penalties imposed by law;

        **(3)** Punitive or exemplary damages;

        **(4)** The multiplied portion of multiplied damages;

        **(5)** Taxes; or

        **(6)** Matters which may be deemed uninsurable under the applicable law.

**H.** The following is added to definition **7.** "Defense costs" in **SECTION VI - DEFINITIONS:**

    "Defense costs":

    **c.** Do not include the salaries of our employees or the salaries of your staff attorneys.

**I.** The term spouse is replaced by the following:

    Spouse or party to a civil union recognized under Illinois law.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.