# REPORTERS/TRANSCRIBERS TRANSCRIPT TRANSMITTAL

INSTRUCTIONS: Forward original to the requesting party with completed original transcript.
Send copies to:
1) Supervisor of Court Reporters with copy of Transcript
2) Administration Office of the Courts, Attn: Chief, Reporting Svs., CN-988, Trenton, NJ 08625
3) Attorneys and/or Pro Se (if known)
4) Other _____

Sent("x")

TO: **REQUESTOR'S NAME/ADDRESS**

Eric Harrison  3 Ethel Road Suite 300 Eidson, NJ 08818

| CASE NAME (Plaintiffs) | v | (Defendants) | |
|---|---|---|---|
| Optical Services, USA, et al Insurance Co | | Franklin Mutual | ___ Appeal ___ Non-Appeal |

| LOWER COURT DOCKET TYPE | LOWER COURT NUMBER | Transcript Request Date: |
|---|---|---|
| ___ Indictment ___ Accusation ___ Complaint | 3681-20 | 8/13/2020 |

| DOCKET NUMBER | COUNTY | COURT | Transcript Request Receipt Date |
|---|---|---|---|
| A- | Bergen County | Michael Beukas | 8/13/2020 |

## TRANSCRIPTS FILED HEREWITH

| – | DATES | NO. OF COPIES | TOTAL PGS. PER TRANSCRIPT | PROCEEDING TYPE |
|---|---|---|---|---|
| 1 | 8/13/2020 | 0 | 30 | Hearing |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |

*Check, if applicable:

Applicant is responsible for filing copies pursuant to Court Rule 2:6-12(a)(d)       ___ Yes   ___ No

| ___ Reporter | REPORTER/TRANSCRIBER NAMER (Name of Agency, if applicable) | TRANSMITTAL DATE |
|---|---|---|
| xx  Transcriber | **Phoenix Transcription, LLC** 796 Macopir. Rd. West Milford N.J. 07480 | 8/14/2020 |
| | REPORTER/TRANSCRIBER (Signature) | |

White: REQUESTING PARTY   Blue: CHIEF, REPORTING SERVICES   Green: SUPERVISOR   Canary: OTHER

Pink: MAINTAIN FOR SELF   Gold: ATTORNEY and/or PRO SE

*89286 clh*

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: CIVIL PART
BERGEN COUNTY
(HEARD VIA ZOOM)
DOCKET NO: BER-L-3681-20
A.D. #_____

OPTICAL SERVICES USA/ )
JC1, OPTICAL SERVICES )
USA, LLC, OPTICAL )     TRANSCRIPT
SERVICES USA-WO, RE & LE )
HOLDINGS, LLC, STONG OD )       OF
EWING NJ, LLC, )
                     )     MOTION
       Plaintiffs, )
                     )
       vs. )
                     )
FRANKLIN MUTUAL )
INSURANCE COMPANY, )
                     )
       Defendant. )

              Place: Bergen County Justice Center
                     10 Main Street
                     Hackensack, New Jersey 07601

              Date: August 13, 2020

BEFORE:

     HONORABLE MICHAEL N. BEUKAS, J.S.C.

TRANSCRIPT ORDERED BY:

     ERIC L. HARRISON, ESQ. (Methfessel & Werbel)

APPEARANCES:

     SEAN E. ROSE, ESQ. (Olender Feldman, LLP)
     Attorney for Plaintiffs

     ERIC L. HARRISON, ESQ. (Methfessel & Werbel)
     Attorney for Defendant

              Transcriber: Laura Scicutella
              Phoenix Transcription, LLC
              796 Macopin Rd.
              West Milford, NJ   07480
              (862)248-0670

              Audio Recorded
              Recording Opr: Alexa D'Angelo

## I N D E X

|                           | PAGE     |
|---------------------------|----------|
| Colloquy re: Housekeeping | 3,7,30   |
| ARGUMENTS:                |          |
| BY: Mr. Harrison          | 5,7,15   |
| BY: Mr. Rose              | 13       |
| THE COURT:                |          |
| Decision                  | 18       |

1        (Proceeding commenced at 9:30:49 a.m.)

2        THE COURT:  Superior Court of the State of

3    New Jersey, Bergen County Vicinage, clerk recording,

4    Alexa D'Angelo law clerk, docket number BER-L-3681-20,

5    caption is Optical Services USA/JCI (sic), Optical

6    Services USA, LLC, Optical Services USA-WO, and Re and

7    Le Holdings, LLC, Stong OD Ewing NJ, LLC versus

8    Franklin Mutual Insurance Company.  Judge Michael N.

9    Beukas, chambers 453.  The time is approximately 9:32

10   a.m.  May I have the appearances of counsel for the

11   record, please, starting with the plaintiff?

12       MR. ROSE:  Good morning, Your Honor.  Sean

13   Rose from the law firm of Olender Feldman on behalf of

14   plaintiff, Optical Services USA/JC1, Optical Services

15   USA, LLC, Optical Services USA-WO, Re and Le Holdings,

16   LLC, and Stong OD Ewing NJ, LLC, collectively

17   plaintiffs, Your Honor.

18       THE COURT:  Good morning, Counsel.

19       MR. ROSE:  Good morning.

20       MR. HARRISON:  Good morning, Judge.  Eric

21   Harrison, Methfessel and Werbel, on behalf of Franklin

22   Mutual Insurance Company.

23       THE COURT:  Good morning, Counsel.  Okay,

24   gentlemen, just a -- a couple of --

25       RECORDING:  (Indiscernible) --

1           THE COURT: -- reminders before we --

2           RECORDING: -- is now in the conference.

3           MR. HARRISON: Your Honor, this is Eric

4    Harrison speaking. As a courtesy, I should let the

5    Court know I do have a few folks dialing in. They've

6    all been instructed to keep their phones on mute.

7    Various FMI representatives and a colleague of mine

8    will be listening in but will not be participating.

9           THE COURT: Okay, very good.

10          For purposes of our established record here

11   today, gentlemen, when you do speak at oral argument, I

12   do need you to identify yourself in between oral

13   arguments so that the transcription service can clearly

14   identify which attorney is speaking.

15          When you are referencing an oral argument to

16   any specific controlling case, I need you to identify

17   that case for the record and pursuant to Rule 1:36-3, I

18   need you to identify for the record whether that is a

19   published opinion in the State of New Jersey versus an

20   unpublished opinion and whether or not you are citing

21   to any law of any other jurisdiction including the US

22   Supreme Court so that I can identify for the record as

23   to whether or not any of the law is controlling in this

24   case for purposes of oral argument.

25          In addition, we are on a Polycom speaker

1    today and at times it may be difficult for you to hear
2    me and I may need to interject to pose a question to
3    either attorney so I may have to elevate my voice so
4    that you can hear me clearly. So please don't
5    misconstrue me elevating my --
6              RECORDING: (Indiscernible) --
7              THE COURT: -- voice --
8              RECORDING: -- is now in the conference.
9              THE COURT: Okay, gentlemen, I -- if I need
10   to elevate my voice, it's for purposes of the Polycom
11   picking up my voice so that you can hear it, okay.
12             So I have before me a Motion to Dismiss the
13   Complaint for failure to state a claim upon which
14   relief can be granted pursuant to Rule 4:6-2(e) filed
15   by the defendant, Franklin Mutual Insurance Company.
16   So, Mr. Harrison, this is your Motion. You may
17   proceed.
18             MR. HARRISON: Yes, sir. Thank you, Your
19   Honor. We are all aware, I know plaintiffs' counsel is
20   aware, certainly my firm as an insurance defense firm
21   is well aware of the fast-moving nature of developments
22   in insurance litigation and other litigation over
23   Covid-19. Two significant events happened yesterday
24   and they're both worthy of mention. The first is, and
25   this is not within the record, but the Court -- it's

1 | not important to the Court's decision on the policy
2 | language, but it's -- it's significant background. The
3 | multi-district litigation panel of the United States
4 | District Court denied a nation-wide Motion to
5 | Consolidate these business interruption litigations
6 | that are venued in various Federal Courts around the
7 | country essentially on the basis that the policy
8 | language differs from policy to policy. Even though a
9 | lot of insurers use (indiscernible) income and would
10 | other insurers, there is still significant differences
11 | between those forms and the facts of particular cases
12 | also can determine whether there would be coverage and
13 | to what extent.

14 | The second significant thing to happen
15 | yesterday was the issuance of the decision that Mr.
16 | Rose brought to the Court's attention, and I don't have
17 | any objection to his filing it yesterday because it
18 | didn't come out until yesterday and I have had ample
19 | time to review it. It's the Studio 417 case from U.S.
20 | District Court, Western District of Missouri, Southern
21 | Division. This opinion, which I'm not going to
22 | significantly disagree with, demonstrates the wisdom of
23 | the MDO panel in refusing to consolidate because the
24 | denial of the Motion to Dismiss based on the
25 | allegations in that complaint bespeaks the importance

1   of policy language differing from policy to policy and

2   alleged facts differing from complaint to complaint.

3          I should ask as a courtesy whether the Court

4   has any objection to me talking about this case that

5   Mr. Rose sent yesterday.

6          THE COURT: What I would like you to do,

7   Counsel, is argue your Motion to Dismiss. This Court

8   is bound by the implications of Rule 1:36-3. While the

9   parties felt compelled to cite to numerous other

10  jurisdictions with respect to their arguments, their

11  respective arguments both on the Motion and in the

12  Opposition, this Court is bound by legal precedent

13  within the State of New Jersey, namely the Appellate

14  Division, and the New Jersey Supreme Court. With

15  respect to the US Supreme Court, this -- this Court

16  also takes precedent from the US Supreme Court for

17  controlling decisions. So this Court will give

18  whatever weight is necessary to whatever arguments

19  reflect in the controlling legal precedent set forth in

20  this state as opposed to other states. So you may

21  proceed with the argument.

22          MR. HARRISON: Okay, thank you, Your Honor.

23  I just -- I just wanted to make sure that the Court

24  didn't want me to completely disregard this decision.

25  But I'm going to highlight it simply to contrast it

1    with a case we're looking at in order to argue my
2    position under New Jersey law.

3         The Studio 417 decision describes a policy
4    which defines a covered cause of loss, and that's at
5    page 2 of the opinion, as follows, "Accidental direct
6    physical loss or accidental direct physical damage."
7    It goes on to say on the same page, "The policies do
8    not include and are not subject to any exclusion for
9    losses caused by viruses or communicable diseases."

10        Now, I want to be clear about something.  I
11   want to be clear about a point of agreement that
12   Franklin Mutual has with the plaintiffs in this case.
13   At paragraph 36 of the Complaint filed in this case,
14   plaintiffs recite as follows, "There is no known
15   instance of Covid-19 transmission or contamination
16   within the premises of plaintiffs' businesses."  Now,
17   the declamation of coverage letter that FMI issued
18   prior to the Complaint being filed in this case because
19   the Complaint challenges that declamation of coverage
20   find it among relevant policy provisions the exclusion
21   of 12(c) for contamination by any virus, et cetera.
22   Because the complaint expressly asserts that there was
23   no contamination and because it is our universal duty
24   to read as accurate all facts alleged in the complaint
25   and I agree that the contamination exclusion would not

1   apply to this case. If the complaint had alleged that

2   there was contamination on the premises, then there

3   probably would be direct physical loss, but there would

4   also be exclusion of coverage under that virus

5   exclusion. So what we're really focused on is the

6   policy language. In Studio 417, the definition of loss

7   there was physical loss or physical damage.

8             THE COURT: Okay, but we're concerned about

9   New Jersey. We're not concerned about the Western

10   District of Missouri; correct?

11             MR. HARRISON: That is true, Your Honor, but

12   we are concerned about policy language defining direct

13   physical loss, --

14             THE COURT: Okay, but the --

15             MR. HARRISON: -- but I'm -- I'm happy to

16   take it --

17             THE COURT: -- definition (indiscernible) --

18             MR. HARRISON: -- to our policy language.

19             THE COURT: -- definition has not been

20   established by any court in this state with the

21   exception of the Wakefern case; correct?

22             MR. HARRISON: I think that is absolutely

23   correct.

24             THE COURT: Okay, I just want to establish

25   that for purposes of the record.

1     MR. HARRISON: Okay, so back to our policy.

2     The business interruption loss that -- of which

3     plaintiffs seek to avail themselves governs loss of

4     income resulting from direct covered loss. We go to

5     page 9 of the policy form which expressly defines

6     direct covered loss as follows, "The fortuitous direct

7     physical loss as described in Part 1(c), General Cause

8     of Lost Conditions, Coverages A, B, C, which occurs at

9     described premises occupied by you." Now, the

10    definition is (indiscernible) if it didn't refer -- if

11    it didn't cross-reference another definition, then we'd

12    be fighting over whether the closure of a business

13    because of a risk of virus spread would constitute a

14    fortuitous direct physical loss.

15    However, because it cross-references the

16    description of direct covered loss that's also in the

17    policy at page 8. We go to the more detailed

18    definition. Covered loss, "Means fortuitous direct

19    physical damage to or destruction of covered property

20    by a covered cause of loss." The requirement of direct

21    physical damage to or destruction of (indiscernible) --

22    RECORDING: (Indiscernible).

23    MR. HARRISON: -- requirement of direct

24    physical damage to or destruction of covered property

25    distinguishes this case from the Studio 417 case in

1   that there is the physical damage or destruction

2   requirement that was absent in that case which also had

3   --

4          RECORDING:   (Indiscernible) is now in the

5   conference.

6          MR. HARRISON:   -- I apologize -- which also

7   had the open-ended concept of loss which was not

8   defined.   Our policy defines loss as requiring that

9   physical impact.

10          The Court has reviewed Wakefern I know and

11   the -- the cases -- the New Jersey cases discussed in

12   our brief I agree that there is no case directly on

13   point construing the -- this precise policy language in

14   the context a claim where there was a closure of a

15   business because of the risk of contamination by a

16   virus.   But I think that the application of loss that's

17   set forth in New Jersey and in the other jurisdictions

18   we've cited as persuasive, although not binding,

19   compels the conclusion that this did not meet the

20   policy definition of direct covered loss to satisfy

21   coverage.

22          THE COURT:   Counsel, let me pose -- let me

23   pose one question to you.   Why didn't the policy then

24   have specific exclusions for an event such as this?

25   Meaning for virus proliferation.

1       MR. HARRISON: Well, it -- it precisely has
2    an exclusion for virus proliferation. It does not have
3    an exclusion for a closure of business based on the
4    risk of virus proliferation. I can't speak to the
5    drafters of the policy other than to say this is an
6    unprecedented event. First in my lifetime. First in
7    my parents and our parents. So, yeah, in -- in an
8    ideal world all potential cataclysmic risks could be
9    underwritten and determined in advance as to what we're
10    going to cover and to what extent or whether there
11    should be any coverage at all, but before we get to the
12    absence of an exclusion, and I agree there is no
13    exclusion that would apply on the facts as alleged in
14    this Complaint, we have to satisfy the coverage
15    definition first.

16       THE COURT: You can proceed, Counsel. Thank
17    you.

18       MR. HARRISON: I -- Your Honor, to -- to be
19    candid, I know you've reviewed the papers. I'm happy
20    to address any further questions the Court may have or
21    simply reserve an opportunity to respond to my
22    colleague. I -- I think between our papers and what
23    I've had to say this morning that I've stated our case.
24       THE COURT: Thank you, Counsel. Okay, Mr.
25    Rose, your response?

1     MR. ROSE: Thank you, Your Honor. And just
2     to try to make sure that there's a clean record
3     virtually, this is again Sean Rose, Olender Feldman, on
4     behalf of plaintiff.

5          So contrary to the insurance industry's well
6     rehearsed talking points and -- and Mr. Harrison has a
7     very good brief and very good argument, the simple fact
8     is that plaintiff and the many other in the -- and
9     (indiscernible) plaintiffs purchased business owners
10    policies to insure against, among other things,
11    unexpected business interruptions. And what happened
12    back in March, as we all know because we all lived
13    through it, that's about as unexpected as you get.
14    Plaintiffs were forced to close their businesses
15    because the executive order issued by the State --
16    well, the State pertinent to here, but issued across
17    the country in emergency response to the pandemic found
18    that there is a dangerous condition on plaintiffs'
19    property. As a result of those orders, the plaintiffs
20    closed. All residents were told to stay at home and
21    (indiscernible) claims (indiscernible).

22         Now, as Mr. Harrison pointed out, the
23    briefing reflects that there are really two main points
24    of argument that -- that I'll hit quickly because they
25    are recited at length in the brief is the first

1　(indiscernible) on the direct physical loss issue.　We

2　know from, and just to again bide by Your Honor's

3　directive, we know that under the Gregory Packaging,

4　Inc. versus Travelers Property Casualty Company of

5　America case, which is an unpublished case, but from

6　the District of New Jersey and cited in both Mr.

7　Harrison's and our brief, we know that a dangerous

8　condition on the property can constitute a physical

9　loss.　Now, here, we have an executive order that found

10　that plaintiffs' businesses were deemed unfit and

11　unsafe because of a dangerous condition.　Plaintiffs'

12　loss of income caused by the closure orders concluding

13　that there was a dangerous condition on the property is

14　a direct physical loss.　Alternatively, if we wanted to

15　get into the legal standard, at a minimum, it is

16　plausible the plaintiffs have alleged a direct physical

17　loss here which should defeat a (indiscernible) Motion

18　and allow plaintiffs to pursue discovery, among other

19　things, to discern the true intent behind policy terms

20　which, in some cases, points to coverage but in other

21　cases it may be ambiguous.

22　　　　　　The second point would be the civil authority

23　coverage and I -- I think here, the Western District of

24　Missouri case has instructed, and I'll get to that in a

25　second, here we -- we, again, we know what happened.

1   We all lived through it.  The closure orders forced
2   plaintiffs to close and banned occupancy of all non-
3   essential businesses.  In doing so, the closure orders
4   necessarily not only affected plaintiffs' businesses,
5   but they affected all -- all properties around
6   plaintiffs.  It was a stay-at-home order.  Unless it
7   was an essential business, everything was closed.  It's
8   alleged -- it -- it's in the Motion and, you know,
9   beyond that, Your Honor, we all lived through it.  We
10  were all there.  So, again, at a minimum, it is
11  plausible that plaintiffs are entitled to
12  (indiscernible) coverage here.  And unless Your Honor
13  has any questions, I know the briefing was fairly
14  detailed.

15          THE COURT:  Thank you, Mr. Rose.  You know,
16  at the outset, gentlemen, I do commend the both of you
17  with respect to a very, very difficult topic and
18  concept in the State of New Jersey with regard to the
19  interpretation of insurance law.  I did find that the
20  respective briefs were very well drafted.

21          Mr. Harrison, do you have a reply at this
22  point?

23          MR. HARRISON:  Briefly, Your Honor, yes.  Mr.
24  Rose says the executive order for -- forced closure
25  based on a finding that there was a dangerous condition

1    on plaintiffs' property. That's -- that's simply not

2    the case. The -- the Complaint does not allege that.

3    I understand what he's saying. It -- it's a -- it's a

4    directive closing down non-essential businesses based

5    on the risk that putting people in proximity to each

6    other indoors could result in transmission of the

7    virus, could -- it could result in the virus sitting on

8    a piece of equipment in one of the plaintiffs'

9    examining rooms, but the Complaint in this case

10   expressly alleges that there has been no known instance

11   of Covid-19 transmission or contamination.

12          I -- I get it that this is business

13   interruption insurance and to quote one of the judges I

14   appeared before in my first year arguing coverage

15   motion, he said, Mr. Harrison, before we turn to the

16   policy terms, everybody knows that when an insured buys

17   insurance for something, their reasonable expectation

18   is that they're going to be covered for whatever might

19   befall them, but then we got to go to the policy

20   language and if indeed coverage was determined by the

21   name of the coverage, business interruption, well, then

22   the insurance industry loses and FMI loses this case

23   because we're not disputing that there was business

24   interruption. Although if we were to have to dig

25   deeper, we would probably have a dispute over whether

1  plaintiffs were non-essential businesses, but that's

2  not what this Motion is about. The law requires that

3  we look carefully at the policy language. And with

4  reference to Gregory Packaging, we're talking about the

5  release of ammonia into the air, talking about

6  something physically occurring and I think it's -- it's

7  clear from the plain policy language and the meaning of

8  the terms, which are precisely defined in the policy,

9  that in this instance under this policy based on these

10 allegations there is no direct covered loss.

11        In -- in asking for discovery to determine

12 the true intent behind policy terms, right, that's

13 something you need to speak about briefly. When policy

14 language is clear, I am not aware of any precedent

15 which would support denial of a Motion to Dismiss on

16 the basis that the plaintiff is entitled to conduct

17 discovery to see what the drafter of the document, who

18 I can tell the Court was not -- is not an employee of

19 FMI, had in mind when defining direct covered loss or

20 covered loss.

21        There -- there is -- in New Jersey we do have

22 a -- a big case called Morton International which has

23 to do with pollution exclusions and that's where our

24 courts created this -- the concept of regulatory

25 estoppel where essentially the insurance industry

1   lobbied to insert a particular form of coverage within

2   a policy with an exclusion for -- that applied to

3   environmental losses and essentially the courts found,

4   hey, you came to the Department of Banking and

5   Insurance putting forth this policy language suggesting

6   it would do something and then you went to court and

7   suggested otherwise.  There is no such allegation in

8   this case.  I haven't seen any such allegation even

9   made in the press or -- or by the various

10  (indiscernible) or -- or in any case that's being

11  litigated that I'm aware of.  When the plain policy

12  terms apply plainly and directly to the facts asserted,

13  I'm not aware of any legitimate basis for denying a

14  Motion based on the facts accepted as true in the

15  pleading on the basis that plaintiff wishes to take

16  discovery to see what the defendant meant by policy

17  language that somebody else wrote which the defendant

18  adopted if the plain language controls and is

19  unambiguous and I submit that it does control and it is

20  unambiguous here.

21              THE COURT:  Thank you.  Gentlemen, thank you,

22  very much.  I'm prepared to rule on this Motion.

23              This matter comes before the Court on a

24  Motion Seeking Dismissal of the plaintiffs' Complaint

25  with prejudice pursuant to Rule 4:6-2(e).  The Court

begins with a few general observations concerning the

standards governing dismissal motions under Rule 4:6-

2(e) by citing Flinn v. -- Flinn v. Amboy National

Bank, 40 -- 436 N.J.Super. 274 (App. Div. 2014), "In

reviewing a complaint dismissed under Rule 4:6-2(e),

the inquiry is limited to examining the legal

sufficiency of the facts alleged on the face of the

complaint," citing Printing Mart-Morristown versus

Sharp Electronics Corp., 116 N.J. 739 at page 746

(1989) and Rieder versus Department of Transportation,

221 N.J.Super. 547 at page 552 (App. Div. 1987).

The essential test as set forth in Green

versus Morgan Properties, 215 N.J. 431 at page 451

(Sup. Ct. 2013) is, "Whether a cause of action is

'suggested' by the facts," citing Printing Mart-

Morristown versus Sharp Electronics Corp., 116 N.J. at

746 quoting Velantzas versus Colgate-Palmolive Co., 109

N.J. 189 at page 192 (1988).

"A reviewing court searches the complaint in

depth and with liberality to ascertain whether the

fundamental of a cause of action may be gleaned, even

from an obscure statement of claim, opportunity being

given to amend if necessary," citing Di Cristofaro

versus Laurel Grove Memorial Park, 43 N.J.Super. 244 at

page 252 (App. Div. 1957).

1          In the case of Rule 4:6-2(e), Dismissals,

2     "The Court is not concerned with the ability of the

3     plaintiffs to prove the allegation contained in the

4     complaint," citing Somers Construction Co. versus Board

5     of Education, 198 F.Supp. 732, 734 (Dis. NJ. 1961).

6     Instead,

7          "The plaintiffs are entitled to every

8     reasonable inference of fact and the examination of a

9     complaint's allegations of fact required by the

10    aforestated principle should be one that is at once

11    painstaking and undertaken with a generous and

12    hospitable approach,"

13         citing Green versus Morgan Properties, 215

14    N.J. 431 at page 452 quoting Printing Mart-Morristown

15    versus Sharp Electronics Corp., 116 N.J. at 746.

16         Notwithstanding this indulgent standard, "A

17    pleading should be dismissed if it states no basis for

18    relief and discovery would not provide one," citing

19    Rezem Family Associates, LP versus Borough of

20    Millstone, 423 N.J.Super. 103 at page 113 (App. Div.

21    2011), cert. denied and the appeal was dismissed at 208

22    N.J. 366 (2011).  See also Sickles versus Cabot Corp.

23    379 N.J.Super. 100 at page 106 (App. Div. 2005) cert.

24    denied at 185 N.J. 297 (2005).

25         In those rare instances, as cited in Smith

versus SBC Communications, Inc., 178 N.J. 265 at page
282 (2004), a motion to dismiss pursuant to Rule 4:6-
2(e) ordinarily is granted without prejudice.  See
Hoffman versus Hampshire Labs Incorporated, 405
N.J.Super. 105, 116 (App. Div. 2009).

The defendant, Franklin Mutual Insurance
Company, hereinafter FMI, issued a business owners
policy to plaintiff, Optical Services USA/JC1 under
policy number SBP2598006 with effective dates of
October 5, 2019 to October 5, 2020.  FMI issued the
business owners policy to the plaintiff, Stong OD Ewing
NJ, LLC, hereinafter Stong OD, bearing policy number
SBP2613680 with effective dates of April 1, 2020 to
April 1, 2021.  Optical Services USA/JC1 and Stong OD
filed separate claims seeking loss of business income
caused by the closure mandated by Governor Murphy's
March 21, 2020 Executive Order Number 107 suspending
the operation of non-essential retail businesses on the
account of the Covid-19 pandemic.  Plaintiffs closed
their businesses on March 20, 2020 and have not
reopened to date.  Plaintiffs allege that Executive
Order Number 107 mandated the closure of their
businesses.  FMI issued letters dated April 6, 2020 and
April 14, 2020 to Optical Services USA/JC1 and Stong OD
denying their claims for business income and related

1    expenses.  Plaintiffs, Optical Services USA, LLC,

2    Optical Services USA-WO, Re and Le Holdings, LLC were

3    not named insureds on either policy.

4          Both policies contained the BU04010110

5    Business Owners Policy Form.  The plaintiffs allege

6    that the -- the plaintiffs allege that Optical Services

7    USA/JC1, Optical Services USA, LLC, Optical Services

8    USA-WO, Re and La -- and Le Holding, LLC and Stong OD

9    Ewing NJ, LLC purchased business interruption insurance

10   from insurers to protect their business from an -- an

11   unanticipated crisis.  The plaintiffs further allege

12   that the policies issued by FMI provide coverage for

13   loss of income resulting from a necessary interruption

14   of plaintiffs' businesses caused by direct covered

15   losses and temporary closures required by orders of a

16   civil authority.

17         A Complaint for a Declaratory Judgment in

18   this action was filed on June 25, 2020.  The Complaint

19   also included a Demand for Trial by Jury.  No answer

20   has been filed by the defendant, FMI.  Therefore, the

21   discovery end date has not been established in this

22   case.

23         On July 15, 2020, the defendant, FMI, filed a

24   Motion Seeking Dismissal of the Complaint pursuant to

25   Rule 4:6-2(e).  Within days of filing the Complaint,

1    the defendant, FMI, filed the within Motion to Dismiss.
2    It is clear that there is no established record in this
3    case and there has been no discovery presented to the
4    Court for consideration with respect to the arguments
5    and events by respective legal counsel.
6    Notwithstanding same, the defendants argued three
7    points before this Court. The first legal argument is
8    that the Court should dismiss the complaint for failure
9    to state a legally cognizable claim. The second legal
10   argument is that the plaintiffs did not sustain direct
11   physical loss or direct physical damage to or
12   destruction of covered property precluding coverage for
13   business income or extra expenses under the FMI policy.
14   Lastly, the defendants argue that the plaintiffs
15   occupancy of their respective properties was not
16   prohibited by civil authorities because of a loss at a
17   local premises not owned or occupied by the plaintiffs
18   precluding civil authority coverage under the FMI
19   policies.
20          The plaintiffs argue before this Court that
21   they state claims for coverage under the policies
22   because they suffered a direct covered loss and were
23   forced to close their business by order of a civil
24   authority. Plaintiffs further allege that they state
25   claims for loss of income coverage because they

1      suffered a direct covered loss under the policy and

2      they state claims for civil coverage because the

3      closure order prohibited the plaintiffs from accessing

4      their business.

5      Naturally, each of the respective arguments

6      advanced by the parties requires a fact-sensitive

7      analysis wherein the respective parties have failed to

8      present a sufficient record before this Court for a

9      legal determination of their respective positions.

10      There has been no discovery produced to the Court for

11      consideration, no affidavits, no certifications, or

12      sworn testimony derived from depositions. In fact,

13      discovery has not been undertaken by the parties with

14      respect to the declaratory relief sought in the

15      Complaint. Notwithstanding these deficiencies, the

16      Court will endeavor to address the legal arguments

17      advanced by the respective parties on the extremely

18      limited record provided to the Court.

19      The defendant, FMI, concedes that the

20      plaintiffs' business operations were interrupted by an

21      executive order based on the risk of the Covid-19 virus

22      transmission throughout the State of New Jersey. The

23      pivotal issue before this Court is the parties'

24      interpretation of the subject policy language and FMI's

25      claim denial premised on a narrow interpretation of the

1   terms of the subject policies.  The issue before this

2   Court is the interpretation of a direct covered loss

3   under the policy and whether or not there was physical

4   damage to the plaintiffs' business.

5         The plaintiffs argue that the loss of

6   physical functionality and the use of their business

7   constitutes a covered loss under the policies.  The

8   plaintiffs argue that Governor Murphy's executive order

9   prohibited access to the plaintiffs' premises.

10        FMI argues that the plaintiffs failed to

11  state a claim for civil authority coverage because the

12  complaint does not allege that property damage occurred

13  elsewhere leading to the loss of access to plaintiffs'

14  business.  The defendant acknowledged in their moving

15  papers that presumably the plaintiffs will argue that

16  while their properties were not physically damaged,

17  they sustained a physical loss by operation of the

18  Governor's executive order.  FMI argues that the

19  plaintiffs' loss of use of their respective properties

20  does not constitute a direct physical loss and

21  therefore is not a direct covered loss defined by the

22  policies.

23        A simple review of the moving papers

24  indicates that the defendant has not provided this

25  Court with any controlling legal authority to support

1  their version of the interpretation of the defined
2  terms in the policy. In fact, there is limited legal
3  authority in the State of New Jersey addressing this
4  issue. This is not surprising to the Court as the
5  State of New Jersey was recently faced with a historic
6  event which was unprecedented with respect to the
7  losses sustained by businesses across the State of New
8  Jersey due to the proliferation of the Covid-19
9  pandemic. The defendant argues that there is a plain
10  meaning of "direct physical loss" and the closure of
11  the plaintiffs' business does not qualify for business
12  -- I'm sorry, qualify for purposes of coverage. This
13  is a blanket statement unsupported by any common law in
14  the State of New Jersey or by a blanket review of the
15  policy language. Moreover, there has been no discovery
16  taken in this matter which would provide guidance to
17  the Court with respect to a Motion to Dismiss filed
18  under Rule 4:6-2(e).

19  Pursuant to the legal authority recited by
20  this Court with regard to the standards associated with
21  filing such a motion, the plaintiff should be permitted
22  to engage in issue-oriented discovery and also be
23  permitted to amend its complaint accordingly prior to
24  an adjudication on the merits of any policy language.
25  Such a motion is premature at best.

It is noteworthy to mention that the plaintiffs' argument set forth to this Court that the loss of use of their business because the State of New Jersey deemed all non-essential businesses unsafe constitutes a direct covered loss under the policy is the pivotal issue in the absence of any issue-oriented discovery on this topic is whether direct physical loss and direct physical damage encompasses closure for businesses that bears no specific -- relationship to a specific condition on the property pursuant to an executive order. The plaintiffs counter that argument by alleging that the executive order of the Governor deemed all non-essential businesses unsafe given the risk of transmission of Covid-19 thus the closure order had a specific relationship to a specific condition within the plaintiffs' business.

The plaintiffs provide a citation from Wakefern Food Corp. versus Liberty Mutual Fire Insurance Company, 406 N.J.Super. 524 (App. Div. 2019) to support their argument. Their argument based on the holding of Wakefern is that there was a finding of coverage for a grocery store that lost power when an electrical grid and transmission lines were physically incapable of performing their essential function of providing electricity even though they were not

necessarily damaged.  The Court in _Wakefern_ did hold

that,

"Since the term "physical" can mean more than

material alteration or damage, it is incumbent on the

insurer to clearly and specifically rule out coverage

in the circumstances where it was not to be provided."

Citing _Wakefern versus Liberty Mutual_

_Insurance Company_, 406 _N.J.Super._ at 542.  Also citing

_Customized Distribution Services versus Zurich_

_Insurance Co._, 373 _N.J.Super._ 480 at page 491 (App.

Div. 2004), cert. denied at 183 _N.J._ 214 (2005).

The Court finds such an argument compelling

for purposes of surviving a Motion to Dismiss pursuant

to Rule 4:6-2(e) in the absence of any complete record

for disposition.  Again, the Court notes in the absence

of the legal precedent set forth in _Wakefern_, there is

a lack of controlling legal authority presented to the

Court for consideration in this regard.

"When interpreting insurance contracts, the

intention of the parties must be determined from the

language of the policy," citing _Stone v. Royal_

_Insurance Company_, 211 _N.J.Super._ 246 at page 248 (App.

Div. 1986).  "When the terms of the contract are clear

and unambiguous, the Court must enforce the contract as

written."  That is an incitation at page 248.

1          The language which forms the basis of the

2     complaint and the filing of a Motion to Dismiss is

3     subject to further analysis and interpretation.  By

4     operation of the distinct and opposite interpretations

5     of the language set forth before the Court by the

6     parties with no other clarity from the record having

7     been established to date, which the Court notes is

8     largely non-existent, this Court reaches the inevitable

9     conclusion solely for purposes of disposition of this

10    Motion that the plaintiff should be afforded the

11    opportunity to develop their case and prove before this

12    Court that the event of the Covid-19 closure may be a

13    covered event under the Coverage C, Loss of Income,

14    when occupancy of the described premises is prohibited

15    by civil authorities.  There is an interesting argument

16    made before this Court that physical damage occurs

17    where a policy holder loses functionality of their

18    property and by operation of civil authority such as

19    the entry of an executive order results in a change to

20    the property.

21         The plaintiffs are offering in advancing in a

22    novel theory of insurance coverage in this matter that

23    warrants a denial of the Motion to Dismiss at this

24    early stage of the litigation.  As such, this Court

25    must afford the plaintiffs an opportunity to engage in

1   issue-oriented discovery with FMI in order to fully

2   establish the record with respect to direct covered

3   losses and to amend the Complaint accordingly if

4   required.  To that end, the Motion to Dismiss is

5   denied.

6           Gentlemen, I will have an order prepared and

7   most likely uploaded by this afternoon.  Again, I want

8   to thank you for your briefs and I thank you for your

9   legal arguments here today.

10          MR. HARRISON:  Thank you, Your Honor.  Have a

11  good weekend.

12          THE COURT:  Thank you, gentlemen.

13          (Proceeding concluded at 10:08:29 a.m.)

14                  *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I, Laura Scicutella, the assigned transcriber, do hereby certify the foregoing transcript of proceedings on CourtSmart, Index No. from 9:30:49 to 10:08:29, is prepared to the best of my ability and in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate non-compressed transcript of the proceedings, as recorded.

/s/ Laura Scicutella      AD/T 685
Laura Scicutella      AOC Number

Phoenix Transcription LLC      8/14/2020
Agency Name      Date